UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                                                     :
POLSKA FUNDACJA NARODOWA,               :         22 Civ. 5725 (LGS)
                                    Petitioner,   :
                                                         :         **OPINION AND ORDER**
                         -against-                   :
                                                         :
ATHLETE BENEFITS GROUP, LLC, and      :
LAMAR D. WILLIAMS,                                 :
                                             Respondents. :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Petitioner Polska Fundacja Narodowa ("PFN") petitions to confirm a favorable arbitration award issued on October 20, 2021, as amended by an addendum dated January 19, 2022 (the "Award"). Respondents Athlete Benefits Group, LLC ("ABG") and Lamar D. Williams, proceeding pro se, oppose and cross-petition to vacate the Award. For the following reasons, the petition to confirm the Award (the "Petition") is granted, and Respondents' cross-petition to vacate the Award is denied.

**I.    BACKGROUND**

       PFN is a Polish foundation established in 2016 by seventeen Polish-owned companies to "promote and protect the image of Poland and the Polish economy." ABG was established on March 22, 2018, as a limited liability company in Delaware. Mr. Williams was a member of ABG with managerial power. On October 30, 2018, PFN and ABG entered into an agreement called Appearance Engagement (the "Engagement"), under which ABG agreed to bring its celebrity client Shaquille O'Neal to Warsaw, Poland, later that year to participate in events honoring the 100th anniversary of Poland's independence. As part of this Engagement, PFN paid a deposit to ABG. After the payment of the deposit, the parties were unable to agree on

travel arrangements for Mr. O'Neal. As a result, Mr. O'Neal never made the planned appearance, and PFN sought return of the deposit.

In April 2019, Mr. Williams met with Robert Lubański, Mr. Williams' primary contact at PFN and a member of PFN's Management Board, to discuss a potential amicable settlement regarding the deposit's return. According to the arbitrator, the parties offered differing accounts of what happened at the meeting. Mr. Lubański testified that he reviewed a draft agreement drawn up by ABG, which provided for the return of 50% of the deposit, and that he initialed the draft but did not sign it. Mr. Williams alleged that Mr. Lubański executed an agreement forfeiting the entire deposit. Because PFN's rules of governance require signatures by two members of PFN's Management Board in order to bind PFN, Mr. Lubański stated that he intended his initials to signify only that he had read the agreement and acknowledged its terms.

On December 29, 2020, PFN submitted a Request for Arbitration before the International Court of Arbitration of the International Chamber of Commerce ("ICC") pursuant to the Engagement's arbitration clause. In its request, PFN asked that the arbitrator "not be associated with the sports community." Mr. Williams submitted an answer, asserting that the arbitration claims had no merit and attaching relevant correspondence and the alleged settlement agreement. Mr. Williams did not attend the remotely held arbitration hearings. Two months later, Mr. Williams again wrote to the arbitrator objecting to the arbitration based on the alleged settlement agreement.

On October 20, 2021, the arbitrator determined that Respondents are liable to PFN for the reimbursement of the deposit and accrued interest, arbitration costs and part of PFN's legal costs. On January 19, 2022, the arbitrator issued an addendum clarifying that ABG and Mr. Williams

are jointly and severally liable to PFN. Petitioner then commenced this action to enforce the Award.

## II.     STANDARD

Petitioner brings suit under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"), as applied through the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208. Under the FAA, a party to an arbitration proceeding may apply for a court order confirming the award, which a court "shall confirm . . . unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified" in the New York Convention. 9 U.S.C. § 207. Ordinarily, confirmation of an arbitration decision is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d Cir. 2022) (internal quotation marks omitted). A court's review of an arbitration award is "very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Id.* (internal quotation marks omitted). "That review is extremely deferential to the findings of the arbitration panel." *Id.* (internal quotation marks omitted).

The New York Convention, which the FAA expressly incorporates, provides seven exclusive grounds for refusing confirmation of an award. *See* 9 U.S.C. § 207; *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 159-60 (2d Cir. 2021). In full, Article V of the New York Convention states:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
>
> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
>
>> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, art. V.  The party "opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses applies." *Commodities*, 49 F.4th at 809-10 (internal quotation marks omitted).

While the New York Convention does not articulate a basis for vacating arbitration awards, the Second Circuit has held that a court may also "set aside an arbitration award if it was rendered in manifest disregard of the law." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (internal quotation marks omitted).  "A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on

4

grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Id.* (internal quotation marks omitted). This means "when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Id.* (internal quotation marks omitted). In contrast, a court "will uphold an arbitration award under this standard so long as the arbitrator has provided even a barely colorable justification for his or her interpretation of the contact." *Id.* (internal quotation marks omitted).

A pro se litigant's papers must be construed liberally "to raise the strongest arguments they suggest." *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1074 (2d Cir. 2021) (internal quotation marks omitted).  Pro se litigants are accorded "special solicitude to protect them from inadvertent forfeiture of important rights because of their lack of legal training." *Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021) (internal quotation marks omitted). Nonetheless, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *accord Scalercio-Isenberg v. Port Auth. of N.Y. & N.J.*, 487 F. Supp. 3d 190, 200 (S.D.N.Y. 2020).

### III.   DISCUSSION

#### A.   Personal Jurisdiction

Construed liberally, Respondents first challenge the Court's exercise of personal jurisdiction in this proceeding, asserting they did not receive proper service.  This challenge fails because they were properly served by certified mail and email.

"It is well established that . . . Rule 4 [of the Federal Rules of Civil Procedure] sets forth the basic procedures for serving process in connection with arbitral awards." *Commodities*, 49

F.4th at 812.  Under Federal Rule of Civil Procedure 4(e)(1), "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  In New York State, the New York Civil Practice Law and Rules "provide for service by personal delivery, delivery and mailing, and nailing and mailing."  *Doe v. Hyassat*, 337 F.R.D. 12, 15 (S.D.N.Y. 2020) (internal quotation marks omitted) (citing CPLR § 308(1)-(2), (4)).

Where service is "impracticable" under these subsections, service may be effected "in such manner as the court, upon motion without notice, directs."  CPLR § 308(5).  "Section 308(5) requires a showing of impracticability, under the facts and circumstances of the case, but does not require proof of due diligence or of actual prior attempts to serve a party under the other provisions of the statute."  *Marvici v. Roche Facilities Maint. LLC*, No. 21 Civ. 4259, 2021 WL 5323748, at *2 (S.D.N.Y. Oct. 6, 2021) (internal quotation marks omitted).  "Constitutional notions of due process require that any means of service be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* at *3 (internal quotation marks omitted).

In this proceeding, Respondents were served by email and certified mail after Petitioner showed impracticability of traditional service.  Petitioner hired a private investigator and attempted numerous times to serve Respondents at their purported current addresses.  Service by email also meets the constitutional requirements of due process, as Respondents previously used those email addresses in correspondence with both the arbitrator and Petitioner.  Courts have previously authorized alternative service by email and certified mail.  *See, e.g.*, *id.* ("In general, courts have authorized alternative service via certified mail to a last known address."); *GP*

6

*Acoustics (US), Inc. v. J&V Audio, Inc.*, No. 17 Civ. 5305, 2017 WL 11570459, at *1 (S.D.N.Y. Sept. 13, 2017) (authorizing service by email on defendant).  Thus, Petitioner properly effected service on Respondents.

      **B.**      **Petition to Confirm the Arbitration Award**

PFN's petition to confirm the Award is granted because Respondents have not carried their burden to establish any of the defenses.  *See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005) ("[A] district court is strictly limited to the seven defenses under the New York Convention when considering whether to confirm a foreign award." (citing 9 U.S.C. § 208)).  Respondents oppose confirmation of the Award on several grounds: (1) the signatures on the Engagement were altered and therefore never executed; (2) Petitioner's action is untimely; (3) Petitioner executed a settlement and release agreement; (4) the arbitrator was unqualified and (5) the COVID-19 pandemic impacted service.  None of these is sufficient under the New York Convention.

Respondents first challenge the validity of the Engagement.  This argument is construed as a defense under Article V(1)(a) of the New York Convention, which provides that a court may refuse to recognize an arbitration award if the agreement at issue "is not valid under the law to which the parties have subjected it or . . . under the law of the country where the award was made."  Respondents allege that the signatures on the Engagement were altered, but without proof supporting this contention, this defense fails.

Respondents next assert that Petitioner's proceeding is untimely and point to the start of the events at issue in 2018.  The FAA allows three years from the date of the arbitration award for a party to apply to a court for confirmation of the award.  9 U.S.C. § 207.  Here, the Award

7

was issued on October 20, 2021, and the addendum was issued on January 19, 2022. Petitioner commenced this action on July 6, 2022, well within three years of both dates.

Respondents' third argument on the settlement and release agreement is construed as a defense under Article V(1)(c) of the New York Convention, which states that a court may refuse recognition when the "award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration." Respondents allege that PFN and ABG executed a settlement and release prior to the arbitration, which Respondents attached to their opposition to the Petition. The arbitrator considered this argument, reviewed the evidence -- including the testimony of Mr. Lubański, who denied signing the alleged agreement, contemporaneous emails and a copy of the settlement and release agreement[1] -- and found that the agreement was inauthentic. The authenticity of the settlement agreement was "properly a question for the arbitrator[]." *See Commodities*, 49 F.4th at 818. As the arbitrator has provided far more than the "barely colorable justification" required to uphold the Award, Respondents' argument is unavailing. *See Weiss*, 939 F.3d at 109.

Next, Respondents assert that the arbitrator lacked the necessary qualifications because the arbitrator had no experience with sports or celebrity appearance agreements. This assertion is construed as an argument under Article V(1)(d) of the New York Convention, which provides the following as a ground for refusing recognition of an award: "The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration

---

[1] The final arbitration award discusses in detail the authenticity of the agreement, ultimately finding it inauthentic. However, even if Mr. Lubański's signature was authentic, PFN's rules of representation require two signatures from its management board to bind PFN, so that the agreement was not binding in any event.

took place."  PFN requested an arbitrator who would "not be associated with the sports community," and Respondents fail to furnish evidence that the arbitrator lacked the necessary experience.  In addition, the arbitration clause in the Engagement specifies that "[a]ll disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."  Respondents provide no evidence that the ICC failed to follow its rules in appointing the arbitrator.  *See Encyclopaedia Universalis*, 403 F.3d at 91 ("[T]he parties explicitly settled on a form and the New York Convention requires that their commitment be respected.").  Respondents also suggest the arbitrator lacked impartiality but do not substantiate this allegation.  The record does not support any of the defenses that would permit the court to decline to confirm the Award.

       Finally, Respondents' contention that the COVID-19 pandemic caused service challenges in violation of their due process rights is construed as an argument under Article V(1)(b) of the New York Convention.  Under this provision, a court may refuse to confirm an award if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case."  The Article V(1)(b) defense "essentially sanctions the application of the forum state's standards of due process."  *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992) (internal quotation marks omitted); *accord Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 62 (2d Cir. 2020) (summary order).  The record shows that Respondents received Petitioner's request for arbitration and timely submitted an answer with exhibits.  Respondents sent another objection to the arbitrator two months later, and the ICC held all hearings remotely via teleconference.  Respondents' argument is unavailing.

### C. Cross-Petition to Vacate the Arbitration Award

Respondents cross-petition to vacate the Award by asserting that the arbitrator acted in manifest disregard of the law. Respondents have not carried their significant burden imposed in order to vacate an arbitration award on this basis. A court may vacate an award for manifest disregard of the law "only if the court finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (internal quotation marks omitted). "The award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 628 (2d Cir. 2021) (internal quotation marks omitted).

Respondents' assertion that ABG cannot be treated as an alter ego of Mr. Williams is construed as an argument that the arbitrator acted in manifest disregard of the law in finding joint and several liability. The arbitrator, applying the doctrine of veil piercing under Delaware law, discussed liability at length in the Award. Respondents have not shown the arbitrator's intentional defiance of the law. *See STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (citations omitted). After a thorough examination of the record, the arbitrator found the case met the conditions required to pierce the corporate veil of ABG. As the arbitrator provided far more than the "barely colorable justification" for her decision that would suffice to uphold an arbitration award, Respondents' argument fails. *See Seneca Nation*, 988 F.3d at 628 (emphasis removed). Respondents' cited *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687 (2010), is inapposite. The Supreme Court in that case held that the FAA does not allow arbitrators to impose class arbitration on parties whose arbitration clauses

are silent on that issue.  That principle is inapplicable even by analogy because the parties here explicitly agreed to settle all disputes in connection with the Engagement before the ICC. Questions of joint and several liability are matters that fall within this consent.  *See id.* at 686 (unlike the issue of class arbitrability, the question here "resolves a single dispute between the parties to a single agreement").

## IV. CONCLUSION

For the foregoing reasons, the Petition to confirm the Award is **GRANTED**. Respondents' cross-petition to vacate the Award is **DENIED**.

The Clerk of Court is respectfully directed to enter judgment in favor of Petitioner and close the case.

Dated: April 21, 2023
       New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE