# EXHIBIT B



INTERNATIONAL COURT OF ARBITRATION® | INTERNATIONAL CENTRE FOR ADR | LEADING DISPUTE RESOLUTION WORLDWIDE

# AWARD

**INTERNATIONAL CHAMBER OF COMMERCE (ICC)**
**INTERNATIONAL COURT OF ARBITRATION**

33-43 avenue du Président Wilson, 75116 Paris, France
**T** +33 (0)1 49 53 29 05  **F** +33 (0)1 49 53 29 33
**E** arb@iccwbo.org   www.iccarbitration.org

# ICC INTERNATIONAL COURT OF ARBITRATION


## CASE No. 25952/HBH (EPP)


POLSKA FUNDACJA NARODOWA

(Poland)

**vs/**

**1.** ATHLETE BENEFITS GROUP, LLC

(U.S.A)

**2.** Lamar D. Williams

(U.S.A.)

**3.** Mark Stevens

(U.S.A.)


This document is a certified true copy of the original of the Final Award rendered in conformity with the Rules of Arbitration of the International Chamber of Commerce.

In the matter of an arbitration under Appendix VI of the
Rules of Arbitration of the
International Chamber of Commerce in force as of 1 March 2017

<u>ICC ARBITRATION NO. 25952/HBH (EPP)</u>

# POLSKA FUNDACJA NARODOWA
## (POLAND)

## VS/

# 1. ATHLETE BENEFITS GROUP, LLC
## (U.S.A.)

# 2. LAMAR D. WILLIAMS
## (U.S.A.)

# 3. MARK STEVENS
## (U.S.A.)

## FINAL AWARD

Sole Arbitrator
Ms. Iuliana Iancu

CERTIFIED TRUE COPY OF THE ORIGINAL
PARIS, 17 |05| 2022

Ana SERRA E MOURA
Deputy Secretary General
ICC International Court of Arbitration

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

1

# TABLE OF CONTENTS

I. THE PARTIES ........................................................................................ 6
  A. Claimant ........................................................................................ 6
  B. Respondents .................................................................................. 6
II. THE SOLE ARBITRATOR ................................................................... 6
III. PROCEDURAL HISTORY .................................................................. 7
IV. THE PARTIES' REQUESTS FOR RELIEF ....................................... 16
V. THE FACTUAL BACKGROUND OF THE DISPUTE ...................... 18
  A. PFN ................................................................................................. 18
  B. Respondents .................................................................................. 18
  C. The Appearance Engagement ....................................................... 19
  D. PFN's and ABG's difficulties in implementing the Appearance Engagement ... 21
  E. PFN and ABG discuss a potential amicable settlement ............... 23
VI. PRELIMINARY ISSUE: NOTIFICATIONS ISSUED TO RESPONDENTS AND RESPONDENTS' (NON-)PARTICIPATION IN THESE PROCEEDINGS .................................................................................. 27
VII. JURISDICTION ................................................................................... 28
  A. Claimant's position ....................................................................... 28
    1. Respondents 2 and 3 are parties to the Arbitration Agreement as a result of their conduct in these proceedings ................................................ 30
    2. The Sole Arbitrator has jurisdiction over Respondents 2 and 3 as a result of the veil piercing doctrine ........................................................ 32
  B. Respondents' position ................................................................... 34
  C. The Sole Arbitrator's decision ...................................................... 36
    1. The Sole Arbitrator's jurisdiction over Respondent 1 ............... 36
    2. Whether Claimant's reliance upon an alleged lack of objection to jurisdiction by Respondents 2 and 3 was made in a timely manner ... 36
    3. Whether the Answer and Mr. Williams' email of 27 April 2021 were submitted on behalf of all Respondents ............................................. 37
    4. Whether Respondents 2 and 3 can be deemed to be parties to the Arbitration Agreement as a result of their conduct in these proceedings ... 41
    5. Whether Respondent 3 is bound by the Arbitration Agreement as a result of the doctrine of piercing the corporate veil .............................. 42
VIII. CLAIMANT'S APPLICATION TO EXCLUDE EXHIBIT R-2 FROM THE RECORD ....................................................................................... 45
  A. Claimant's position ....................................................................... 45
  B. Respondents 1 and 2's position .................................................... 46

   C.   The Sole Arbitrator's decision................................................................46

IX.    CLAIMANT'S CLAIMS .................................................................50

   A.   Claimant's position...........................................................................50

      1.   Claimant's submissions regarding Respondents' liability ...........51

      2.   Mr. Williams' liability ...............................................................53

   B.   Respondents 1 and 2's position .........................................................56

   C.   The Sole Arbitrator's decision...........................................................57

      1.   The contractual arrangements between PFN and ABG under the Appearance Engagement..............................................................................57

      2.   Whether Claimant failed to perform its obligations under the Appearance Engagement..............................................................................61

      3.   Whether Claimant is entitled to the reimbursement of the Deposit from Respondent 1 .................................................................................65

      4.   Whether Mr. Williams' liability for ABG's debts and liabilities can be engaged...........................................................................................68

X.     INTEREST .....................................................................................77

   A.   Claimant's position...........................................................................77

   B.   Respondents 1 and 2's position .........................................................78

   C.   The Sole Arbitrator's decision...........................................................78

XI.    COSTS............................................................................................79

   A.   Claimant's position...........................................................................79

   B.   Respondents 1 and 2's position .........................................................80

   C.   The Sole Arbitrator's decision...........................................................80

XII.   DECISION......................................................................................82



# REPRESENTATION OF THE PARTIES

*Representing Claimant*

Ms. Beata Gessel-Kalinowska vel Kalisz
Ms. Joanna Kisielińska-Garncarek
Ms. Barbara Tomczyk

**GESSEL ATTORNEYS AT LAW**
Sienna 39
00-121 Warsaw
Poland

Email: b.gessel@gessel.pl
j.kisielinska@gessel.pl
b.tomczyk@gessel.pl

*Respondents not represented by counsel*

Respondent 1 (address 1)
ATHLETE BENEFITS GROUP, LLC
1013 Centre Road
Suite 403S
Wilmington, Delaware 19805
United States of America

and

Respondent 1 (address 2)
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
        lamardwilliams@aol.com
        ldw@tantongrpcpas.com
        markstevensentinc@yahoo.com

Respondent 2 (address 1)
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
        lamardwilliams@aol.com

and

Respondent 2 (address 2)
Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

Respondent 3 (address 1)
Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087





4

United States of America
Tel: +1 678 794 9660
    +1 770 912 3330
    +1 770 572 1414

and

Respondent 3 (address 2)
Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

## I.    THE PARTIES

### A.    Claimant

1.  **POLSKA FUNDACJA NARODOWA**, a foundation incorporated and existing under the laws of Poland, with its statutory seat in Warsaw (Poland), at the address Aleja Jana Pawla II 12, 00-124 Warsaw, entered into the Register of Associations, Other Social and Professional Organizations, Foundations and Public Health Care Institutions of the Polish National Court Register under the number 0000655791, with VAT registration number PL5252691880 (hereinafter referred to as **"Claimant"** or **"PFN"**).

2.  Claimant is represented in this arbitration by its duly authorized attorneys and counsel mentioned at page 4 above.

### B.    Respondents

3.  **ATHLETE BENEFITS GROUP, LLC**, a company incorporated and existing under the laws of the United Stated of America, with its registered office at 1013 Centre Road, Suite 403S, Wilmington DE 19805, United States of America, which may be also reached at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America (hereinafter referred to as **"ABG"** or **"Respondent 1"**).

4.  **MR. LAMAR D. WILLIAMS**, a United States national, residing at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America. Mr. Williams may also be reached at TANTON GROUP CPAs, LLP, 780 Third Avenue – Suite 701, New York, NY 10017, United States of America (hereinafter referred to as **"Mr. Williams"** or **"Respondent 2"**).

5.  **MR. MARK STEVENS**, a United States national, residing at 3286 DeShong Drive, Stone Mountain, Georgia 30087, United States of America. Mr. Stevens may be also reached at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America (hereinafter referred to as **"Mr. Stevens"** or **"Respondent 3"**).

6.  Respondents 1, 2 and 3 shall be jointly referred to as **"Respondents"**.

7.  Claimant and Respondents shall jointly be referred to as the **"Parties"**.

## II.   THE SOLE ARBITRATOR

8.  At its session of 22 April 2021, the International Court of Arbitration of the International Chamber of Commerce (the **"ICC Court"**) directly appointed

Iuliana Iancu as Sole Arbitrator pursuant to Article 13(4)(a) of the 2017 ICC Rules of Arbitration (the **"ICC Rules"**).

9. The Sole Arbitrator's contact details are the following:

> Ms. Iuliana Iancu
> HANOTIAU & VAN DEN BERG
> IT Tower, avenue Louise, 480/9
> 1050 Brussels
> BELGIUM
>
> Tel:       + 32 2 290 39 00
> Email:    iuliana.iancu@hvdb.com

## III.   PROCEDURAL HISTORY

10. On 29 December 2020, Claimant submitted a Request for Arbitration (the **"Request"**) to the Secretariat pursuant to the arbitration clause contained in the article titled "Final Provisions"[1] contained in the Appearance Engagement, dated 30 October 2018 and entered into between PFN and ABG (the **"Appearance Engagement"**). This provision is transcribed in full below:

> "Final Provisions
>
> Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration will be Warsaw, Poland and the language of arbitration will be English."[2]

11. In its Request, Claimant requested that the dispute be decided by a sole arbitrator. Claimant also requested that the sole arbitrator not be associated with the sports community and in particular with the Court of Arbitration for Sport in Lausanne, Switzerland, have general knowledge of Polish civil law and preferably originate from a CEE country. Claimant noted that, pursuant to the Arbitration Agreement, the place of arbitration is Warsaw, Poland, the language of the arbitration is English, and that Polish law is the law chosen to apply to the Appearance Engagement.

12. On 6 January 2021, the Secretariat acknowledged receipt of the Request, which was received on 29 December 2020. The Secretariat noted that, pursuant to Article 4(2) of the ICC Rules, the arbitration is deemed to have commenced on

---

[1] Hereinafter referred to as the **"Arbitration Agreement"**.
[2] The Appearance Agreement dated 30 October 2018 concluded between Polska Fundacja Narodowa and Berkeley Benefits Group, LLC (Exhibit C-1).

29 December 2020. The Secretariat inquired whether Claimant agreed to have the Request notified to Respondents by email.

13.  On 14 January 2021, Claimant confirmed that it agreed to the notification of the Request by email to Respondents, further to the ICC's general communication dated 17 March 2020.

14.  On 25 January 2021, the Secretariat notified the Request, accompanied by the appended exhibits, to Respondents. The Secretariat invited Respondents to submit their answer to the Request and to comment on Claimant's proposition regarding a sole arbitrator within 30 days.

15.  On the same date, the Secretariat informed the Parties that the ICC Rules included Expedited Procedure Provisions, which could potentially apply if the amount in dispute did not exceed USD 2 million (subject to the conditions set forth in Article 30(3) of the ICC Rules). The Secretariat informed the Parties that they could also agree to the application of the Expedited Procedure Provisions in all other cases.

16.  On 11 February 2021, the Secretariat informed the Parties that, according to the electronic delivery receipt, Respondents had received the Request and the appended exhibits on 26 January 2021. The Secretariat informed the Parties that, pursuant to Article 5(1) of the ICC Rules, the 30-day time limit for the submission of Respondents' answer would expire on 25 February 2021.

17.  On 25 February 2021, Claimant informed the Secretariat that it did not object to the present arbitral proceedings being conducted in accordance with the Expedited Procedure Provisions. Claimant also submitted that the present proceedings should be conducted in accordance with the ICC Rules in force as from 1 March 2017.

18.  On the same date, Mr. Lamar Williams submitted "[his] response to the request for arbitration"[3] (the **"Answer"**), accompanied by two exhibits. For purposes of this Award, the exhibits shall be referred to as **Exhibit R-1** Email correspondence between Mr. Williams, Mr. Stevens and PFN dated 26 November 202; and **Exhibit R-2** Settlement and Release Agreement dated 17 April 2019.[4]

19.  On 16 March 2021, the Secretariat circulated the Answer and Claimant's submission of 25 February 2021 to the Parties. The Secretariat informed the Parties that it understood the Answer to have been submitted on behalf of all Respondents in the arbitration. The Secretariat took note that Claimant had

---

[3] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the ICC, 25 February 2021.
[4] While originally titled Exhibits A and B by Mr. Williams, the new numbering was given so as to correspond to the directions in Procedural Order No. 1.

expressed its agreement to opt in for the application of the Expedited Procedure Provisions, and invited Respondents to comment thereon by 23 March 2021. The Secretariat extended the deadline for Respondents to comment on Claimant's proposal regarding a sole arbitrator by 23 March 2021.

20. On 2 April 2021, the Secretariat noted that Respondents had not submitted their comments as invited on 16 March 2021. The Secretariat confirmed that the proceedings would be conducted under Annex VI to the ICC Rules (the **"Expedited Procedure Provisions"**). The Secretariat further informed the Parties that, unless informed otherwise by 8 April 2021, it would proceed with the constitution of the arbitral tribunal.

21. At its session of 15 April 2021, the ICC Court decided to fix the number of arbitrators at one.

22. On 23 April 2021, the Secretariat informed the Parties that the ICC Court, at its session of 22 April 2021, had appointed Ms. Iuliana Iancu as Sole Arbitrator pursuant to Article 13(4)(a) of the ICC Rules.

23. On the same date, the Secretariat transferred the file to the Sole Arbitrator.

24. On 26 April 2021, the Sole Arbitrator wrote to the Parties by email, transmitting a table of availabilities for the case management conference, as well as a draft Procedural Order No. 1 for comment. The Sole Arbitrator invited the Parties to revert with their availabilities for a case management conference (to be held at the latest until 8 May 2021) by Tuesday, 27 April 2021, 22:00 CET. The Sole Arbitrator also recommended to the Parties that, in light of the COVID-19 pandemic and Article 3(3) of the Expedited Procedure Provisions, the case management conference be held remotely, via videoconference. The Sole Arbitrator's letter to the Parties was also dispatched to Respondents via DHL.[5]

25. On 27 April 2021, Mr. Lamar Williams wrote to the Sole Arbitrator, advising that "we duly and fully object to this arbitration" and referring to the Settlement and Release Agreement and "our Answer on February 25 [2021]".[6]

26. On the same day, the Sole Arbitrator responded to Mr. Williams' email above, copying Claimant, Respondents and the Secretariat. The Sole Arbitrator invited Mr. Williams to make sure that, whenever addressing the Sole Arbitrator, all other Parties to the proceedings, as well as the Secretariat, are copied on the correspondence. The Sole Arbitrator took due note of the objection raised on 27 April 2021, indicating that it would be fully addressed at the appropriate juncture of the proceedings. The Sole Arbitrator reiterated her invitation that Respondents fill in the table of availabilities for the case management conference and her

---

[5] *See*, Annex I to Final Award.
[6] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the Sole Arbitrator, 27 April 2021.

recommendation that the case management conference be organized remotely, by video.

27. On the same day, Claimant reverted to the Sole Arbitrator with its availabilities for the case management conference.

28. Respondents did not revert to the Sole Arbitrator. According to DHL, delivery was received at Respondent 2's Second Address but was refused by the addressee in the case of Respondent 1 and Respondent 3.[7]

29. On 28 April 2021, the Sole Arbitrator informed the Parties by email that the case management conference would take place on 6 May 2021 at 16:00 CET/10:00 Atlanta, Georgia by videoconference (the **"First Case Management Conference"**). The Sole Arbitrator invited the Parties to submit their comments on the draft Procedural Order No. 1 by 5 May 2021, at 16:00 CET/10:00 Atlanta, Georgia. The Sole Arbitrator also circulated the connection details for the First Case Management Conference.

30. The Sole Arbitrator's letter above to the Parties was sent to Respondent 3 by DHL. Due to an error with DHL routing, the letter could not be delivered to Respondent 3 in time for the First Case Management Conference.[8]

31. On 5 May 2021, Claimant submitted its comments on the draft Procedural Order No. 1 by email, copying the Sole Arbitrator, Respondents and the Secretariat.

32. On 6 May 2021, the First Case Management Conference took place by way of videoconference in the presence of counsel for Claimant and the Sole Arbitrator. Respondents 1 and 2 did not appear. The Sole Arbitrator informed counsel for Claimant that, due to an error with DHL routing, the Sole Arbitrator's letter dated 28 April 2021 could not be dispatched to Respondent 3 in time for the First Case Management Conference. The Sole Arbitrator heard Claimant's comments regarding the draft Procedural Order No. 1 and put forward a proposal regarding the procedural calendar. The Sole Arbitrator indicated to Claimant that a second case management conference would have to be organized in order to properly effect service on Respondent 3. The Sole Arbitrator informed Claimant that the second case management conference would take place on 13 May 2021, at 17:00 CET/11:00 Atlanta, Georgia.

33. On the same day, the Sole Arbitrator informed the Parties by email that a second case management conference would be convened for 13 May, at 17:00 CET, in order to re-attempt service on Respondent No. 3 (the **"Second Case Management Conference"**). The Sole Arbitrator circulated an amended draft Procedural Order No. 1, including the Sole Arbitrator's proposal regarding the

---

[7] *See,* Annex I to Final Award.
[8] *See,* Annex II to Final Award.

procedural calendar, for the Parties' comments by 12 May 2021, at 17:00 CET/11:00 Atlanta, Georgia. The Sole Arbitrator also transmitted the connection details for the Second Case Management Conference. The Sole Arbitrator's letter to the Parties, including the amended draft Procedural Order No. 1 and the new video connection details, were sent to Respondent 3 by DHL the following day.[9]

34. On 7 May 2021, counsel for Claimant notified the Sole Arbitrator by email, copying Respondents and the Secretariat, that it had identified two other possible addresses of Respondents' for purposes of document delivery, namely:

   a. For Athlete Benefits Group, LLC (Respondent 1): 1013 Centre Road, Suite 403S, Wilmington Delaware 19805, United States;

   b. For Mr. Mark Stevens (Respondent 3): 3286 DeShong Drive, Stone Mountain, Georgia 30087, United States.

35. On 10 May 2021, the Sole Arbitrator informed the Parties by email that, in order to allow service to Respondent 1 and Respondent 3 at the above indicated addresses, the Second Case Management Conference was being rescheduled for 19 May 2021, at 17:00 CET/11:00 EST. The Sole Arbitrator circulated an amended draft Procedural Order No. 1 reflecting this change, inviting the Parties' comments by 18 May 2021, at 17:00 CET/11:00 EST. The Sole Arbitrator also circulated connection details for the Second Case Management Conference. The Sole Arbitrator's letter to the Parties, including the amended draft Procedural Order No. 1 and the new video connection details, were sent to Respondents 1 and 3 by DHL on the same day.[10]

36. On 18 May 2021, Claimant submitted additional comments on the amended draft Procedural Order No. 1 by email, copying Respondents, the Sole Arbitrator and the Secretariat.

37. On 19 May 2021, at 17:00 CET/11:00 EST, the Second Case Management Conference took place by way of videoconference in the presence of counsel for Claimant and the Sole Arbitrator. Respondents did not appear. The Sole Arbitrator informed counsel for Claimant that DHL delivery of the amended draft Procedural Order No. 1 had been made at Respondent 3's address 1, and that DHL delivery of the same had been refused at Respondent 1's address 1 and Respondent 3's address 2.

38. On the same day, counsel for Claimant submitted by email, copying Respondents, the Sole Arbitrator and the Secretariat, three telephone numbers at which Respondent 3 could be reached.

[9] See, Annex III to Final Award.
[10] See, Annex IV to Final Award.



39. On the same day, the Sole Arbitrator issued Procedural Order No. 1, setting out *inter alia*: (i) that, in accordance with the Arbitration Agreement, the place of arbitration is Warsaw, Poland, the language of the arbitration is English, and Polish law applies to the Appearance Engagement; and (ii) the calendar of the proceedings. The procedural calendar included in Procedural Order No. 1 provided that the date of 1 September 2021 would be held in reserve for a potential hearing, and accounted for the final award being rendered within six months of the First Case Management Conference, as per Article 4(1) of the Expedited Procedure Provisions (*i.e.*, by 6 October 2021). Procedural Order No. 1 was sent to all Parties by email, as well as by DHL.[11]

40. On 4 June 2021, the Sole Arbitrator wrote to the Parties by email, informing them that DHL had notified her that the registered address of Respondent 1, situated at 1013 Centre Road, Suite 403S, Wilmington, Delaware 19805, United States of America, was no longer valid. The Sole Arbitrator invited Claimant to verify whether the registered address of Respondent 1 had changed in the meantime.

41. On 7 June 2021, Claimant submitted the electronic copies of its Statement of Claim (the **"SoC"**) and of the witness statement of Mr. Robert Lubański (**"Lubánski WS"**). Claimant informed the Sole Arbitrator, copying Respondents and the Secretariat, that it was not aware of a different registered address for Respondent 1. Claimant invited the Sole Arbitrator to attempt DHL delivery at Respondent 1's alternate address, situated at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States.

42. On 8 June 2021, the Sole Arbitrator informed the Parties by email that Procedural Order No. 1 had been dispatched by DHL to Respondent 1's address situated in Decatur, Georgia.

43. Respondents did not submit a Statement of Defense on 7 July 2021, as provided in Procedural Order No. 1.

44. On 12 July 2021, the Sole Arbitrator wrote to the Parties by email concerning the mid-stream case management conference (the **"mid-stream CMC"**). The Sole Arbitrator recommended that, in light of the COVID pandemic and the need to conduct the proceedings expeditiously, the mid-stream CMC take place by video, and circulated the connection details. The Sole Arbitrator invited the Parties to communicate their views on whether a hearing was necessary in this case, and indicated that she would have some questions that the Parties would

---



need to answer in their forthcoming submissions. The Sole Arbitrator's message was also transmitted separately to Respondents by DHL.[12]

45. On 21 July 2021, at 17:00 CET/11:00 local time Georgia, United States, the mid-stream CMC took place by videoconference. The following persons were in attendance:

Sole Arbitrator
Ms. Iuliana Iancu

For Claimant
Ms. Joanna Kisielińska-Garncarek, Gessel Attorneys at Law, Counsel for Claimant
Ms. Barbara Tomczyk, Gessel Attorneys at Law, Counsel for Claimant

46. During the mid-stream CMC, the Sole Arbitrator inquired with Claimant whether DHL deliveries should continue to be attempted at Respondent 1's registered address in Wilmington, Delaware, in light of DHL's indication that the address was no longer valid. Claimant confirmed that deliveries at that address could be discontinued.

47. On 22 July 2021, the Sole Arbitrator issued Procedural Order No. 2, deciding, *inter alia*, that an evidentiary hearing dedicated to the examination of Mr. Lubański would be held on 1 September 2021 (the **"Hearing"**). The Sole Arbitrator invited the Parties to set forth their views on several issues relevant for the case and to put forward their positions regarding the organization of the Hearing by 6 August 2021. Procedural Order No. 2 was also dispatched to Respondents by DHL.[13]

48. On 6 August 2021, Claimant submitted its memorial in answer to the Sole Arbitrator's questions set out in Procedural Order No. 2, as well as its position regarding the practicalities of organizing the Hearing (**"Claimant's 6 August 2021 Submission"**). Claimant requested that the Hearing be held virtually and that the ICC Hearing Centre be used as a third-party service provider. Claimant suggested that Mr. Bartłomiej Świetlik, whose CV was attached, provide interpretation services at the Hearing. Claimant's email was copied to the Sole Arbitrator, Respondents and the Secretariat.

49. Despite having been invited to do so, Respondents did not make any submissions in answer to Procedural Order No. 2 and did not comment on the organization of the Hearing.

---

[12] *See*, Annex VI to Final Award.
[13] *See*, Annex VII to Final Award.



50. On 9 August 2021, the Sole Arbitrator issued Procedural Order No. 3 on the organization of the Hearing. The Sole Arbitrator decided, *inter alia*, that the Hearing would be held remotely and that the ICC Hearing Centre would be used as a third-party service provider for purposes of technical assistance during the Hearing. The Sole Arbitrator set out a timetable for other logistical arrangements for the Hearing. The Sole Arbitrator also informed the Parties that Mr. Świetlik was not accepted as interpreter for the Hearing, due to the fact that he had been cooperating with Claimant's counsel since 2002. The Sole Arbitrator invited Claimant to put forward another suggestion for interpretation by 13 August 2021. Procedural Order No. 3 was also dispatched to Respondents by DHL.[14]

51. On 11 August 2021, citing staffing issues during the month of August at the ICC Hearing Centre, Claimant invited the Sole Arbitrator to amend some deadlines in Procedural Order No. 3 concerning the organization of the Hearing.

52. On 12 August 2021, after making inquiries with the ICC Hearing Centre, the Sole Arbitrator informed the Parties that the deadlines in Procedural Order No. 3 could be complied with. The Sole Arbitrator declined the invitation to amend Procedural Order No. 3.

53. On 13 August 2021, pursuant to the Sole Arbitrator's directions, Claimant submitted another proposition regarding interpretation at the Hearing, with Mr. Tomasz Jasiński, whose CV was attached, proving interpretation services. Claimant's email was copied to the Sole Arbitrator, Respondents and the Secretariat.

54. On 16 August 2021, the Sole Arbitrator informed the Parties that they could proceed to make arrangements so that Mr. Jasiński provide interpretation services at the Hearing.

55. On 18 August 2021, the Sole Arbitrator circulated by email the connection details for the Hearing received from the ICC Hearing Centre, copying Claimant, Respondents and the Secretariat. The connection details were also dispatched separately to Respondents by DHL.[15]

56. On 19 August 2021, pursuant to Procedural Order No. 3, Claimant submitted its list of Hearing attendees by email, copying the Sole Arbitrator, Respondents and the Secretariat.

57. On 27 August 2021, Claimant wrote to the Sole Arbitrator by email, copying Respondents and the Secretariat, informing her that, for personal reasons, Mr. Jasiński would not be able to provide interpretation services at the Hearing.

[14] *See*, Annex VIII to Final Award.
[15] *See*, Annex IX to Final Award.

Claimant requested that the Sole Arbitrator approve that Mr. Mikołaj Malanowski, whose CV was attached, act as interpreter instead.

58. On the same day, the Sole Arbitrator accepted Mr. Jasiński's replacement with Mr. Malanowski.

59. On the same day, the ICC Hearing Centre invited the participants to the arbitration to a pre-hearing test which would take place on 30 August 2021. The invitation was circulated by email only.

60. On 30 August 2021, at 14:00 CET, the pre-hearing video test took place. Respondents did not participate in the test.

61. On 1 September 2021, the Hearing took place remotely, using the Zoom videoconferencing platform, at 16:00 CET/10:00 local time Georgia, United States. The following persons were in attendance:

Sole Arbitrator
Ms. Iuliana Iancu

For Claimant
Ms. Joanna Kisielińska-Garncarek, Gessel Attorneys at Law, Counsel for Claimant
Ms. Barbara Tomczyk, Gessel Attorneys at Law, Counsel for Claimant

Witness
Mr. Robert Lubański

Interpreter
Mr. Mikolaj Malanowski

62. The ICC Hearing Centre provided technical assistance during the Hearing. The Hearing was recorded.

63. On the same day, at the close of the Hearing, the Sole Arbitrator circulated by email to Claimant and Respondents, copying the Secretariat, the link to the recording of the Hearing, as well as the access passcode. The same was circulated to Respondents separately by DHL.[16]

64. On 15 September 2021, Claimant submitted its Statement of Costs (the **"C-SC"**) by email, copying the Sole Arbitrator, Respondents and the Secretariat.

65. On 3 October 2021, copying the Sole Arbitrator, Respondents and the Secretariat, Claimant specified that it had substituted payment for Respondents'

---

[16] *See*, Annex X to Final Award.

15

share of the advance on costs, and clarified that it requested that Respondents be ordered to reimburse it the total amount of the advance on costs.

66. On 20 October 2021, pursuant to Article 27 of the ICC Rules, the Sole Arbitrator closed the proceedings.

## IV. THE PARTIES' REQUESTS FOR RELIEF

67. In the SoC, Claimant formulated the following request for relief:

> "95. On the grounds set in the Request for Arbitration and this Statement of Claim, the Claimant respectfully requests that the Arbitral Tribunal orders the Respondents jointly and severally to pay to the Claimant the amount of USD 150,000.00 (one hundred fifty thousand U.S. dollar) as the recovery of the initial payment unduly withheld by the Respondents, along with applicable default interest (Article 481 § 1 PCC) from 17 December 2019 until the date of payment.
>
> 96. Additionally, the Claimant respectfully requests that the Arbitral Tribunal orders the Respondents to reimburse to the Claimant jointly and severally all costs incurred in connection with the arbitration proceedings, including the costs of the arbitration advanced to the Arbitral Tribunal as well as legal and other costs, the summary of which will be filed by the Claimant before closing of the proceedings."[17]

68. In its 6 August 2021 Submission, Claimant clarified its request for "applicable default interest" as follows:

> "(i) from 17 December 2019 to 17 March 2020 – along with an interest rate of 7% per annum;
> (ii) from 18 March 2020 to 8 April 2020 – along with an interest rate of 6,5% per annum;
> (iii) from 9 April 2020 to 28 May 2020 – along with an interest rate of 6% per annum;
> (iv) from 29 May 2020 to 6 August 2021 – along with an interest rate of 5,6% per annum;
> (v) from 7 August 2021 until the date of payment – along with a statutory interest for delay (Article 481 § 1 PCC)."[18]

69. On 3 October 2021, Claimant clarified its requests for relief as regards costs. Noting that it had substituted payment for Respondents' share of the advance on costs, Claimant requested that Respondents be ordered "to reimburse to the

---

[17] SoC, at 95, 96.
[18] Claimant's 6 August 2021 Submission, at 74.

Claimant the total amount of the advance on costs covered by the Claimant, amounting to OSD 26,000"[19].

70. The Answer, which was filed on 25 February 2021 by Mr. Williams, only contained Mr. Williams' arguments in support of the position that Claimant's claim lacked merit.[20] While the issue whether the Answer can be deemed to have been made by Respondent 2 alone, or by Respondent 2 on behalf of Respondents 1 and 2, or on behalf of all Respondents, will be addressed in Section VII below, the Sole Arbitrator considers, for purposes of this Section, that the relief requested in the Answer was for the dismissal of Claimant's claims on the merits.

71. On 27 April 2021, Mr. Williams wrote to the Sole Arbitrator as follows:

> "Dear Arbitrator,
> Please be advised that we duly and fully object to this arbitration. As established in the stettlement [sic] and release agreement executed by the foundations president submitted in our Answer on February 25. That this matter can NOT be arbitrated. Please review their [sic] signed settlement and release agreement.
>
> Thank you,
>
> Respectfully
> Lamar D Williams"[21]

72. As explained in more detail in Section VII below, the Sole Arbitrator understands Mr. Williams' email above to request the dismissal of Claimant's claims on the merits.

73. Before proceeding to address the various issues in dispute, the Sole Arbitrator will first set out the factual background of this case, as it results from the evidence in the record.

---

[19] Claimant's email to the Sole Arbitrator, 3 October 2021.
[20] For a detailed overview of these arguments, please see Section IX.B. below.
[21] Respondents' email to the Sole Arbitrator dated 27 April 2021.



## V. THE FACTUAL BACKGROUND OF THE DISPUTE

74.  The dispute before the Sole Arbitrator arises under the Appearance Engagement concluded between ABG and PFN and concerns ABG's alleged failure to reimburse PFN the USD 150,000 deposit paid under the contract.

### A. PFN

75.  PFN is a foundation incorporated and existing under the laws of Poland. PFN was established in 2016 by 17 Polish State-owned companies, with the aim to, *inter alia*, promote and protect the image of Poland and the Polish economy, and to popularize Polish science, history and culture abroad.[22]

76.  According to the publicly available information about PFN in the Register of associations, other social and professional organizations, foundations and independent public healthcare providers (the **"Foundations Register"**), PFN is represented by its Management Board. Moreover, authority to represent PFN rests with two members of the Management Board, acting jointly.[23]

### B. Respondents

77.  ABG was established on 22 March 2018 in the State of Delaware. ABG's purpose was "to engage in any lawful act or activity for which a limited liability company may be formed under the Limited Liability Company law of the State of Delaware".[24] Moreover, according to ABG's Certificate of Formation, "management of the limited liability company is vested in the member(s) in accordance with their ownership interests, unless this is varied by operating agreement".[25]

78.  ABG's Certificate of Formation did not mention who its members were. Moreover, the registered address of ABG was established at a registered agent, Registered Agents Legal Services, LLC. The Certificate of Formation also mentions that a Ms. LeAnn Austin formed the company "at the instruction of its [unidentified] member(s)".[26]

79.  It is not in dispute between the Parties that Mr. Lamar D. Williams and Mr. Mark Stevens were partners in ABG.[27] As the Sole Arbitrator explains in Section IX.C.4 below, the reference to "partners" in the Appearance Engagement should

---

[22] RfA, at 7.
[23] Excerpt from the register of associations, other community and professional organizations, foundations and public health care facilities regarding PFN (Exhibit C-5).
[24] Certificate of formation of ABG (Exhibit C-6).
[25] *Id.*
[26] *Id.*
[27] *See* also, Exhibit C-1, Appearance Engagement, which Mr. Williams and Mr. Stevens signed for ABG as "partner[s]".

be understood to mean that Respondents 2 and 3 were the members of ABG. Indeed, Mr. Williams and Mr. Stevens held themselves out to PFN to have the power to represent ABG vis-à-vis third parties and to conclude contracts in ABG's name. Moreover, the record as described in Sections V.C to V.E below shows that Mr. Williams managed the performance of the Appearance Engagement, as well as the settlement discussions with PFN. These are all managerial powers, within the meaning of ABG's Certificate of Formation. These elements show that, as regards ABG, Mr. Williams and Mr. Stevens were ABG's members (albeit they used the different and equivalent terminology of "partners"). This means that as members of ABG, Respondents 2 and 3 had the power to manage ABG in accordance with their respective ownership interests.

## C.    The Appearance Engagement

80.    According to the clarifications provided at the Hearing by Mr. Lubański, who was a member of PFN's Management Board from July 2018 until October 2019,[28] he traveled to New York City in 2018 in order to meet with various PR agencies for the purpose of setting up projects for the 100th anniversary of Poland's independence. This is how Mr. Lubański was put in touch with Mr. Lamar Williams, one of the representatives of Mr. Shaquille O'Neal. According to his written testimony, Mr. Lubański was "in contact mainly with Mr Lamar Williams"[29] when negotiating for Mr. O'Neal's appearance in Poland. At the Hearing, this was clarified to mean that the first time Mr. Lubański heard of ABG was when the first draft of the agreement was sent to PFN by the American side.

81.    Following negotiations, ABG and PFN entered into the Appearance Engagement.[30] The agreement was signed on 31 October 2018 by ABG, acting as Host/Producer, and on 2 November 2018 by PFN, acting as Contractor. The individuals who affixed their signatures on the Appearance Engagement were Mr. Robert Lubański and Mr. Filip Rdesiński, as representatives of PFN's Management Board, and Mr. Lamar D. Williams and Mr. Mark Stevens, as Partners of ABG.

82.    Under the Appearance Engagement, ABG committed to bring Mr. Shaquille O'Neal to Warsaw, Poland, in order to participate at events in honor of the 100th anniversary of Poland's independence. This included being physically present at the venue, being photographed with government officials and posting curated

---

[28] *See*, Hearing recording.
[29] Lubański WS, at II.
[30] The Appearance Agreement dated 30 October 2018 concluded between Polska Fundacja Narodowa and Athletes Benefits Group, LLC (Exhibit C-1).

19

social media posts.[31] The Appearance Engagement defined the Dates of Engagement as 30 November 2018 to 4 December 2018, and the Length of Engagement as 2 days (2 and 3 December 2018).[32]

83.  In exchange for Mr. O'Neal's presence at these events, the Contractor would pay a fee of USD 275,000 (the " **Contract Fee** " ) to the Host/Producer as follows:

> (i)  A deposit of USD 150,000 payable upon execution of the Appearance Engagement (the **"Deposit"**):
>
>> "[a]n initial payment/deposit of $150,000 will be paid by *CONTRACTOR* upon execution of this agreement for 'use of name and likeness of Shaquille O'Neal'. ANY MARKETING OR USE OF NAME, LIKENESS, OR SOCIAL MEDIA, POST, TWEETS, IN ASSOCIATIONWITH [sic] THIS EVENT, ETC . HAS CONSIDERABLE MOETARY [sic] VALUE TO OUR CLIENT/BRAND AND WILL RESULT IN PARTIAL FORFEITURE OF DEPOSIT"[33]
>
> (ii)  A fee of USD 75,000 to be paid seven days prior to Mr. O'Neal's travel:
>
>> "The amount of $75,00000USD [sic] is to be paid by *CONTRACTOR* for *"HOST'S* APPEARANCE" no later than . (7 days before date of travel)"[34]
>
> (iii)  A fee of USD 55,000, representing 20% of the total Contract Fee, to be paid upon delivery by ABG to PFN of certificates of residency for the year 2018.[35]

84.  PFN wired the Deposit to ABG on 2 November 2018, the day on which PFN also signed the Appearance Engagement.[36]

85.  The Appearance Engagement provided that PFN and ABG still had a number of outstanding items to agree on, in particular:

> (i)  the Appearance Engagement set out that PFN would cover the travel costs for Mr. Shaquille O'Neal and his guests by private jet. However, the concrete arrangements had to be agreed on between ABG and PFN:
>
>> "Host/Producer will make all travel arrangements in cooperation with the Contractor. The Contractor will cover the travel expenses,

---

[31] *See*, First Recital to Appearance Engagement (Exhibit C-1).
[32] *See*, Clauses 2 and 3 of the Appearance Engagement (Exhibit C-1).
[33] Clause 7 of the Appearance Engagement (Exhibit C-1).
[34] Clause 8 of the Appearance Engagement (Exhibit C-1).
[35] *Id.*
[36] Confirmation of wire transfer of 2 November 2018 (Exhibit C-2).

provided however that Host/Producer had obtained Contractor's prior written approval for each particular travel budget item."[37]

(ii)  The itinerary needed to be agreed on within 3 days of execution of the Appearance Engagement in order to "validate agreement":[38]

"Departing Hartfield Airport in Atlanta, GA on 30 November 2018 . Shaquille will join Robert Lubański and other officials for a series of events outlined in the provided itinerary starting, 2 December 2018 [sic] [...] (itinerary must follow agreement in 3days to validate agreement)"[39]

(iii)  Accommodation also needed to be agreed on within 3 days of execution of the Appearance Engagement in order to "validate agreement": [40]

"Housing (hotel TBD) will be provided on Sunday, 1 December 2018 for Shaquille and his guest. (Accommodations must be provided with in [sic] 3 days to validate agreement)"[41]

(iv)  All cost of travel had to be paid in full 10 days prior to departure and PFN had to provide a "reasonable"[42] travel budget immediately upon execution of the Appearance Engagement:

"All Cost of travel must be paid in full 10 days prior to departure. Contractor will provide a reasonable travel budget that will be funded immediately with signed agreement (Contractor must provide a form of payment for travel, HOST will be responsible for and reimbursed for any incidental expenses; it is understood, however, that CONTRACTOR will accommodate all reasonable needs of the HOST and therefor any such incidental expenses will have to be approved in written form by CONTRACTOR prior to incurring them)"[43]

## D.  PFN's and ABG's difficulties in implementing the Appearance Engagement

86.  The implementation of the Appearance Engagement ran into trouble shortly after execution.

87.  According to the written testimony of Mr. Lubański:

"After negotiation and signing of the contract by PFN and ABG, we passed on to the American side a proposed schedule of Mr

[37] Clause "The Polish National Foundation Obligation" of the Appearance Engagement (Exhibit C-1).
[38] Id.
[39] Id.
[40] Id.
[41] Id.
[42] Id.
[43] Id.



Shaquille O'Neal's Polish visit. The main sticking point was the question of travel and accommodation costs. We found the travel costs suggested by the American side (direct travel by private jet, with no stopovers) to be excessive. ABG, meanwhile, did not want to agree to other arrangements, such as first-class travel on commercial flights or travel by private jet, but with a stopover, which would have significantly decreased travel costs. For our part, the proposals and offers concerning travel were supervised by our president, Filip Rdesiński. We did not reach a compromise in this regard, and we did not proceed to further stages of contract performance. The American side had indicated that details of the schedule can be discussed only upon agreement of the mode of transport and of the accommodation details."[44]

88.  Mr. Lubański's testimony is largely corroborated by the documentary record on file. Email correspondence between ABG (acting through Mr. Lamar Williams) and PFN (acting through Mr. Robert Lubański) dating from November-December 2018 shows that the parties could not come to an agreement regarding travel and accommodation.

89.  Indeed, on 12 November 2018, Mr. Williams wrote to Mr. Lubański[45] that, due to delays on PFN's side in the performance of the Appearance Engagement, the dates reserved for Mr. Shaquille O'Neal's visit to Warsaw were no longer available. ABG argued that it had several reasons to void the Appearance Agreement: (i) the full Deposit had never been received; (ii) the Deposit was not received until 6 November 2018, 6 days after the execution of the Appearance Agreement; (iii) the travel budget was not received with the execution of the Appearance Agreement; and (iv) accommodation was not provided within three days of the agreement. However, since Mr. O'Neal was still willing to come to Warsaw at a later date, Mr. Williams requested that Mr. Lubański propose new dates for the visit and accept a return of the Deposit, reduced by 25%.[46]

90.  In his answer of 15 November 2018, Mr. Lubański stated that the Deposit was wired as per the Appearance Agreement, but that it took some time for it to arrive. He commented that the travel budget had not been received because ABG had failed to send PFN an invoice. Moreover, accommodation had not been provided because PFN had not received feedback regarding its proposed schedule. PFN also signaled its intent for the Appearance Agreement to be performed.[47]

91.  On 16 November 2018, Mr. Williams sent Mr. Lubański an invoice for Shaquille O'Neal's travel costs to Warsaw, reflecting an amount of USD 249,000 for private jet travel to Poland. Mr. Williams also noted that he may request part of

[44] Lubański WS, at III.
[45] Effectively, Mr. Williams wrote to a PR agency, asking it to forward a message to Mr. Lubański.
[46] E-mail correspondence of 12-15 November 2018 (Exhibit C-7).
[47] Id.

the remaining travel budget. Mr. Williams asked that PFN sign a release so that the initial agreement could be rewritten.[48] Mr. Lubański's answer arrived several weeks later, on 10 December 2018. Mr. Lubański stated that, due to the "very high cost of travel",[49] PFN had to verify whether the cost complied with internal and external rules. After Mr. Lubański confirmed that, after this verification, PFN could cover the cost and would do so on 12 December. Finally, he added that PFN did not see a need to sign a release, as the Appearance Agreement was still valid, but needed an annex for the new date.[50]

92. In his answer of 13 December 2018, Mr. Williams reiterated the position that the Appearance Agreement was void after PFN had failed to fulfill its contractual obligations in a timely manner. He added that, despite agreeing on the phone that PFN would send the travel budget immediately after receiving an invoice, 25 days had passed since the transmission of the invoice without any funds being sent. Mr. Williams insisted that the new agreement have firm dates which, if not met, would result in the Deposit being forfeited in its entirety.[51]

93. Subsequent to these exchanges, in December 2018-January 2019, Mr. Williams and Mr. Lubański discussed potential dates for Mr. O'Neal's visit to Warsaw and a potential meeting in person between them.[52] However, as shown by an email exchange dated 24 January 2019, Mr. Williams and Mr. Lubański soon realized that finding suitable dates would not work and arrangements for the return of the Deposit had to be worked out. In particular, in answer to an email from Mr. Lubański inquiring about a meeting in person with Mr. Williams, Mr. Williams wrote to a Mr. Rubenstein from Rubenstein PR, saying that he would prefer to return the Deposit. That same day, Mr. Williams communicated the same to Mr. Lubański.[53]

94. Mr. Lubański reacted on 26 February 2019, inquiring whether ABG and PFN should continue their efforts to find new dates for Mr. O'Neal's visit or agree on the return of the Deposit.[54]

## E.    PFN and ABG discuss a potential amicable settlement

95. According to the written testimony of Mr. Lubański, after failing to agree on new dates for Mr. O'Neal's visit, he commenced discussions with Mr. Williams in order to potentially find an agreement for the return of the Deposit:

---

[48] E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8).
[49] Id.
[50] Id.
[51] Id.
[52] Id.; E-mail correspondence of 24 January – 26 February 2019 (Exhibit C-9).
[53] E-mail correspondence of 24 January – 26 February 2019 (Exhibit C-9).
[54] Id.



> "After the parties' failure to agree upon the schedule and the travel and accommodation costs, and there was no chance of realization of the contract, I initiated talks with Mr Lamar Williams concerning return of the remitted deposit. The American side initially adopted the position that the deposit should not be subject to return by virtue of the very fact that Mr Shaquille O'Neal had reserved time in his calendar. We conducted an exchange of e-mails, and we spoke on the telephone many times. At that time, the offer for amicable settlement of the dispute was for return of 50% of the deposit by ABG. I informed the President of PFN's Management Board, Filip Rdesiński, of this issue, and he gave his approval."[55]

96. In March 2019, as Mr. Lubański was travelling around the United States, he and Mr. Williams agreed to take part in a telephone conference, ostensibly in order to discuss pending matters.[56]

97. In April 2019, Mr. Lubański and Mr. Williams met in New York City.

98. The Parties offer differing accounts of what happened during this meeting. According to Claimant, and as testified by Mr. Lubański:

> "In April 2019, I met with Mr Lamar Williams at the Guggenheim Museum during the gala first screening of 'Poland: The Royal Tour', with the Polish prime minister Mateusz Morawiecki among the attendees. Mr Lamar Williams was one of the guests. We scope [sic] during the gala, and Mr Williams asked me to meet him the next day in order to discuss settlement of the contract between PFN and ABG. We discussed reaching a settlement and accounting for the advance paid by PFN before our meeting at the film gala, during the meeting this subject came up again.
>
> [...]
>
> The draft settlement was drawn up by the American side, and it was presented to me the day after the film gala, during the meeting requested by Lamar Williams. I perused this draft. I remember that its terms were in line with what had previously been agreed by telephone and by e-mail and included return of the 50% deposit by ABG in amicable settlement of the dispute.
>
> [...]
>
> Having perused the draft settlement, I affixed my initials at the end of the document to signify that I have read the text and acknowledged these terms. It was not my intention to assume any obligations on behalf of PFN. My thinking was that, in order for the agreement to be validly executed, in accordance with the rules of PFN's representation, it must be signed by two members of the

[55] Lubański WS, at V.
[56] E-mail correspondence of 26-27 March 2019 (Exhibit C-17).

24

management board. In light of the fact that the previous contract with ABG concerning attendance by Shaquille O'Neal had been signed by a two-person representation, I took it for granted that the American side is familiar with the terms of representation of PFN."[57]

99.    According to Mr. Williams:

"On April 17th 2019, I met with Mr. Robert Lubanski, Vice president and Officer of the corporation while he was in New York City. He willfully and expressly executed 2copies of the forfeiture of deposit and the enclosed 'settlement release confidentiality agreement.' We both left with an executed agreement.
The matter, thusly, was officially closed."[58]

100.    The Settlement and Release Agreement referenced in the Answer is Exhibit R-2 to these proceedings. Section 3 of Exhibit R-2 provides that "Host and contractor agree that contractors [sic] payment of $ 149,000. Will be f orf eited [sic]."

101.    The Parties dispute the authenticity of Exhibit R-2. This issue will be addressed in Section VIII below.

102.    In other words, while Claimant alleges that Mr. Williams and Mr. Lubanski discussed and agreed during the meeting in April 2019 that 50% of the Deposit would be returned, Mr. Williams' and ABG's position[59] in this arbitration is that an agreement was reached, pursuant to which ABG would retain the entirety of the Deposit.

103.    The documentary record in these proceedings shows that, sometime in August 2019, PFN and ABG resumed their discussions concerning the return of the Deposit.

104.    On 14 August 2019, Mr. Lubanski wrote to Mr. Williams, saying that there had been changes to PFN's Management Board, and the new Board was not in favor of the solution discussed in April 2019. Instead, the new Board favored a solution where ABG would return USD 100,000 to PFN. Mr. Lubanski added that, since PFN was only bound through the signature of two Board members, PFN could not proceed with the draft agreement discussed in April 2019 as that draft only had his signature.[60]

---

[57] Lubanski WS, at VI, VII, IX.
[58] Answer, p. 1.
[59] See, Section VII.C.3 below setting out why the Answer was filed on behalf of both Respondent 1 and Respondent 2.
[60] E-mail correspondence of 14-22 August 2019 (Exhibit C-16).

25

105. On 22 August 2019, Mr. Williams answered Mr. Lubański, saying that he could no longer amend the agreement. Mr. Williams took the view that Mr. Lubański had executed the agreement on 17 April 2019, and added that "we proceeded with your authorization as the settlement stated and returned funds on 4/23//19".[61]

106. In September 2019, as part of these discussions and in order to assist Mr. Williams to send proof of the return of funds, Mr. Lubański transmitted to Mr. Williams the wire details for PFN. While restating that "[w]e returned funds in April of 2018 [sic]",[62] Mr. Williams requested the transaction number from 2018. After receiving this information however, Mr. Williams alleged that ABG had switched banks and that it was difficult to retrieve information on its previous bank account (which had been closed), as that account was under audit. Mr. Williams promised that the requested information would be "coming soon".[63]

107. No further information appears to have been sent by Mr. Williams and, on 15 October 2019, PFN wrote to ABG, arguing that ABG had not performed the Appearance Engagement and requesting the immediate return of the Deposit. PFN stated that, lacking payment, it would commence legal proceedings. PFN added that ABG had falsely reassured Mr. Lubański repeatedly that the Deposit had been returned to PFN's bank account.[64] PFN reiterated its request on 9 December 2019.[65]

108. When, on 9 December 2019, PFN reiterated its request for payment, Mr. Williams responded that the Appearance Engagement had been voided on 19 November 2018 due to PFN's failure to perform its obligations in a timely manner. For this reason, on 17 April 2019, ABG and PFN signed a "settlement release confidentiality agreement",[66] whereby PFN agreed to the forfeiture of the Deposit by ABG.[67] In its answer, PFN requested a scanned copy of this agreement.[68]

109. On 26 November 2020, PFN reiterated its request that ABG return the Deposit.[69] Mr. Williams again took the position that the Appearance Engagement had been voided on 19 November 2018 and that Mr. Lubański had signed a settlement agreement in April 2019 agreeing to the forfeiture of the Deposit by ABG.[70]

---

[61] Id.
[62] E-mail correspondence of 18 September – 7 October 2019 (Exhibit C-13).
[63] Id.
[64] PFN's letter of 15 October 2019 (Exhibit C-3).
[65] E-mail correspondence of 9-10 December 2019 (Exhibit C-14).
[66] Id.
[67] Id.
[68] Id.
[69] E-mail correspondence of 26-28 November 2020 (Exhibit C-15).
[70] Id.



PFN answered that it had never seen such an agreement and that Mr. Lubański did not have the power of attorney to bind PFN through his signature alone. PFN therefore requested a copy of the agreement referred to by Mr. Williams.[71]

## VI. PRELIMINARY ISSUE: NOTIFICATIONS ISSUED TO RESPONDENTS AND RESPONDENTS' (NON-)PARTICIPATION IN THESE PROCEEDINGS

110. Prior to examining the issues in dispute, the Sole Arbitrator considers that it is useful to provide some clarifications regarding the notifications issued to Respondents in these proceedings and Respondents' (non-)participation in these proceedings.

111. The Sole Arbitrator recalls that Article 3.1 of the ICC Rules provides as follows:

> "All notifications or communications from the Secretariat and the arbitral tribunal shall be made to the last address of the party or its representative for whom the same are intended, as notified either by the party in question or by the other party. Such notification or communication may be made by delivery against receipt, registered post, courier, email, or any other means of telecommunication that provides a record of the sending thereof." [emphasis added]

112. Moreover, Article 6.8 of the ICC Rules provides that:

> "If any of the parties refuses or fails to take part in the arbitration or any stage thereof, the arbitration shall proceed notwithstanding such refusal or failure."

113. As comprehensively set out in Section III above, Respondents 1 and 2 were notified of these arbitration proceedings and were kept informed of their progression both by email and by courier (DHL). The email addresses to which correspondence was sent to Respondents 1 and 2 were: lamardwilliams@me.com, lamardwilliams@aol.com, and ldw@tantongrpcpas.com.[72] In particular, the email addresses lamardwilliams@me.com and lamardwilliams@aol.com were used by Mr. Williams for ABG in November-December 2018, when the parties were seeking to perform the Appearance Engagement and to find dates for a new agreement,[73] and in 2019 when the parties were discussing a potential settlement and the return of the Deposit.[74] More importantly, the email address



---

[71] Id.
[72] At some point during the proceedings, the email address ldw@tantongrpcpas.com stopped working.
[73] E-mail correspondence of 12-15 November 2018 (Exhibit C-7); E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8).
[74] E-mail correspondence of 24 January – 26 February 2019 (Exhibit C-9); E-mail correspondence of 18 September 7 October 2019 (Exhibit C-13); E-mail correspondence of 9-10 December 2019 (Exhibit C-14).



lamardwilliams@me.com is the email address from which Respondents 1 and 2 sent the Answer and the email to the Sole Arbitrator dated 27 April 2021.[75] This shows that Respondents 1 and 2 were duly notified of these arbitration proceedings and were fully aware that they were entitled to participate and set forth their positions. That Respondents 1 and 2 chose not to participate was entirely their choice and their right to do so. However, pursuant to 6.8 of the ICC Rules, the arbitration proceedings could, and in fact did, continue.

114. As regards Respondent 3, notifications were sent by email to the email address markstevensentinc@yahoo.com, as well as by courier (DHL) to the addresses indicated by Claimant. While email delivery failed, courier delivery to the address 3286 DeShong Drive, Stone Mountain, Georgia 30087, United States was accepted.[76] Respondent 3 was thus in a position to participate in these proceedings and to set forth his views regarding the issues in dispute. However, since the Sole Arbitrator has found that she does not have jurisdiction over Respondent 3, the Sole Arbitrator does not consider it necessary to examine this matter in more detail than already set out in Section III above.

## VII. JURISDICTION

### A. Claimant's position

115. Claimant argues that the Sole Arbitrator has jurisdiction over Respondents 1, 2 and 3 for the reasons set out below.

116. *First*, Claimant contends that ABG is a party to the Appearance Engagement and has failed to perform its obligations. Claimant's claim against ABG arises directly under the Appearance Engagement, which contains the below Arbitration Agreement:

> "Final Provisions
>
> Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration will be Warsaw, Poland and the language of

---

correspondence of 26-28 November 2020 (Exhibit C-15); E-mail correspondence of 14-22 August 2019 (Exhibit C-16); E-mail correspondence of 26-27 March 2019 (Exhibit C-17).
[75] As shown in Section VII.C.3 below, the Sole Arbitrator has found that the Answer and Mr. Williams' email to the Sole Arbitrator dated 27 April 2021 were sent on behalf of both Respondent 1 and Respondent 2.
[76] *See*, Annexes IV to X to the Final Award.

117. *Second*, as regards Respondents 2 and 3, Claimant's position has changed in between the filing of the SoC and its 6 August 2021 Submission.

118. In the SoC, in the subsection titled "Arbitrability of the Dispute with regard to Respondent 2 and Respondent 3", Claimant argued that Respondents 2 and 3 were bound by the Arbitration Agreement as a result of the principle of piercing the corporate veil:

> "The present dispute falls in the scope of arbitration clause is it concerns PFN's claims under the Contract. The principle of piercing the corporate veil as described in point III.4.1 above applies as a basis for extending the subjective scope of the arbitration clause. On this level, the concept of piercing the corporate veil allows to bind with the effects of an arbitration clause an entity which, although formally not a signatory, becomes a party in arbitration proceedings as it controlled and directed the company's activities undertaken under a contract containing an arbitration clause [...] Therefore, Respondent 2 and Respondent 3 are bound by the arbitration clause included in the Contract on the same basis as ABG."[78]

119. In its 6 August 2021 Submission, Claimant's main position on jurisdiction changed, and Claimant is now arguing that Respondents 2 and 3 are parties to the Arbitration Agreement on account of their conduct in these proceedings:

> "37. Firstly, it must be noted that by their actions in this proceedings [sic], both Mr. Lamar D. Williams and Mr. Mark Stevens confirmed that they are parties to the arbitration clause contained in the Contract. Claimant's position in this regard does not depend on the possibility of extending the scope of an arbitration clause on the basis of piercing the corporate veil doctrine. Both Respondent 2 and Respondent 3 are direct parties to the arbitration agreement concluded with PFN and they shall be bound by the arbitration court's jurisdiction in the present case.
>
> 38. Neither Respondent 2 nor Respondent 3 question the jurisdiction of the arbitration court in this [sic] proceedings."[79]

120. Claimant maintained that its arguments on whether the Arbitration Agreement may be extended to Respondents 2 and 3 is presented for clarification purposes:

> "[...] [T]he argumentation presented below, addressing the Sole Arbitrator's question of whether piercing the corporate veil doctrine

---

[77] The Appearance Agreement dated 30 October 2018 concluded between Polska Fundacja Narodowa and Athlete Benefits Group, LLC (Exhibit C-1).
[78] SoC, at 87.
[79] Claimant's 6 August 2021 Submission, at 37, 38.

> may serve as a mean [sic] of extending the arbitration agreement scope under Polish law, is presented <u>only</u> for the sake of clarity. Respondent 2 and Respondent 3 are in any case bound with the arbitration clause included in the Contract."[80] [emphasis added]

121. While Claimant has stated that its position on piercing the corporate veil as a means of determining jurisdiction over Respondents 2 and 3 is presented "only" for the sake of clarity, Claimant has also dedicated four pages of its 6 August 2021 Submission to answering the Sole Arbitrator's questions on the application of the doctrine. If Claimant had abandoned the argument in its entirety, it would have been reasonable to assume that Claimant would have said so expressly and would have clarified that no further argument on this point needed to be presented. However, Claimant has neither expressly abandoned its veil piercing jurisdictional argument, nor has it declined to offer additional clarifications.

122. For these reasons, the Sole Arbitrator considers that Claimant has not abandoned the veil piercing jurisdictional argument, but has maintained it *in the alternative* to its main position, which is that Respondents 2 and 3 are parties to the Arbitration Agreement as a result of their conduct in these proceedings. The below summary of Claimant's jurisdictional arguments reflects this understanding.

## 1. Respondents 2 and 3 are parties to the Arbitration Agreement as a result of their conduct in these proceedings

123. Claimant argues that, by failing to object in a timely manner to the Sole Arbitrator's jurisdiction, Respondents 2 and 3 have waived their right to do so and have implicitly accepted that the Sole Arbitrator has jurisdiction over them under the Arbitration Agreement.[81]

124. In particular, Claimant submits that the ICC Rules do not set a deadline until which a party may object to the jurisdiction of an arbitral tribunal. Nor is there any particular agreement between the Parties on this specific issue. For this reason, Article 1180 § 2 of the Polish Code of Civil Procedure (the **"PCCP"**) applies. This legal text provides that an objection to a tribunal's jurisdiction must be raised no later than in the answer to the statement of claim:[82]

> "Art. 1180 § 1. An arbitration court may rule on its jurisdiction, including on the existence, validity or effect of an arbitration clause. Invalidity or expiry of the basic agreement which includes an arbitration clause does not in itself mean invalidity or expiry of the clause.

[80] *Id.*, at 49.
[81] *Id*, at 37, 38.
[82] *Id*, at 39-41.



§ 2. <u>An allegation that an arbitration court does not have jurisdiction may be raised at the latest in an answer to a complaint or within another time limit determined by the parties</u>, unless the party was not aware of and could not have learned of the grounds for such claim before the end of that time limit despite due diligence, or the grounds for such claim arose after that time limit. In both cases, an arbitration court may hear a claim raised after the determined time limit if the arbitration court considers the delay to be justified. The fact that an arbitrator was appointed by or with the participation of a party is notwithstanding the party's right to raise such claim. A claim that a request made by the adverse party in the course of proceedings is beyond the subject-matter and scope of an arbitration clause should be raised as soon as such request is made. An arbitration court may hear a claim raised after that time limit if the arbitration court considers the delay to be justified."[83] [emphasis added]

125. Claimant argues that Respondents 2 and 3 have failed to object to the Secretariat's letter of 16 March 2021, which informed the Parties that, in the Secretariat's understanding, the Answer had been submitted on behalf of all Respondents in these proceedings. Moreover, in the Answer, Respondents only referred to the merits of the case, but did not, either directly or indirectly, question the jurisdiction of the Sole Arbitrator. For these reasons, Claimant considers that Respondents have failed to object to the Sole Arbitrator's jurisdiction within the deadline set out in Article 1180 § 2 PCCP.[84]

126. Claimant considers that, by failing to raise jurisdictional objections in their Answer, Respondents' right to contest the Sole Arbitrator's jurisdiction has expired.[85]

127. Claimant adds that, in Mr. Lamar Williams' email to the Sole Arbitrator dated 27 April 2021, no jurisdictional objection was raised either. Instead, the email only contained arguments pertaining to the merits of Claimant's claims. Claimant considers that Mr. Williams' statement that "this matter cannot be arbitrated"[86] should be understood in the context in which it was placed, namely, Mr. Williams asking the Sole Arbitrator to review Exhibit R-2. In other words, it was an argument going to the merits of the case. Claimant also considers that Mr. Williams' statement "we duly and fully object"[87] confirms that he was acting in these proceedings on behalf of all Respondents.[88]

128. In any event, even if Mr. Williams' email above were interpreted to include a jurisdictional objection, this would not make a difference as, according to

---

[83] Claimant's 6 August 2021 Submission, at 39.
[84] Claimant's 6 August 2021 Submission, at 42-44.
[85] Id., at 45.
[86] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the Sole Arbitrator, 27 April 2021.
[87] Id.
[88] Claimant's 6 August 2021 Submission, at 46, 47.

Claimant, by that time the deadline for raising jurisdictional objections had expired.[89]

## 2. The Sole Arbitrator has jurisdiction over Respondents 2 and 3 as a result of the veil piercing doctrine

129.   As explained above, the Sole Arbitrator considers that Claimant is putting forth this argument on an alternative basis only.

130.   Claimant argues that the Arbitration Agreement is governed by Polish law as the law of the place of the arbitration. In this regard, Claimant contends that the Parties agreed in the Appearance Engagement that the contract would be governed by Polish law but did not specifically choose the law that would apply to the Arbitration Agreement itself. As a result, Article 39 of the Polish Private International Law Act (the **"PIL"**) applies.[90] This conclusion is also in line with Article V.1.a of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the **"New York Convention"**).[91]

131.   Claimant submits that Polish law applies to the issue of extending the Arbitration Agreement to non-signatories.

132.   The legal basis for applying the doctrine of piercing the corporate veil under Polish law is Article 5 of the Polish Civil Code (the **"PCC"**).[92] This legal provision allows courts and tribunals to refuse legal protection to an entity that abuses its rights, exercising them contrary to the principles of "community coexistence" and their "social and economic purpose". Referring to the jurisprudence of the Polish Supreme Court,[93] Claimant maintains that Article 5 PCC applies to every right and is not subject to any exceptions. This provision is based on the same principles of good faith, fairness and non-abuse of rights that underpin the concept of piercing the corporate veil in other European legal systems and in international law. Polish doctrine specifically highlights that "all users of the legal forms of companies [...] must not rely excessively on the formal separateness of companies as protection against the personal

---

[89] *Id..*, at 48.
[90] Article 39 of the PIL provides:
"1. The arbitration agreement shall be subject to the law chosen by the parties.
2. In the absence of the choice of law by the parties, the arbitration agreement shall be subject to the law of the country in which the agreed place of arbitration is situated. Where the latter was not agreed, the arbitration agreement shall be subject to the law applicable to the legal relationship to which the given dispute relates; it shall be sufficient, however, that the arbitration agreement be effective under the law of the country in which the arbitration takes place or in which the arbitral tribunal issued the award" (Claimant's 6 August 2021 Submission, at 27).
[91] Claimant's 6 August 2021 Submission, at 27-31.
[92] Article 5 PCC reads: "One may not use his right in a manner which would be contrary to its social and economic purpose or to the principles of community coexistence. Any such act or refraining from acting by the entitled person shall not be treated as the exercise of the right and shall not be protected" (Claimant's 6 August 2021 Submission, at 52).
[93] Judgment of the Polish Supreme Court dated 24 January 2007, No. III CZP 117/06 (Exhibit CL-25)

consequences of acting contrary to the principles of community coexistence to the detriment of third parties".[94]

133. Claimant submits that, under Polish law, three conditions must be met in order for the doctrine of piercing the corporate veil to apply: (i) the parent company exercises total control over the subsidiary; (ii) the existence of independent contractual relations between the parent company and the subsidiary; and (iii) the abuse by the parent company of the legal independence of the subsidiary, which must be qualified as an abuse of right. In a judgment of 17 March 2015, the Polish Supreme Court qualified the abuse of a separate legal personality as an abuse of rights under Article 5 PCC.[95] Typical examples identified by the Polish Supreme Court that could justify piercing the corporate veil include the so-called mixing of spheres, where assets of different entities are mixed in such a way that a third party is not able to establish to whom they belong, or where corporate officers serve on corporate bodies of different entities.[96]

134. Claimant maintains that, in all of these instances, it is necessary to establish that there has been an abuse of rights by a defendant company that intends to escape from an arbitral tribunal's jurisdiction by relying on the fact that it has not signed the arbitration agreement.[97]

135. According to Claimant, this is the case here.

136. Mr. Williams and Mr. Stevens created ABG, which is "an artificial vehicle",[98] with the aim to enter into relations with third parties and avoid liability towards them. This is confirmed by ABG's records held by the Delaware Secretary of State, which show that Respondent 1 was established shortly before the conclusion of the Appearance Engagement (i.e., in March 2018) and already in 2019 it fell out of good standing, owing back taxes and penalties.[99] The same records also show that ABG's formation certificate is the only document on file, with ABG having failed to file any annual reports. The information included in ABG's certificate of formation is very limited and vague as to the company's activity.[100] Claimant adds that it is impossible to verify the company's seat. The physical address of ABG was not mentioned in the Appearance Engagement and, despite Claimant's efforts in February 2019 to learn of this address from Respondents' representatives, this was not possible.[101] All correspondence between ABG and PFN was exchanged by email, with Mr. Williams using email

[94] Claimant's 6 August 2021 Submission, at 33, 34, 50-55, quoting from A.W. Wiśniewski, *The Law on Companies. A Practical Handbook. General Information. The Unlimited Partnership, vol. I*, Warsaw 1998, p. 58 (Exhibit CL-26).
[95] Judgment of the Polish Supreme Court dated 17 March 2015, No. I PK 179/14 (Exhibit CL-29).
[96] Claimant's 6 August 2021 Submission, at 56-58, 63-68.
[97] *Id.*, at 60.
[98] *Id.*, at 59.
[99] Printout from the website of Secretary of State regarding ABG (Exhibit C-18).
[100] Certificate of formation of ABG (Exhibit C-6).
[101] E-mail correspondence of 26 February 2019 (Exhibit C-10).



domains not connected with ABG. Claimant made efforts to discover Respondent 1's address on its own, but the address that was identified was proved to be incorrect as ABG did not accept correspondence at that location. All these circumstances tend to show that, with the exception of having a name, ABG does not exist at all and has not had any activity since being established.[102]

137. Finally, Claimant argues that, even if the Sole Arbitrator were to consider that the law governing the personal status of the non-signatories were to apply (*i.e.*, United States law), the solution would be the same as US jurisprudence widely accepts that arbitration agreements may be extended to non-signatories by virtue of piercing the corporate veil.[103]

## B. Respondents' position

138. Respondents' only submissions in these proceedings were the Answer, dated 25 February 2021, and Mr. Williams' email to the Sole Arbitrator, dated 27 April 2021. These submissions will be analyzed in detail, including as regards to their authorship and scope, in Section VII.C below. For purposes of the present section, the Sole Arbitrator simply renders these submissions in full.

139. The Answer reads as follows:

> "ICC Case: 25952 HBH Polish National Foundation
>
> All,
>
> I am not an attorney and am writing to respond to the matter referenced above involving the Polish National foundation and their dispute.
>
> Please advise that Robert Lubanski, who was an officer of the corporation and the Polish National Foundation, due to their delay to execute our agreement and fulfill their contractual obligations in a timely manner for Mr. O'Neal to appear in Warsaw Poland, their initial deposit was forfeited as stated in the enclosed settlement and release agreement.
>
> In an effort to accommodate the Polish National Foundation, Mr. O'Neal had passed on several opportunities during our 45 day negotiation of this simple agreement. We reminded all parties several times that in order to get Mr. O'Neal to make an international trip and appearance on such short notice that we would need to execute this agreement swiftly and quickly. They were fully aware of the consequences at the very onset of our relationship.

[102] SoC, at 74-80; Claimant's 6 August 2021 Submission, at 59.
[103] Claimant's 6 August 2021 Submission, at 35; SoC, at 89.



After the Polish National Foundation failed to meet our original dates of October 6-11, 2018, we, again, stressed the urgency of fulfilling the contractual obligations and immediately securing new dates.

Our client was still willing to come to Warsaw at a later date.

We had several reasons to void the contract based on our agreement: 1) the full deposit was never received, 2) the deposit was not received until 11/06/2018 (6 days after contract was executed 10/31/2018),where the contract specifically said at time of execution. 3) the travel budget was never received nor acknowledged with the execution of the agreement and 4) no accommodations were provided within the agreement.

Our client, nevertheless, was still willing to make his appearance in Warsaw for the Polish National Foundation. The foundation, unfortunately, **never** fulfilled their contractual obligation. After 45 days and our client passing on several other lucrative opportunities and loss of revenue, we were left no choice but to pay him for his loss in opportunity cost and time and to assert contractual rights both parties were bound by.

On April 17th 2019, I met with Mr. Robert Lubanski, Vice president and Officer of the corporation while he was in New York City. He willfully and expressly executed 2copies of the forfeiture of deposit and the enclosed "settlement release confidentiality agreement." We both left with an executed agreement.
The matter, thusly, was officially closed.

I include:
      exhibits A emails and correspondence
      exhibits B settlement and release agreement

Respectfully,
Lamar D Williams"

140.    Mr. Williams' email to the Sole Arbitrator dated 27 April 2021 reads as follows:

"Dear Arbitrator,
Please be advised that we duly and fully object to this arbitration. As established in the stettlement and release agreement executed by the foundations president submitted in our Answer on February 25. That this matter can NOT be arbitrated. Please review their signed settlement and release agreement.

Thank you,

Respectfully
Lamar D Williams"



## C. The Sole Arbitrator's decision

141. For the reasons set out below, the Sole Arbitrator finds that she has jurisdiction over Respondents 1 and 2 but does not have jurisdiction over Respondent 3.

## 1. The Sole Arbitrator's jurisdiction over Respondent 1

142. ABG is a party to the Appearance Engagement, which contains the below Arbitration Agreement:

> "Final Provisions
>
> Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration will be Warsaw, Poland and the language of arbitration will be English."[104]

143. Claimant's claims against ABG arise out of the Appearance Engagement. The Sole Arbitrator thus has jurisdiction over ABG.

144. Before examining whether she has jurisdiction over Respondents 2 and 3, the Sole Arbitrator will first determine whether Claimant's reliance upon Respondents 2 and 3's failure to object to the Sole Arbitrator's jurisdiction was made in a timely manner.

## 2. Whether Claimant's reliance upon an alleged lack of objection to jurisdiction by Respondents 2 and 3 was made in a timely manner

145. As noted in Section VII.A.1 above, Claimant changed its main argument in support of the Sole Arbitrator's jurisdiction over Respondents 2 and 3 during these proceedings. While in the SoC, Claimant invoked the doctrine of piercing the corporate veil, in its 6 August 2021 Submission, Claimant argued instead that, by failing to object to the Sole Arbitrator's jurisdiction in their Answer, Respondents 2 and 3 consented to be bound by the Arbitration Agreement (the **"Waiver Argument"**).

146. The question that arises is whether the Waiver Argument was made in a timely manner.

---

[104] The Appearance Agreement dated 30 October 2018 concluded between Polska Fundacja Narodowa [...] Athlete Benefits Group, LLC (Exhibit C-1).

36

147. It is beyond doubt that Claimant could have, and should have, raised the Waiver Argument in its SoC. Indeed, the Answer was filed on 25 February 2021, while the SoC dates from 7 June 2021. Claimant thus had ample time at its disposal to examine and fully understand the Answer and its implications. However, Claimant only raised its Waiver Arguments in its 6 August 2021 Submission.

148. The Sole Arbitrator notes that Respondents 1 and 2 did not object to the change in Claimant's position on jurisdiction. Claimant's 6 August 2021 Submission was communicated to Respondents. In particular, the submission was sent to the email address lamardwilliams@me.com, which is the email address used by ABG/Mr. Williams for purposes of the Appearance Engagement, the email address from which the Answer was submitted in these proceedings, and the email address from which Mr. Williams' message to the Sole Arbitrator dated 27 April 2021 was sent.[105] In other words, Claimant's 6 August 2021 Submission was notified to Respondents 1 and 2's working email address, and, pursuant to Article 3.1 of the ICC Rules, this notification was valid.

149. Article 40 of the ICC Rules (Waiver) provides as follows:

> "A party which proceeds with the arbitration without raising its objection to a failure to comply with any provision of the Rules, or of any other rules applicable to the proceedings, any direction given by the arbitral tribunal, or any requirement under the arbitration agreement relating to the constitution of the arbitral tribunal or the conduct of the proceedings, shall be deemed to have waived its right to object."

150. Having received Claimant's 6 August 2021 Submission, Respondents 1 and 2 did not react in any way. Respondents 1 and 2 did not raise any concerns with respect to the timeliness of the Waiver Argument, did not request an opportunity to address the Waiver Argument in a supplementary written submission or at the Hearing. Thus, according to Article 40 of the ICC Rules, Respondents 1 and 2 are deemed to have waived their right to object to the timeliness of the Waiver Argument, which thus duly forms part of the framework of these proceedings.

## 3. Whether the Answer and Mr. Williams' email of 27 April 2021 were submitted on behalf of all Respondents

151. Prior to deciding whether Respondents 2 and 3 can be deemed to have waived their right to object to the Sole Arbitrator's jurisdiction, the Sole Arbitrator first needs to determine: (i) whether the Answer was submitted by all Respondents or only some of the Respondents; and (ii) whether Mr. Williams' email to the Sole

---

[105] Claimant's 6 August 2021 Submission was also sent to Respondent 3's email address markstevensentinc@yahoo.com. However, this is not a functioning email address. Nevertheless, because the Sole Arbitrator has reached the conclusion that jurisdiction has not been established with respect to Respondent 3, the Sole Arbitrator does not refer to Respondent 3's lack of objection in this analysis.

Arbitrator was submitted on behalf of all Respondents or only some of the Respondents.

*(i)    The Answer*

152.    Claimant relies on the Secretariat's Letter to the Parties dated 16 March 2021, and on Respondents' lack of objection thereto, in order to argue that the Answer was submitted on behalf of all Respondents.

153.    The Sole Arbitrator is not persuaded.

154.    Pursuant to Article 6 of the ICC Rules, with the exception of situations where the ICC Court decides that a case cannot proceed (Article 6.6), the decision whether jurisdiction exists is taken by the arbitral tribunal. In doing so, the arbitral tribunal fully examines all factual and legal elements that are pertinent to its jurisdictional analysis. Moreover, the arbitral tribunal is the only entity empowered to make such decisions with finality. Thus, the Sole Arbitrator retains the power to determine whether the Answer was submitted by all of the Respondents or only some of them, and to do so with finality. For this reason, the Sole Arbitrator is not persuaded that, by failing to object to a letter from the Secretariat, Respondents have implicitly waived the right to challenge the qualification attached to the Answer.

155.    Turning to the question whether the Answer was submitted by all Respondents or only some of the Respondents, the Sole Arbitrator notes that Mr. Williams' covering email to the Answer appeared to suggest that he was acting in his personal capacity:

> "Dear Madame, Please find the enclosed attachment as <u>my</u> response to the request for arbitration…"[106] [emphasis added]

156.    The Answer itself begins with "I am not an attorney" and is only signed by Mr. Williams.

157.    These elements unmistakably show that the Answer was filed *at least on behalf of Mr. Williams.* Indeed, the use of the singular ("my response", "I am not an attorney") suggests that Mr. Williams was speaking for himself. In a context where Mr. Williams *personally* is a respondent in these proceedings *in addition to ABG,* his choice of wording has consequences. The Sole Arbitrator is persuaded that such a distinction (*i.e.*, Mr. Williams being a party to these proceedings in addition to ABG) should have been straightforward to grasp, even for a person who is not a legal professional. This means that Mr. Williams

---

[106] Mr. Williams' email to the Secretariat, dated 25 February 2021.

could have been aware or, at the very least, should have been aware, that, by using the singular "my response", "I am not an attorney", he would be deemed to (also) be speaking in a personal capacity. In effect, had Mr. Williams intended for the Answer to have been submitted on behalf of ABG only, he would have known to use different wording in the covering email (such as, for instance, "Please find the enclosed attachment as ABG's response..."). The fact that he did not is significant and shows that the Answer was submitted *also* in his personal capacity.

158. This is sufficient for purposes of the present analysis which pertains to Mr. Williams' alleged lack of objection to the Sole Arbitrator's jurisdiction. However, for completeness, the Sole Arbitrator will explain below why the Answer was also submitted on behalf of ABG.

159. As mentioned in Sections V.B and IX.C.4, Mr. Williams was a member of ABG and, in this capacity, he managed the company in proportion to his ownership interest. He also held himself out as having the authority to represent ABG vis-à-vis third parties. The Answer was submitted by Mr. Williams from the email address lamardwilliams@me.com, which is the email address he used throughout the Appearance Engagement in order to manage the performance of the contract for ABG, to set forth ABG's position regarding the performance of the contract, its amendment and potential settlement solutions. Moreover, the Answer contains multiple references that would appear to suggest that Mr. Williams was also speaking for someone else:

> "[...] the Polish National Foundation, due to their delay to execute our agreement [...]"

> "We reminded all parties several times that in order to get Mr. O'Neal to make an international trip and appearance on such short notice that we would need to execute this agreement swiftly and quickly."

> "After the Polish National Foundation failed to meet our original dates of October 6-11, 2018, we, again, stressed the urgency [...]"

> "Our client was still willing to come to Warsaw at a later date."

> "We had several reasons to void the contract based on our agreement" [emphasis added]

160. As the above excerpts make clear, Mr. Williams used the plurals "we" and "ours" when discussing ABG's rights and obligations under the Appearance Engagement.

161. In other words, in the Answer, Mr. Williams was (also) setting forth ABG's position regarding the performance of the Appearance Engagement.

162. For these reasons, the Sole Arbitrator considers that, in the Answer, Mr. Williams was speaking both for himself and for ABG.

163. However, the Sole Arbitrator is not persuaded that there are any elements present in the Answer that can allow one to infer that Mr. Williams was speaking for Mr. Stevens as well. It is not clear to the Sole Arbitrator that Mr. Williams had the authority to speak for Mr. Stevens. While both Mr. Williams and Mr. Stevens were members of ABG, during the performance phase of the Appearance Engagement, Mr. Williams did not purport to be speaking for Mr. Stevens, but simply copied him on correspondence.[107] There is no reason to assume that this would have been different at the time of submitting the Answer. Moreover, Mr. Stevens has a separate email address (markstevensentinc@yahoo.com) from which no correspondence was ever received during these proceedings. Nothing in the record supports the conclusion that Mr. Stevens was also using the email address lamardwilliams@me.com for purposes of the Appearance Engagement.

164. For these reasons, the Sole Arbitrator finds that the Answer was submitted on behalf of Respondents 1 and 2, but not on behalf of Respondent 3.

*(ii)* *Mr. Williams' email to the Sole Arbitrator dated 27 April 2021*

165. The Sole Arbitrator likewise finds that Mr. Williams' email to the Sole Arbitrator dated 27 April 2021 was submitted on behalf of Respondents 1 and 2.

166. Indeed, while Mr. Williams only used his name to sign the message, he repeatedly purported to be speaking for someone else as well:

> "[W]e duly and fully object to this arbitration."

> "[...] our Answer on February 25 [...]" [emphasis added]

167. As in the case of the Answer, Mr. Williams used the email address lamardwilliams@me.com to write to the Sole Arbitrator.

168. For the same reasons as those set out above with respect to the Answer, the Sole Arbitrator considers that Mr. Williams' email was submitted on behalf of Respondents 1 and 2, but that there are no elements that would allow one to infer that it was also submitted on behalf of Respondent 3.

---

[107] *See,* E-mail correspondence of 12-15 November 2018 (Exhibit C-7); E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8); E-mail correspondence of 26-28 November 2020 (Exhibit C-15).

## 4. Whether Respondents 2 and 3 can be deemed to be parties to the Arbitration Agreement as a result of their conduct in these proceedings

169. The Sole Arbitrator has established in Section VII.C.3 above that the Answer and Mr. Williams' email to the Sole Arbitrator of 27 April 2021 have not been submitted on behalf of Mr. Stevens. For his part, Mr. Stevens has not participated at all in these arbitration proceedings. For these reasons, Mr. Stevens cannot be deemed to have waived the right to object to the Sole Arbitrator's jurisdiction.

170. As regards Mr. Williams, the Sole Arbitrator agrees with Claimant that the Answer does not contain anything resembling a jurisdictional objection. Instead, Respondents 1 and 2 only raised arguments in support of their position that Claimant's claims had no merit. In particular, Mr. Williams (and ABG) argued that: (i) PFN delayed performing its obligations under the Appearance Engagement; (ii) ABG had several reasons to void the Appearance Engagement; (iii) PFN and ABG signed the settlement agreement included in Exhibit R-2, whereby PFN agreed that ABG was entitled to forfeit the Deposit.

171. Mr. Williams' email to the Sole Arbitrator dated 27 April 2021 likewise does not contain any objection to the Sole Arbitrator's jurisdiction. Instead, Mr. Williams argued that Claimant's claims could not be arbitrated as a result of ABG and PFN having concluded a settlement agreement, *i.e.*, an argument going to the merits of the case:

> "Please be advised that we duly and fully object to this arbitration. <u>As established in the stettlement [sic] and release agreement</u> executed by the foundations president submitted in our Answer on February 25. That this matter can NOT be arbitrated. Please <u>review their signed settlement and release agreement.</u>"[108] [emphasis added]

172. In addition to the above, despite being duly notified and fully aware of these arbitration proceedings as well as of Procedural Order No. 1 setting out the procedural calendar, Respondent 2 did not submit a Statement of Defense.

173. The Sole Arbitrator agrees with Claimant that the Arbitration Agreement is governed by Polish law.

174. In the Arbitration Agreement, the parties to the Appearance Engagement agreed that "Polish law shall govern this Agreement" [i.e., the Appearance Engagement]. Two interpretations of this provision are possible. Under the first interpretation, the parties agreed to have Polish law apply to the entirety of the Appearance Engagement, *i.e.*, including to its Arbitration Agreement. Under the

---

second interpretation, the parties have agreed to have Polish law govern their substantive rights and obligations under the Appearance Engagement, but have not specifically agreed upon a law that would apply to the Arbitration Agreement. Even if the latter interpretation were to correspond to the parties' intentions, the outcome would be the same: the Arbitration Agreement would be governed by Polish law. Indeed, in this second scenario, Article 39 PIL providing that an arbitration agreement is subject to the law of the country where the arbitration is seated would apply. Since these arbitration proceedings are seated in Warsaw, Poland, the Arbitration Agreement would be governed by Polish law.

175. The Sole Arbitrator agrees with Claimant that the ICC Rules do not expressly provide a deadline by which an objection to jurisdiction should be raised. The Parties likewise did not agree on such a deadline. In this instance, Article 1180 § 2 PCCP, which provides that an objection to jurisdiction must be raised "at the latest in an answer to a complaint" or later, "if the arbitration court considers the delay to be justified", applies.

176. The facts described above show that Respondent 2 did not object to the Sole Arbitrator's jurisdiction in a timely manner (*i.e.*, in the Answer). In fact, Respondent 2 failed to object at all to the Sole Arbitrator's jurisdiction. For this reason, the Sole Arbitrator considers that Respondent 2 has waived his right to contest jurisdiction and is thus bound by the Arbitration Agreement.

## 5. Whether Respondent 3 is bound by the Arbitration Agreement as a result of the doctrine of piercing the corporate veil

177. The Sole Arbitrator has established in Sections VII.C.3 and 4 above that Respondent 3 cannot be deemed to have waived the right to object to the Sole Arbitrator's jurisdiction.

178. The question then remains whether Respondent 3 is bound by the Arbitration Agreement as a result of the doctrine of piercing the corporate veil (*i.e.*, on the basis of Claimant's jurisdictional argument submitted in the alternative).

179. For the reasons set out below, the Sole Arbitrator answers this question in the negative.

180. First, as explained in Section VII.C.4 above, the Arbitration Agreement is governed by Polish law. The Sole Arbitrator agrees with Claimant that Polish law also applies to the question whether Mr. Stevens, a non-signatory, can be bound by the Arbitration Agreement. As shown by the Polish Supreme Court Judgment of 17 March 2015, rendered in case I PK 179/14, "[t]he phenomenon

of abuse of the distinct legal personality of a company may be classified, in its civil law aspect, as abuse of rights within the meaning of art. 5 of the Civil Code".[109] This is confirmed in Polish legal commentary, which underlines that the "exploitation of specific aspects of the legal distinctiveness of companies [...] indubitably qualifies as a special example of abuse of the law",[110] and that "[e]xtrapolating this line of thought to where the dominant entity might, possibly, be held bound by an arbitration clause signed by the [subsidiary] company is [...] perfectly feasible".[111]

181. In other words, Article 5 PCC applies to the question whether a non-signatory can be bound by an arbitration agreement by virtue of the doctrine of piercing the corporate veil.

182. According to Claimant, "the concept of piercing the corporate veil allows to bind with the effects of an arbitration clause an entity which, although formally not a signatory, becomes a party in arbitration proceedings as it controlled and directed the company's activities undertaken under a contract containing an arbitration clause".[112] Claimant adds that another necessary condition of piercing the corporate veil is a showing of an abuse of rights by a defendant, who is taking advantage of the separate legal personality of a company in order to avoid a tribunal's jurisdiction.

183. The Sole Arbitrator need not proceed to examine the second condition, as the record unmistakably shows that the first condition is not fulfilled in the person of Mr. Stevens.

184. When the Sole Arbitrator asked Claimant to clarify its position with respect to Mr. Stevens and on the basis of which facts ABG's veil should be pierced as regards Mr. Stevens, Claimant put forward the arguments below:

> "22. Both Respondent 2 and Respondent 3 were exercising total domination over ABG and it was impossible for PFN to make distinction between the actions of the Company and its members. It appears that they are long-time associates of Mr. Shaquille O'Neal with a series of companies that they have opened and then closed over the years.
>
> 23. Mr. Stevens demonstrated that he was acting as Contract's signatory not only for ABG, but also for himself. Similarly as the case is with Mr. Williams, the Contract refers to Mr. Stevens as *'Mr. O'Neal's representative'*. Mr. Stevens and Mr. Williams

---

[109] Judgment of the Polish Supreme Court dated 17 March 2015, No. I PK 179/14 (Exhibit CL-29).
[110] A.W. Wiśniewski, *The Law on Companies. A Practical Handbook. General Information. The Unlimited Partnership, vol. I*, Warsaw 1998, p. 58 (Exhibit CL-26).
[111] A.W. Wiśniewski, *International Commercial Arbitration in Poland. Legal Status of Arbitration and Arbitrators, Chapter 6.3.2. Abuse of the Company Legal Form ("raising" or "lifting" the corporate veil)*, LEX 2011 (Exhibit CL-23).
[112] SoC, at 87.

signed the Contract in a capacity of ABG's **'partners'**, and not in the capacity of its **'members'** whereas this type of entity is owned by 'members', which was indicated in its certificate of formation.

24. Mr. Stevens has almost always participated in the email correspondence exchanged between PFN and Respondent 2. What is important, Mr. Stevens has never used an e-mail domain of ABG. Quite contrarily, he was always making use of an address which appears to be his private one or connected with other company, i.e. markstevensentinc@yahoo.com"[113]    [internal citations omitted] [emphasis in original]

185.   The Sole Arbitrator is not persuaded that, because Mr. Stevens signed the Appearance Engagement as ABG's "partner" (as opposed to "member") or that the contract referred to him as one of Mr. O'Neal's representatives, this somehow shows Mr. Stevens' dominance and total control over ABG. Instead, it simply shows that Mr. Stevens was one of ABG's managers. As explained in Sections V.B and IX.C.4 of this Award, the Sole Arbitrator considers that the use of the word "partner" is an equivalent reference to the term "member". Indeed, by signing the Appearance Engagement on behalf of ABG, Mr. Stevens (and Mr. Williams) held himself out as having authority to bind ABG through contract, *i.e.*, to have managerial powers. According to ABG's Certificate of Formation,[114] only ABG's members had managerial powers. In other words, Mr. Stevens was one of ABG's members (like Mr. Williams). As regards Mr. Stevens being Mr. O'Neal's representative, this says nothing about Mr. Stevens' control over ABG.

186.   Further, the Sole Arbitrator is not persuaded that Mr. Stevens "participated in the email correspondence"[115] between ABG and PFN. Mr. Stevens was *copied* on some of this correspondence.[116] However, notably, there is no document in the record showing that Mr. Stevens ever *replied* to emails concerning the Appearance Engagement. In fact, there is no document in the record where Mr. Stevens appears to *say* anything. The fact that Mr. Stevens never used the email domain of ABG is inapposite, as Mr. Stevens does not appear to have sent emails as regards the Appearance Engagement. At the Hearing, Mr. Lubański testified to having never met Mr. Stevens.

187.   In other words, the evidence in the record tends to show that Mr. Stevens was a passive "member" (or "partner") of ABG, never responding to emails and not actively following the performance of the Appearance Engagement. This is the very opposite of the total domination or control that is required for purposes of the doctrine of piercing the corporate veil.

---

[113] Claimant's 6 August 2021 Submission, at 22-24.
[114] Certificate of formation of ABG (Exhibit C-6).
[115] Claimant's 6 August 2021 Submission, at 24.
[116] *See*, E-mail correspondence of 12-15 November 2018 (Exhibit C-7); E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8); E-mail correspondence of 26-28 November 2020 (Exhibit C-15).

188. For these reasons, the Sole Arbitrator concludes that Mr. Stevens cannot be deemed to be a party to the Arbitration Agreement by virtue of the doctrine of piercing the corporate veil.

189. The Sole Arbitrator therefore finds that it does not have jurisdiction over Mr. Stevens. Claimant's claims as against Mr. Stevens are consequently dismissed.

## VIII. CLAIMANT'S APPLICATION TO EXCLUDE EXHIBIT R-2 FROM THE RECORD

### A. Claimant's position

190. In the SoC, Claimant argued that Exhibit R-2 "appear[ed] to be simply forged"[117] and was not the draft settlement agreement "signed / approved by Mr. Robert Lubański"[118] in April 2019 in New York City. For these reasons, Claimant requested that the Sole Arbitrator "disregard"[119] Exhibit R-2.

191. In Procedural Order No. 2, the Sole Arbitrator invited Claimant to "clarify [...] the precise object of its request [...] with regard to [Exhibit R-2]".[120]

192. In its 6 August 2021 Submission, Claimant clarified that it was "challeng[ing] the authenticity of the Settlement Agreement presented by the Respondents"[121] and was requesting that the Sole Arbitrator find that Exhibit R-2 was "inadmissible" and had to be "rejected".[122] Claimant requested, in the alternative, that the Sole Arbitrator assign no weight to Exhibit R-2.

193. As regards the precise factual reasons in support of Claimant's allegation that Exhibit R-2 is forged, Claimant relies on the testimony of Mr. Lubański, who declared that the draft agreement he signed in New York City is not Exhibit R-2:

> "The document presented to me certainly is not the settlement which I initialled [sic] and which was submitted to me by Mr Lamar Williams in April 2019. That agreement provided for different settlement terms, i.e. return of 50% of the deposit by ABG to PFN, which was in line with the previous negotiations."[123]

194. Claimant notes that Exhibit R-2, unlike the Appearance Engagement, is not initialed on every page. Moreover, the last page of Exhibit R-2 only contains the

---

[117] SoC, at 33.
[118] *Id.*, at 55.
[119] *Id.*, at 56.
[120] Procedural Order No. 2, at 15(i).
[121] Claimant's 6 August 2021 Submission, at 7.
[122] *Id*, at 13.
[123] Lubański WS, at VIII.



signatures of Mr. Lubański and of Mr. Williams and one sentence referring to the date of execution. This makes it impossible to verify the full content of the agreement discussed by PFN and ABG in April 2019.[124]

195.  Claimant adds that this conclusion is further supported by other documents in the record of these proceedings. Specifically, in an email of 18 September 2019, Mr. Williams alleged that ABG had "returned the funds in April of 2018 [sic]".[125] On 7 October 2019, in answer to Mr. Lubański's request to show confirmation of this transfer of funds, Mr. Williams stated that it was taking time to obtain the relevant information as ABG's previous bank account (which was closed at that time) was under audit.[126] According to Claimant, these discussions would have been entirely pointless if PFN had agreed – as alleged by Respondents – that ABG could forfeit the entirety of the Deposit.[127]

**B.    Respondents 1 and 2's position**

196.  As described in greater detail in Sections III and VI above, Respondents 1 and 2, being duly notified of these arbitration proceedings, of Claimant's contention that Exhibit R-2 is falsified, and of the Sole Arbitrator's decision to organize an evidentiary hearing in order to hear from Mr. Lubański on this precise issue, have not put forward specific submissions to defend the authenticity of Exhibit R-2.

197.  Nevertheless, in light of the Answer and of Mr. Williams' email to the Sole Arbitrator dated 27 April 2021, the Sole Arbitrator understands Respondents 1 and 2's position to be that Exhibit R-2 is authentic.

**C.    The Sole Arbitrator's decision**

198.  The Sole Arbitrator considers that Claimant's request that Exhibit R-2 be found "inadmissible" or be "rejected" is a request for the exclusion of Exhibit R-2 from the record (albeit formulated somewhat imprecisely). Indeed, as support for its request, Claimant noted that "[a]rbitral tribunals have wide discretion as to whether to [sic] admit or exclude [...] evidence".[128] Claimant also referred to the power of arbitral tribunals to determine the admissibility, relevance, materiality and weight of evidence in the record (Article 9.1 of the IBA Rules on the Taking of Evidence).[129] Considering the above, the Sole Arbitrator is of the view that Claimant is requesting the Sole Arbitrator to exercise her power to exclude evidence from the record with respect to Exhibit R-2.

[124] SoC, at 57; Claimant's 6 August 2021 Submission, at 10.
[125] E-mail correspondence of 18 September – 7 October 2019 (Exhibit C-13).
[126] Id.
[127] SoC, at 58; Claimant's 6 August 2021 Submission, at 11.
[128] Claimant's 6 August 2021 Submission, at 12.
[129] Id.



199. The ICC Rules do not contain any specific provisions regarding a tribunal's power to exclude evidence from the record. Nevertheless, Article 19 of the ICC Rules vests tribunals with considerable discretion in deciding the procedural rules applicable to arbitration proceedings:

> "The proceedings before the arbitral tribunal shall be governed by the Rules and, where the Rules are silent, by any rules which the parties or, failing them, the arbitral tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration."

200. In the case *sub judice*, there is no specific agreement between the Parties on the Sole Arbitrator's power to exclude evidence from the record. Consequently, as per Article 19 of the ICC Rules, the Sole Arbitrator has discretion to decide what procedural rules should govern this specific issue.

201. The Sole Arbitrator considers that her power to exclude evidence from the record is inherently encompassed in the arbitral tribunals' general power to conduct the proceedings in the manner they deem appropriate, as well as in their power to assess the admissibility, weight and materiality of the evidence in the record (for a soft law illustration of this principle, *see*, the IBA Rules on the Taking of Evidence, Article 9.1).

202. Further support for this power is implied from Section 57 of Procedural Order No. 1, which provides as follows:

> "<u>All documentary evidence submitted to the Sole Arbitrator shall be deemed to be authentic and complete</u>, including evidence submitted in the form of copies, <u>unless a Party disputes its authenticity or completeness</u>." [emphasis added]

203. In other words, if the authenticity of a document is challenged by one of the Parties, the document is no longer presumed to be authentic and complete. By necessary implication, if the Sole Arbitrator determines, after giving the Parties the opportunity to comment, that a document is not authentic, the Sole Arbitrator may exclude said document from the record.

204. Having determined that she has the power to exclude evidence from the record if said evidence is not authentic, the Sole Arbitrator will now proceed to determine whether the exercise of this power is called for in the circumstances of the present case with respect to Exhibit R-2.

205. As summarized in Section V above, the Parties put forward differing accounts about their discussions in April 2019 in New York City. Claimant, relying on the testimony of Mr. Lubański and on some additional exhibits in the record,

contends that PFN and ABG had discussed a solution whereby ABG would retain 50% of the Deposit and would return the rest to PFN. Respondents 1 and 2, on the other hand, allege that Exhibit R-2 reflects the substance of the discussions and the agreement reached between PFN and ABG that ABG would retain the entirety of the Deposit.

206. At the Hearing, Mr. Lubański testified that the signature affixed on the last page of Exhibit R-2, above his name, is in fact his own signature. However, Mr. Lubański maintained that the actual content of Exhibit R-2 is different from what he discussed with Mr. Williams in New York City in April 2019.[130]

207. Having heard from Mr. Lubański at the Hearing, and in view of the fact that his testimony is corroborated by other evidence in the record, the Sole Arbitrator finds Mr. Lubański's testimony on this issue to be persuasive.

208. Indeed, as set out in Section V above, email correspondence between Mr. Williams and Mr. Lubański and/or PFN, dating from August, September and October 2019, shows that – at that time – Mr. Williams was alleging that ABG had returned *some* funds to PFN.

209. Specifically, in an email of 22 August 2019 in answer to PFN's offer that ABG retain USD 50,000 of the Deposit and return the remainder of the funds to PFN, Mr. Williams answered as follows:

> "Hello Robert, I hope you are well. Unfortunately i [sic] can no longer amend this agreement . On April 17th you executed a settlement and releasee [sic] agreement and we proceeded with your authorization as the settlement stated and returned funds on 4/23//19. on Behalf of Mr Oneal [sic] and his time and expense of postponing other engagements and the federal tax consequences that he and Athletes benefit has incurred. We felt the agreement was more beneficial to you than to us.
>
> Unfortunately we cannot enter into any other agreement with shaquille [sic] at this time unless you are fully prepared [to] submit his full engagement amount at the time of execution."[131] [emphasis added]

210. As the email above makes very clear, in August 2019, Mr. Williams was alleging that ABG had returned "funds" to PFN on 23 April 2019 "as the settlement stated".[132] If, as Respondents 1 and 2 are now alleging in these proceedings, the discussions between ABG and PFN in April 2019 were reflected in Exhibit R-2, there would have been no funds to return.

---

[130] *See*, Hearing Recording.
[131] E-mail correspondence of 14-22 August 2019 (Exhibit C-16).
[132] *Id.*

48

211. Mr. Williams made a similar statement on 18 September 2019 (albeit referring to an incorrect date for the alleged reimbursement) in answer to an email from Mr. Lubański transmitting PFN's wire information:

> "I have this. This is what I am searching. I need a transaction number from 2017. When the original was sent. <u>We returned funds in April of 2018</u>"[133] [emphasis added]

212. In other words, correspondence emanating from Respondents 1 and 2 and dating from the time of the relevant events is unequivocal that, in April 2019, Mr. Williams and Mr. Lubański had discussed a solution whereby ABG would return *some* funds to PFN. This does not correspond to what is included in Exhibit R-2, Section 3 of which reads that "[h]ost and contractor agree that contractors [sic] payment of $ 149,000. [sic] will be forfeited".

213. While nominally there is a difference of USD 1,000 between the value of the Deposit and the amount allegedly forfeited by ABG as per Section 3 of Exhibit R-2, the Sole Arbitrator is not persuaded that, in Exhibits C-16 and C-13 above, Mr. Williams would have been referring to the return of the sum of USD 1,000 to PFN. This is because, as soon as Respondents 1 and 2 started relying on Exhibit R-2 as a defense to PFN's requests for payment, Respondents 1 and 2 consistently took the position that ABG owed *nothing* to PFN and this on account of Exhibit R-2. For instance, in an email of 9 December 2019 to PFN, Respondents 1 and 2 stated:

> "Hello, Thank you for your notice,
>
> As this is the first correspondence we have ever received from you. This engagement was voided on 11/19/2018 for failure of Mr Lubanski and the foundation to execute the contractual obligations in a timely manner. The inability to execute in the described contract time period casued [sic] extreme loss of revenue for our business and our client. As well as an enormous tax obligation (IRS 8802).We were obligated to void the agreement to avoid any further losses for our client. <u>On April 17th 2019 we met with Mr. Lubanski in New York City and he signed, and fully executed the forfeiture of deposit and 'settlement and release confidentiality agreement.' On that date this matter was by contract closed and final</u>. Please see Mr Lubanskis copy of the Release Agreement."[134] [sic] [emphasis added]

214. In these arbitration proceedings as well, Respondents 1 and 2 are also relying on Exhibit R-2 as a complete defense to Claimant's claim for the return of the Deposit. For instance, in the Answer, Mr. Williams stated:

---

[133] E-mail correspondence of 18 September – 7 October 2019 (Exhibit C-13).
[134] E-mail correspondence of 9-10 December 2019 (Exhibit C-14).



"On April 17th 2019, I met with Mr. Robert Lubanski, Vice president and Officer of the corporation while he was in New York City. He willfully and expressly executed 2copies of the forfeiture of deposit and the enclosed 'settlement release confidentiality agreement.' We both left with an executed agreement.
The matter, thusly, was officially closed." [sic] [emphasis added]

215. In the email to the Sole Arbitrator dated 27 April 2021, Mr. Williams stated:

"Dear Arbitrator,
Please be advised that we duly and fully object to this arbitration. As established in the stettlement [sic] and release agreement executed by the foundations president submitted in our Answer on February 25. That this matter can NOT be arbitrated. Please review their signed settlement and release agreement." [sic] [emphasis added]

216. For these reasons, the Sole Arbitrator finds that Exhibit R-2, which was placed by Respondents 1 and 2 into the record of these proceedings, does not correspond to the actual discussions that took place between Mr. Williams and Mr. Lubański in April 2019 in New York City. By necessary implication, Exhibit R-2 is not the document that Mr. Lubański signed in April 2019.

217. The Sole Arbitrator therefore finds that Exhibit R-2 is not authentic. For this reason, Exhibit R-2 is hereby excluded from the record of these proceedings.

218. Having decided to exclude Exhibit R-2 from the record, the Sole Arbitrator considers that it is no longer necessary to rule on Claimant's requests to: (i) assign no evidentiary weight to Exhibit R-2; or (ii) find that the alleged agreement *as reflected* in Exhibit R-2 was not validly concluded.

## IX.    CLAIMANT'S CLAIMS

### A.    Claimant's position

219. Claimant argues that: (i) the Appearance Engagement never entered into force and Respondents should reimburse Claimant the Deposit on the basis of Article 410 § 2 PCC on undue performance; or, alternatively, (ii) ABG failed to perform its obligations under the Appearance Engagement and Respondents must compensate PFN for the loss suffered, which is equivalent to the Deposit.[135]

---

[135] SoC, at 36-50.



50

220. Claimant also contends that Mr. Williams' liability[136] can be engaged on two alternative bases: (i) as a result of the application of the principle of "piercing the corporate veil"; or (ii) in tort.[137]

221. These two main lines of argument will be summarized below.

## 1. Claimant's submissions regarding Respondents' liability

### (i) *The Appearance Engagement did not enter into force*

222. Claimant's main argument is that the Appearance Engagement never entered into force as the suspensory conditions included in the Section "The Polish National Foundation Obligation" (*i.e.*, agreement on Mr. O'Neal's itinerary and provision of accommodation within 3 days in order to "validate" the Appearance Engagement) were never fulfilled.[138]

223. In this respect, Claimant contends that the Appearance Engagement was concluded under the legal suspensory condition that PFN undertake specific actions following agreement of the Parties. This type of legal condition is regulated by Article 89 PCC, which reads:

> "Subject to exceptions provided for by the statute or arising from the nature of a juridical act, the commencement or the cessation of the consequences of the juridical act may be made contingent on future and uncertain event (condition)".[139]

224. Claimant maintains that the "future and uncertain" event in the Appearance Engagement was defined by reference to the activities of the parties and qualifies as a *conditio potestativa* (or *warunek potestatywny*) under Polish law. Referring to the caselaw of the Polish Supreme Court,[140] Claimant argues that this type of condition (*i.e.*, which depends on the will of one of the parties) is lawful under Polish law.[141]

225. In the case under reference, the itinerary for Mr. Shaquille O'Neal's visit and details regarding his accommodation were never agreed between the parties nor provided to ABG, which would have been necessary in order to "validate the

---

[136] Claimant makes these same arguments with respect to Mr. Stevens. However, since the Sole Arbitrator has concluded that she does not have jurisdiction over Mr. Stephens, this summary of Claimant's arguments refers only to Mr. Williams.

[137] SoC, at 65-85.

[138] SoC, at 36, 37.

[139] *Id.*, at 38.

[140] Judgment of the Polish Supreme Court dated 26 September 2008, No. IV CSK 118/07 (Exhibit CL-1); Decision of the Polish Supreme Court dated 22 March 2013, No. III CZP 85/12 (Exhibit CL-2).

[141] SoC, at 39.

agreement".[142] Because these conditions were not fulfilled, the Appearance Engagement never entered into force, as implicitly acknowledged by Respondent 2 in email correspondence dating from December 2018 ("Our original agreement was completely VOID"[143]). Claimant argues that, as a result, the Deposit was paid by PFN to ABG without a proper legal basis and must be returned, according to Article 410 § 2 PCC on undue performance.[144] As support for this contention, Claimant submits that Polish legal scholars[145] consider the non-fulfillment of a suspensory condition as one of the most common examples of undue performance. This is in line with Article 410 § 1 PCC,[146] which provides that the provisions of Article 405 PCC on unjust enrichment[147] are also applicable to cases of undue performance. Specifically, under Polish law, a claim for unjust enrichment may be made if three conditions are met: (i) a person is enriched at the expense of another; (ii) the enrichment and the depletion have a common cause; and (iii) the enrichment takes place without a legal basis. Claimant considers that all three conditions are met in the present case.[148]

(ii)    *In the alternative, ABG's contractual obligations were not fulfilled*

226.    In the alternative to *(i)* above, Claimant argues that the Deposit should be returned to PFN on account of the fact that ABG did not perform its contractual obligations (*i.e.*, the visit to Poland of Mr. Shaquille O'Neal did not take place and he did not take part in any official events connected with the 100th Anniversary of Poland's Independence). According to Article 471 PCC,[149] Respondents must compensate Claimant for the damage incurred as a result of this non-performance.[150]

227.    Claimant argues that the only purpose of PFN paying the Deposit to ABG was to guarantee that PFN would not use the name and likeness of Mr. O'Neal before the Appearance Engagement entered into force (*i.e.*, until the parties reached an agreement on itinerary, accommodation and transport). Once the parties reached

---

[142] The Appearance Agreement dated 30 October 2018 concluded between Polska Fundacja Narodowa and Athlete Benefits Group, LLC (Exhibit C-1), Section "The Polish National Foundation Obligation".

[143] E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8).

[144] Article 410 § 2 PCC reads: "The performance shall be undue if a person who rendered it had not been obliged at all or had not been obliged towards the person to whom he rendered the performance, or if the basis for the performance has ceased to be binding or if an intended purpose of the performance has not been achieved or if a juridical act obliging to perform had been invalid and has not become valid after the performance was rendered" (SoC, at 42).

[145] E. Gniewek, Kodeks cywilny. Komentarz [Civil Code. Commentary], Warsaw 2019 – extract (Exhibit CL-3).

[146] Article 410 § 2 PCC reads: "The provisions of the preceding articles shall apply in particular to undue performance."

[147] Article 405 PCC reads: "A person who has gained a property-related profit at another person's expense with no legal ground, shall be obliged to release the profit in kind, and where it proved impossible, to reimburse its value."

[148] SoC, at 40-45.

[149] Article 471 PCC reads: "The debtor shall be obliged to redress the damage arising from non-performance or from improper performance of an obligation, unless the non-performance or the improper performance are an outcome of circumstances which the debtor shall not be liable for" (SoC, at 49).

[150] SoC, at 46, 49.

such an agreement, the Deposit would be set off against the Contract Fee of USD 275,000. Claimant deduces that ABG would have been entitled to a partial forfeiture of the Deposit only if PFN had made use of the name and likeness of Mr. O'Neal through marketing activities, social media etc. pending agreement on itinerary, accommodation and transport. However, since PFN never made use of the name and likeness of Mr. O'Neal and no agreement was reached on itinerary, accommodation and transport, ABG was held to return the Deposit to PFN.[151]

228.  In the case before the Sole Arbitrator, Respondents must compensate Claimant for the damage suffered as a result of Respondents unlawfully withholding the Deposit. The amount of that damage corresponds to the full Deposit.[152]

## 2.  Mr. Williams' liability

229.  Claimant submits that, according to Article 4(3) of the PIL, the law governing Mr. Williams' personal liability as a member of ABG for the company's debts is the law of the State in which ABG has its registered office, *i.e.*, the State of Delaware. According to the Delaware Limited Liability Company Act (the "**DLLC Act**"),[153] the members[154] of a limited liability company are not, as a rule, personally liable for the debts, obligations or liabilities of the company. However, liability can be established under specific conditions which result from court decisions.[155]

230.  According to Claimant, Respondent 2, as a member of ABG, can be held liable for the debts and liabilities of the company on two alternative bases: (i) under the doctrine of piercing the corporate veil; or (ii) in tort.

   *(i)*   *The conditions for piercing the corporate veil of ABG are met in the person of Mr. Williams*

231.  Claimant submits that the doctrine of "piercing the corporate veil" refers to "the judicial act of disregarding an entity's corporate form, which normally provides limited liability to managers/members, to impose personal liability on the managers/members for the obligations of the company".[156] U.S. courts pierce the corporate veil of a company when the interests of justice and equity demand it, or when it is necessary to prevent fraud. Courts only intervene in this manner when the separate legal personality of the company has been disregarded or

---

[151] *Id.*, at 47, 48.
[152] *Id.*, at 50.
[153] Delaware Limited Liability Company Act – extract (Exhibit CL-4).
[154] Claimant maintains that, since Mr. Williams was referred to as a "partner" of ABG in the Appearance Engagement, it must be assumed that he was acting in his capacity as member of ABG (SoC, at 67).
[155] SoC, at 65-68.
[156] *Id.*, at 69.

53

abused (*e.g.*, when one or more entities/individuals exercise total domination over the company or when the distinction between the company and the individuals who own or manage it is blurred). In such instances, the corporate entity is used as a mere *alter ego* of its owners, who dominate the entity.[157]

232.  Referring to U.S. caselaw,[158] Claimant argues that courts look to a variety of circumstances when deciding whether it is appropriate to pierce the corporate veil of a company, such as: (i) the intentional undercapitalization of the entity; (ii) diversion of assets; (iii) commingling or misuse of corporate funds for personal purposes; (iv) the amount of business discretion displayed by the allegedly dominated entity; (v) absence of corporate formalities; (vi) existence of fraud, wrongdoing or injustice to third parties; and/or (vii) the existence of the entity merely as a façade for individual dealings. Equally, a member of an LLC can be found liable if he/she exercised total domination over the entity and abused the corporate form in order to advance his/her personal interests.[159]

233.  Claimant considers that the facts of the present case are ripe for piercing the corporate veil of ABG.

234.  *First*, Claimant argues that the roles of ABG and Mr. Williams were blurred, with Mr. Williams acting as if not only ABG, but also Mr. Williams were signatories to the Appearance Engagement. This is shown by the fact that the Appearance Engagement refers to Mr. Williams not only as a representative of ABG, but also as a representative of Mr. O'Neal. Further, Claimant was not provided with corporate documents or even the postal address of ABG, and correspondence with ABG was exchanged solely by email, and only with Mr. Williams. Mr. Williams never used an email address with ABG's domain name, but what appeared to be his personal email address (lamardwilliams@me.com) or the email address of Tanton Group CPAs.[160] It is not at all clear that ABG, as a separate entity, had a mailbox or proper email domain. Claimant requested Respondents to disclose ABG's address in an email of 26 February 2019, and in response, Respondents' representative answered that he would try to learn Mr. Williams' address ("I am confirming Lamar [Williams]'s correct address for correspondence and will provide immediately"[161]). In other words, even for Respondents' representative, the distinction between ABG and Mr. Williams was blurred. In any event, no address was ever communicated, and Claimant attempted to learn ABG's address on its own, including by hiring a professional

---

[157] *Id.*
[158] Blair v. Infineon Tech, AG, 720 F.Supp.2d 462, 470-71 (D. Del. 2010) (Exhibit CL-7); Mason v. Network of Wilmington, Inc., et al., No. Civ.A. 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) (Exhibit CL-8); David v. Mast, No. 1369-K, 1999 WL 135244, at *2 (Del. Ch. Mar. 2, 1999) (Exhibit CL-9); United States v. Golden Acres, Inc., 702 F.Supp. 1097, 1104 (D. Del. 1988) (Exhibit CL-10); West Coast Opportunity Fund, LLC v. Credit Suisse Securities (USA), LLC, 12 A3d 1128, 1132 (Del. 2010) (Exhibit CL-11).
[159] SoC, at 70-72.
[160] E-mail correspondence of 26-27 March 2019 (Exhibit C-17).
[161] E-mail correspondence of 26 February 2019 (Exhibit C-10).

company to establish ABG's corporate details. This resulted in instances where PFN's correspondence to ABG was refused, and Claimant was unable to learn any new information about ABG's address through other means.[162]

235. Second, Claimant speculates that ABG's corporate history supports an inference that Respondent 1 was created for the purpose of one or several transactions to be executed by Respondents 2 and 3. In this respect, Claimant notes that ABG was set up shortly before the Appearance Engagement was concluded (in March 2018) and, by 2019, ABG already fell out of good standing, owing USD 1,210 in back taxes and penalties. This shows the intentional undercapitalization of the company. Moreover, the records with the Delaware Secretary of State show that the only document on record for ABG is the certificate of formation.[163] No other document, including annual reports, were filed. The information that is available about ABG from its certificate of formation is very limited and vague. Its purpose is "to engage in any lawful act or activity for which a limited liability company may be formed"[164] under the DLLC.[165]

236. Claimant concludes on the basis of the above that Respondent 2 was exercising complete domination over ABG, and that a distinction between Respondent 1 and Respondent 2 was for all purposes impossible. ABG existed only as a name in the Appearance Engagement, but not as a real entity, and its purpose was to allow Respondent 2 to engage in activities of doubtful legality.[166]

   (ii)    *In the alternative, Mr. Williams' liability can be engaged in tort*

237. Claimant adds that, in the alternative to the above, Mr. Williams' liability for ABG's contractual obligations and debts can be engaged in tort. As a matter of Delaware law, the liability of a member/manager of an LLC can be engaged if: (i) they have personally committed, participated or cooperated in the wrongful conduct or specifically directed or ordered actions that resulted in the tort; and (ii) in doing so, they have acted intentionally or recklessly.[167]

238. Claimant considers that Respondent 2, acting on behalf of ABG, has committed a series of acts which caused harm to PFN and which were only intended to avoid liability and to prevent PFN from recovering the Deposit. Claimant refers in particular to: (i) the fact that PFN was never provided with a postal address or other contact details of ABG, which made it impossible for PFN to call on ABG to return the Deposit; (ii) Mr. Williams claimed, in October 2019, that he had

---

162 SoC, at 74-76.
163 Printout from the website of Secretary of State regarding ABG (Exhibit C-18).
164 Certificate of formation of ABG (Exhibit C-6).
165 SoC, at 77-79.
166 *Id.*, at 80.
167 *Id.*, at 81, referring to Prairie Capital III, L.P. v. Double E Holding Corp., 132 A.3d 35, 60 (Del. Ch. 2016) (Exhibit CL-12).

wired the Deposit only to then declare that a settlement agreement corresponding to what is stated in Exhibit R-2 had been concluded and the matter was closed; and (iii) Mr. Williams made several unsupported arguments that Mr. O'Neal had suffered substantial losses due to PFN's alleged failure to perform its obligations under the Appearance Engagement.[168]

## B. Respondents 1 and 2's position

239. Respondents 1 and 2 have set out their position with respect to Claimant's claims in the Answer and in Mr. Williams' email of 27 April 2021 to the Sole Arbitrator.

240. Respondents 1 and 2 contend that PFN delayed performing its obligations under the Appearance Engagement and, as a result, the "initial deposit was forfeited as stated in the enclosed settlement and release agreement [Exhibit R-2]".[169] Respondents 1 and 2 maintain that they attempted to show flexibility in the negotiations with PFN, despite the fact that it was difficult to get Mr. O'Neal to make an appearance on such short notice. In their view, they had "several reasons to void the contract based on [their] agreement":[170]

> "1) the full deposit was never received, 2) the deposit was not received until 11/06/2018 (6 days after contract was executed 10/31/2018), where the contract specifically said at time of execution. 3) the travel budget was never received nor acknowledged with the execution of the agreement and 4) no accommodations were provided within the agreement."[171]

241. Respondents 1 and 2 add that, due to the fact that PFN failed to perform its obligations, and after 45 days elapsed during which Mr. O'Neal passed on other opportunities, they were forced to compensate Mr. O'Neal for his losses and to assert contractual rights against PFN. This resulted, on 17 April 2019, in the forfeiture of the Deposit and the conclusion of the "enclosed 'settlement release confidentiality agreement'" (Exhibit R-2) [172] which officially closed all pending matters.[173] As a result, "this matter can NOT be arbitrated".[174]

---

[168] SoC, at 82-85.
[169] Answer, p. 1.
[170] Id.
[171] Id.
[172] Id.
[173] Id.
[174] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the Sole Arbitrator, 27 April 2021.

## C. The Sole Arbitrator's decision

242. According to Article 21(1) of the ICC Rules ("Applicable Rules of Law"):

> "The parties shall be free to agree upon the rules of law to be applied by the arbitral tribunal to the merits of the dispute. In the absence of any such agreement, the arbitral tribunal shall apply the rules of law which it determines to be appropriate."

243. According to the Clause titled "Final Provisions" in the Appearance Engagement, the contract is governed by Polish law:

> "Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. [...]" [emphasis added]

244. As the following subsections will show, the Sole Arbitrator has found that ABG and Mr. Williams are liable to PFN for the reimbursement of the Deposit. The Sole Arbitrator's analysis is structured as follows. First, the Sole Arbitrator will examine the contractual arrangements between PFN and ABG under the Appearance Engagement in order to fully set out the parties' respective rights and obligations (Section IX.C.1). Second, the Sole Arbitrator will determine whether PFN failed to perform its obligations under the Appearance Engagement, as alleged by Respondents 1 and 2 (Section IX.C.2). The Sole Arbitrator will then examine whether Claimant is entitled to the reimbursement of the Deposit from ABG (Section IX.C.3). Finally, the Sole Arbitrator will determine whether Mr. Williams' personal liability for ABG's debts and liabilities can be engaged (Section IX.C.4).

### 1. The contractual arrangements between PFN and ABG under the Appearance Engagement

245. At first blush, the Appearance Engagement is a straightforward arrangement. PFN contracted with ABG so that ABG would bring Mr. Shaquille O'Neal to Poland to attend several events in honor of the 100th anniversary of Poland's independence, and PFN would pay a fee in exchange for this service. However, the Appearance Engagement also left many details undefined, to be agreed upon, often within short deadlines, by PFN and ABG. This required a strong and close cooperation between PFN and ABG, which – for various reasons – did not materialize.

246. It is useful in this context for the Sole Arbitrator to refer back to the provisions of the Appearance Engagement in order to better conceptualize the respective rights and obligations of the parties.

247. The object of the Appearance Engagement was the appearance of Mr. Shaquille O'Neal in Warsaw, Poland, between 30 November and 3 December 2018, at official events. As the first Recital to the Appearance Engagement shows, it is in exchange for this precise service that PFN, acting as Contractor, agreed to provide compensation (*i.e.*, the Contract Fee):

> "Whereas, *CONTRACTOR* agrees to provide compensation for *HOST* to attend appearances in honor of the 100th Year Anniversary of Poland's Independence in Warsaw, Poland." [emphasis added]

248. The Contract Fee of USD 275,000 was to be paid in installments. The Deposit (USD 150,000) was to be paid first, "upon execution of this agreement".[175] As expressly set out in Clause 7, the purpose of the Deposit was to provide compensation to ABG for the use of Mr. O'Neal's image:

> "An initial payment/deposit of $150,000.00USD will be paid by *CONTRACTOR* upon execution of this agreement for 'use of name and likeness of Shaquille O'Neal'."[176]

249. The Deposit was also intended to protect Mr. Shaquille O'Neal against any unauthorized use of his image. It was specifically envisaged that such unauthorized use of his image would result in the partial forfeiture of the Deposit:

> "ANY MARKETING OR USE OF NAME, LIKENESS, OR SOCIAL MEDIA, POST, TWEETS .IN ASSOCIATIONWITH [sic] THIS EVENT, ETC. HAS CONSIDERABLE MOETARY [sic] VALUE TO OUR CLIENT/BRAND AND WILL RESULT IN PARTIAL FORFEITURE OF DEPOSIT."[177]

250. No other provision in the Appearance Engagement authorized ABG to forfeit the Deposit. Consequently, if PFN committed no unauthorized use of Mr. O'Neal's image and likeness, the Deposit would not have been subject to forfeiture. Instead, as expressly provided in the Appearance Engagement, the Deposit would have been one part of the Contract Fee, along with the USD 75,000 which had to be paid seven days prior to the date of departure, and the USD 55,000

---

[175] Clause 7 of the Appearance Engagement (Exhibit C-1).
[176] *Id.*
[177] *Id.* The Clause "The Polish National Foundation Obligation" provided that PFN was entitled to "use [...] the name, likeness and image of Shaquille O'Neal for marketing and promotion of Poland's 100th Centennial Anniversary. Listed promotion and specified events only". PFN had the "right to use photographs and footage made during the visit in connection with the Anniversary and in fulfillment of its mission. Such photographs and footage will be made available to Polish and foreign media." As regards social media, the Appearance Engagement authorized PFN to "2 social media posts on Twitter directly relating to the event and 2 posts on Instagram with the provided hashtags and Geo-tags (content thereof to be agreed between HOST and CONTRACTOR)" (Clause "Athlete Benefits Group, LLC Obligation"). Any use of Mr. O'Neal's image outside of these arrangements would have been unauthorized and subject to forfeiture of the Deposit.

which was to be paid upon provision to PFN of ABG's and Mr. Shaquille O'Neal's certificates of residency for the year 2018.[178]

251. Where the arrangements between PFN and ABG were more complicated was Mr. O'Neal's travel arrangements. These were set out in the Clause titled "The Polish National Foundation Obligation". This Clause very clearly set out from the beginning the overriding principle that "all" travel arrangements had to be agreed between the parties:

> "Host/Producer will make all travel arrangements in cooperation with the Contractor."[179] [emphasis added]

252. Per the Appearance Engagement, the cost of travel had to be covered by PFN. However, since the cost of travel was not specified in the Appearance Engagement itself, PFN committed to cover such cost provided that its prior written approval on each travel item was obtained by ABG:

> "The Contractor will cover the travel expenses, provided however that Host/Producer has obtained Contractor's prior written approval for each particular travel item."[180] [emphasis added]

> "CONTRACTOR will accommodate any reasonable needs of the HOST and therefore any such incidental expenses will have to be approved in written form by CONTRACTOR prior to incurring them."[181] [emphasis added]

253. Even the one provision on travel arrangements that required PFN to make an immediate payment did not specify a precise sum, but only required PFN to provide a "reasonable" amount:

> "Contractor will provide a reasonable travel budget that will be funded immediately with signed agreement."[182]

254. PFN and ABG also envisaged that their cooperation would be quasi-immediate. Per the Appearance Engagement:

> "itinerary must follow agreement in 3 days to validate agreement"[183]

> "Accommodations must be provided with in [sic] 3 days to validate agreement"[184]

---

[178] The Sole Arbitrator notes that the three instalments of the Contract Fee added up to USD 280,000, instead of the USD 275,000 specified in Clause 4 of the Appearance Engagement. However, this is immaterial for purposes of the present case.

[179] Clause "The Polish National Foundation Obligation", Appearance Engagement (Exhibit C-1).

[180] Id.

[181] Id.

[182] Id.

[183] Id.

[184] Id.



255. Since the itinerary and accommodation were unmistakably "travel arrangements", which had to be agreed between the parties, this meant that, within 3 days of execution of the Appearance Engagement, PFN and ABG also had to agree on the itinerary and accommodation for Mr. O'Neal.

256. PFN could not abusively withhold its approval. The same contractual clause specified that PFN had to provide "Roundtrip Transportation on Private Jet" and "a reasonable travel budget", and had to "accommodate all reasonable needs of the HOST". However, beyond these broad principles, it was up to PFN and ABG to come to an agreement.

257. In other words, the Appearance Engagement contained very few concrete details regarding the performance of PFN's obligation to cover travel costs and make the necessary arrangements, leaving such matters to the subsequent agreement of the parties as these issues arose. This also had a significant effect on the payment of the remainder of the Contract Fee, as the second instalment of USD 75,000 had to be paid no later than 7 days before the date of travel (which depended on itinerary, accommodation etc.).[185]

258. Claimant puts forward a two-pronged argument with respect to the import of this clause. According to its main position, the envisaged agreements between ABG and PFN on travel arrangements represented a legal suspensory condition, pending which the Appearance Engagement did not enter into force. Its alternative position does not differ much in substance from its main position. Indeed, Claimant contends that ABG did not perform its obligations under the Appearance Engagement, which never "[came] into force"[186] since the parties never agreed on "itinerary, accommodation and transport".[187] Where the distinction between these two lines of arguments seems to be is the basis upon which Claimant is requesting the reimbursement of the Deposit. In its main position, Claimant is relying on Article 410 § 2 PCC on undue performance. In its alternative position, Claimant is relying on Article 471 PCC on responsibility for failure to perform contractual obligations.[188]

259. The Sole Arbitrator agrees with Claimant that ABG's and PFN's agreement on the various travel arrangements, including the itinerary and accommodation, represented a legal suspensory condition as provided in Article 89 PCC ("a future and uncertain event"), which seems to condition the entry into force of the Parties' rights and obligations. In particular, the obligation to pay in full the cost

[185] Clause 8 of the Appearance Engagement (Exhibit C-1).
[186] SoC, at 47.
[187] Id.
[188] There seems to be a contradiction, in Claimant's alternative argument, between the basis for its claim (non-performance of contractual obligations) and its argument that the Appearance Engagement did not enter into force.

of travel "10 days prior to departure" was conditional upon ABG and PFN agreeing on the "travel arrangements", including itinerary and accommodation, and the "travel expenses". Moreover, if no agreement on these travel items could be reached, ABG was not in a position to perform its obligation to have Mr. O'Neal attend the official events in Poland. Equally, absent a date of travel, the second instalment of the Contract Fee did not become due. These elements would appear to show that the performance of specific contractual obligations was conditioned on the parties reaching an agreement on travel arrangements.

260. However, more importantly, the Clause "The Polish National Foundation Obligation", shows that it was in fact the entry into force of the Appearance Engagement itself that was conditioned on the parties reaching an agreement on travel arrangements. Indeed, the Clause provided that the itinerary and accommodation for Mr. O'Neal's travel to Poland had to be agreed upon within 3 days of execution of the Appearance Engagement in order "to validate agreement". The Sole Arbitrator agrees with Claimant that the use of the words "to validate agreement" refers to the Appearance Engagement itself. Indeed, as the paragraph above shows, the parties attached a crucial importance to an agreement on travel arrangements, as the two essential obligations under the Appearance Engagement (getting Mr. O'Neal to attend official events in Poland and paying the fee for this attendance) were conditioned upon ABG and PFN reaching an agreement on the travel arrangements.

261. The Sole Arbitrator sees no other interpretation of the words "to validate agreement" that is also consistent with the intention of the parties to have all travel arrangements set up before Mr. O'Neal even departed for Poland. Indeed, as will be shown below, this common intention was subsequently confirmed by the parties' conduct during the performance phase of the Appearance Engagement.

262. The question to be answered then is whether, as alleged by Respondents 1 and 2, PFN failed to perform its obligations under the Appearance Engagement. This issue will be addressed in Section IX.C.2 below.

## 2. Whether Claimant failed to perform its obligations under the Appearance Engagement

263. Respondents 1 and 2 argue that Claimant failed to perform its obligations under the Appearance Engagement, as follows:

> "1) the full deposit was never received, 2) the deposit was not received until 11/06/2018 (6 days after contract was executed 10/31/2018),where the contract specifically said at time of execution. 3) the travel budget was never received nor



61

acknowledged with the execution of the agreement and 4) no accommodations were provided within the agreement."[189]

264. The Sole Arbitrator notes that Respondents 1 and 2 argue both that the Deposit was "never received" and that it was "not received until 11/06/2018". Since these two arguments are inherently contradictory to each other, the Sole Arbitrator understands that Respondents 1 and 2 are essentially arguing that the Deposit was received by ABG with a delay, contrary to what was provided in the Appearance Engagement.

265. The Sole Arbitrator cannot agree with Respondents 1 and 2's contention on this issue. Clause 7 of the Appearance Engagement provided that the Deposit "[would] be paid by *CONTRACTOR* upon execution of this agreement". In other words, PFN's obligation was to *remit* the funds to ABG on the day on which the Appearance Engagement was executed (*i.e.*, the date on which both parties signed the contract, thus perfecting their reciprocal consent to be bound by it). The Appearance Engagement did not provide, as alleged by Respondents 1 and 2, that the funds had to *reach* ABG on the day the contract was executed.

266. The Appearance Engagement was executed on 2 November 2018 (the date on which PFN signed the contract, thus perfecting the agreement of the parties). The Deposit was wired by PFN on the same day.[190] Therefore, the Sole Arbitrator finds that PFN complied with its obligation to pay the Deposit on time.

267. Respondents 1 and 2 also argue that Claimant failed to remit the travel budget with the execution of the Appearance Engagement and failed to provide accommodations. As explained in the paragraphs below, the Sole Arbitrator does not share Respondents 1 and 2's opinion that PFN culpably failed to perform its obligations.

268. As regards the travel budget, the Appearance Engagement did provide that PFN had to "provide a reasonable travel budget [...] immediately with signed agreement".[191] However, the same Clause provided that "all travel arrangements" had to be agreed between PFN and ABG and specifically that "each particular travel budget item"[192] (both travel cost and accommodation) had to be pre-approved by PFN before being incurred by ABG.[193] In other words, regardless of any initial budget to be provided by PFN, any such amount would have been provisional in nature and what really mattered for purposes of the

---

[189] Answer, p. 1.
[190] Confirmation of wire transfer of 2 November 2018 (Exhibit C-2).
[191] Clause "The Polish National Foundation Obligation" (Exhibit C-1).
[192] *Id.*
[193] *Id.*: "The Contractor will cover the travel expenses, provided however that Host/Producer has obtained Contractor's prior written approval for each particular travel budget item."

62

Appearance Engagement was for PFN and ABG to agree on each individual travel budget item (transportation, accommodation, etc.). Without such an agreement, no funds could be spent.

269.   As the evidence in the record shows, PFN and ABG could not reach an agreement on the cost of travel and accommodation.

270.   Indeed, email correspondence between Mr. Lubański and Mr. Williams dating from November-December 2018 shows that PFN and ABG struggled to find common ground on the travel arrangements:

    (i)      On 15 November 2018, in answer to an email from Mr. Williams arguing that PFN had failed to perform its obligations, Mr. Lubański mentioned that PFN had not sent the travel budget as ABG had failed to invoice it ("because we have never received an invoice from you in this matter – we can not just wire money without a document"[194]). Conversely, accommodation had not been provided because ABG had not responded to PFN's schedule proposal ("we have never received a feedback [sic] regarding our schedule proposition")[195].

    (ii)    When, on 16 November 2018, ABG did invoice PFN for Mr. O'Neal's travel costs by private jet, PFN took more than three weeks to respond. Mr. Lubański answered Mr. Williams on 10 December 2018 that PFN's delay in answering was caused by "very high cost of travel"[196] (i.e., USD 249,000). Nevertheless, after the matter had been escalated within PFN, PFN did confirm that it would be able to cover this cost and would do so in the following days. This was deemed unsatisfactory by ABG, with Mr. Williams responding that "[o]ur original agreement was completely VOID after you failed to meet the contract requests specifically set-forth, in the timely manner requested".[197] Mr. Williams suggested that a new agreement be signed, with new dates for Mr. O'Neal's visit to Poland.

    (iii)   However, despite several attempts to find suitable dates for a new visit, PFN and ABG never succeeded to find a solution.[198]

271.   The above correspondence shows that PFN and ABG had consistently understood that the Appearance Engagement would only enter into force once there was an agreement on the various travel arrangements. Indeed, because such agreement on the cost of travel could not be reached swiftly (or, alternatively,

---

[194] E-mail correspondence of 12-15 November 2018 (Exhibit C-7).
[195] Id.
[196] E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8).
[197] Id.
[198] E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8); E-mail correspondence of 24 January – 26 February 2019 (Exhibit C-9).

was only tentatively reached on 10 December 2018), ABG posited that the Appearance Engagement, as originally signed, was "completely VOID",[199] *i.e.*, could not produce any legal effects.

272.   The Sole Arbitrator notes that this course of events is also confirmed by the witness testimony of Mr. Lubański:

> "After negotiation and signing of the contract by PFN and ABG, we passed on to the American side a proposed schedule of Mr Shaquille O'Neal's Polish visit. The main sticking point was the question of travel and accommodation costs. We found the travel costs suggested by the American side (direct travel by private et, with no stopovers) to be excessive. ABG, meanwhile, did not want to agree to other arrangements, such as first-class travel on commercial flights or travel by private jet, but with a stopover, which would have significantly decreased travel costs. For our part, the proposals and offers concerning travel were supervised by our president, Filip Rdesiński. We did not reach compromise in this regard, and we did not proceed to further stages of contract performance. The American side had indicated that details of the schedule can be discussed only upon agreement of the mode of transport and of the accommodation details."[200]

273.   The question that arises is whether PFN unreasonably withheld agreement on the travel budget proposed by ABG. As explained below, the Sole Arbitrator is not persuaded that PFN acted in an unreasonable manner.

274.   Indeed, to recall, the Appearance Engagement specifically provided that "[t]he Contractor [would] cover the travel expenses, provided however that Host/Producer [...] obtained Contractor's prior written approval for each particular travel budget item". This necessarily meant that PFN was entitled to have a meaningful input on the travel costs and was not contractually obligated to approve every request from ABG, even if, for example, it deemed it to be unreasonable. Moreover, the Appearance Engagement required PFN to provide "Roundtrip Transportation on Private Jet" but did not further specify whether this mode of transportation included any stopovers or not. As testified by Mr. Lubański, PFN was ready to cover the cost of travel by private jet, but with a stopover. ABG however would only consent to travel by private jet with no stopovers. The Sole Arbitrator considers that PFN's position on this issue was not unreasonable or abusive, but was within the discretion afforded to it under the Appearance Engagement.

275.   Consequently, the Sole Arbitrator finds that PFN's and ABG's failure to agree on Mr. O'Neal's travel arrangements was not due to the culpable behavior by

[199] E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8).
[200] Lubański WS, at III.

PFN. The Sole Arbitrator thus cannot agree with Respondents 1 and 2 that PFN failed to provide the travel budget and failed to provide accommodation, in breach of the Appearance Engagement.

276. The parties having failed to reach agreement on the travel arrangements, including on the itinerary and accommodation, per the Clause "The Polish National Foundation Obligation", the Appearance Engagement was never validated (or, in ABG's terminology, was "completely VOID"[201]), *i.e.*, it never entered into force. The question to be answered then is whether PFN is entitled to have the Deposit reimbursed.

### 3. Whether Claimant is entitled to the reimbursement of the Deposit from Respondent 1

277. The Sole Arbitrator has found in Section IX.C.1 above that, per the Appearance Engagement, the Deposit could only be withheld by ABG if PFN made use of the image and likeness of Mr. O'Neal in an unauthorized manner. Respondents 1 and 2 never alleged this to be the case and, in any event, no evidence to this effect exists on the record.

278. The Sole Arbitrator has also found, in Section IX.C.2 above, that the Appearance Engagement never entered into force due to PFN's and ABG's failure to reach an agreement on the travel arrangements for Mr. O'Neal. This means that ABG's obligation to have Mr. O'Neal attend official events in Poland, on the occasion of the 100th anniversary or Poland's independence, never entered into force either. By way of necessary implication, PFN's obligation to pay a fee for such an appearance (including the Deposit) likewise never entered into force.

279. The Sole Arbitrator agrees with Claimant that, under these circumstances, the Deposit paid by PFN as an advance towards the Contract Fee became undue, as per Article 410 § 2 PCC:

> "<u>The performance shall be undue if a person who rendered it had not been obliged at all</u> or had not been obliged towards the person to whom he rendered the performance, or if the basis for the performance has ceased to be binding or if an intended purpose of the performance has not been achieved or if a juridical act obliging to perform had been invalid and has not become valid after the performance was rendered."[202] [emphasis added]

---

[201] E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8).
[202] E. Gniewek, *Kodeks cywilny. Komentarz [Civil Code. Commentary]*, Warsaw 2019 – extract (Exhibit CL-3).

280. Since the payment of the Deposit by PFN to ABG became devoid of any legal basis, ABG was required to reimburse PFN the undue Deposit on the basis of Articles 410 § 1 and 405 PCC:

> "Article 410 § 1. The provisions of the preceding articles shall apply in particular to undue performance."

> "Article 405. A person who has gained a property-related profit at another person's expense with no legal ground, shall be obliged to release the profit in kind, and where it proved impossible, to reimburse its value."[203]

281. Indeed, since the Appearance Engagement never entered into force:

   (i)   ABG enriched itself at the expense of PFN with the amount of the Deposit;

   (ii)  the enrichment and the expense have one common cause – the payment of the Deposit under a contract that never entered into force; and

   (iii) because the Appearance Engagement never entered into force, ABG has no legal basis to continue holding on to the Deposit.

282. The Sole Arbitrator thus considers that, at least *prima facie*, ABG was required to reimburse PFN the Deposit on the basis of Articles 405 and 410 PCC.

283. The question to be answered is whether PFN ever agreed to a different arrangement with respect to the Deposit, for instance, by means of a settlement agreement with ABG. For the reasons explained below, the Sole Arbitrator finds that no such settlement agreement was entered into by PFN with ABG.

284. To recall, the Sole Arbitrator has concluded in Section VIII.C above that Exhibit R-2 (currently excluded from the record) did not correspond to the settlement discussions between ABG and PFN from April 2019 in New York City. However, as Mr. Lubański testified in his written witness statement[204] and at the Hearing, settlement discussions between PFN and ABG did occur in April 2019, and, at that time, these discussions were to the effect of ABG returning 50% of the Deposit to PFN. This document has not been placed by the Parties onto the record of these proceedings. However, according to Mr. Lubański, both him and Mr. Williams signed the document memorializing these discussions.

---

[203] SoC, at 43.
[204] Lubański WS, at VIII: "The document now presented to me [Exhibit R-2] is certainly not the settlement which I initialled [sic] and which was submitted to me by Mr Lamar Williams in April 2019. That agreement provided for different settlement items, i.e. return of 50% of the deposit by ABG to PFN, which was in line with the negotiation."

285. The question thus arises is whether this document can be deemed to represent a settlement agreement entered into by PFN.

286. The Sole Arbitrator finds that it does not, as the document was not signed by two members of PFN's Management Board., who could lawfully engage PFN's responsibility.

287. Indeed, as shown by the Excerpt from the Foundations Register for PFN,[205] the body empowered to represent PFN was its Management Board and authority to represent the entity rested with two members of the Management Board acting jointly:

| Box 1 – Body empowered to represent the entity | | | |
|---|---|---|---|
| Field no. and name | Entry no. | | Contents |
| | Entries | Deletions | |
| 1 | Body empowered to represent the entity | 1 | - | MANAGEMENT BOARD |
| 2 | Means of representation of the entity | 1 | - | AUTHORITY TO REPRESENT THE ENTITY RESTS WITH TWO MEMBERS OF THE MANAGEMENT BOARD ACTING JOINTLY |

288. Both Mr. Lubański's testimony[206] and other evidence in the record (contemporaneous to the PFN's and ABG's discussions) show that the document initialed by Mr. Lubański in April 2019 in New York City was not subsequently approved by PFN's Management Board. Indeed, in an email from August 2019, Mr. Lubański explained to Mr. Williams that a second signature from a member of PFN's Management Board could not be obtained and that PFN had a counteroffer for ABG:

> "We need to clear the he [sic] situation with Shaq's deposit. As I have mentioned before in order for this to work we need a signature on the agreement by 2 members of our board. Unfortunately we are unable to proceed with only mine.
> Recently there have been some changes on our board and we have a proposition – you wire as [sic] 100k back and 50k remains for Shaq as a recompense other commitments he could undertake on the date he was supposed to come to Poland.
> We are waiting for your feedback regarding our proposal."[207]

289. This counteroffer was not accepted by ABG. Therefore, no settlement agreement was ever entered into between PFN and ABG.

290. The Sole Arbitrator does not ascribe much weight to the substance of the settlement discussions between PFN and ABG. Parties to contracts can decide to enter into such agreements for a variety of reasons, including, among others, in

---

[205] Excerpt from the register of associations, other community and professional organizations, foundations and public health care facilities regarding PFN (Exhibit C-5).
[206] See, Lubański WS, at VIII.
[207] E-mail correspondence of 14-22 August 2019 (Exhibit C-16).

order to expedite various payments. In this instance, the reimbursement of at least some part of the Deposit would have been of interest to PFN, especially when compared to a potentially costly dispute. It is true that, before departing the Management Board, Mr. Lubański wrote a series of memoranda for his successor,[208] reflecting his personal view that PFN "did not fulfil its duties under the contract (i.e. provision of funds to guarantee Mr O'Neal's air travel within the deadline specified in the contract)".[209] However, as he testified at the Hearing,[210] Mr. Lubański is not a lawyer and does not have legal training. The Sole Arbitrator therefore does not ascribe much weight to Mr. Lubański's interpretation of the Appearance Engagement.

291. Consequently, the Sole Arbitrator finds that no settlement agreement was entered into by PFN and ABG. Therefore, ABG is required, and the Sole Arbitrator orders it to, reimburse PFN the Deposit, pursuant to the provisions of Articles 410 § 1 and 405 PCC.

292. The Sole Arbitrator will now determine whether Mr. Williams can be held liable towards PFN for the reimbursement of the Deposit, jointly and severally with ABG.

## 4. Whether Mr. Williams' liability for ABG's debts and liabilities can be engaged

### (i) Applicable law

293. Claimant argues that Mr. Williams' liability for ABG's debts and liabilities must be examined under Delaware law, as the law of incorporation of Respondent 1. The Sole Arbitrator agrees.

294. According to Article 21(1) of the ICC Rules ("Applicable Rules of Law"), in the absence of party agreement as to the rules of law to be applied to the merits of a dispute, the tribunal can apply the rules of law that it determines to be appropriate.

295. In the case *sub judice*, there is no agreement between the Parties as regards the rules of law that would apply to the issue of Mr. Williams' personal responsibility for ABG's debts and liabilities. The Sole Arbitrator can therefore apply the rules of law that she determines to be appropriate. The Sole Arbitrator considers that the laws of the State in which ABG has its registered office (*i.e.*, the law of the place of incorporation), which is the law that applies to ABG, should apply to the question of responsibility of ABG's members for the

---

[208] *See*, Mr. Robert Lubański's hand-over protocol dated 6 November 2019 – excerpt (Exhibit C-11); Mr. Robert Lubański's brief re cooperation with the firm Athlete Benefits dated 16 January 2020 (Exhibit C-12).
[209] Mr. Robert Lubański's hand-over protocol dated 6 November 2019 – excerpt (Exhibit C-11).
[210] *See*, Hearing Recording.

company's debts and liabilities. Indeed, by virtue of being incorporated in the State of Delaware, ABG is subject to Delaware law, including as regards issues of corporate governance. The question of the personal responsibility of an LLC's members for the company's debts and liabilities is an issue of corporate governance.

296. This solution also has the added advantage of corresponding to Claimant's expectation, and – the Sole Arbitrator considers – it is reasonable to assume would also correspond to the expectation of ABG and of its members.

297. According to §18-303(a) of the DLLC, the members of an LLC are not, as a rule, personally liable for the debts and liabilities of the LLC:

> "(a) Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company."[211]

298. However, Delaware courts (as well as other state and federal courts in the United States) have consistently held that, notwithstanding the above provisions of the DLLC, the personal liability of a member/manager of an LLC may be engaged under the equitable doctrine of piercing the corporate veil. For instance, in *Blair v. Infineon Tech*, the U.S. District Court for the District of Delaware described the doctrine in the following terms:

> "It is a general principle of corporate law 'deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries.' *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). In certain situations, however, the corporate veil can be pierced, as a tool of equity, to disregard the existence of a corporation and impose liability on the corporation's individual principals and their personal assets. *See, e.g., Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir.2002); Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1069 (3d Cir.1979).* The alter ego doctrine for piercing the corporate veil allows derivative liability to be placed upon a corporation's individuals. [...]
>
> 'In order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that, in all aspects of the business, the [ ] corporations actually functioned as a single entity and should be treated as such.' *Pearson v. Component Tech. Corp., 247 F.3d 471, 485 (3d Cir.2001).* An alter ego relationship may

[211] Delaware Limited Liability Company Act – extract (Exhibit CL-4).

arise where 'a corporate parent exercises complete domination and control over its subsidiary.' *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 266 (D.Del.1989). Various jurisdictions apply slightly different alter ego tests, but one of the 'most important differences [ ] seem[s] to reside largely in ... whether an element of fraudulent intent, inequitable conduct, or injustice is explicitly required [ ].' *Pearson,* 247 F.3d at 484 n. 2; *see also United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1093 (1st Cir.1992) (requiring only that 'the parent corporation ... acted in a blameworthy manner' for a finding of fraud in alter ego analysis); *Lumpkin v. Envirodyne Industries, Inc.,* 933 F.2d 449, 463 (7th Cir.1991) (requiring proof of fraud or injustice akin to intentional wrongdoing in its alter ego test). Whether or not the alter ego test requires an element of fraudulent intent "is demonstrably an inquiry into whether the ... corporation is little more than a legal fiction." 11 *Pearson,* 247 F.3d at 485. This court has required an element of fraudulent intent in its alter ego test, as well as the traditional requirement that the corporation and its subsidiaries operated as a single economic entity (the "single entity test"). 12 13 *Trevino v. Merscorp, Inc.,* 583 F.Supp.2d 521, 528 (D.Del.2008); *see also SRI Int'l, Inc. v. Internet Sec. Sys., Inc.,* Civ. No. 04–1199, 2005 WL 851126, at *3 (D.Del. Apr. 13, 2005). Under the single entity test, the Third Circuit has considered seven factors in determining whether a corporation operated as a single economic entity: (1) gross undercapitalization: (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate *471 records; and (7) whether the corporation is merely a facade. *United States v. Pisani,* 646 F.2d 83, 88 (3d Cir.1981) (approving the federal alter ego factors used by the 4th Circuit in *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 686–87 (1976)); *see also Trustees of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk,* 332 F.3d 188, 194 (3d Cir.2003). While the list of factors is not exhaustive and no single factor is dispositive, some combination is required, and an overall element of fraud, injustice, or unfairness must always be present. *Trevino,* 583 F.Supp.2d at 529 (citing *United States v. Golden Acres, Inc.,* 702 F.Supp. 1097, 1104 (D.Del.1988))."[212] [emphasis added]

299. In other words, under Delaware law, courts may pierce the corporate veil of a company if the following two conditions are met: (i) the corporation and its parent (shareholders or managers[213]) operate as a single economic entity (for instance, when the parent exercises complete domination and control over the subsidiary); and (ii) there is an element of fraud, injustice or unfairness if the corporate veil is not pierced.

---

[212] Blair v. Infineon Tech, AG, 720 F.Supp.2d 462, 469-71 (D. Del. 2010) (Exhibit CL-7).
[213] *See,* Int'l Fin. Serv. Corp. v. Chromas Tech. Canada, Inc., 356 F.3d 731, 735-36 (7th Cir. 2004) (Exhibit CL-5).

300. As regards the first condition, courts look to several factors, none of which are sufficient in isolation, in order to determine whether a parent and the subsidiary operate as a single economic entity: (i) gross undercapitalization of the corporate entity at issue; (ii) failure to observe corporate formalities; (iii) non-payment of dividends; (iv) insolvency of the corporation at issue; (v) siphoning of the corporation's funds by the dominant entity; (vi) absence of corporate records; and (vii) whether the corporation is merely a façade.[214]

301. As regards the second condition, Delaware courts have clarified that:

> "Corporate form will be disregarded and individuals will be held personally liable 'in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved.'"[215]

302. In other words, the corporate veil will be pierced if the legal separateness of the entity has been abused in order to commit fraud, breach the law or a contract, or if it is necessary to protect third parties against injury.

303. The Sole Arbitrator will now determine whether the corporate veil of ABG may be pierced so as to establish the personal liability of Mr. Williams. In doing so, it will first determine whether Mr. Williams completely dominated and controlled ABG such that it can be deemed that they operated as a single economic entity (*ii.*); and whether piercing the corporate veil is necessary in order to prevent fraud, injustice or unfairness (*iii.*).

### (ii) Whether Mr. Williams completely dominated ABG

304. At the outset, some terminological issues need to be addressed. In the Appearance Engagement, Mr. Williams identified himself as a "Partner" of ABG. However, according to its Certificate of Formation, which closely follows DLLC terminology, ABG is to be managed by its members:

> "**FIFTH**: Management of the limited liability company is vested in the member(s) in accordance with their ownership interests, unless this is varied by the operating agreement. A limited liability company may not assign, either wholly or partially, the right to participate in management without the written consent of all limited liability company member(s)."[216]

---

[214] *See also*, United States v. Golden Acres, Inc., 702 F.Supp. 1097, 1104 (D. Del. 1988) (Exhibit CL-10).
[215] Mason v. Network of Wilmington, Inc., et al., No. Civ.A. 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) (Exhibit CL-8).
[216] Certificate of formation of ABG (Exhibit C-6).

305. Nevertheless, it is clear from the record (and is shown below) that Mr. Williams was undoubtedly one of the managers of ABG and held himself out to PFN to have the power to represent ABG and to manage its contracts vis-à-vis third parties. Indeed, Mr. Williams was one of the signatories of the Appearance Engagement for ABG (together with Mr. Stevens). He also managed the Appearance Engagement's performance vis-à-vis PFN and the settlement discussions with PFN. The Sole Arbitrator thus finds that Mr. Williams was one of the members of ABG, within the meaning of ABG's Certificate of Formation and §18-303(a) of the DLLC.

306. The record also shows that Mr. Williams completely dominated ABG such that it can be inferred that ABG had no separate identity from that of Mr. Williams.

307. *First*, Mr. Williams was the only individual connected with ABG that ever interacted with PFN, both during the negotiation of the Appearance Engagement, as well as during the performance phase and the subsequent settlement discussions. As testified by Mr. Lubański, PFN only ever negotiated the Appearance Engagement with Mr. Williams, and ABG only appeared in the picture as a party to the contract at the execution stage. Mr. Lubański testified to never having met Mr. Stevens, the only other individual connected with ABG that is even mentioned in the record.[217] All the correspondence in the record exchanged by ABG with PFN with respect to the Appearance Engagement (its performance, renegotiation, the settlement discussions) emanated from Mr. Williams.

308. *Second*, the evidence in the record shows that ABG was grossly undercapitalized. ABG was constituted on 22 March 2018.[218] By June 2019, ABG had already ceased to be in good standing, and owed USD 1,210 in taxes and penalties.[219] This, despite having executed the Appearance Engagement and cashed in the USD 150,000 Deposit.

309. *Third*, the evidence that exists in the record shows a total disregard by Mr. Williams for ABG's corporate formalities and the fact that ABG was an empty shell, a mere façade for Mr. Williams.

310. Mr. Williams corresponded with PFN using what appeared to be his personal email addresses (lamardwilliams@me.com or lamardwilliams@aol.com).[220] At times, Mr. Williams attached to his signature the contact details of different

---

[217] Lubański WS, at II; Hearing Recording.
[218] Certificate of formation of ABG (Exhibit C-6).
[219] Printout from the website of Secretary of State regarding ABG (Exhibit C-18).
[220] *See*, E-mail correspondence of 12-15 November 2018 (Exhibit C-7); E-mail correspondence of 16 November – 17 December 2018 (Exhibit C-8); E-mail correspondence of 24 January – 26 February 2019 (Exhibit C-9); E-mail correspondence of 18 September – 7 October 2019 (Exhibit C-13); E-mail correspondence of 9-10 December 2019 (Exhibit C-14); E-mail correspondence of 26-28 November 2020 (Exhibit C-15); E-mail correspondence of [...] August 2019 (Exhibit C-16); E-mail correspondence of 26-27 March 2019 (Exhibit C-17).

companies (Tanton Group CPAs, LLP[221] or Tanton Grubman CPAs LLP[222]). At no time did Mr. Williams use an email address that was connected to ABG or even sign with ABG's coordinates.

311. Moreover, Mr. Williams consistently refused to provide the physical address of ABG, and his own representatives could not distinguish between the address of ABG and that of Mr. Williams. In this respect, the Sole Arbitrator notes that the Appearance Engagement does not include any contact details for ABG. In February 2019, Claimant's counsel at the time emailed Mr. Williams' representatives at Rubenstein PR inquiring about ABG's postal address and were promised, in return, the correct address of Mr. Williams:

> "Dear Katrhyn – I hope all is well.
> Can you please advise that it [sic] <u>postal address of Athlete Benefits Group LLC</u>. The Foundation sent correspondence via courier mail to them and it was apparently returned. We would very much appreciate receiving this information.
> [...]"

> "Dear Oskar,
> Thank you for your email. I am confirming <u>Lamar's correct address</u> for correspondence and will provide immediately."[223]
> [emphasis added]

312. Claimant encountered the same difficulties in learning ABG's true postal address in October 2019. In an email of 9 December 2019 from PFN to Mr. Williams, PFN stated:

> "So please find the formal letter on behalf on [sic] the Polish National Foundation attached to this email (a letter sent in October to Athlete Benefits was not received at the address indicated)."[224]

313. As the evidence above shows, correspondence to ABG's official address was not accepted.

314. The fact that ABG was nothing more than an empty shell and a façade for Mr. Williams is also confirmed by the Answer and Mr. Williams' email to the Sole Arbitrator dated 27 April 2021. As explained in Section VII.C.3 above, despite signing the Answer solely with his name, Mr. Williams' chosen wording made it clear that he was also speaking for someone else:

> "[...] the Polish National Foundation, due to their delay to execute <u>our</u> agreement [...]"

---

[221] *See*, E-mail correspondence of 26-27 March 2019 (Exhibit C-17).
[222] *See*, E-mail correspondence of 18 September – 7 October 2019 (Exhibit C-13).
[223] E-mail correspondence of 26 February 2019 (Exhibit C-10).
[224] E-mail correspondence of 9-10 December 2019 (Exhibit C-14).



> "We reminded all parties several times that in order to get Mr. O'Neal to make an international trip and appearance on such short notice that we would need to execute this agreement swiftly and quickly."

> "After the Polish National Foundation failed to meet our original dates of October 6-11, 2018, we, again, stressed the urgency [...]"

> "Our client was still willing to come to Warsaw at a later date."

> "We had several reasons to void the contract based on our agreement" [emphasis added]

315. As the above excerpts make clear, Mr. Williams used the plurals "we" and "ours" when discussing ABG's rights and obligations under the Appearance Engagement. In other words, either Mr. Williams perceived himself to be an additional party to the Appearance Engagement or saw no difference between himself and ABG as regards the Appearance Engagement.

316. In his email to the Sole Arbitrator dated 27 April 2021, Mr. Williams again used the plural "we" to argue that Claimant's claims had no merit due to the alleged settlement agreement (Exhibit R-2):

> "Please be advised that we duly and fully object to this arbitration. As established in the stettlement and release agreement executed by the foundations president submitted in our Answer on February 25. That this matter can NOT be arbitrated. Please review their signed settlement and release agreement. .

> Thank you,

> Respectfully
> Lamar D Williams" [emphasis added]

317. The Sole Arbitrator has already concluded that Exhibit R-2 does not reflect the substance of the discussions between Mr. Williams and Mr. Lubański in April 2019 in New York City. Nevertheless, even if Exhibit R-2 had reflected such discussions (*quod non*), the settlement agreement would have been concluded between ABG and PFN, and not between Mr. Williams and PFN. That Mr. Williams chose to use the plural "we" in an email written in his own name illustrates that, for Mr. Williams, there was no distinction to be made between ABG and himself. Or, put differently, that ABG was a mere façade for Mr. Williams.

318. *Fourth*, there is a concerning lack of corporate records for ABG. The printout from the website of the Delaware Secretary of State shows that ABG only made



one filing, its certificate of formation dated 22 March 2018.[225] No tax filings are recorded, and no other corporate filings are mentioned for that matter:

| Seq | Description | No. of pages | Filing Date (mm/dd/yyyy) | Filing Time | Effective Date (mm/dd/yyyy) |
|---|---|---|---|---|---|
| 1 | LLC | 1 | 3/22/2018 | 4:06 PM | 3/22/2018 |

319. The certificate of formation of ABG is extremely vague as to the types of activities that ABG could be engaged in and does not mention who its members were:

> "**THIRD:** The purpose of the limited liability company shall be to engage in any lawful act or activity for which a limited liability company may be formed under the Limited Liability Company law of the State of Delaware.
>
> [...]
>
> **FIFTH**: Management of the limited liability company is vested in the member(s) in accordance with their ownership interests, unless this is varied by the operating agreement. A limited liability company may not assign, either wholly or partially, the right to participate in management without the written consent of all limited liability company member(s)."[226]

320. The elements above clearly show that ABG was a company in name only. It had no working address, no email address, no discernible activity, was severely underfunded, made no tax or corporate filings, ceased to be in good standing less than 18 months after being constituted, and appeared to only have one active member, Mr. Williams. For his part, Mr. Williams acted as if ABG and himself were one and the same as regards the Appearance Engagement. This is how his own representatives perceived him to be as well. While individually these elements would have been insufficient, when viewed collectively, they paint the picture of ABG as an empty shell under the complete and total domination of Mr. Williams.

> *(iii)    Whether the interest of preventing fraud or other injustice require that ABG's corporate veil be pierced*

321. In *Blair v. Infineon*, the Delaware district court clarified that:

[225] Printout from the website of Secretary of State regarding ABG (Exhibit C-18).
[226] Certificate of formation of ABG (Exhibit C-6).



"Under Delaware law, <u>the requisite injustice or unfairness is not that the parent corporation committed an actual fraud or sham but just 'something that is similar in nature to fraud or a sham.'</u> *In re Foxmeyer*, 290 B.R. at 236."[227] [emphasis added]

322. In *Mason v. Network of Wilmington*, the Delaware chancery court held that the requirement was satisfied "when such matters as fraud, contravention of law or contract, public wrong or where equitable consideration among members of the corporation require it, are involved". [228]

323. In the case under reference, the Sole Arbitrator considers that the parent – Mr. Williams – has committed something similar in nature to fraud or a sham, and that good faith requires that ABG's corporate veil be pierced.

324. In this respect, the Sole Arbitrator recalls that: (i) Mr. Williams introduced ABG into the framework of the Appearance Engagement right at the execution of the contract, with no mention having been made of this entity before;[229] (ii) entered into settlement discussions for ABG with PFN, agreeing to the return of 50% of the Deposit, and then falsely represented to PFN that ABG had returned such amount; (iii) subsequently falsely represented to PFN that a settlement agreement had been entered into, whereby PFN agreed for ABG to forfeit the entirety of the Deposit, in order to escape liability; and (iv) attempted to make use of an inauthentic settlement agreement (Exhibit R-2) in these arbitration proceedings, again, in order to escape liability.

325. Throughout all this time, ABG, the actual signatory to the Appearance Engagement, ceased to be in good standing (after less than 18 months of existence and despite at least one significant payment made by PFN). It is unclear what happened with the funds wired by PFN to ABG as Deposit.

326. Moreover, ABG's registered address ceased to be valid. As the Sole Arbitrator informed Counsel on 4 June 2021, DHL's attempted delivery at ABG's official registered address of Respondent 1, situated at 1013 Centre Road, Suite 403S, Wilmington, Delaware 19805, United States of America, could not be effected as the individual at that address informed DHL that it was no longer representing ABG. It is unclear at what other physical address ABG can be reached, especially considering that Mr. Williams consistently refused to provide this information to PFN, as shown in the subsection above.

327. In other words, PFN's difficulties in obtaining the reimbursement of the Deposit are entirely of Mr. Williams' own doing and part of his efforts to escape

---

[227] Blair v. Infineon Tech, AG, 720 F.Supp.2d 462, 471 (D. Del. 2010) (Exhibit CL-7).
[228] Mason v. Network of Wilmington, Inc., et al., No. Civ.A. 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) (Exhibit CL-8).
[229] *See*, Hearing recording and Mr. Lubański's testimony therein, according to which ABG appeared in the discussions only when the time came to sign the Appearance Engagement.

liability. Mr. Williams introduced ABG as a party to the Appearance Engagement and then consistently acted as if he and ABG were one and the same. During this time, ABG ceased to be in good standing and to have a working address. Moreover, Mr. Williams did not hesitate to make false representations and to use inauthentic evidence in these proceedings in order to evade liability. Mr. Williams should not be rewarded for this conduct by enforcing now the legal separateness of ABG, when Mr. Williams consistently disregarded such separateness before, during and after the Appearance Engagement. Conversely, PFN should not be punished for having trusted that ABG would be more than an empty shell and for trusting Mr. Williams to run ABG as a normal company.

328. For all the reasons set out above, the Sole Arbitrator pierces the corporate veil of ABG and holds Mr. Williams to be jointly and severally liable with ABG for the reimbursement of the Deposit to PFN.[230]

## X. INTEREST

### A. Claimant's position

329. Claimant requests as damages the Deposit, as well as the applicable statutory interest rate for delay (Article 481 § 1-2 and 2[4] PCC[231]) from 17 December 2019 until the date of payment, as follows:

> "(i) from 17 December 2019 to 17 March 2020 – along with an interest rate of 7% per annum;
> (ii) from 18 March 2020 to 8 April 2020 – along with an interest rate of 6,5% per annum;
> (iii) from 9 April 2020 to 28 May 2020 – along with an interest rate of 6% per annum;
> (iv) from 29 May 2020 to 6 August 2021 – along with an interest rate of 5,6% per annum;
> (v) from 7 August 2021 until the date of payment – along with a statutory interest for delay (Article 481 § 1 PCC)."[232]

---

[230] Having decided that Mr. Williams' personal responsibility for ABG's debts and liabilities can be engaged by virtue of the doctrine of piercing the corporate veil, the Sole Arbitrator does not deem it necessary to examine if Mr. Williams' liability for the same could also have been engaged in tort.

[231] These legal provisions read as follows:
"Article 481 § 1. If the debtor delays in rendering pecuniary performance, the creditor may demand interest for the time of delay, even if he suffered no damage and even if the delay was the result of the circumstances which the debtor is not liable for.
§ 2. Unless the interest rate for the delay has been determined, statutory interest for the delay is due at the rate equal to the guiding rate of the National Bank of Poland and 5,5 percentage points. If, however, a receivable accrues interest at a higher rate, the creditor may demand interest for the delay at the higher rate.
(...)
§ 2[4]. The Minister of Justice shall announce, by way of a regulation, in the Official Journal of the Republic of Poland "Monitor Polski" statutory interest rate for the delay." (Claimant's [...]ugust 2021 Submission, at 70).

330. As regards its claim for interest, Claimant relies on Article 455 PCC, which provides:

> "If the time limit for the performance has not been specified or if it does not result from the nature of the obligation, the performance shall be rendered immediately after the debtor has been called upon to render it."[233]

331. Claimant specifies that the reference to "immediately" in the text above should be understood to mean 7 days. Claimant argues that Respondents 1 and 2 became aware of PFN's call for payment on 9 December 2019, when PFN sent an email to this effect.[234] Taking into account a seven-day timeline for payment, Claimant contends that interest became due as of 17 December 2019.[235]

## B. Respondents 1 and 2's position

332. Despite having had the opportunity to do so, Respondents 1 and 2 did not specifically comment on the quantification of Claimant's claims, or in particular, on Claimant's claim for interest.

## C. The Sole Arbitrator's decision

333. The Sole Arbitrator has decided in Section IX.C above that Respondents 1 and 2 are jointly and severally liable to Claimant for the payment of USD 150,000, consisting of the reimbursement of the Deposit.

334. The Sole Arbitrator notes that, despite being called by PFN to return the Deposit on 9 December 2019, ABG and Mr. Williams did not do so. Consequently, based on Article 481 § 1 PCC ("If the debtor delays in rendering pecuniary performance, the creditor may demand interest for the time of delay, even if he suffered no damage and even if the delay was the result of the circumstances which the debtor is not liable for"), PFN is entitled to interest on the above sum. Pursuant to Article 481 § 2 PCC, the applicable interest rate is the statutory interest rate, which is equal to the reference rate by the National Bank of Poland plus 5.5 percentage points.

335. The Sole Arbitrator considers that Claimant's request for interest, which would start to run 7 days after its request for payment, is reasonable.

---

[232] Claimant's 6 August 2021 Submission, at 74.
[233] SoC, at 93.
[234] E-mail correspondence of 9-10 December 2019 (Exhibit C-14).
[235] SoC, at 93, 94.



336. On the basis of Article 481 § 1-2 and 2$^4$ PCC, the Sole Arbitrator holds that Claimant is entitled to the applicable statutory interest rates for delay on the amount of the Deposit (USD 150,000), from 17 December 2019 until the date of payment, as follows:

(i) from 17 December 2019 to 17 March 2020 – an interest rate of 7% per annum;[236]

(ii) from 18 March 2020 to 8 April 2020 – an interest rate of 6,5% per annum;[237]

(iii) from 9 April 2020 to 28 May 2020 – an interest rate of 6% per annum;[238]

(iv) from 29 May 2020 to 6 August 2021 – an interest rate of 5,6% per annum;[239]

(v) from 7 August 2021 – the statutory interest for delay (Article 481 § 1 PCC).

## XI. COSTS

### A. Claimant's position

337. Claimant requests that the Sole Arbitrator order Respondents to reimburse it the amounts of USD 31,965.00, PLN 282,490.67 and EUR 1,200 as costs of these proceedings, broken down as follows:

(i) payments made towards the advance on costs: USD 26,000;
(ii) legal representation costs: PLN 281,260.67 (Gessel law firm) and USD 4,190 (Tarter Krinsky & Drogin LLP for some U.S. law matters);
(iii) legal investigation costs: USD 1,775.00;
(iv) interpretation costs: PLN 1,230;
(v) virtual hearing costs: EUR 1,200.[240]

338. Claimant also requests interest on the above amounts, consisting of the statutory interest rate for delay (Article 481 § 1 PCC), calculated from the day following the issuance of the Award and until the date of payment.[241]

---

[236] *See*, Minister of Justice's announcement of 7 January 2016, "Monitor Polski", the Official Journal of the Republic of Poland of 12 January 2016 (item 47) (Exhibit C-19).
[237] *See*, Minister of Justice's announcement of 14 July 2020, "Monitor Polski", the Official Journal of the Republic of Poland of 16 July 2020 (item 627) (Exhibit C-20).
[238] *Id.*
[239] *Id.*
[240] C-SC, at 6-23, 37; Claimant's email to the Sole Arbitrator, 3 October 2021.
[241] C-SC, at 37, 38.



339. Claimant requests the Sole Arbitrator to bear in mind Respondents' conduct both prior to, and during, these arbitration proceedings, when deciding on costs. Claimant argues in particular that: (i) Respondents did not act as loyal business partners; (ii) Respondents made false representations concerning the reimbursement of 50% of the Deposit, only to then rely on an alleged settlement agreement that lacks authenticity; (iii) Respondents failed to cooperate with Claimant and the Sole Arbitrator in order to make sure that these proceedings were conducted efficiently.[242]

340. Claimant considers that the costs it incurred in prosecuting this case, whilst high, are nevertheless justified by the conduct of Respondents. Moreover, the dispute involved the analysis of complex legal issues (such as piercing the corporate veil of U.S.-based companies), investigations in order to identify Respondents' contact details and several complex evidentiary issues. All of these factors resulted in an accumulation of costs, which are fully justified.[243]

**B.      Respondents 1 and 2's position**

341. Despite having had the opportunity to do so, Respondents 1 and 2 did not put forward their own submissions on the issue of costs.

**C.      The Sole Arbitrator's decision**

342. Article 38 ("Decision as to the Costs of the Arbitration") of the ICC Rules reads as follows in relevant part:

> "1. The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scales in force at the time of the commencement of the arbitration, as well as the fees and expenses of any experts appointed by the arbitral tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.
>
> [...]
>
> 4 The final award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.
>
> 5 In making decisions as to costs, the arbitral tribunal may take into account such circumstances as it considers relevant, including the extent to which each party has conducted the arbitration in an expeditious and cost-effective manner."

---

[242] *Id.*, at 26-32.
[243] *Id.*, at 33-36.



343. Article 38 of the ICC Rules confers considerable discretion on the Sole Arbitrator when deciding on costs.

344. The Sole Arbitrator agrees with Claimant that her decision on costs should be informed by the circumstances of the present case. In particular, as explained below, the Sole Arbitrator has considered: the Parties' relative success and failure in the outcome of these proceedings; the Parties' conduct during these proceedings; the complexity of the dispute; and the amount in dispute.

345. In this respect, the Sole Arbitrator notes that Claimant has won on liability and quantum, but has partially lost on jurisdiction (*i.e.*, with respect to Respondent 3). For this reason, the Sole Arbitrator is of the view that an order requiring Respondents 1 and 2 to reimburse Claimant's full costs would be inappropriate.

346. Another relevant circumstance is the behavior of the Parties during these proceedings. As Claimant points out, Respondents 1 and 2 have only partially engaged with the Sole Arbitrator, which drove up the costs of these proceedings (most notably, in terms of courier costs). Moreover, by submitting Exhibit R-2 into the record of this arbitration, a document which is inauthentic, Respondents 1 and 2 have further increased the costs of these proceedings, by requiring briefing on this issue and the organization of the Hearing. These circumstances justify higher costs on the side of Claimant.

347. A further circumstance that is material to the Sole Arbitrator's decision on costs is whether the Parties' costs are reasonable considering the size and complexity of the case. The fees and expenses incurred by Claimant amount to of USD 31,965.00 (of which USD 26,000 were the advances on costs, and USD 5,965 were legal representation and investigation costs), PLN 282,490.67 and EUR 1,200. The Sole Arbitrator agrees with Claimant that its costs incurred in prosecuting its claims are high, especially when compared with the amount in dispute (USD 150,000). However, the Sole Arbitrator agrees with Claimant that, in spite of the low amount in dispute, this case has raised a number of complex legal issues, which necessarily drove up the costs of legal representation: (i) addressing falsified evidence; (ii) addressing the issue of the extension of the arbitration agreement to a non-signatory; (iii) addressing the issue of piercing the corporate veil under U.S. law. While such matters, especially when coupled with the conduct of Respondents 1 and 2, do justify higher legal representation costs for Claimant, the Sole Arbitrator nevertheless considers that Claimant's costs were higher than average for a case of a comparable size and complexity.

348. As regards the costs of the arbitration, the Sole Arbitrator notes that they were fixed at USD 26,000 by the ICC Court at its session of 14 October 2021. Claimant has paid the entirety of the advance on costs. Considering the



circumstances described above, the Sole Arbitrator orders Respondents 1 and 2 to reimburse Claimant the costs of these proceedings, *i.e.*, USD 26,000.

349. As regards Claimant's other costs, taking into account the fact that Claimant partially lost on jurisdiction and that its costs are higher than average for cases of a comparable size (as Claimant itself admits), the Sole Arbitrator orders Respondents 1 and 2 to reimburse Claimant 70% of its other costs (*i.e.*, USD 4,175.5,[244] PLN 197,743.47[245] and EUR 840[246]).

350. On the basis of Article 481 § 1 PCC, the Sole Arbitrator also awards Claimant interest, amounting to the statutory interest rate, on the above sums, calculated from the day following the issuance of the Award and until the date of full payment.

## XII. DECISION

351. For the reasons outlined above, the Sole Arbitrator decides as follows:

(i) finds that she has jurisdiction over Respondent 1 and Respondent 2, but she does not have jurisdiction over Respondent 3;

(ii) pierces the corporate veil of Respondent 1 and orders Respondents 1 and 2, jointly and severally, to pay to Claimant the amount of USD 150,000 as reimbursement of the Deposit;

(iii) orders Respondents 1 and 2 to pay the applicable statutory interest rates for delay on the above amount, from 17 December 2019 until the date of full payment, as follows:

    i. from 17 December 2019 to 17 March 2020 – an interest rate of 7% per annum;

    ii. from 18 March 2020 to 8 April 2020 – an interest rate of 6,5% per annum;

    iii. from 9 April 2020 to 28 May 2020 – an interest rate of 6% per annum;

    iv. from 29 May 2020 to 6 August 2021 – an interest rate of 5,6% per annum;

---

[244] 70% of USD 5,965 (incurred as legal representation and investigation costs).
[245] 70% of PLN 282,490.67 (incurred as legal representation and interpretation costs).
[246] 70% of EUR 1200 (incurred as virtual hearing costs).

82



> v. from 7 August 2021 – the statutory interest for delay (Article 481 § 1 PCC).

(iv) orders Respondents 1 and 2 to reimburse Claimant the amount of USD 26,000 as costs of the arbitration, as well as the amount of USD 4,175.5, PLN 197,743.47 and EUR 840, representing 70% of Claimant's legal representation costs;

(v) awards Claimant interest, amounting to the statutory interest rate for delay, on the above sum set out in (iv), calculated from the day following the issuance of the Final Award and until the date of full payment (Article 481 § 1 PCC); and

(vi) dismisses all other requests and claims.

Annexes I to X form an integral part of this Final Award.

Place of arbitration: Warsaw, Poland

Date: 20.10.2021

Iuliana Iancu
Sole Arbitrator

CERTIFIED TRUE COPY OF THE ORIGINAL
PARIS, 17105/2022

Ana SERRA E MOURA
Deputy Secretary General
ICC International Court of Arbitration

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE



# ANNEX I

CHAMBRE DE COMMERCE INTERNATIONALE

COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION

INTERNATIONAL CHAMBER OF COMMERCE



# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE *

AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL
T: +32.(0)2.290.39.00 · F: +32.(0)2.290.39.39 · info@hvdb.com · www.hvdb.com
TVA/BTW/VAT : BE 0475.333.058

ISUNAL PAUL LEFEBVRE [1-2]
Avocat à la Cour de cassation
Advocaat bij het Hof van Cassatie
BERNARD HANOTIAU [1-2-3]
ALBERT JAN VAN DEN BERG [1-2-4]
PASCAL HOLLANDER [1-2]
NICUSIA HASSLER [3-5]
PIERRE VERMEIRE [2]
MAARTEN DRAYE [2]
IULIANA IANCU [2-6]

MAGALI SERVAIS
EMILY HAY [2-8]

GLADYS BAGASIN [7]
IRIS RAYNARD [2-11]
TARUNIMA VIJRA [9]
DIKA OBIADRASSI BETTIOUI
JUAN CAMILO JIMÉNEZ-VALENCIA [2-10]
PRATYUSH PANJWANI [9]
BENJAMIN JESURAN [11]
LUDMILLA DE POTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE FUMIERE
FERNANDO GUTIERREZ [17]
PAULINA BRZEZINSKA
BENJAMIN HOLLANDER

Avocats
Advocaten

## Respondents

ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com
ldw@tantongrpcpas.com
markstevensentinc@yahoo.com

Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com

Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

Brussels, 26 April 2021

**ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)**

Dear Colleagues,

It is my pleasure to be sitting in this arbitration and look forward to working together with the Parties in these proceedings.

I note that the present proceedings are conducted under Appendix VI of the 2017 ICC Arbitration Rules (the "Expedited Procedure Provisions").

1 Associés de la S.C.R.L. HANOTIAU & VAN DEN BERG, société civile à forme commerciale - RPM, Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n° 0475.333.058 - 2 SRL/ BV - 3 Egalement membre du barreau de Paris / Ook advocaat bij de balie te Parijs - 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel - 5 Membre du barreau de Cologne inscrit à Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel - 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven te Brussel - 7 Membre des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balies van de Filippijnen en New York ingeschreven te Brussel - 8 Sollicitor admise devant la Cour Suprême de New South Wales inscrite à Bruxelles / Solllicitor beëdigd voor de Supreme Court van New South Wales ingeschreven te Brussel - 9 Membre du barreau d'Inde (New Delhi) inscrit à Bruxelles / Advocaat bij de balie van India (New Delhi) ingeschreven te Brussel - 10 Membre du barreau de Colombie inscrit à Bruxelles / Advocaat bij de balie van Colombia ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie te Parijs ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel

* Maxwell Chambers – 32 Maxwell Road, # 03-01 Singapore 069115 – Tel. + 65 6408 3343 – E-mail: singapore@hvdb.com

COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
CHAMBRE DE COMMERCE INTERNATIONALE
INTERNATIONAL CHAMBER OF COMMERCE

Pursuant to Article 3(3) of the Expedited Procedure Provisions, the case management conference (the "CMC") convened pursuant to Article 24 of the Rules "shall take place no later than 15 days after the date on which the file was transmitted to the arbitral tribunal". I confirm that the case file was transmitted to me by the ICC Secretariat on Friday, 23 April 2021. In light of the COVID 19 pandemic and the strict deadline within which the CMC must be organized, I recommend that **the CMC be organized remotely, via videoconference**.

In order to facilitate the speedy organization of the CMC, I append to the present email a document titled "Availabilities for CMC". **I hereby invite the Parties to fill in the table with their respective availabilities and return it to the Sole Arbitrator and the other Parties at the latest by Tuesday, 27 April 2021, 22:00 CET**. Upon receipt of the Parties' availabilities, I will fix the date and time of the CMC, and will be circulating connection details.

I also append for the Parties' review and comment a draft Procedural Order No. 1. The Parties are requested to:
- i. make any observations they may have on the draft Procedural Order No. 1 in tracked changes;
- ii. try and agree on a procedural calendar and other matters indicated in the drafts;
- iii. revert to the Sole Arbitrator on these matters as well as any other matter they wish to raise at the CMC **at the latest one day before the CMC**.

I draw the Parties' attention to the following. Pursuant to Article 4(1) of the Expedited Procedure Provisions, the final award must be rendered within 6 months of the CMC. In setting forth their proposals for the procedural calendar, the Parties should bear in mind that the present proceedings must be conducted expeditiously.

I trust that the Parties will do their utmost to cooperate in good faith with the efficient and smooth organization of these proceedings, and look forward to receiving their filled in Table of Availabilities.

With best regards,

Iuliana Iancu

Iuliana IANCU
Partner
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

### ICC Case No. 25952/HBH (EPP)

POLSKA FUNDACJA NARODOWA (Poland)

**vs/**

**1.** ATHLETE BENEFITS GROUP, LLC (U.S.A.)
**2.** Lamar D. Williams (U.S.A.)
**3.** Mark Stevens (U.S.A.)

| Date | Sole Arbitrator | Claimant | Respondents |
|---|---|---|---|
| Tuesday, 27 April | All day (CET) | | |
| Wednesday, 28 April | All day (CET) | | |
| Thursday, 29 April | From 11:00 until 16:45 (CET) | | |
| Friday, 30 April | All day (CET) | | |
| Saturday, 1 May | All day (CET) | | |
| Sunday, 2 May | All day (CET) | | |
| Monday, 3 May | All day (CET) | | |
| Tuesday, 4 May | From 11:00 (CET) | | |
| Wednesday, 5 May | All day (CET) | | |
| Thursday, 6 May | All day (CET) | | |
| Friday, 7 May | All day (CET) | | |
| Saturday, 8 May | All day (CET) | | |



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

ICC ARBITRATION No. 25952/HBH (EPP)

BETWEEN:

POLSKA FUNDACJA NARODOWA
(POLAND)

VS/

1. ATHLETE BENEFITS GROUP, LLC
(U.S.A.)

2. LAMAR D. WILLIAMS
(U.S.A.)

3. MARK STEVENS
(U.S.A.)

[DRAFT] PROCEDURAL ORDER No. 1
[DATE]



# Table of Contents

Table of Contents ................................................................................................................ 2

I.      Names and addresses of the Parties .......................................................................... 3

    A.   Claimant .................................................................................................................. 3

    B.   Respondents ............................................................................................................. 3

II.     The Sole Arbitrator ..................................................................................................... 4

III.    Notifications and communications ............................................................................. 4

IV.     The arbitration clause and the procedure to date ....................................................... 6

V.      Place of arbitration ..................................................................................................... 8

VI.     Applicable substantive law ........................................................................................ 8

VII.    Language of the arbitration ........................................................................................ 8

VIII.   Applicable procedural rules ....................................................................................... 8

IX.     Procedural timetable ................................................................................................... 9

X.      Written submissions ................................................................................................. 10

XI.     Documentary evidence ............................................................................................. 10

XII.    Evidence of fact witnesses ....................................................................................... 13

XIII.   Evidence of expert witnesses ................................................................................... 14

XIV.    Hearing ..................................................................................................................... 15

XV.     Translations and interpretation ................................................................................ 16

XVI.    VAT .......................................................................................................................... 17

XVII.   Data protection and privacy regulations .................................................................. 17

XVIII.  Amendments ............................................................................................................ 17

Annex 1 to Procedural Order No. 1 ...................................................................................... 18

Annex 2 to Procedural Order No. 1 ...................................................................................... 19



2



## I. Names and addresses of the Parties

### A. Claimant

1. **POLSKA FUNDACJA NARODOWA**, a foundation incorporated and existing under the laws of Poland, with its statutory seat in Warsaw (Poland), at the address Aleja Jana Pawla II 12, 00-124 Warsaw, entered into the Register of Associations, Other Social and Professional Organizations, Foundations and Public Health Care Institutions of the Polish National Court Register under the number 0000655791, with VAT registration number PL5252691880,

hereinafter referred to as **"Claimant"** or **"PFN"**;

assisted and represented in this arbitration by Dr. Beata Gessel-Kalinowska vel Kalisz, Ms. Joanna Kisielińska-Garncarek and Ms. Barbara Tomczyk of GESSEL ATTORNEYS AT LAW, Sienna 39, 00-121 Warsaw, Poland.

### B. Respondents

2. **ATHLETE BENEFITS GROUP, LLC**, a company incorporated and existing under the laws of the United Stated of America, with its registered office at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America,

hereinafter referred to as **"Respondent 1"** or **"ABG"**;

3. **MR. LAMAR D. WILLIAMS**, a [United States] national, residing at [2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America OR TANTON GROUP CPAs, LLP, 780 Third Avenue – Suite 701, New York, NY 10017, United States of America]

hereinafter referred to as **"Respondent 2"**,

4. **MR. MARK STEVENS**, a [United States] national, residing at [2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America],

hereinafter referred to as **"Respondent 3"**, and jointly with Respondents 1 and 2 as **"Respondents"**;

5. Claimant and Respondents shall jointly be referred to as the **"Parties"**.



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

## II. The Sole Arbitrator

6. On 22 April 2021, the International Court of Arbitration of the International Chamber of Commerce (the "**ICC Court**") directly appointed Ms. Iuliana Iancu as Sole Arbitrator pursuant to Article 13(4)(a) of the 2017 ICC Rules of Arbitration (the "**ICC Rules**"). The Sole Arbitrator's contact details are the following:

   Ms. Iuliana Iancu
   HANOTIAU & VAN DEN BERG
   IT Tower, avenue Louise, 480/9
   1050 Brussels
   BELGIUM

   Tel:     + 32 2 290 39 00
   Email:   iuliana.iancu@hvdb.com

7. By issuing this Procedural Order, the Sole Arbitrator confirms the acceptance of her appointment.

8. In accordance with Article 41 of the ICC Rules, the Sole Arbitrator will not be liable to any Party whatsoever for any act or omission in connection with these arbitration proceedings, except to the extent such limitation of liability is prohibited by applicable law.

## III. Notifications and communications

9. All written notifications and communications arising in the course of this arbitration shall be deemed to have been validly made to each Party when they have been transmitted to:

   -   For Claimant:

   Ms. Beata Gessel-Kalinowska vel Kalisz
   Ms. Joanna Kisielińska-Garncarek
   Ms. Barbara Tomczyk
   GESSEL ATTORNEYS AT LAW
   Sienna 39
   00-121 Warsaw
   Poland

   Tel: +48 22 318 6901
   +48 22 318 6931

   Email: b.gessel@gessel.pl
   j.kisielinska@gessel.pl
   b.tomczyk@gessel.pl



- For Respondents:

  Respondent 1
  ATHLETE BENEFITS GROUP, LLC
  2451 Oak Grove Heights
  Decatur, Georgia 30033
  United States of America
  Email: lamardwilliams@me.com
        lamardwilliams@aol.com
        ldw@tantongrpcpas.com
        markstevensentinc@yahoo.com

  Respondent 2 (address 1)
  Mr. Lamar D. Williams
  ATHLETE BENEFITS GROUP, LLC
  2451 Oak Grove Heights
  Decatur, Georgia 30033
  United States of America
  Email: lamardwilliams@me.com
        lamardwilliams@aol.com

  Respondent 2 (address 2)
  Mr. Lamar D. Williams
  TANTON GROUP CPAs, LLP
  Accountants and Consultants
  780 Third Avenue-Suite 701
  New York, NY 10017
  United States of America
  Email: ldw@tantongrpcpas.com

  Respondent 3
  Mr. Mark Stevens
  ATHLETE BENEFITS GROUP, LLC
  2451 Oak Grove Heights
  Decatur, Georgia 30033
  United States of America
  Email: markstevensentinc@yahoo.com

10. The case management team of the Secretariat of the ICC Court (the "**Secretariat**") in charge of this arbitration is supervised by Ms. Hjördís Birna Hjartardóttir, Counsel, whose contact details are as follows:

  - Ms. Hjördís Birna Hjartardóttir
    International Chamber of Commerce



International Court of Arbitration
33-43 avenue du Président Wilson
75116 Paris
France

Tel:             +33(0)1.49.53.30.90
Email:           ica7@iccwbo.org

11. All notifications and communications concerning this arbitration shall be sent by email to the addresses referred to in this Section III and in Section II. All communications and notifications sent to the Sole Arbitrator by one Party shall be sent simultaneously and under the same format to the other Party and to the Secretariat, and vice versa.

12. Any change of name, description, address, telephone, email address shall immediately be notified by the Party or the Sole Arbitrator to all other addressees referred to in this Section III and in Section II. Failing such notification, notifications and communications sent in accordance with this Section III and Section II shall be deemed valid.

## IV. The arbitration clause and the procedure to date

13. On 29 December 2020, Claimant submitted a Request for Arbitration (the **"Request"**) to the Secretariat pursuant to the arbitration clause contained in the article titled "Final Provisions" contained in the Appearance Engagement, dated 30 October 2018 and entered into between PFN and ABG (the **"Agreement"**). This provision is transcribed in full below:

> "Final Provisions
>
> Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration will be Warsaw, Poland and the language of arbitration will be English."[1]

14. Pursuant to Article 4(2) of the ICC Rules, the arbitration is deemed to have commenced on 29 December 2020.

15. In its Request, Claimant requested that the dispute be decided by a sole arbitrator.

---

[1] Exhibit C-1.

16. On 14 January 2021, Claimant confirmed that it agreed to the notification of the Request by email to Respondents, further to the ICC's general communication dated 17 March 2020.

17. On 25 January 2021, the Secretariat notified Respondents of the filing of the Request and sent them copies thereof, as well as of the appended exhibits. The Secretariat invited Respondents to submit their answer to the Request and to comment on Claimant's proposition regarding a sole arbitrator within 30 days.

18. On the same date, the Secretariat informed the Parties that the ICC Rules included Expedited Procedure Provisions, which could potentially apply if the amount in dispute did not exceed USD 2 million (subject to the conditions set forth in Article 30(3) of the ICC Rules). The Secretariat informed the Parties that they could also agree to the application of the Expedited Procedure Provisions in all other cases.

19. On 11 February 2021, the Secretariat informed the Parties that, according to the electronic delivery receipt, Respondents had received the Request and the appended exhibits on 26 January 2021. The Secretariat informed the Parties that, pursuant to Article 5(1) of the ICC Rules, the 30-day time limit for the submission of Respondents' answer would expire on 25 February 2021.

20. On 25 February 2021, Claimant informed the Secretariat that it did not object to the present arbitral proceedings being conducted in accordance with the Expedited Procedure Provisions. Claimant also submitted that the present proceedings should be conducted in accordance with the ICC Rules in force as from 1 March 2017.

21. On the same date, Mr. Lamar Williams submitted "[his] response to the request for arbitration"[2] (the **"Answer"**), accompanied by two exhibits.

22. On 16 March 2021, the Secretariat circulated the Answer and Claimant's submission of 25 February 2021 to the Parties. The Secretariat informed the Parties that it understood the Answer to have been submitted on behalf of all Respondents in the arbitration. The Secretariat took note that Claimant had expressed its agreement to opt in for the application of the Expedited Procedure Provisions, and invited Respondents to comment thereon by 23 March 2021. The Secretariat extended the deadline for Respondents to comment on Claimant's proposal regarding a sole arbitrator by 23 March 2021.

23. On 2 April 2021, the Secretariat noted that Respondents had not submitted their comments as invited on 16 March 2021. The Secretariat confirmed that the proceedings would be conducted under Annex VI to the ICC Rules (the **"Expedited Procedure Provisions"**). The Secretariat further informed the Parties that, unless informed otherwise by 8 April 2021, it would proceed with the constitution of the arbitral tribunal.

---

[2] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the ICC, 25 February 2021.

7



24. On 23 April 2021, the Secretariat informed the Parties that the ICC Court, at its session of 22 April 2021, had appointed Ms. Iuliana Iancu as sole arbitrator pursuant to Article 13(4)(a) of the ICC Rules.

25. On the same date, the Secretariat transferred the file to the Sole Arbitrator.

26. On [⬚], a case management conference took place by way of videoconference in the presence of [⬚] and the Sole Arbitrator.

## V. Place of arbitration

27. Pursuant to the Final Provisions of the Agreement, the place of arbitration is Warsaw, Poland.

28. In accordance with Article 18(2) of the ICC Rules, the Sole Arbitrator may, after consultation with the Parties, conduct any hearings and meetings at any location she considers appropriate, including, if deemed appropriate, entirely remotely via videoconference, unless otherwise agreed by the Parties.

29. The award or awards in this arbitration (interim, partial or final) and all Procedural Orders may be signed at any location convenient to the Sole Arbitrator.

## VI. Applicable substantive law

30. Pursuant to the Final Provisions of the Agreement, the Agreement is governed by Polish law.

## VII. Language of the arbitration

31. Pursuant to the Final Provisions of the Agreement, the language of the arbitration shall be English.

## VIII. Applicable procedural rules

32. These proceedings shall be submitted to the ICC Rules applicable as from 1 March 2017. Where the Rules are silent, the Sole Arbitrator will apply, in accordance with Article 19 of the ICC Rules, the rules which the Parties will have agreed upon, or failing them, any rules which the Sole Arbitrator may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

33. Moreover, these proceedings are subject to the Expedited Procedure Provisions.

34. The Sole Arbitrator has the power to issue procedural orders on specific procedural issues if and when needed, after consultation with the Parties.

8



## IX. Procedural timetable

[Note: Sole Arbitrator to the Parties: the draft procedural calendar included in Annex 1 to this draft Procedural Order envisages that the Sole Arbitrator shall conduct a mid-stream case management conference with the Parties following the submission of the Statement of Claim and the Statement of Defense. The Sole Arbitrator envisages that at the mid-stream case management conference, she will discuss with the Parties the following:

    (i)    Whether document production requests are necessary and appropriate considering the circumstances of this case;

    (ii)    Whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only;

    (iii)    The main factual and legal issues in dispute and the questions that the Parties should focus on in their further submissions, and whether any limitations in the length or scope of these submissions is called for;

    (iv)    Any other pertinent issues that arise during the course of the proceedings and require further procedural directions.

As mentioned in the draft procedural calendar, if a hearing is to be organized, the latest date at which the hearing can be organized is 6 September 2021. The Parties are invited to bear this in mind when putting forth their positions concerning the procedural calendar.

Pursuant to Article 4(1) of the Expedited Procedure Provisions, the final award must be rendered within 6 months of the case management conference. According to pt. 125, page 17, of the 2019 ICC Note to the Parties and Arbitral Tribunals on the Conduct of the Arbitration, the Sole Arbitrator acting in expedited proceedings shall submit the draft award to the ICC Court for scrutiny within five months of the case management conference, i.e., at the latest by 7 October 2021, in order to allow sufficient time for award drafting. If a hearing is required, it must be organized so as to allow at least one month for the drafting of the award.

The Parties are invited to discuss, seek to agree and revert to the Sole Arbitrator on the procedural calendar.]

35.    The procedural timetable is included in Annex 1 to the present Procedural Order. The procedural timetable has been set by the Sole Arbitrator, after consultation with the Parties, bearing in mind that the present proceedings are governed by the Expedited Procedure Provisions. Pursuant to Article 4 of the Expedited Procedure Provisions, the time limit within which the Sole Arbitrator must render the final award is six months from the date of the case management conference.

36.    The Parties are required to cooperate in good faith with the Sole Arbitrator with a view to organizing the proceedings expeditiously and efficiently. The Parties are expected to strictly comply with the procedural deadlines set by the Sole Arbitrator.

9



Extensions of time may be granted by the Sole Arbitrator in its discretion, in exceptional cases only and provided that a reasoned request is submitted before the event preventing a Party from complying with the deadline.

37. The Parties are invited not to copy the Sole Arbitrator on their correspondence (including requests and complaints to the other Party) and to address the Sole Arbitrator only to comply with the above-mentioned calendar or when they want the Sole Arbitrator to decide a disputed issue. The Parties are also invited not to make submissions other than those indicated in the procedural timetable, unless they have requested and obtained prior leave from the Sole Arbitrator.

## X. Written submissions

38. The paragraphs of all written submissions shall be numbered consecutively, and the submissions shall include a table of contents.

39. For each of their submissions, the Parties will clearly indicate the evidence they invoke in support thereof: documents (with indication of the page and paragraphs), expert reports, witness statements, etc.

40. All written submissions (memoranda, witness statements and expert reports) – excluding exhibits – shall be communicated by email (where email addresses have been supplied for this purpose) to the Sole Arbitrator, the other Parties, and the ICC Secretariat in PDF (searchable) format on the day indicated in the procedural timetable.

41. Two working days following the communication by email, a hard copy version of the same (A5 format, double sided, spiral bound in soft covers) will be dispatched to the Sole Arbitrator. The memoranda, witness statements, expert reports and exhibits shall also be communicated in electronic format on a USB key to the Sole Arbitrator and the other Parties, to be sent by special courier delivery (DHL, Fedex or similar).

## XI. Documentary evidence

42. Written submissions shall be accompanied by the documentary evidence and testimonial evidence relied upon by the relevant Party, including the legal authorities identified in the Parties' respective submissions. No new document may be presented outside the submissions or [if applicable] at the hearing unless agreed by the Parties or authorised by the Sole Arbitrator.

43. Documents shall be submitted in the following form:

  (i)   Exhibits shall be numbered consecutively throughout the proceedings;

  (ii)  The number of each factual exhibit submitted by Claimant shall be preceded by the letter "C-"; the number of each factual exhibit submitted by Respondents shall be preceded by the letter "R-";



(iii)   The number of each legal exhibit submitted by Claimant shall be preceded by the letters "CL-"; the number of each legal exhibit submitted by Respondents shall be preceded by the letters "RL-";

(iv)   If provided in this format, hard copy versions of the exhibits shall be contained in separate binders, each exhibit having a divider with the exhibit's identification number;

(v)   The electronic and hard copy versions of the exhibits shall be accompanied by an index listing the exhibits and setting forth, for each exhibit, its number, its date, and a brief description of the exhibit.

(vi)   Such index shall be updated with each new submission of documents.

44.   All documentary evidence submitted to the Sole Arbitrator shall be deemed to be authentic and complete, including evidence submitted in the form of copies, unless a Party disputes its authenticity or completeness.

[Note Sole Arbitrator to the Parties: As mentioned under Section IX above, the Sole Arbitrator considers that a mid-stream case management conference should be organized where, among others, she will discuss with the Parties whether document production requests are necessary and appropriate in light of the circumstances of the case. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator *can already* determine that some document production will be necessary, the Sole Arbitrator proposes the below text to govern such document production. The Parties are of course invited to comment on this text as well, in addition to the remainder of this draft Procedural Order.]

45.   The Parties may request documents from each other in accordance with the deadlines set out in the procedural timetable. Any such request must provide information about the requested document(s), including identification of the document(s) in question (with reasonable particularity) and reasons for the request. The Parties may address the Sole Arbitrator only after they have sought to resolve the requests between themselves. Correspondence or documents exchanged in the course of this process should not be sent to the Sole Arbitrator.

46.   To the extent the totality of the requests referred to in paragraph 45 is not satisfied, the Parties shall file by way of simultaneous exchange their requests for document production on the date indicated in the procedural timetable. This request shall be submitted in electronic Word version and take the form of a tabular form with two sections:

(i)   The Claimant's request(s) for the production of documents; and

(ii)   The Respondents' request(s) for the production of documents.

11



47. This submission shall be presented in accordance with the model annexed to this Procedural Order No. 1 (**Annex 2**). The Parties may make objections to requests for the production of documents on the date indicated in the procedural timetable.

48. For its decision, the Sole Arbitrator will be guided – but will not be bound – by Articles 3 and 9 of the IBA Rules of Evidence (17 December 2020 version) (hereinafter the "**IBA Rules**"). On this basis, the Sole Arbitrator considers that the following standards should guide its reasoning:

    (i) The request for production must identify each document or specific category of documents sought with precision;

    (ii) The request must establish the relevance of each document or of each specific category of documents sought in such a way that the other Party and the Sole Arbitrator are able to refer to factual allegations in the submissions filed by the Parties to date. In other words, the requesting Party must make it clear with reasonable particularity what facts / allegations each document (or category of documents) sought is intended to establish;

    (iii) The request must also establish with reasonable particularity how each document or specific category of documents sought is material to the outcome of the arbitration;

    (iv) The Sole Arbitrator will only order the production of documents or a category of documents if they exist and are within the possession, power, custody or control of the other Party. If contested, the requesting Party will have to make a case that it is likely that the document is indeed within the possession, power, custody or control of the other Party;

    (v) If necessary, the Sole Arbitrator shall also balance the request for production against the legitimate interests of the other Party, including any applicable privileges, the extent to which the request places an unreasonable burden on the other Party and the need to safeguard confidentiality, taking into account all the surrounding circumstances.

49. Before its decision, the Sole Arbitrator may exercise its discretion, at the request of a Party, to hear oral submissions.

50. If any specific document which a Party is directed by the Sole Arbitrator to produce or file contains privileged or proprietary information or trade secrets, that Party shall indicate to the Sole Arbitrator and to the other Party what the nature of the privilege or the proprietary information is, and with respect to privilege by which law it is governed and who the parties/persons are who are affected by it. In that case, the Sole Arbitrator shall determine, after consultation with the Parties, the appropriate measures to be implemented in order to respect the proprietary or privileged nature of the information or the trade secret(s) while, to the extent possible, allowing the production of such evidence for the purpose of the arbitral proceedings. The Sole



Arbitrator shall be guided (but not bound) in this regard by Article 9 of the IBA Rules.

## XII. Evidence of fact witnesses

51. If a Party wishes to adduce testimonial evidence in respect of its allegations, it shall so indicate in its submissions and submit written witness statements together with these submissions. The witness statements on which the Parties want to rely shall be submitted along with their submissions.

52. Any person may present evidence as a witness, including a Party, a Party's officer, employee or other representative.

53. Each witness statement shall:

    (i)    contain the name and address of the witness, his or her relationship to any of the Parties (past and present, if any) and a description of his or her qualifications;

    (ii)    contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute;

    (iii)    contain an affirmation of the truth of the statement;

    (iv)    be signed by the witness and give the date and place of signature; and

    (v)    identify with specificity any document or other material relied on and, if not already provided in the document exchange, attach a copy of the document or other material relied on.

54. The witness statements shall be in sufficient detail so as to stand as examination in chief of the witness.

[Note Sole Arbitrator to the Parties: As mentioned under Section IX above, the Sole Arbitrator considers that a mid-stream case management conference should be organized, where, among others, she will discuss with the Parties whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator can already determine that the organization of a hearing will be necessary, the Sole Arbitrator proposes the below text to govern the presence of witnesses at the hearing. The Parties are of course invited to comment on this text as well.]

55. If a Party wishes to cross-examine a witness whose statement has been filed by the other Party, it should request the presence of this witness at the hearing for cross-examination.

13



56. On or before the date mentioned in the procedural timetable, each Party shall notify the other Party, with a copy to the Sole Arbitrator, of the names of the witnesses and experts of the other Party whom that Party wishes to cross-examine at the witness hearing.

57. Being duly informed of the date of the hearings, the Parties will immediately after the receipt of this Procedural Order, or at least, as quickly as possible, inform their potential witnesses of these dates to secure their attendance at the hearing and avoid any disruption of the procedural calendar.

58. The witnesses shall, in principle, be summoned by the Party which relies on their evidence. In the event that a Party's witness does not attend the witness hearing in person but wishes to participate at the hearing by videoconference, that party must apply to the Sole Arbitrator before the commencement of the witness hearing for leave to do so, and the Sole Arbitrator shall hear the Parties on this issue and decide whether that witness should be permitted to give evidence by videoconference and on what terms. Where a witness should ultimately not be able to attend in person or by videoconference for any reason, the Sole Arbitrator shall hear the Parties on this issue and decide after taking into account all relevant circumstances, including the Parties' legitimate interests, what weight should be given to the testimony of said witness, if any.

59. The admissibility, relevance, weight and materiality of the evidence offered by a witness shall be determined by the Sole Arbitrator.

60. Waiver by a Party of its right to cross-examine a witness shall not imply acceptance of the content of the corresponding witness statement. When a Party has waived its right to cross-examine a witness, the Sole Arbitrator will weigh the witness's evidence in its discretion. The same applies if the cross-examination has been limited to certain portions only of the witness statement.

61. The costs of a witness's appearance shall be borne by the Party who submitted the witness's testimony, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs and to what extent.

## XIII. Evidence of expert witnesses

62. The provisions of Section XII of this Procedural Order are applicable, *mutatis mutandis*, to expert witnesses. The expert shall identify his or her area of expertise. The expert's report will contain the expert's opinion including a description of the method, evidence and information used in arriving at the conclusions.

63. The Sole Arbitrator will also be guided – but will not be bound – by Article 5 of the IBA Rules which provides that in case the Parties submit expert reports, the Sole Arbitrator may, if it deems it appropriate, order the Party-appointed experts to meet and confer on their reports after the exchange of the Parties' memoranda. At such meeting, the experts shall attempt to reach agreement on those issues as to which they



had differences of opinion in their expert reports, they will try to narrow them, and they shall record in writing the issues on which they reached agreement or in relation to which they have been able to narrow their differences.

## XIV. Hearing

[Note Sole Arbitrator to the Parties: As mentioned under Section IX above, the Sole Arbitrator considers that a mid-stream case management conference should be organized, where, among others, she will discuss with the Parties whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator *can already* determine that the organization of a hearing will be necessary, the Sole Arbitrator proposes the below text to govern the organization of the hearing.]

64. The hearing shall commence with each Party making an opening statement, the duration and format of which will be a matter for discussion between the Parties and confirmation by the Sole Arbitrator.

65. The use of demonstrative exhibits (such as charts, tabulations, etc.) is allowed at the hearing, provided that no new evidence is contained therein. A hard and electronic copy of any such exhibit shall simultaneously be provided by the Party submitting such exhibit to the other Party and to the Sole Arbitrator. The Parties shall exchange copies of proposed demonstrative exhibits no later than noon on the day before the day the demonstrative exhibit is intended to be used.

66. The procedure for examining witnesses at the witness hearing shall be the following:

(i) Claimant's witnesses will be examined first, followed by Respondents' witnesses. This order may be varied for good reason (for example, to accommodate a witness's availability or to hear the evidence of experts of the same discipline concurrently or consecutively).

(ii) Each witness shall first be invited to confirm his or her written statement.

(iii) The Party presenting the witness will have the right to make a short examination in chief of that witness on new facts or developments, if any, which have taken place since the date of filing of his/her last witness statement. The witness shall also have the opportunity to correct any errors or omissions in his or her witness statement. Such examination should not exceed ten minutes in length. As far as expert witnesses are concerned, it is suggested that the experts make a short presentation of their report in lieu of direct examination, and such presentation should not exceed 30 minutes in length.

(iv) The opposing Party shall then proceed to cross-examine the witness, followed by a re-examination by the first Party. The scope of the cross-examination shall not be limited to the evidence covered in the witness

15



statement but may cover facts related to the dispute within the witness's knowledge. The scope of the re-examination shall be limited to matters that have arisen in the cross-examination. There will not be any re-cross examination unless authorised by the Sole Arbitrator.

(v) The Sole Arbitrator shall have the right to examine the witnesses and to put questions during the examination by counsel. It shall ensure that each Party has the opportunity to re-examine a witness with respect to questions raised by the Sole Arbitrator.

(vi) The Sole Arbitrator shall at all times have complete control over the procedure in relation to a witness giving oral evidence, including the right to limit or exclude any question when it considers that the particular question is irrelevant or unnecessarily burdensome or duplicative.

67. Witnesses will not be heard under oath.

68. Witnesses of fact may not be present in the hearing room during the examination of other witnesses of fact, unless the Parties agree otherwise. However, this rule does not apply to designated Parties' representatives or to witnesses of fact who have already given their testimony. They have the right to remain in the hearing room at all times. If Parties' representatives are also witnesses, they should be cross-examined first. Experts may be present in the hearing room at any time unless the Sole Arbitrator decides otherwise.

69. At the end of the hearing, the Parties may make closing arguments on their conclusions based upon the evidence gathered during the hearing and on their legal arguments.

70. The hearing shall be transcribed by court reporters and daily transcripts made available to the Parties and the Sole Arbitrator, the costs of which are to be met by each Party in equal shares, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear these costs and to what extent. The hiring of the court reporters will be the responsibility of the Parties themselves.

71. The hearing will take place at a location to be decided by the Sole Arbitrator, including, if necessary, entirely or partially remotely, via videoconference. The Parties are invited to make all necessary reservations in preparation for the hearing.

## XV. Translations and interpretation

72. Documents and authorities in a language other than English will be filed with an English translation at the cost of the submitting Party, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. For documents and authorities, only the relevant parts have to be translated. Each translation shall be deemed to be correct unless a Party disputes its correctness.



73. Oral testimonies in a language other than English must be interpreted in English. The cost of interpretation will be borne by the Party presenting the witness, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. The interpreters used by either Party must be independent of the Parties.

## XVI. VAT

74. Appendix III Article 2(13) of the ICC Rules is applicable. This paragraph provides as follows: "Amounts paid to the arbitrator do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties."

75. The Sole Arbitrator may have to pay value-added or similar taxes or charges on her fees and expenses. To the extent that this is the case, the Sole Arbitrator is entitled to claim, directly from the Parties, in addition to any entitlements received from the ICC, any such taxes or charges to be paid by them. The Sole Arbitrator may request the Parties to pay, under the same conditions, a retainer on the subject taxes or charges.

## XVII. Data protection and privacy regulations

76. The processing of the personal data of the Sole Arbitrator, the Parties and their representatives is necessary for the purposes of these arbitration proceedings.

77. The Sole Arbitrator, the Parties and their representatives have to comply with all applicable data protection and privacy regulations and/or any other relevant data protection law, including providing appropriate notice to data subjects whose personal data will be processed in the arbitration proceedings, where necessary.

## XVIII. Amendments

78. This Procedural Order No. 1 may be amended or supplemented, and the procedures for the conduct of this arbitration modified, pursuant to such further directions or Procedural Orders as the Sole Arbitrator may from time to time issue.


The Sole Arbitrator,



Iuliana Iancu

17



**Annex 1 to Procedural Order No. 1**

**Procedural timetable**

| Procedural step | Responsibility | Date |
|---|---|---|
| Case Management Conference | All | [at the latest by 8 May 2021 (Article 3(3) of Expedited Procedure Provisions] |
| Claimant's Statement of Claim | Claimant | |
| Respondents' Statement of Defense | Respondents | |
| Mid-Stream Case Management Conference | All | |
| [if applicable] Request for the production of documents in accordance with Annex 2 of Procedural Order No. 1 | Claimant, Respondents | |
| [if applicable] Objection(s) to the requests for the production of documents. Production of documents to which no objection is formulated | Claimant, Respondents | |
| [if applicable] Decision on the production of documents | Sole Arbitrator | |
| [if applicable] Production of documents | Claimant, Respondents | |
| Claimant's Reply | Claimant | |
| Respondents' Rejoinder | Respondents | |
| [if applicable] pre-hearing case management conference | All | |
| [if applicable] Hearing | All | [at the latest by 6 September 2021] |



**Annex 2 to Procedural Order No. 1**

**Redfern Schedule for Document Production Requests**

| No. | Documents or Category of Documents Requested | Relevance According to Requesting Party | | Objections to Document Request | Arbitral Tribunal's Decision |
|---|---|---|---|---|---|
| | | Ref. to Submissions | Comments | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |


CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

**Iuliana Iancu**

| | |
|---|---|
| **From:** | Reception |
| **Sent:** | lundi 26 avril 2021 13:42 |
| **To:** | Iuliana Iancu |
| **Subject:** | RE: a envoyer par DHL dans IULI001 |

Voici le lien du premier colis envoyer a l'adresse suivante au nom de Mr. Lamar D. Williams :

> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033
> United States of America
> Email: lamardwilliams@me.com
> lamardwilliams@aol.com
> ldw@tantongrpcpas.com
> markstevensentinc@yahoo.com

> Mr. Lamar D. Williams
> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033
> United States of America
> Email: lamardwilliams@me.com
> lamardwilliams@aol.com

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=7199498843

**From:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Sent:** Monday, 26 April 2021 13:20
**To:** Reception <reception@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

**A envoyer par DHL dans IULI001**

A imprimer et mettre dans chaque colis :
- Une copie de la 26042021 Letter to Respondents (DHL)
- Une copie de ICC25952 Availabilities for CMC
- Une copie de la ICC25952 Draft PO1

1. **Premier colis**

A envoyer à :

> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033
> United States of America
> Email: lamardwilliams@me.com
> lamardwilliams@aol.com
> ldw@tantongrpcpas.com
> markstevensentinc@yahoo.com

> Mr. Lamar D. Williams

## Résultats de suivi

### Récapitulatif

Numéro d'expédition 7199498843
**Envoi refusé par destinataire**
Cliquez ici pour recevoir des alertes automatiques

L'expédition n'a pas pu être remise au destinataire lors de la livraison

mercredi, Avril 28, 2021 à 14:56        1 Pièce
Origine:
BRUSSELS - ELSENE - BELGIUM

Étape suivante
Veuillez contacter le Service Clients DHL pour en savoir plus

Destination:
ATLANTA, GA - DECATUR - USA

| mercredi, Avril 28, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 13 | Envoi refusé par destinataire | ATLANTA, GA - USA | 14:56 | 1 Pièce |
| 12 | En cours de livraison | ATLANTA, GA - USA | 11:04 | 1 Pièce |
| 11 | Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 09:10 | 1 Pièce |
| 10 | Partie de l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 07:37 | 1 Pièce |
| 9 | Dédouanement accompli à CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 03:23 | 1 Pièce |
| 8 | Traitée à l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 03:02 | 1 Pièce |
| 7 | Arrivée au centre de tri DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 02:19 | 1 Pièce |

| mardi, Avril 27, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 6 | Statut douanier mis à jour | CINCINNATI HUB, OH - USA | 22:10 | |
| 5 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:27 | 1 Pièce |

| lundi, Avril 26, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 4 | Arrivée au centre de tri DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:53 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:00 | 1 Pièce |
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:23 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:05 | 1 Pièce |



**Iuliana Iancu**

| | |
|---|---|
| **From:** | Reception |
| **Sent:** | lundi 26 avril 2021 13:50 |
| **To:** | Iuliana Iancu |
| **Subject:** | RE: a envoyer par DHL dans IULI001 |

Voici le lien du deuxième colis qui a été envoyé a Mr. Mark Stevens :

> Mr. Mark Stevens
> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033
> United States of America
> Email: markstevensentinc@yahoo.com

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=7199512434

**From:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Sent:** Monday, 26 April 2021 13:20
**To:** Reception <reception@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

<u>A envoyer par DHL dans IULI001</u>

A imprimer et mettre dans chaque colis :
- Une copie de la 26042021 Letter to Respondents (DHL)
- Une copie de ICC25952 Availabilities for CMC
- Une copie de la ICC25952 Draft PO1

1. **Premier colis**

A envoyer à :

> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033
> United States of America
> Email: lamardwilliams@me.com
> lamardwilliams@aol.com
> ldw@tantongrpcpas.com
> markstevensentinc@yahoo.com

> Mr. Lamar D. Williams
> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033
> United States of America
> Email: lamardwilliams@me.com
> lamardwilliams@aol.com

> Mr. Mark Stevens
> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights

1

**Résultats de suivi**

## Récapitulatif

Numéro d'expédition 7199512434:　　　mercredi, Avril 28, 2021 à 14:56　　　　1 Pièce
Envoi refusé par destinataire　　　　　　Origine:
Cliquez ici pour recevoir des alertes　　　BRUSSELS - ELSENE - BELGIUM
automatiques

L'expédition n'a pas pu être remise au　　Étape suivante
destinataire lors de la livraison　　　　　Veuillez contacter le Service Clients DHL pour en savoir plus

Destination:
ATLANTA, GA - DECATUR - USA

| mercredi, Avril 28, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 13 | Envoi refusé par destinataire. | ATLANTA, GA - USA | 14:56 | 1 Pièce |
| 12 | En cours de livraison | ATLANTA, GA - USA | 11:04 | 1 Pièce |
| 11 | Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 09:10 | 1 Pièce |
| 10 | Partie de l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 07:37 | 1 Pièce |
| 9 | Dédouanement accompli à CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 03:23 | 1 Pièce |
| 8 | Traitée à l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 03:03 | 1 Pièce |
| 7 | Arrivée au centre de tri DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 02:19 | 1 Pièce |

| mardi, Avril 27, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 6 | Statut douanier mis à jour | CINCINNATI HUB, OH - USA | 22:10 | |
| 5 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:27 | 1 Pièce |

| lundi, Avril 26, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 4 | Arrivée au centre de tri DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:53 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:00 | 1 Pièce |
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:25 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:05 | 1 Pièce |

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

# Iuliana Iancu

**From:** Reception
**Sent:** lundi 26 avril 2021 13:56
**To:** Iuliana Iancu
**Subject:** RE: a envoyer par DHL dans IULI001

Voici le lien du dernier colis :

> Mr. Lamar D. Williams
> TANTON GROUP CPAs, LLP
> Accountants and Consultants
> 780 Third Avenue-Suite 701
> New York, NY 10017
> United States of America
> Email: ldw@tantongrpcpas.com

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=7199522724

**From:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Sent:** Monday, 26 April 2021 13:20
**To:** Reception <reception@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

**A envoyer par DHL dans IULI001**

A imprimer et mettre dans chaque colis :
- Une copie de la 26042021 Letter to Respondents (DHL)
- Une copie de ICC25952 Availabilities for CMC
- Une copie de la ICC25952 Draft PO1


1. **Premier colis**

A envoyer à :

> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033
> United States of America
> Email: lamardwilliams@me.com
> lamardwilliams@aol.com
> ldw@tantongrpcpas.com
> markstevensentinc@yahoo.com
>
> Mr. Lamar D. Williams
> ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033
> United States of America
> Email: lamardwilliams@me.com
> lamardwilliams@aol.com
>
> Mr. Mark Stevens

1



29.04.2021

Cher client(e),

Ceci constitue votre preuve de livraison / statut final de l'envoi portant le numéro de bordereau 7199522724.

Merci d'avoir choisi DHL Express.

www.dhl.com

## Votre envoi 7199522724 a été livré le 28.04.2021 à 15:04

| | | | |
|---|---|---|---|
| **Signé par** | MARIA | **Destination** | NEW YORK<br>UNITED STATES OF<br>AMERICA |
| **Signature** | | **Statut de l'envoi** | Livré |
| | | **Identifiant(s) colis** | JD014600008696857492 |

## Informations supplémentaires sur l'envoi

| | | | |
|---|---|---|---|
| Service | EXPRESS ENVELOPE | Origine | BRUSSELS<br>BELGIUM |
| Enlevé | 26.04.2021 à 15:06 | Référence expéditeur | 7199522724BE20210426115418055<br>IULI001 |

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE



# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE*
AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL
T: +32.(0)2.290.39.00 · F: +32.(0)2.290.39.39 · info@hvdb.com · www.hvdb.com
TVA/BTW/VAT: BE 0475.333.058

IRUNAI PAUL LEFEBVRE [1-2]
*Avocat à la Cour de cassation*
*Advocaat bij het Hof van Cassatie*
BERNARD HANOTIAU [1-2-3]
ALBERT JAN VAN DEN BERG [1-2-4]
PASCAL HOLLANDER [1-2]
NBISCHA BASSIRI [1-5]
PIERRE VERMEIRE [2]
MAARTEN DRAYE [2]
JULIANA IANCU [2-6]

MAGALI SERVAIS
EMILY HAY [2-8]

GLADYS BAGASIN [7]
IRIS RAYNAUD [2-11]
TARUNIMA VIJRA [9]
DINA OUADRASSI BETTIOUI
JUAN CAMILO JIMÉNEZ-VALENCIA [2-10]
PRATYUSH PANDWANI [9]
BENJAMIN JESURAN [11]
LUDMILLA DE POTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE FUMIÈRE
FERNANDO GUTIERREZ [13]
PAULINA BRZEZINSKA
BENJAMIN HOLLANDER

*Avocats*
*Advocaten*

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

Brussels, 28 April 2021

**ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)**

Dear Colleagues,

I refer to my email of 26 April 2021 regarding the organization of the Case Management Conference (the "CMC") in the case under reference.

In light of the current COVID 19 pandemic and of Article 3(3) of the Expedited Procedure Provisions, **the CMC will be organized by videoconference.**

I have taken note of Claimant's indicated availabilities. I also note that Respondents have not responded to my invitation to indicate their availabilities for the CMC. Nevertheless, Respondents remain of course invited, and are encouraged, to participate in the CMC and to put forward their views.

With a view to maximizing the potential that Respondents, who are situated on the East Coast of the United States, will be able to participate in the CMC, I have decided that **the CMC will take place on Thursday, 6 May 2021, at 16:00 CET/10:00 Atlanta, Georgia (United States)**.

By the latest **one day before the CMC, _i.e._, by Wednesday, 5 May 2021, at 16:00 CET/10:00 Atlanta, Georgia (United States)**, the Parties are invited:

*1 Associés de la S.C.R.L. HANOTIAU & VAN DEN BERG, société civile à forme commerciale - RPM Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n° 0475.333.058 - 2 SRL/ BV - 3 Egalement membre du barreau de Paris / Ook advocaat bij de balie te Parijs - 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel - 5 Membre du barreau de Cologne inscrit à Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel - 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven te Brussel - 7 Membre des barreaux des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balies van de Filippijnen en New York ingeschreven te Brussel - Solicitor admise devant la Cour Suprême de New South Wales inscrite à Bruxelles / Sollicitor bed/gd voor de Supreme Court van New South Wales ingeschreven te Brussel - 9 Membre du barreau d'Inde (New Delhi) inscrit à Bruxelles / Advocaat bij de balie van India (New Delhi) ingeschreven te Brussel - 10 Membre du barreau de Colombie inscrit à Bruxelles / Advocaat bij de balie van Colombia ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie te Parijs ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel*

*\* Maxwell Chambers – 32 Maxwell Road, # 03-01 Singapore 069115 - Tel. + 65 6408 3343 - E-mail: singapore@hvdb.com*



1. To submit any comments they may have on the draft Procedural Order No. 1 (which was circulated on 26 and 27 April 2021, and is also appended to this letter). The Parties should make such comments on the document itself, in track changes.

2. To revert with respect to the procedural calendar, as well as any other matter they wish to raise with the Sole Arbitrator.

3. To indicate who will be participating at the CMC for each Party.

The connection details for the CMC are set out below.

I thank the Parties very much in advance for their cooperation.

With best regards,

Iuliana Iancu

**Iuliana IANCU**
**Partner**
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058

## VIDEO CONNECTION DETAILS

Iuliana Iancu is inviting you to a scheduled Zoom meeting.

Topic: ICC Case 25952/HBH - CMC
Time: May 6, 2021 04:00 PM Brussels

Join Zoom Meeting
https://us02web.zoom.us/j/83494972861

Meeting ID: 834 9497 2861
Passcode: JnG553Df2S
One tap mobile
+19292056099,,83494972861#,,,,*3461509832# US (New York)
+12532158782,,83494972861#,,,,*3461509832# US (Tacoma)

Dial by your location
      +1 929 205 6099 US (New York)
      +1 253 215 8782 US (Tacoma)
      +1 301 715 8592 US (Washington DC)
      +1 312 626 6799 US (Chicago)
      +1 346 248 7799 US (Houston)
      +1 669 900 6833 US (San Jose)
Meeting ID: 834 9497 2861
Passcode: 3461509832
Find your local number: https://us02web.zoom.us/u/kegznkbN73

ICC ARBITRATION No. 25952/HBH (EPP)

BETWEEN:

# POLSKA FUNDACJA NARODOWA
(POLAND)

vs/

# 1. ATHLETE BENEFITS GROUP, LLC
(U.S.A.)

## 2. LAMAR D. WILLIAMS
(U.S.A.)

## 3. MARK STEVENS
(U.S.A.)

# [DRAFT] PROCEDURAL ORDER No. 1
[DATE]

1



# Table of Contents

Table of Contents ....................................................................................................... 2
I.    Names and addresses of the Parties ..................................................... 3
   A.  Claimant ............................................................................................ 3
   B.  Respondents ...................................................................................... 3
II.   The Sole Arbitrator ............................................................................... 4
III.  Notifications and communications ....................................................... 4
IV.  The arbitration clause and the procedure to date ................................ 6
V.   Place of arbitration ............................................................................... 8
VI.  Applicable substantive law ................................................................... 8
VII.  Language of the arbitration ................................................................... 8
VIII. Applicable procedural rules .................................................................. 8
IX.   Procedural timetable ............................................................................ 9
X.   Written submissions ............................................................................. 10
XI.  Documentary evidence ......................................................................... 10
XII.  Evidence of fact witnesses ................................................................... 13
XIII. Evidence of expert witnesses ............................................................... 14
XIV. Hearing ................................................................................................. 15
XV.  Translations and interpretation ............................................................ 16
XVI. VAT ...................................................................................................... 17
XVII. Data protection and privacy regulations .............................................. 17
XVIII. Amendments ........................................................................................ 17
Annex 1 to Procedural Order No. 1 .............................................................. 18
Annex 2 to Procedural Order No. 1 .............................................................. 19





## I. Names and addresses of the Parties

### A. Claimant

1. POLSKA FUNDACJA NARODOWA, a foundation incorporated and existing under the laws of Poland, with its statutory seat in Warsaw (Poland), at the address Aleja Jana Pawla II 12, 00-124 Warsaw, entered into the Register of Associations, Other Social and Professional Organizations, Foundations and Public Health Care Institutions of the Polish National Court Register under the number 0000655791, with VAT registration number PL5252691880,

   hereinafter referred to as **"Claimant"** or **"PFN"**;

   assisted and represented in this arbitration by Dr. Beata Gessel-Kalinowska vel Kalisz, Ms. Joanna Kisielińska-Garncarek and Ms. Barbara Tomczyk of GESSEL ATTORNEYS AT LAW, Sienna 39, 00-121 Warsaw, Poland.

### B. Respondents

2. ATHLETE BENEFITS GROUP, LLC, a company incorporated and existing under the laws of the United Stated of America, with its registered office at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America,

   hereinafter referred to as **"Respondent 1"** or **"ABG"**;

3. MR. LAMAR D. WILLIAMS, a [United States] national, residing at [2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America OR TANTON GROUP CPAs, LLP, 780 Third Avenue – Suite 701, New York, NY 10017, United States of America]

   hereinafter referred to as **"Respondent 2"**,

4. MR. MARK STEVENS, a [United States] national, residing at [2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America],

   hereinafter referred to as **"Respondent 3"**, and jointly with Respondents 1 and 2 as **"Respondents"**;

5. Claimant and Respondents shall jointly be referred to as the **"Parties"**.

3



## II. The Sole Arbitrator

6. On 22 April 2021, the International Court of Arbitration of the International Chamber of Commerce (the **"ICC Court"**) directly appointed Ms. Iuliana Iancu as Sole Arbitrator pursuant to Article 13(4)(a) of the 2017 ICC Rules of Arbitration (the **"ICC Rules"**). The Sole Arbitrator's contact details are the following:

   > Ms. Iuliana Iancu
   > HANOTIAU & VAN DEN BERG
   > IT Tower, avenue Louise, 480/9
   > 1050 Brussels
   > BELGIUM
   >
   > Tel:    + 32 2 290 39 00
   > Email:  iuliana.iancu@hvdb.com

7. By issuing this Procedural Order, the Sole Arbitrator confirms the acceptance of her appointment.

8. In accordance with Article 41 of the ICC Rules, the Sole Arbitrator will not be liable to any Party whatsoever for any act or omission in connection with these arbitration proceedings, except to the extent such limitation of liability is prohibited by applicable law.

## III. Notifications and communications

9. All written notifications and communications arising in the course of this arbitration shall be deemed to have been validly made to each Party when they have been transmitted to:

   - For Claimant:

     > Ms. Beata Gessel-Kalinowska vel Kalisz
     > Ms. Joanna Kisielińska-Garncarek
     > Ms. Barbara Tomczyk
     > GESSEL ATTORNEYS AT LAW
     > Sienna 39
     > 00-121 Warsaw
     > Poland
     >
     > Tel: +48 22 318 6901
     > +48 22 318 6931
     >
     > Email: b.gessel@gessel.pl
     > j.kisielinska@gessel.pl
     > b.tomczyk@gessel.pl

4

- For Respondents:

Respondent 1
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
      lamardwilliams@aol.com
      ldw@tantongrpcpas.com
      markstevensentinc@yahoo.com

Respondent 2 (address 1)
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
      lamardwilliams@aol.com

Respondent 2 (address 2)
Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

Respondent 3
Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

10. The case management team of the Secretariat of the ICC Court (the "**Secretariat**") in charge of this arbitration is supervised by Ms. Hjördís Birna Hjartardóttir, Counsel, whose contact details are as follows:

- Ms. Hjördís Birna Hjartardóttir
  International Chamber of Commerce

5



International Court of Arbitration
33-43 avenue du Président Wilson
75116 Paris
France

Tel:            +33(0)1.49.53.30.90
Email:          ica7@iccwbo.org

11. All notifications and communications concerning this arbitration shall be sent by email to the addresses referred to in this Section III and in Section II. All communications and notifications sent to the Sole Arbitrator by one Party shall be sent simultaneously and under the same format to the other Party and to the Secretariat, and vice versa.

12. Any change of name, description, address, telephone, email address shall immediately be notified by the Party or the Sole Arbitrator to all other addressees referred to in this Section III and in Section II. Failing such notification, notifications and communications sent in accordance with this Section III and Section II shall be deemed valid.

## IV.   The arbitration clause and the procedure to date

13. On 29 December 2020, Claimant submitted a Request for Arbitration (the **"Request"**) to the Secretariat pursuant to the arbitration clause contained in the article titled "Final Provisions" contained in the Appearance Engagement, dated 30 October 2018 and entered into between PFN and ABG (the **"Agreement"**). This provision is transcribed in full below:

> "Final Provisions
>
> Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration will be Warsaw, Poland and the language of arbitration will be English."[1]

14. Pursuant to Article 4(2) of the ICC Rules, the arbitration is deemed to have commenced on 29 December 2020.

15. In its Request, Claimant requested that the dispute be decided by a sole arbitrator.

---

[1] Exhibit C-1.

16. On 14 January 2021, Claimant confirmed that it agreed to the notification of the Request by email to Respondents, further to the ICC's general communication dated 17 March 2020.

17. On 25 January 2021, the Secretariat notified Respondents of the filing of the Request and sent them copies thereof, as well as of the appended exhibits. The Secretariat invited Respondents to submit their answer to the Request and to comment on Claimant's proposition regarding a sole arbitrator within 30 days.

18. On the same date, the Secretariat informed the Parties that the ICC Rules included Expedited Procedure Provisions, which could potentially apply if the amount in dispute did not exceed USD 2 million (subject to the conditions set forth in Article 30(3) of the ICC Rules). The Secretariat informed the Parties that they could also agree to the application of the Expedited Procedure Provisions in all other cases.

19. On 11 February 2021, the Secretariat informed the Parties that, according to the electronic delivery receipt, Respondents had received the Request and the appended exhibits on 26 January 2021. The Secretariat informed the Parties that, pursuant to Article 5(1) of the ICC Rules, the 30-day time limit for the submission of Respondents' answer would expire on 25 February 2021.

20. On 25 February 2021, Claimant informed the Secretariat that it did not object to the present arbitral proceedings being conducted in accordance with the Expedited Procedure Provisions. Claimant also submitted that the present proceedings should be conducted in accordance with the ICC Rules in force as from 1 March 2017.

21. On the same date, Mr. Lamar Williams submitted "[his] response to the request for arbitration"[2] (the "**Answer**"), accompanied by two exhibits.

22. On 16 March 2021, the Secretariat circulated the Answer and Claimant's submission of 25 February 2021 to the Parties. The Secretariat informed the Parties that it understood the Answer to have been submitted on behalf of all Respondents in the arbitration. The Secretariat took note that Claimant had expressed its agreement to opt in for the application of the Expedited Procedure Provisions, and invited Respondents to comment thereon by 23 March 2021. The Secretariat extended the deadline for Respondents to comment on Claimant's proposal regarding a sole arbitrator by 23 March 2021.

23. On 2 April 2021, the Secretariat noted that Respondents had not submitted their comments as invited on 16 March 2021. The Secretariat confirmed that the proceedings would be conducted under Annex VI to the ICC Rules (the "**Expedited Procedure Provisions**"). The Secretariat further informed the Parties that, unless informed otherwise by 8 April 2021, it would proceed with the constitution of the arbitral tribunal.

---

[2] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the ICC, 25 February 2021.



24. On 23 April 2021, the Secretariat informed the Parties that the ICC Court, at its session of 22 April 2021, had appointed Ms. Iuliana Iancu as sole arbitrator pursuant to Article 13(4)(a) of the ICC Rules.

25. On the same date, the Secretariat transferred the file to the Sole Arbitrator.

26. On [], a case management conference took place by way of videoconference in the presence of [] and the Sole Arbitrator.

## V. Place of arbitration

27. Pursuant to the Final Provisions of the Agreement, the place of arbitration is Warsaw, Poland.

28. In accordance with Article 18(2) of the ICC Rules, the Sole Arbitrator may, after consultation with the Parties, conduct any hearings and meetings at any location she considers appropriate, including, if deemed appropriate, entirely remotely via videoconference, unless otherwise agreed by the Parties.

29. The award or awards in this arbitration (interim, partial or final) and all Procedural Orders may be signed at any location convenient to the Sole Arbitrator.

## VI. Applicable substantive law

30. Pursuant to the Final Provisions of the Agreement, the Agreement is governed by Polish law.

## VII. Language of the arbitration

31. Pursuant to the Final Provisions of the Agreement, the language of the arbitration shall be English.

## VIII. Applicable procedural rules

32. These proceedings shall be submitted to the ICC Rules applicable as from 1 March 2017. Where the Rules are silent, the Sole Arbitrator will apply, in accordance with Article 19 of the ICC Rules, the rules which the Parties will have agreed upon, or failing them, any rules which the Sole Arbitrator may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

33. Moreover, these proceedings are subject to the Expedited Procedure Provisions.

34. The Sole Arbitrator has the power to issue procedural orders on specific procedural issues if and when needed, after consultation with the Parties.

## IX.  Procedural timetable

[Note Sole Arbitrator to the Parties: the draft procedural calendar included in Annex 1 to this draft Procedural Order envisages that the Sole Arbitrator shall conduct a mid-stream case management conference with the Parties following the submission of the Statement of Claim and the Statement of Defense. The Sole Arbitrator envisages that, at the mid-stream case management conference, she will discuss with the Parties the following:

(i)  Whether document production requests are necessary and appropriate considering the circumstances of this case;

(ii)  Whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only;

(iii)  The main factual and legal issues in dispute and the questions that the Parties should focus on in their further submissions, and whether any limitations in the length or scope of these submissions is called for;

(iv)  Any other pertinent issues that arise during the course of the proceedings and require further procedural directions.

As mentioned in the draft procedural calendar, if a hearing is to be organized, the latest date at which the hearing can be organized is 6 September 2021. The Parties are invited to bear this in mind when putting forth their positions concerning the procedural calendar.

Pursuant to Article 4(1) of the Expedited Procedure Provisions, the final award must be rendered within 6 months of the case management conference. According to pt 125, page 17, of the 2019 ICC Note to the Parties and Arbitral Tribunals on the Conduct of the Arbitration, the Sole Arbitrator acting in expedited proceedings shall submit the draft award to the ICC Court for scrutiny within five months of the case management conference; i.e., at the latest by 7 October 2021. In order to allow sufficient time for award drafting, if a hearing is required, it must be organized so as to allow at least one month for the drafting of the award.

The Parties are invited to discuss, seek to agree and revert to the Sole Arbitrator on the procedural calendar.]

35.  The procedural timetable is included in Annex 1 to the present Procedural Order. The procedural timetable has been set by the Sole Arbitrator, after consultation with the Parties, bearing in mind that the present proceedings are governed by the Expedited Procedure Provisions. Pursuant to Article 4 of the Expedited Procedure Provisions, the time limit within which the Sole Arbitrator must render the final award is six months from the date of the case management conference.

36.  The Parties are required to cooperate in good faith with the Sole Arbitrator with a view to organizing the proceedings expeditiously and efficiently. The Parties are expected to strictly comply with the procedural deadlines set by the Sole Arbitrator.



Extensions of time may be granted by the Sole Arbitrator in its discretion, in exceptional cases only and provided that a reasoned request is submitted before the event preventing a Party from complying with the deadline.

37. The Parties are invited not to copy the Sole Arbitrator on their correspondence (including requests and complaints to the other Party) and to address the Sole Arbitrator only to comply with the above-mentioned calendar or when they want the Sole Arbitrator to decide a disputed issue. The Parties are also invited not to make submissions other than those indicated in the procedural timetable, unless they have requested and obtained prior leave from the Sole Arbitrator.

## X.   Written submissions

38. The paragraphs of all written submissions shall be numbered consecutively, and the submissions shall include a table of contents.

39. For each of their submissions, the Parties will clearly indicate the evidence they invoke in support thereof: documents (with indication of the page and paragraphs), expert reports, witness statements, etc.

40. All written submissions (memoranda, witness statements and expert reports) – excluding exhibits – shall be communicated by email (where email addresses have been supplied for this purpose) to the Sole Arbitrator, the other Parties, and the ICC Secretariat in PDF (searchable) format on the day indicated in the procedural timetable.

41. Two working days following the communication by email, a hard copy version of the same (A5 format, double sided, spiral bound in soft covers) will be dispatched to the Sole Arbitrator. The memoranda, witness statements, expert reports and exhibits shall also be communicated in electronic format on a USB key to the Sole Arbitrator and the other Parties, to be sent by special courier delivery (DHL, Fedex or similar).

## XI.   Documentary evidence

42. Written submissions shall be accompanied by the documentary evidence and testimonial evidence relied upon by the relevant Party, including the legal authorities identified in the Parties' respective submissions. No new document may be presented outside the submissions or [if applicable] at the hearing unless agreed by the Parties or authorised by the Sole Arbitrator.

43. Documents shall be submitted in the following form:

(i)     Exhibits shall be numbered consecutively throughout the proceedings;

(ii)    The number of each factual exhibit submitted by Claimant shall be preceded by the letter "C-"; the number of each factual exhibit submitted by Respondents shall be preceded by the letter "R-";



(iii)    The number of each legal exhibit submitted by Claimant shall be preceded by the letters "CL-"; the number of each legal exhibit submitted by Respondents shall be preceded by the letters "RL-";

(iv)    If provided in this format, hard copy versions of the exhibits shall be contained in separate binders, each exhibit having a divider with the exhibit's identification number;

(v)    The electronic and hard copy versions of the exhibits shall be accompanied by an index listing the exhibits and setting forth, for each exhibit, its number, its date, and a brief description of the exhibit.

(vi)    Such index shall be updated with each new submission of documents.

44.    All documentary evidence submitted to the Sole Arbitrator shall be deemed to be authentic and complete, including evidence submitted in the form of copies, unless a Party disputes its authenticity or completeness.

[Note Sole Arbitrator to the Parties: As mentioned under Section IX above, the Sole Arbitrator considers that a mid-stream case management conference should be organized, where, among others, she will discuss with the Parties whether document production requests are necessary and appropriate in light of the circumstances of the case. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator *can already* determine that some document production will be necessary, the Sole Arbitrator proposes the below text to govern such document production. The Parties are of course invited to comment on this text as well, in addition to the remainder of this draft Procedural Order.]

45.    The Parties may request documents from each other in accordance with the deadlines set out in the procedural timetable. Any such request must provide information about the requested document(s), including identification of the document(s) in question (with reasonable particularity) and reasons for the request. The Parties may address the Sole Arbitrator only after they have sought to resolve the requests between themselves. Correspondence or documents exchanged in the course of this process should not be sent to the Sole Arbitrator.

46.    To the extent the totality of the requests referred to in paragraph 45 is not satisfied, the Parties shall file by way of simultaneous exchange their requests for document production on the date indicated in the procedural timetable. This request shall be submitted in electronic Word version and take the form of a tabular form with two sections:

(i)    The Claimant's request(s) for the production of documents; and

(ii)    The Respondents' request(s) for the production of documents.



47. This submission shall be presented in accordance with the model annexed to this Procedural Order No. 1 (**Annex 2**). The Parties may make objections to requests for the production of documents on the date indicated in the procedural timetable.

48. For its decision, the Sole Arbitrator will be guided – but will not be bound – by Articles 3 and 9 of the IBA Rules of Evidence (17 December 2020 version) (hereinafter the "**IBA Rules**"). On this basis, the Sole Arbitrator considers that the following standards should guide its reasoning:

   (i)   The request for production must identify each document or specific category of documents sought with precision;

   (ii)  The request must establish the relevance of each document or of each specific category of documents sought in such a way that the other Party and the Sole Arbitrator are able to refer to factual allegations in the submissions filed by the Parties to date. In other words, the requesting Party must make it clear with reasonable particularity what facts / allegations each document (or category of documents) sought is intended to establish;

   (iii) The request must also establish with reasonable particularity how each document or specific category of documents sought is material to the outcome of the arbitration;

   (iv)  The Sole Arbitrator will only order the production of documents or a category of documents if they exist and are within the possession, power, custody or control of the other Party. If contested, the requesting Party will have to make a case that it is likely that the document is indeed within the possession, power, custody or control of the other Party;

   (v)   If necessary, the Sole Arbitrator shall also balance the request for production against the legitimate interests of the other Party, including any applicable privileges, the extent to which the request places an unreasonable burden on the other Party and the need to safeguard confidentiality, taking into account all the surrounding circumstances.

49. Before its decision, the Sole Arbitrator may exercise its discretion, at the request of a Party, to hear oral submissions.

50. If any specific document which a Party is directed by the Sole Arbitrator to produce or file contains privileged or proprietary information or trade secrets, that Party shall indicate to the Sole Arbitrator and to the other Party what the nature of the privilege or the proprietary information is, and with respect to privilege by which law it is governed and who the parties/persons are who are affected by it. In that case, the Sole Arbitrator shall determine, after consultation with the Parties, the appropriate measures to be implemented in order to respect the proprietary or privileged nature of the information or the trade secret(s) while, to the extent possible, allowing the production of such evidence for the purpose of the arbitral proceedings. The Sole

12



Arbitrator shall be guided (but not bound) in this regard by Article 9 of the IBA Rules.

## XII. Evidence of fact witnesses

51. If a Party wishes to adduce testimonial evidence in respect of its allegations, it shall so indicate in its submissions and submit written witness statements together with these submissions. The witness statements on which the Parties want to rely shall be submitted along with their submissions.

52. Any person may present evidence as a witness, including a Party, a Party's officer, employee or other representative.

53. Each witness statement shall:

    (i) contain the name and address of the witness, his or her relationship to any of the Parties (past and present, if any) and a description of his or her qualifications;

    (ii) contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute;

    (iii) contain an affirmation of the truth of the statement;

    (iv) be signed by the witness and give the date and place of signature; and

    (v) identify with specificity any document or other material relied on and, if not already provided in the document exchange, attach a copy of the document or other material relied on.

54. The witness statements shall be in sufficient detail so as to stand as examination in chief of the witness.

[Note Sole Arbitrator to the Parties: As mentioned under Section IX above, the Sole Arbitrator considers that a mid-stream case management conference should be organized where, among others, she will discuss with the Parties whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator can already determine that the organization of a hearing will be necessary, the Sole Arbitrator proposes the below text to govern the presence of witnesses at the hearing. The Parties are of course invited to comment on this text as well.]

55. If a Party wishes to cross-examine a witness whose statement has been filed by the other Party, it should request the presence of this witness at the hearing for cross-examination.

13



56. On or before the date mentioned in the procedural timetable, each Party shall notify the other Party, with a copy to the Sole Arbitrator, of the names of the witnesses and experts of the other Party whom that Party wishes to cross-examine at the witness hearing.

57. Being duly informed of the date of the hearings, the Parties will immediately after the receipt of this Procedural Order, or at least, as quickly as possible, inform their potential witnesses of these dates to secure their attendance at the hearing and avoid any disruption of the procedural calendar.

58. The witnesses shall, in principle, be summoned by the Party which relies on their evidence. In the event that a Party's witness does not attend the witness hearing in-person but wishes to participate at the hearing by videoconference, that party must apply to the Sole Arbitrator before the commencement of the witness hearing for leave to do so, and the Sole Arbitrator shall hear the Parties on this issue and decide whether that witness should be permitted to give evidence by videoconference and on what terms. Where a witness should ultimately not be able to attend in person or by videoconference for any reason, the Sole Arbitrator shall hear the Parties on this issue and decide after taking into account all relevant circumstances, including the Parties' legitimate interests, what weight should be given to the testimony of said witness, if any.

59. The admissibility, relevance, weight and materiality of the evidence offered by a witness shall be determined by the Sole Arbitrator.

60. Waiver by a Party of its right to cross-examine a witness shall not imply acceptance of the content of the corresponding witness statement. When a Party has waived its right to cross-examine a witness, the Sole Arbitrator will weigh the witness's evidence in its discretion. The same applies if the cross-examination has been limited to certain portions only of the witness statement.

61. The costs of a witness's appearance shall be borne by the Party who submitted the witness's testimony, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs and to what extent.

## XIII. Evidence of expert witnesses

62. The provisions of Section XII of this Procedural Order are applicable, *mutatis mutandis*, to expert witnesses. The expert shall identify his or her area of expertise. The expert's report will contain the expert's opinion including a description of the method, evidence and information used in arriving at the conclusions.

63. The Sole Arbitrator will also be guided – but will not be bound – by Article 5 of the IBA Rules which provides that in case the Parties submit expert reports, the Sole Arbitrator may, if it deems it appropriate, order the Party-appointed experts to meet and confer on their reports after the exchange of the Parties' memoranda. At such meeting, the experts shall attempt to reach agreement on those issues as to which they

had differences of opinion in their expert reports, they will try to narrow them, and they shall record in writing the issues on which they reached agreement or in relation to which they have been able to narrow their differences.

## XIV. Hearing

[Note Sole Arbitrator to the Parties: As mentioned under Section IX above, the Sole Arbitrator considers that a mid-stream case management conference should be organized, where, among others, she will discuss with the Parties whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator *can already* determine that the organization of a hearing will be necessary, the Sole Arbitrator proposes the below text to govern the organization of the hearing.]

64. The hearing shall commence with each Party making an opening statement, the duration and format of which will be a matter for discussion between the Parties and confirmation by the Sole Arbitrator.

65. The use of demonstrative exhibits (such as charts, tabulations, etc.) is allowed at the hearing, provided that no new evidence is contained therein. A hard and electronic copy of any such exhibit shall simultaneously be provided by the Party submitting such exhibit to the other Party and to the Sole Arbitrator. The Parties shall exchange copies of proposed demonstrative exhibits no later than noon on the day before the day the demonstrative exhibit is intended to be used.

66. The procedure for examining witnesses at the witness hearing shall be the following:

   (i)   Claimant's witnesses will be examined first, followed by Respondents' witnesses. This order may be varied for good reason (for example, to accommodate a witness's availability or to hear the evidence of experts of the same discipline concurrently or consecutively).

   (ii)  Each witness shall first be invited to confirm his or her written statement.

   (iii) The Party presenting the witness will have the right to make a short examination in chief of that witness on new facts or developments, if any, which have taken place since the date of filing of his/her last witness statement. The witness shall also have the opportunity to correct any errors or omissions in his or her witness statement. Such examination should not exceed ten minutes in length. As far as expert witnesses are concerned, it is suggested that the experts make a short presentation of their report in lieu of direct examination, and such presentation should not exceed 30 minutes in length.

   (iv)  The opposing Party shall then proceed to cross-examine the witness, followed by a re-examination by the first Party. The scope of the cross-examination shall not be limited to the evidence covered in the witness

15



statement but may cover facts related to the dispute within the witness's knowledge. The scope of the re-examination shall be limited to matters that have arisen in the cross-examination. There will not be any re-cross examination unless authorised by the Sole Arbitrator.

(v) The Sole Arbitrator shall have the right to examine the witnesses and to put questions during the examination by counsel. It shall ensure that each Party has the opportunity to re-examine a witness with respect to questions raised by the Sole Arbitrator.

(vi) The Sole Arbitrator shall at all times have complete control over the procedure in relation to a witness giving oral evidence, including the right to limit or exclude any question when it considers that the particular question is irrelevant or unnecessarily burdensome or duplicative.

67. Witnesses will not be heard under oath.

68. Witnesses of fact may not be present in the hearing room during the examination of other witnesses of fact, unless the Parties agree otherwise. However, this rule does not apply to designated Parties' representatives or to witnesses of fact who have already given their testimony. They have the right to remain in the hearing room at all times. If Parties' representatives are also witnesses, they should be cross-examined first. Experts may be present in the hearing room at any time unless the Sole Arbitrator decides otherwise.

69. At the end of the hearing, the Parties may make closing arguments on their conclusions based upon the evidence gathered during the hearing and on their legal arguments.

70. The hearing shall be transcribed by court reporters and daily transcripts made available to the Parties and the Sole Arbitrator, the costs of which are to be met by each Party in equal shares, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear these costs and to what extent. The hiring of the court reporters will be the responsibility of the Parties themselves.

71. The hearing will take place at a location to be decided by the Sole Arbitrator, including, if necessary, entirely or partially remotely, via videoconference. The Parties are invited to make all necessary reservations in preparation for the hearing.

## XV. Translations and interpretation

72. Documents and authorities in a language other than English will be filed with an English translation at the cost of the submitting Party, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. For documents and authorities, only the relevant parts have to be translated. Each translation shall be deemed to be correct unless a Party disputes its correctness.



73. Oral testimonies in a language other than English must be interpreted in English. The cost of interpretation will be borne by the Party presenting the witness, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. The interpreters used by either Party must be independent of the Parties.

## XVI. VAT

74. Appendix III Article 2(13) of the ICC Rules is applicable. This paragraph provides as follows: "Amounts paid to the arbitrator do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties."

75. The Sole Arbitrator may have to pay value-added or similar taxes or charges on her fees and expenses. To the extent that this is the case, the Sole Arbitrator is entitled to claim, directly from the Parties, in addition to any entitlements received from the ICC, any such taxes or charges to be paid by them. The Sole Arbitrator may request the Parties to pay, under the same conditions, a retainer on the subject taxes or charges.

## XVII. Data protection and privacy regulations

76. The processing of the personal data of the Sole Arbitrator, the Parties and their representatives is necessary for the purposes of these arbitration proceedings.

77. The Sole Arbitrator, the Parties and their representatives have to comply with all applicable data protection and privacy regulations and/or any other relevant data protection law, including providing appropriate notice to data subjects whose personal data will be processed in the arbitration proceedings, where necessary.

## XVIII. Amendments

78. This Procedural Order No. 1 may be amended or supplemented, and the procedures for the conduct of this arbitration modified, pursuant to such further directions or Procedural Orders as the Sole Arbitrator may from time to time issue.


The Sole Arbitrator,




Iuliana Iancu


17



## Annex 1 to Procedural Order No. 1

### Procedural timetable

| Procedural step | Responsibility | Date |
|---|---|---|
| Case Management Conference | All | [at the latest by 8 May 2021 (Article 3(3) of Expedited Procedure Provisions] |
| Claimant's Statement of Claim | Claimant | |
| Respondents' Statement of Defense | Respondents | |
| Mid-Stream Case Management Conference | All | |
| [if applicable] Request for the production of documents in accordance with Annex 2 of Procedural Order No. 1 | Claimant, Respondents | |
| [if applicable] Objection(s) to the requests for the production of documents. Production of documents to which no objection is formulated | Claimant, Respondents | |
| [if applicable] Decision on the production of documents | Sole Arbitrator | |
| [if applicable] Production of documents | Claimant, Respondents | |
| Claimant's Reply | Claimant | |
| Respondents' Rejoinder | Respondents | |
| [if applicable] pre-hearing case management conference | All | |
| [if applicable] Hearing | All | [at the latest by 6 September 2021] |



**Annex 2 to Procedural Order No. 1**

**Redfern Schedule for Document Production Requests**

| No. | Documents or Category of Documents Requested | Relevance According to Requesting Party | | Objections to Document Request | Arbitral Tribunal's Decision |
|---|---|---|---|---|---|
| | | Ref. to Submissions | Comments | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |



| | |
|---|---|
| **From:** | Reception |
| **Sent:** | mercredi 28 avril 2021 14:02 |
| **To:** | Iuliana Iancu |
| **Subject:** | RE: a envoyer par DHL dans IULI001 |

Iuliana,

Voici le lien de suivi :

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=7368233283;

Bien à toi,
Sephora

From: Iuliana Iancu <iuliana.iancu@hvdb.com>
Sent: Wednesday, 28 April 2021 13:47
To: Reception <reception@hvdb.com>
Subject: a envoyer par DHL dans IULI001

**A envoyer par DHL dans IULI001**

A imprimer et mettre dans le colis :
- Une copie de la 28042021 Letter to Respondent Stevens (DHL)
- Une copie de la ICC25952 Draft PO1

A envoyer à :

    Mr. Mark Stevens
    ATHLETE BENEFITS GROUP, LLC
    2451 Oak Grove Heights
    Decatur, Georgia 30033
    United States of America
    Email: markstevensentinc@yahoo.com

Merci beaucoup!

Iuliana

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



# Reçu d'expédition

## Origine de l'envoi

HANOTIAU & VAN DEN BERG
Sephora Luabeya
Avenue Louise, 480/ bte9
IT Tower

1050 ELSENE
Belgium
+32022903900
+32022903939
sephora.luabeya@hvdb.com

## Destination de l'envoi

ATHLETE BENEFITS GROUP, LLC
Mr. Mark Stevens
Avenue Louise

30033-1348 Decatur  Georgia
United States of America
+32022903900

## Détails de l'envoi

| | |
|---|---|
| Date de l'envoi: | 2021-04-28 |
| N° de bordereau: | 7368233283 |
| Service: | EXPRESS ENVELOPE |
| Type d'emballage: | Express Envelope |
| Nombre de colis: | 1 |
| Poids total: | 0,30kg |
| Poids volumétrique: | 0,15kg |
| Poids facturable: | 0,30kg |
| Montant assuré: | |
| Incoterm: | |

## Informations internationales

| | |
|---|---|
| Valeur déclarée: | |
| Droits et taxes: | |
| Statut douanier: | Non-Dutiable |
| Date de livraison estimée: | Monday, 03 May, 2021 |
| Code promotion: | |

## Facturation

| | |
|---|---|
| Type de paiement: | DHL Account Number |
| Compte droits et taxes: | 953193806 |
| Droits et taxes: | |
| Tarif estimé: | 46,32 EUR |

| | |
|---|---|
| Service spécial: | Surcharge carburant/ Emergency Situation |

## Informations générales

| | |
|---|---|
| Référence: | IULI001 |
| Référence enlèvement: | PRG210428212980 |

## Description du contenu:

Documents - general business

2019 © Deutsche Post AG - All rights reserved



EXPRESS

<u>REQUEST FOR RETURN OF SHIPMENT TO ORIGIN.</u>

Dear Sir/Madam,

I,        declare that the consignment was sent to     *Athlete Benefits Group* *Cmte. An. Stevens*

I request to have the items sent back to our office:

Company name:

Street + Nr:

Postal code:            HANOTIAU & VAN DEN BERG
                    480 Avenue Louise Bte 9

City:                 B - 1050 BRUXELLES

Country:          *Belgium*

I agree using my international DHL account number (95/96): *953 193 806*

for following shipment(s): AWB number(s) *~~730533338~~*

I agree with the shipping cost of €     incl fuel This price is indicative and does not include fuel surcharge, VAT, import duties, any surcharges or other additional services[1].

Yours faithfully,

Contact name:          *DE JONGHE EDITH*
Contact phone number:
Date:                *02 290 39 00*
Company stamp and signature:

HANOTIAU & VAN DEN BERG
480 Avenue Louise Bte 9
B - 1050 BRUXELLES

[1] For more information about the current <u>fuel surcharge</u> or <u>any other surcharges or additional services</u>, please visit our website. Your shipment will be measured and weighted by DHL. The price will be recalculated based on our measurements if the shipment weight exceeds the declared weight. For this adaption the price per kilo will be used as mentioned above.

This message is from DHL Express and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient, please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this e-mail and its attachments is strictly prohibited.

!! Please be informed that every field needs to be filled

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

**Edith De Jonghe**

From:          Edith De Jonghe
Sent:          Wednesday, 12 May 2021 11:59
To:           'infobl1@dhl.com'
Cc:           Sephora Luabeya
Subject:      FW: awb JVC 7368233283
Attachments:  12052021105736-0001.pdf

Bonjour Madame,

Veuillez trouver le document complété par mes soins.

Je vous en souhaite bonne réception.

Bien à vous,

Edith De Jonghe
Receptionist

**HVDB** HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: www.hvdb.com
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

**From:** Sephora Luabeya <Sephora.Luabeya@hvdb.com>
**Sent:** Tuesday, 11 May 2021 18:34
**To:** Edith De Jonghe <edith.dejonghe@hvdb.com>
**Subject:** FW: awb JVC 7368233283

Coucou Edith,

Je pense que ce mail est pour toi 😊

Bisous,
Sephora

**From:** BE Info BL 1 (DHL BE) <infobl1@dhl.com>
**Sent:** Tuesday, 11 May 2021 17:08
**To:** Sephora Luabeya <Sephora.Luabeya@hvdb.com>
**Subject:** awb JVC 7368233283

Chère Mme Luabeya,
Suite à notre converssation téléphonique veuillez remplir et nous retourner le document en attach s.v.p.

1

Merci d' avence,
Lea

*Lea Coryn*

*Senior Customer Service Retention Advisor*

*DHL International N.V.*

*Industrieterrein Diegem Hoek*

*Woluwelaan 151*

*1831 Diegem*

*Belgium*

*Ph: 02 715 53 85*

*http://www.dhl.be*



*⌨ Please consider the environment - do you really need to print this email?*

*This is an e-mail message from DHL. The information contained in this communication is intended solely for use by the individual or entity to whom it is addressed. Use of this communication by others is prohibited. If the e-mail message was sent to you by mistake, please destroy it without reading, using, copying or disclosing its contents to any other person. We accept no liability for damage related to data and/or documents which are communicated by electronic mail.*

CONFIDENTIALITY NOTICE: This message is from DHL and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this E-Mail and its attachments is strictly prohibited.





# ANNEX III

CHAMBRE DE COMMERCE INTERNATIONALE

COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION

INTERNATIONAL CHAMBER OF COMMERCE



# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE *

AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL
T: +32.(0)2.290.39.00 · F: +32.(0)2.290.39.39 · info@hvdb.com · www.hvdb.com
TVA/BTW/VAT : BE 0475.333.058

ISUNAI PAUL LEFEBVRE 1, 2
Avocat à la Cour de cassation
Advocaat bij het Hof van Cassatie
BERNARD HANOTIAU 1, 2, 3
ALBERT JAN VAN DEN BERG 1, 2, 4
PASCAL HOLLANDER 1, 7
NIUSCHA BASSIRI 2, 6
PIERRE VERMEIRE 2
MAARTEN DRAYE 7
IULIANA IANCU 2, 6

MAGALI SERVAIS
EMILY HAY 2, 6

GLADYS BAGARIN 7
IRIS RAYNAUD 2, 11
TARUNIMA VIJRA 11
DINA OUADRASSI BETTIOUI
JUAN CAMILO JIMENEZ-VALENCIA 2, 10
PRATYUSH PANDWANI 11
BENJAMIN JENTGEN 11
LUDMILLA DE PUTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE PIJNIERE
FERNANDO GUTIERREZ 12
PAULINA BRZEZINSKA
BENJAMIN HOLLANDER

Avocats
Advocaten

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

Brussels, 7 May 2021

**ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)**

Dear Colleagues,

I write in the case under reference in connection with the case management conference (the "CMC").

On 6 May 2021, the CMC took place by way of videoconference in the presence of counsel for Claimant and the Sole Arbitrator. Respondents 1 and 2 did not appear. During the CMC I have informed counsel for Claimant that, due to an error with DHL routing, the Sole Arbitrator's letter dated 28 April 2021 could not be dispatched to Respondent 3 in time for the CMC.

I have informed Claimant that, for this reason, a second CMC would have to take place, in order to properly effect service on Respondent 3 and to allow Respondent 3 to put forward his comments on the draft PO1.

During the CMC, I have heard Claimant's comments regarding the draft Procedural Order No. 1. For clarity, these comments were fully reflected in Claimant's written comments circulated to the Sole Arbitrator and Respondents on 5 May 2021. I have also put forward a proposal regarding the draft Procedural Order No. 1 and the procedural calendar included in Annex 1 to the draft

1 Associés de la S.C.R.L. HANOTIAU & VAN DEN BERG, société civile à forme commerciale - RPM Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n° 0475.333.058 - 2 SRL/ BV - 3 Également membre du barreau de Paris / Ook advocaat bij de balie te Parijs - 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel - 5 Membre du barreau de Cologne inscrit à Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel - 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven te Brussel - 7 Membre des barreaux des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balie van de Filippijnen en New York ingeschreven te Brussel - 9 Membre du barreau d'Inde (New Delhi) inscrit à Bruxelles / Advocaat bij de balie van India (New Delhi) ingeschreven te Brussel - 10 Membre du barreau de Colombie inscrit à Bruxelles / Advocaat bij de balie van Colombia ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie van Paris ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel

* Maxwell Chambers – 32 Maxwell Road, # 03-01 Singapore 069115 – Tel. + 65 6408 3343 · E-mail: singapore@hvdb.com

Procedural Order No. 1. These proposals are reflected in the amended draft Procedural Order No. 1 (in attachment). During the CMC, Claimant indicated that this proposal was acceptable.

Considering the problem with service on Respondent 3 and the fact that these proceedings are conducted pursuant to Appendix VI to the 2017 ICC Arbitration Rules (the "Expedited Procedure Provisions"), I have decided that **the second CMC would take place on 13 May 2021, at 17:00 CET/11:00 Atlanta, Georgia**. The second CMC will take place by videoconference. The connection details for the videoconference are set out below.

By the latest **one day before the second CMC, *i.e.*, by Wednesday, 12 May 2021, at 17:00 CET/11:00 Atlanta, Georgia (United States)**, the Parties are invited:

1.  to submit any comments they have on the amended draft Procedural Order No. 1, which is attached to the present email.

2.  to indicate who will be participating at the second CMC for each Party.

I thank the Parties very much in advance for their cooperation.

With best regards,

Iuliana Iancu

**Iuliana IANCU**
**Partner**
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058

**VIDEO CONNECTION DETAILS**

Iuliana Iancu is inviting you to a scheduled Zoom meeting.

Topic: ICC Case 25952/HBH - 2nd CMC
Time: May 13, 2021 05:00 PM Brussels

Join Zoom Meeting
https://us02web.zoom.us/j/85410669747

Meeting ID: 854 1066 9747
Passcode: Uh855bE4Cx
One tap mobile
+13462487799,,85410669747#,,,,*0583641954# US (Houston)
+16699006833,,85410669747#,,,,*0583641954# US (San Jose)

Dial by your location
    +1 346 248 7799 US (Houston)
    +1 669 900 6833 US (San Jose)
    +1 929 205 6099 US (New York)
    +1 253 215 8782 US (Tacoma)
    +1 301 715 8592 US (Washington DC)
    +1 312 626 6799 US (Chicago)
Meeting ID: 854 1066 9747
Passcode: 0583641954
Find your local number: https://us02web.zoom.us/u/kACMJR6Fs




ICC ARBITRATION NO. 25952/HBH (EPP)

Style Definition: TOC 1

BETWEEN:


POLSKA FUNDACJA NARODOWA
(POLAND)


vs/


1. ATHLETE BENEFITS GROUP, LLC
(U.S.A.)

2. LAMAR D. WILLIAMS
(U.S.A.)

3. MARK STEVENS
(U.S.A.)


[DRAFT] PROCEDURAL ORDER NO. 1
[DATE]

**Table of Contents**

Table of Contents ........................................................................................................ 2

I.      Names and addresses of the Parties ............................................................ 43

   A.    Claimant ...................................................................................................... 43

   B.    Respondents ............................................................................................... 43

II.     The Sole Arbitrator ....................................................................................... 54

III.    Notifications and communications ............................................................... 54

IV.    The arbitration clause and the procedure to date ....................................... 76

V.      Place of arbitration ...................................................................................... 109

VI.    Applicable substantive law .......................................................................... 109

VII.   Language of the arbitration ......................................................................... 109

VIII.   Applicable procedural rules ......................................................................... 109

IX.    Procedural timetable .................................................................................. 1110

X.      Written submissions .................................................................................. 1210

XI.    Documentary evidence .............................................................................. 1211

XII.    Evidence of fact witnesses ......................................................................... 1511

XIII.   Evidence of expert witnesses ..................................................................... 1712

XIV.   Translations and interpretation .................................................................. 1912

XV.    VAT ............................................................................................................. 1913

XVI.   Data protection and privacy regulations ..................................................... 1913

XVII. Amendments ............................................................................................... 1913

Annex 1 to Procedural Order No. 1 ...................................................................... 2114

**Error! Hyperlink reference not valid.** Table of Contents **Error! Bookmark not defined.** 3

**Error! Hyperlink reference not valid.** I. ..................................... Names and addresses of the Parties ............................................................. **Error! Bookmark not defined.** 3

   **Error! Hyperlink reference not valid.** A. ........................................................................ Claimant
   ........ **Error! Bookmark not defined.** 3

   **Error! Hyperlink reference not valid.** B. ....................................................... Respondents
   ........ **Error! Bookmark not defined.** 3

**Error! Hyperlink reference not valid.** II. ................................................... The Sole Arbitrator
.......................................................... **Error! Bookmark not defined.** 4

**Error! Hyperlink reference not valid.** III. ................................... Notifications and communications
.......................................................... **Error! Bookmark not defined.** 4



Error! Hyperlink reference not valid.IV. The arbitration clause and the procedure to date
................................................................Error! Bookmark not defined.6

Error! Hyperlink reference not valid.V. .................................................Place of arbitration
................................................................Error! Bookmark not defined.9

Error! Hyperlink reference not valid.VI. .........................................Applicable substantive law
................................................................Error! Bookmark not defined.9

Error! Hyperlink reference not valid.VII. .........................................Language of the arbitration
................................................................Error! Bookmark not defined.9

Error! Hyperlink reference not valid.VIII. .........................................Applicable procedural rules
................................................................Error! Bookmark not defined.10

Error! Hyperlink reference not valid.IX. ...............................................Procedural timetable
................................................................Error! Bookmark not defined.10

Error! Hyperlink reference not valid.X. ..................................................Written submissions
................................................................Error! Bookmark not defined.10

Error! Hyperlink reference not valid.XI. .................................................Documentary evidence
................................................................Error! Bookmark not defined.11

Error! Hyperlink reference not valid.XII. .........................................Evidence of fact witnesses
................................................................Error! Bookmark not defined.12

Error! Hyperlink reference not valid.XIII. .........................................Evidence of expert witnesses
................................................................Error! Bookmark not defined.12

Error! Hyperlink reference not valid.XIV. .........................................Translations and interpretation
................................................................Error! Bookmark not defined.13

Error! Hyperlink reference not valid.XV. .................................................................VAT
................................................................Error! Bookmark not defined.13

Error! Hyperlink reference not valid.XVI. .........Data protection and privacy regulations
................................................................Error! Bookmark not defined.13

Error! Hyperlink reference not valid.XVII. Amendments .............Error! Bookmark not
defined.13

Error! Hyperlink reference not valid.Annex 1 to Procedural Order No. 1 ...............Error!
Bookmark not defined.15

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

## I. Names and addresses of the Parties

### A. Claimant

1. POLSKA FUNDACJA NARODOWA, a foundation incorporated and existing under the laws of Poland, with its statutory seat in Warsaw (Poland), at the address Aleja Jana Pawla II 12, 00-124 Warsaw, entered into the Register of Associations, Other Social and Professional Organizations, Foundations and Public Health Care Institutions of the Polish National Court Register under the number 0000655791, with VAT registration number PL5252691880,

   hereinafter referred to as "**Claimant**" or "**PFN**";

   assisted and represented in this arbitration by Dr. Beata Gessel-Kalinowska vel Kalisz, Ms. Joanna Kisielińska-Garncarek and Ms. Barbara Tomczyk of GESSEL ATTORNEYS AT LAW, Sienna 39, 00-121 Warsaw, Poland.

### B. Respondents

2. ATHLETE BENEFITS GROUP, LLC, a company incorporated and existing under the laws of the United Stated of America, with its registered office at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America,

   hereinafter referred to as "**Respondent 1**" or "**ABG**";

3. MR. LAMAR D. WILLIAMS, a [United States] national, residing at [2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America. Mr. Williams may also be reached at OR TANTON GROUP CPAs, LLP, 780 Third Avenue – Suite 701, New York, NY 10017, United States of America].

   hereinafter referred to as "**Respondent 2**",

4. MR. MARK STEVENS, a [United States] national, residing at [2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America],

   hereinafter referred to as "**Respondent 3**", and jointly with Respondents 1 and 2 as "**Respondents**";

5. Claimant and Respondents shall jointly be referred to as the "**Parties**".

4



## II.  The Sole Arbitrator

6. On 22 April 2021, the International Court of Arbitration of the International Chamber of Commerce (the "ICC Court") directly appointed Ms. Iuliana Iancu as Sole Arbitrator pursuant to Article 13(4)(a) of the 2017 ICC Rules of Arbitration (the "ICC Rules"). The Sole Arbitrator's contact details are the following:

> Ms. Iuliana Iancu
> HANOTIAU & VAN DEN BERG
> IT Tower, avenue Louise, 480/9
> 1050 Brussels
> BELGIUM
>
> Tel:      + 32 2 290 39 00
> Email:   iuliana.iancu@hvdb.com

7. By issuing this Procedural Order, the Sole Arbitrator confirms the acceptance of her appointment.

8. In accordance with Article 41 of the ICC Rules, the Sole Arbitrator will not be liable to any Party whatsoever for any act or omission in connection with these arbitration proceedings, except to the extent such limitation of liability is prohibited by applicable law.

## III.  Notifications and communications

9. All written notifications and communications arising in the course of this arbitration shall be deemed to have been validly made to each Party when they have been transmitted to:

-  For Claimant:

> Ms. Beata Gessel-Kalinowska vel Kalisz
> Ms. Joanna Kisielińska-Garncarek
> Ms. Barbara Tomczyk
> GESSEL ATTORNEYS AT LAW
> Sienna 39
> 00-121 Warsaw
> Poland
>
> Tel: +48 22 318 6901
> +48 22 318 6931
>
> Email: b.gessel@gessel.pl
> j.kisielinska@gessel.pl
> b.tomczyk@gessel.pl

5

- For Respondents:

Respondent 1
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
      lamardwilliams@aol.com
      ldw@tantongrpcpas.com
      markstevensentinc@yahoo.com

Respondent 2 (address 1)
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
      lamardwilliams@aol.com

Respondent 2 (address 2)
Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

Respondent 3
Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

10. The case management team of the Secretariat of the ICC Court (the "**Secretariat**") in charge of this arbitration is supervised by Ms. Hjördís Birna Hjartardóttir, Counsel, whose contact details are as follows:

- Ms. Hjördís Birna Hjartardóttir
  International Chamber of Commerce

International Court of Arbitration
33-43 avenue du Président Wilson
75116 Paris
France

Tel:            +33(0)1.49.53.30.90
Email:         ica7@iccwbo.org

11. All notifications and communications concerning this arbitration shall be sent by email to the addresses referred to in this Section III and in Section II. All communications and notifications sent to the Sole Arbitrator by one Party shall be sent simultaneously and under the same format to the other Party and to the Secretariat, and vice versa.

12. Any change of name, description, address, telephone, email address shall immediately be notified by the Party or the Sole Arbitrator to all other addressees referred to in this Section III and in Section II. Failing such notification, notifications and communications sent in accordance with this Section III and Section II shall be deemed valid.

## IV. The arbitration clause and the procedure to date

13. On 29 December 2020, Claimant submitted a Request for Arbitration (the "**Request**") to the Secretariat pursuant to the arbitration clause contained in the article titled "Final Provisions" contained in the Appearance Engagement, dated 30 October 2018 and entered into between PFN and ABG (the "**Agreement**"). This provision is transcribed in full below:

> "Final Provisions
>
> Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration will be Warsaw, Poland and the language of arbitration will be English."[1]

14. Pursuant to Article 4(2) of the ICC Rules, the arbitration is deemed to have commenced on 29 December 2020.

15. In its Request, Claimant requested that the dispute be decided by a sole arbitrator.

---

[1] Exhibit C-1.

7



16. On 14 January 2021, Claimant confirmed that it agreed to the notification of the Request by email to Respondents, further to the ICC's general communication dated 17 March 2020.

17. On 25 January 2021, the Secretariat notified Respondents of the filing of the Request and sent them copies thereof, as well as of the appended exhibits. The Secretariat invited Respondents to submit their answer to the Request and to comment on Claimant's proposition regarding a sole arbitrator within 30 days.

18. On the same date, the Secretariat informed the Parties that the ICC Rules included Expedited Procedure Provisions, which could potentially apply if the amount in dispute did not exceed USD 2 million (subject to the conditions set forth in Article 30(3) of the ICC Rules). The Secretariat informed the Parties that they could also agree to the application of the Expedited Procedure Provisions in all other cases.

19. On 11 February 2021, the Secretariat informed the Parties that, according to the electronic delivery receipt, Respondents had received the Request and the appended exhibits on 26 January 2021. The Secretariat informed the Parties that, pursuant to Article 5(1) of the ICC Rules, the 30-day time limit for the submission of Respondents' answer would expire on 25 February 2021.

20. On 25 February 2021, Claimant informed the Secretariat that it did not object to the present arbitral proceedings being conducted in accordance with the Expedited Procedure Provisions. Claimant also submitted that the present proceedings should be conducted in accordance with the ICC Rules in force as from 1 March 2017.

21. On the same date, Mr. Lamar Williams submitted "[his] response to the request for arbitration"[2] (the "Answer"), accompanied by two exhibits.

22. On 16 March 2021, the Secretariat circulated the Answer and Claimant's submission of 25 February 2021 to the Parties. The Secretariat informed the Parties that it understood the Answer to have been submitted on behalf of all Respondents in the arbitration. The Secretariat took note that Claimant had expressed its agreement to opt in for the application of the Expedited Procedure Provisions, and invited Respondents to comment thereon by 23 March 2021. The Secretariat extended the deadline for Respondents to comment on Claimant's proposal regarding a sole arbitrator by 23 March 2021.

23. On 2 April 2021, the Secretariat noted that Respondents had not submitted their comments as invited on 16 March 2021. The Secretariat confirmed that the proceedings would be conducted under Annex VI to the ICC Rules (the "Expedited Procedure Provisions"). The Secretariat further informed the Parties that, unless informed otherwise by 8 April 2021, it would proceed with the constitution of the arbitral tribunal.

---

[2] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the ICC, 25 February 2021.

24. On 23 April 2021, the Secretariat informed the Parties that the ICC Court, at its session of 22 April 2021, had appointed Ms. Iuliana Iancu as sole arbitrator pursuant to Article 13(4)(a) of the ICC Rules.

25. On the same date, the Secretariat transferred the file to the Sole Arbitrator.

26. On 26 April 2021, the Sole Arbitrator wrote to the Parties, transmitting a table of availabilities for the case management conference, as well as a draft Procedural Order No. 1 for comment. The Sole Arbitrator invited the Parties to revert with their availabilities for a case management conference (to be held at the latest until 8 May 2021) by Tuesday, 27 April 2021, 22:00 CET. The Sole Arbitrator also recommended to the Parties that, in light of the COVID 19 pandemic and Article 3(3) of the Expedited Procedure Provisions, the case management conference be held remotely, via videoconference. The Sole Arbitrator's letter to the Parties was also dispatched to Respondents via DHL.

27. On 27 April 2021, Mr. Lamar Williams wrote to the Sole Arbitrator, advising that "we duly and fully object to this arbitration" and referring to the Settlement and Release Agreement and "our Answer on February 25 [2021]".[5]

28. On the same day, the Sole Arbitrator responded to Mr. Williams' email above, copying Claimant, Respondents and the Secretariat. The Sole Arbitrator invited Mr. Williams to make sure that, whenever addressing the Sole Arbitrator, all other Parties to the proceedings, as well as the Secretariat, are copied on the correspondence. The Sole Arbitrator took due note of the objection raised on 27 April 2021, indicating that it would be fully addressed at the appropriate juncture of the proceedings. The Sole Arbitrator reiterated her invitation that Respondents fill in the table of availabilities for the case management conference and her recommendation that the case management conference be organized remotely, by video.

29. On the same day, Claimant reverted to the Sole Arbitrator with its availabilities for the case management conference.

30. Respondents did not revert to the Sole Arbitrator. According to the DHL tracking software, delivery was received at Respondent 2's second address but was refused by the addressee in the case of Respondent 1 and Respondent 3.

31. On 28 April 2021, the Sole Arbitrator informed the Parties that the case management conference would take place on 6 May 2021 at 16:00 CET/10:00 Atlanta, Georgia by videoconference (the **"First Case Management Conference"**). The Sole Arbitrator invited the Parties to submit their comments on the draft Procedural Order No. 1 by 5 May 2021, at 16:00 CET/10:00 Atlanta, Georgia. The Sole Arbitrator also circulated the connection details for the First Case Management Conference.

---

[5] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the Sole Arbitrator, 27 April 2021.

Formatted: English (United States)
Formatted: English (United States)



25.32. The Sole Arbitrator's letter above to the Parties was sent to Respondent 3 by DHL. Due to an error with DHL routing, the letter could not be delivered to Respondent 3 in time for the First Case Management Conference. 

33. On [...]6 May 2021, the First eCase mManagement Cconference took place by way of videoconference in the presence of counsel for Claimant[...] and the Sole Arbitrator. Respondents 1 and 2 did not appear. The Sole Arbitrator informed counsel for Claimant that, due to an error with DHL routing, the Sole Arbitrator's letter dated 28 April 2021 could not be dispatched to Respondent 3 in time for the First Case Management Conference. The Sole Arbitrator heard Claimant's comments regarding the draft Procedural Order No. 1 and put forward a proposal to Claimant regarding the procedural calendar. The Sole Arbitrator indicated to Claimant that a second case management conference would have to be organized in order to properly effect service on Respondent 3. The Sole Arbitrator informed Claimant that the second case management conference would take place on 13 May 2021, at 17:00 CET/11:00 Atlanta, Georgia.

34. On [...].

26. ——

## V.   Place of arbitration

27.35. Pursuant to the Final Provisions of the Agreement, the place of arbitration is Warsaw, Poland.

28.36. In accordance with Article 18(2) of the ICC Rules, the Sole Arbitrator may, after consultation with the Parties, conduct any hearings and meetings at any location she considers appropriate, including, if deemed appropriate, entirely remotely via videoconference, unless otherwise agreed by the Parties.

29.37. The award or awards in this arbitration (interim, partial or final) and all Procedural Orders may be signed at any location convenient to the Sole Arbitrator.

## VI.   Applicable substantive law

30.38. Pursuant to the Final Provisions of the Agreement, the Agreement is governed by Polish law.

## VII.   Language of the arbitration

31.39. Pursuant to the Final Provisions of the Agreement, the language of the arbitration shall be English.

## VIII. Applicable procedural rules

32.40. These proceedings shall be submitted to the ICC Rules applicable as from 1 March 2017. Where the Rules are silent, the Sole Arbitrator will apply, in accordance with

10



Article 19 of the ICC Rules, the rules which the Parties will have agreed upon, or failing them, any rules which the Sole Arbitrator may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

~~33.~~41. Moreover, these proceedings are subject to the Expedited Procedure Provisions.

~~34.~~42. The Sole Arbitrator has the power to issue procedural orders on specific procedural issues if and when needed, after consultation with the Parties.

## IX. Procedural timetable

~~[Note Sole Arbitrator to the Parties: the draft procedural calendar (included in Annex 1 to this draft Procedural Order envisages that the Sole Arbitrator shall conduct a mid stream case management conference with the Parties following the submission of the Statement of Claim and the Statement of Defense. The Sole Arbitrator envisages that at the mid stream case management conference, she will discuss with the Parties the following:~~

~~(i) Whether document production requests are necessary and appropriate considering the circumstances of the case;~~

~~(ii) Whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only;~~

Commented [G1]: At this stage of arbitration proceedings the Claimant initially indicates that the hearing might not be necessary.

~~(iii) The main factual and legal issues in dispute and the questions that the Parties should focus on in their further submission; and whether any limitation in the length or scope of these submissions is called for;~~

~~(iv) Any other pertinent issues that arise during the course of the proceedings and require further procedural directions.~~

~~As mentioned in the draft procedural calendar, if a hearing is to be organized, the latest date at which the hearing can be organized is 6 September 2021. The Parties are invited to bear this in mind when putting forth their position concerning the procedural calendar.~~

~~Pursuant to Article 4(1) of the Expedited Procedure Provisions, the final award must be rendered within 6 months of the case management conference. According to Appendix VI, Art. 1(1) of the 2019 ICC Note to the Parties and Arbitral Tribunals on the Conduct of the Arbitration, the Sole Arbitrator acting in expedited proceedings shall submit the draft award to the ICC Court for scrutiny within five months of the case management conference. As at the latest by 7 October 2021. In order to allow sufficient time for award drafting, if a hearing is required, it must be organized so as to allow at least one month for the drafting of the award.~~

Commented [G2]: Due to longlasting lack of communication between the Parties (and especially lack of responses on the side of Respondents) as well as Respondents' objection to conduct these arbitration proceedings, the agreement between the Parties with regard to procedural timetable is practically impossible. Notwithstanding the foregoing, the Claimant approached Respondents with this regard by e-mail correspondence dated 29 April 2021, 11:42 CET. This e-mail remained unanswered.

Therefore, the Claimant proposed the date for submission of Statement of Claim in the Annex 1, leaving the deadline for Statement of Defence for discussion during CMC / decision of sole arbitrator.

~~[The Parties are invited to discuss, seek to agree and revert to the Sole Arbitrator on the procedural calendar.]~~

35.43. The procedural timetable is included in Annex 1 to the present Procedural Order. The procedural timetable has been set by the Sole Arbitrator, after ~~consultation~~ requesting comments from~~with~~ the Parties, bearing in mind that the present proceedings are governed by the Expedited Procedure Provisions. Pursuant to Article 4 of the Expedited Procedure Provisions, the time limit within which the Sole Arbitrator must render the final award is six months from the date of the case management conference.

36.44. The Parties are required to cooperate in good faith with the Sole Arbitrator with a view to organizing the proceedings expeditiously and efficiently. The Parties are expected to strictly comply with the procedural deadlines set by the Sole Arbitrator. Extensions of time may be granted by the Sole Arbitrator in its discretion, in exceptional cases only and provided that a reasoned request is submitted before the event preventing a Party from complying with the deadline.

37.45. The Parties are invited not to copy the Sole Arbitrator on their correspondence (including requests and complaints to the other Party) and to address the Sole Arbitrator only to comply with the above-mentioned calendar or when they want the Sole Arbitrator to decide a disputed issue. The Parties are also invited not to make submissions other than those indicated in the procedural timetable, unless they have requested and obtained prior leave from the Sole Arbitrator.

## X.   Written submissions

38.46. The paragraphs of all written submissions shall be numbered consecutively, and the submissions shall include a table of contents.

39.47. For each of their submissions, the Parties will clearly indicate the evidence they invoke in support thereof: documents (with indication of the page and paragraphs), expert reports, witness statements, etc.

40.48. All written submissions (memoranda, witness statements and expert reports) – excluding exhibits – shall be communicated by email (where email addresses have been supplied for this purpose) to the Sole Arbitrator, the other Parties, and the ICC Secretariat in PDF (searchable) format on the day indicated in the procedural timetable. The scanned copies of signed witness statements and expert reports need not be in PDF searchable format, as long as unsigned copies of such statements and reports are submitted in PDF searchable format.

41.49. Two working days following the communication by email, a hard copy version of the same (A5.4 format, double sided, ~~spiral-bound in soft covers~~in binders) will be dispatched to the Sole Arbitrator. The memoranda, witness statements, expert reports and exhibits shall also be communicated in electronic format on a USB key to the Sole Arbitrator and the other Parties, to be sent by special courier delivery (DHL, Fedex or similar).

## XI.   Documentary evidence

12



42.50. Written submissions shall be accompanied by the documentary evidence and testimonial evidence relied upon by the relevant Party, including the legal authorities identified in the Parties' respective submissions. No new document may be presented outside the submissions or, [if applicable], at the hearing unless agreed by the Parties or authorised by the Sole Arbitrator.

Formatted: Not Highlight

43.51. Documents shall be submitted in the following form:

(i)     Exhibits shall be numbered consecutively throughout the proceedings;

(ii)    The number of each factual exhibit submitted by Claimant shall be preceded by the letter "C-"; the number of each factual exhibit submitted by Respondents shall be preceded by the letter "R-";

(iii)   The number of each legal exhibit submitted by Claimant shall be preceded by the letters "CL-"; the number of each legal exhibit submitted by Respondents shall be preceded by the letters "RL-";

(iv)    If provided in this format, hard copy versions of the exhibits shall be contained in separate binders, each exhibit having a divider with the exhibit's identification number;

(v)     The electronic and hard copy versions of the exhibits shall be accompanied by an index listing the exhibits and setting forth, for each exhibit, its number, its date, and a brief description of the exhibit.

(vi)    Such index shall be updated with each new submission of documents.

44.52. All documentary evidence submitted to the Sole Arbitrator shall be deemed to be authentic and complete, including evidence submitted in the form of copies, unless a Party disputes its authenticity or completeness.

[Note: Sole Arbitrator to the Parties: As different ~~~~~~~~~~~~~ the Sole Arbitrator consider that a mid-stream case management conference should be convened where, among others, the will discuss with the Parties whether document production requests are necessary and appropriate in light of the circumstances of the case. In the eventuality that, after hearing both Parties at the mid-stream case management the Sole Arbitrator were already deciding that some document production will be necessary, the Sole Arbitrator proposes the below list ~~~~~~~~~ for document production. The Parties are of course invited to comment on this text as well in addition to the remainder of the draft Procedural Order.]

45.    The Parties may request documents from each other in accordance with the deadlines set out in the procedural timetable. Any such request must provide information about the requested document(s), including identification of the document(s) in question (with reasonable particularity) and reasons for the request. The Parties may address the Sole Arbitrator only after they have sought to resolve the requests between

13

themselves. Correspondence or documents exchanged in the course of this process should not be sent to the Sole Arbitrator.

16. To the extent the totality of the requests referred to in paragraph 15 is not satisfied, the Parties shall file by way of simultaneous exchange their requests for document production on the date indicated in the procedural timetable. This request shall be submitted in electronic Word version and take the form of a tabular form with two sections:

(i) The Claimant's request(s) for the production of documents; and

(ii) The Respondents' request(s) for the production of documents.

17. This submission shall be presented in accordance with the model annexed to this Procedural Order No. 1 (Annex 2). The Parties may make objections to requests for the production of documents on the date indicated in the procedural timetable.

18. For its decision, the Sole Arbitrator will be guided — but will not be bound — by Articles 3 and 9 of the IBA Rules of Evidence (17 December 2020 version) (hereinafter the "IBA Rules"). On this basis, the Sole Arbitrator considers that the following standards should guide its reasoning:

(i) The request for production must identify each document or specific category of documents sought with precision;

(ii) The request must establish the relevance of each document or of each specific category of documents sought in such a way that the other Party and the Sole Arbitrator are able to refer to factual allegations in the submissions filed by the Parties to date. In other words, the requesting Party must make it clear with reasonable particularity what facts / allegations each document (or category of documents) sought is intended to establish;

(iii) The request must also establish with reasonable particularity how each document or specific category of documents sought is material to the outcome of the arbitration;

(iv) The Sole Arbitrator will only order the production of documents or a category of documents if they exist and are within the possession, power, custody or control of the other Party. If contested, the requesting Party will have to make a case that it is likely that the document is indeed within the possession, power, custody or control of the other Party;

(v) If necessary, the Sole Arbitrator shall also balance the request for production against the legitimate interests of the other Party, including any applicable privileges, the extent to which the request places an unreasonable burden on the other Party and the need to safeguard confidentiality, taking into account all the surrounding circumstances.

~~49.   Before its decision, the Sole Arbitrator may exercise its discretion, at the request of a Party, to hear oral submissions.~~

~~50.   If any specific document which a Party is directed by the Sole Arbitrator to produce or file contains privileged or proprietary information or trade secrets, that Party shall indicate to the Sole Arbitrator and to the other Party what the nature of the privilege or the proprietary information is, and with respect to privilege by which law it is governed and who the parties/persons are who are affected by it. In that case, the Sole Arbitrator shall determine, after consultation with the Parties, the appropriate measures to be implemented in order to respect the proprietary or privileged nature of the information or the trade secret(s) while, to the extent possible, allowing the production of such evidence for the purpose of the arbitral proceedings. The Sole Arbitrator shall be guided (but not bound) in this regard by Article 9 of the IBA Rules.~~

## XII.  Evidence of fact witnesses

~~51.~~53.  If a Party wishes to adduce testimonial evidence in respect of its allegations, it shall so indicate in its submissions and submit written witness statements together with these submissions. The witness statements on which the Parties want to rely shall be submitted along with their submissions.

~~52.~~54.  Any person may present evidence as a witness, including a Party, a Party's officer, employee or other representative.

~~53.~~55.  Each witness statement shall:

    (i)      contain the name and address of the witness, his or her relationship to any of the Parties (past and present, if any) and a description of his or her qualifications;

    (ii)     contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute;

    (iii)    contain an affirmation of the truth of the statement;

    (iv)    be signed by the witness and give the date and place of signature; and

    (v)     identify with specificity any document or other material relied on and, if not already provided in the document exchange, attach a copy of the document or other material relied on.

~~54.~~56.  The witness statements shall be in sufficient detail so as to stand as examination in chief of the witness.

15

[Note: Sole Arbitrator to ask Parties: As mentioned under Section X above, the Sole Arbitrator considers that, a first case management conference should be organized where, among others, she will discuss with the Parties whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only. In the eventuality that, after hearing both Parties at the first case management Conference, the Sole Arbitrator can actually determine that the organization of a hearing will be necessary, the Sole Arbitrator proposes the below text to govern the presence of witnesses at the hearing. The Parties are of course invited to comment on this text as well.]

55. If a Party wishes to cross examine a witness whose statement has been filed by the other Party, it should request the presence of this witness at the hearing for cross examination.

56. On or before the date mentioned in the procedural timetable, each Party shall notify the other Party, with a copy to the Sole Arbitrator, of the names of the witnesses and experts of the other Party whom that Party wishes to cross examine at the witness hearing.

57. Being duly informed of the date of the hearings, the Parties will immediately after the receipt of this Procedural Order, or at least, as quickly as possible, inform their potential witnesses of these dates to secure their attendance at the hearing and avoid any disruption of the procedural calendar.

58. The witnesses shall, in principle, be summoned by the Party which relies on their evidence. In the event that a Party's witness does not attend the witness hearing in person but wishes to participate at the hearing by videoconference, that party must apply to the Sole Arbitrator before the commencement of the witness hearing for leave to do so, and the Sole Arbitrator shall hear the Parties on this issue and decide whether that witness should be permitted to give evidence by videoconference and on what terms. Where a witness should ultimately not be able to attend in person or by videoconference for any reason, the Sole Arbitrator shall hear the Parties on this issue and decide after taking into account all relevant circumstances, including the Parties' legitimate interests, what weight should be given to the testimony of said witness, if any.

59. The admissibility, relevance, weight and materiality of the evidence offered by a witness shall be determined by the Sole Arbitrator.

60. Waiver by a Party of its right to cross examine a witness shall not imply acceptance of the content of the corresponding witness statement. When a Party has waived its right to cross examine a witness, the Sole Arbitrator will weigh the witness's evidence in its discretion. The same applies if the cross examination has been limited to certain portions only of the witness statement.

61. The costs of a witness's appearance shall be borne by the Party who submitted the witness's testimony, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs and to what extent.

Commented [G3]: At this stage of arbitration proceedings, in Claimant's view, it is possible to decide the case on the basis of documents (including written witness statements) only.

16

## XIII. Evidence of expert witnesses

62.57. The provisions of Section XII of this Procedural Order are applicable, *mutatis mutandis*, to expert witnesses. The expert shall identify his or her area of expertise. The expert's report will contain the expert's opinion including a description of the method, evidence and information used in arriving at the conclusions.

63.58. The Sole Arbitrator will also be guided – but will not be bound – by Article 5 of the IBA Rules which provides that in case the Parties submit expert reports, the Sole Arbitrator may, if it deems it appropriate, order the Party-appointed experts to meet and confer on their reports after the exchange of the Parties' memoranda. At such meeting, the experts shall attempt to reach agreement on those issues as to which they had differences of opinion in their expert reports, they will try to narrow them, and they shall record in writing the issues on which they reached agreement or in relation to which they have been able to narrow their differences.

## XIV. Hearing

[Note: Sole Arbitrator to the Parties: As mentioned under Section IV above, the Sole Arbitrator considers that a mid-stream case management conference should be organized where, among others, she will discuss with the Parties whether the organization of a hearing is necessary, or whether the case can be decided on the basis of documents only. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator can already determine that the organization of a hearing will be necessary, the Sole Arbitrator proposes the below text regarding the organization of the hearing.]

64. The hearing shall commence with each Party making an opening statement, the duration and format of which will be a matter for discussion between the Parties and confirmation by the Sole Arbitrator.

65. The use of demonstrative exhibits (such as charts, tabulations, etc.) is allowed at the hearing, provided that no new evidence is contained therein. A hard and electronic copy of any such exhibit shall simultaneously be provided by the Party submitting such exhibit to the other Party and to the Sole Arbitrator. The Parties shall exchange copies of proposed demonstrative exhibits no later than noon on the day before the day the demonstrative exhibit is intended to be used.

66. The procedure for examining witnesses at the witness hearing shall be the following:

(i) Claimant's witnesses will be examined first, followed by Respondents' witnesses. This order may be varied for good reason (for example, to accommodate a witness's availability or to hear the evidence of experts of the same discipline concurrently or consecutively).

(ii) Each witness shall first be invited to confirm his or her written statement.

(iii) ~~The Party presenting the witness will have the right to make a short examination in chief of that witness on new facts or developments, if any, which have taken place since the date of filing of his/her last witness statement. The witness shall also have the opportunity to correct any errors or omissions in his or her witness statement. Such examination should not exceed ten minutes in length. As far as expert witnesses are concerned, it is suggested that the experts make a short presentation of their report in lieu of direct examination, and such presentation should not exceed 30 minutes in length.~~

(iv) ~~The opposing Party shall then proceed to cross-examine the witness, followed by a re-examination by the first Party. The scope of the cross-examination shall not be limited to the evidence covered in the witness statement but may cover facts related to the dispute within the witness's knowledge. The scope of the re-examination shall be limited to matters that have arisen in the cross-examination. There will not be any re-cross examination unless authorised by the Sole Arbitrator.~~

(v) ~~The Sole Arbitrator shall have the right to examine the witnesses and to put questions during the examination by counsel. It shall ensure that each Party has the opportunity to re-examine a witness with respect to questions raised by the Sole Arbitrator.~~

(vi) ~~The Sole Arbitrator shall at all times have complete control over the procedure in relation to a witness giving oral evidence, including the right to limit or exclude any question when it considers that the particular question is irrelevant or unnecessarily burdensome or duplicative.~~

67. ~~Witnesses will not be heard under oath.~~

68. ~~Witnesses of fact may not be present in the hearing room during the examination of other witnesses of fact, unless the Parties agree otherwise. However, this rule does not apply to designated Parties' representatives or to witnesses of fact who have already given their testimony. They have the right to remain in the hearing room at all times. If Parties' representatives are also witnesses, they should be cross-examined first. Experts may be present in the hearing room at any time unless the Sole Arbitrator decides otherwise.~~

69. ~~At the end of the hearing, the Parties may make closing arguments on their conclusions based upon the evidence gathered during the hearing and on their legal arguments.~~

70. ~~The hearing shall be transcribed by court reporters and daily transcripts made available to the Parties and the Sole Arbitrator, the costs of which are to be met by each Party in equal shares, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear these costs and to what extent. The hiring of the court reporters will be the responsibility of the Parties themselves.~~

71. The hearing will take place at a location to be decided by the Sole Arbitrator, including, if necessary, entirely or partially remotely, via videoconference. The Parties are invited to make all necessary reservations in preparation for the hearing.

### XIV. Translations and interpretation

72.59. Documents and authorities in a language other than English will be filed with an English translation at the cost of the submitting Party, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. For documents and authorities, only the relevant parts have to be translated. Each translation shall be deemed to be correct unless a Party disputes its correctness.

73.60. Oral testimonies in a language other than English must be interpreted in English. The cost of interpretation will be borne by the Party presenting the witness, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. The interpreters used by either Party must be independent of the Parties.

### XVI. VAT

74.61. Appendix III Article 2(13) of the ICC Rules is applicable. This paragraph provides as follows: "Amounts paid to the arbitrator do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties."

75.62. The Sole Arbitrator may have to pay value-added or similar taxes or charges on her fees and expenses. To the extent that this is the case, the Sole Arbitrator is entitled to claim, directly from the Parties, in addition to any entitlements received from the ICC, any such taxes or charges to be paid by them. The Sole Arbitrator may request the Parties to pay, under the same conditions, a retainer on the subject taxes or charges.

### XVII. Data protection and privacy regulations

76.63. The processing of the personal data of the Sole Arbitrator, the Parties and their representatives is necessary for the purposes of these arbitration proceedings.

77.64. The Sole Arbitrator, the Parties and their representatives have to comply with all applicable data protection and privacy regulations and/or any other relevant data protection law, including providing appropriate notice to data subjects whose personal data will be processed in the arbitration proceedings, where necessary.

### XVIII. Amendments

78.65. This Procedural Order No. 1 may be amended or supplemented, and the procedures for the conduct of this arbitration modified, pursuant to such further directions or Procedural Orders as the Sole Arbitrator may from time to time issue.

The Sole Arbitrator,


Iuliana Iancu

Annex 1 to Procedural Order No. 1

Procedural timetable

| Procedural step | Responsibility | Date | |
|---|---|---|---|
| First Case Management Conference | All | [at the latest by 8 May 2021 (Article 3.3 of Expedited Procedure Provisions)]6 May 2021 <br><br> 16:00 CET/10:00 Geneva | Formatted Table <br> Formatted: Font: Not Bold |
| Second Case Management Conference | All | 13 May 2021 <br><br> 17:00 CET/11:00 Geneva | Formatted: Font: Not Bold |
| Claimant's Statement of Claim | Claimant | 7 June 2021 <br><br> (30 days following First Case Management Conference) | Formatted: Font: Not Bold |
| Respondents' Statement of Defense | Respondents | 7 July 2021 <br><br> (30 days following the Statement of Claim) | Formatted: Font: Not Bold |
| Mid-Stream Case Management Conference | All | 21 July 2021 <br><br> 17:00 CET/11:00 Geneva | Formatted: Font: Not Bold |
| Option 1[If applicable] Request for the production of documents in accordance with Annex 2 of Procedural Order No. 1 <br><br> (if the Sole Arbitrator decides at the Mid-Stream Case Management Conference that a hearing is necessary)Claimant, Respondents | | | Formatted: Font: Not Bold |
| Simultaneous submissions from Parties[If applicable] Objection(s) to the requests for the production of documents. Production of documents to which no objection is formulated (with answers to Sole Arbitrator questions) | Claimant, RespondentsClaimant, Respondents | 11 August 2021 | Formatted Table |
| Hearing | All | 1 or 2 September 2021 | |
| [If applicable] Decision on the production of documents | Sole Arbitrator | | Formatted Table |



| Procedural step | Responsibility | Date |
|---|---|---|
| ~~[If applicable] Production of documents~~ Claimant, Respondents Option 2 (if the Sole Arbitrator decides at the Mid-Stream Case Management Conference that a hearing is not necess | | |
| Claimant's Reply | Claimant | 11 August 2021 |
| Respondents' Rejoinder | Respondents | 1 September 2021 |
| ~~[If applicable] pre-hearing case-management conference~~ | ~~All~~ | |
| ~~[If applicable] Hearing~~ | ~~All~~ | ~~[at the latest by 6 September 2021]~~ |

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

Annex 2 to Procedural Order No. 1

Redfern Schedule for Document Production Requests

| No. | Documents or Category of Documents Requested | Relevance According to Requesting Party | | Objections to Document Request | Arbitral Tribunal's Decision |
|---|---|---|---|---|---|
| | | Ref. to Submissions | Comments | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

| | |
|---|---|
| **From:** | Reception |
| **Sent:** | vendredi 7 mai 2021 09:34 |
| **To:** | Iuliana Iancu |
| **Cc:** | Sephora Luabeya |
| **Subject:** | RE: a envoyer par DHL dans IULI001 |

Coucou Iuliana,

Voici le lien pour le DHL d'aujourd'hui. La livraison est prévue pour le mardi 11 mai à 10h30.

Je t'en souhaite bonne réception.

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=9619692014

belle journée,
bien à toi,

Edith De Jonghe
Receptionist

**HVDB** HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: www.hvdb.com
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

**From:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Sent:** Friday, 7 May 2021 09:11
**To:** Reception <reception@hvdb.com>; Edith De Jonghe <edith.dejonghe@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

**A envoyer par DHL (l'option la plus rapide possible) dans IULI001**

A imprimer et mettre dans le colis :
- Une copie de la 07052021 Letter to Respondent Stevens (DHL)
- Une copie de la ICC25952 Draft PO1_06052021 – en couleur, recto-verso

A envoyer à :

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

1

**Résultats de suivi**

## Récapitulatif

Numéro d'expédition 9619692014     Dimanche, Mai 16, 2021 à 10:19     1 Pièce
Renvoi à l'expéditeur     Origine:
Preuve de livraison     BRUSSELS - ELSENE - BELGIUM
Destination:
ATLANTA, GA - DECATUR - USA

### Dimanche, Mai 16, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 20 | Renvoi à l'expéditeur | ATLANTA, GA - USA | 10:19 | 1 Pièce |

### mercredi, Mai 12, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 19 | Envoi refusé par destinataire | ATLANTA, GA - USA | 15:29 | 1 Pièce |
| 18 | En cours de livraison | ATLANTA, GA - USA | 10:23 | 1 Pièce |

### mardi, Mai 11, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 17 | Destinataire absent lors de la livraison. | ATLANTA, GA - USA | 11:16 | 1 Pièce |
| 16 | En cours de livraison | ATLANTA, GA - USA | 10:35 | 1 Pièce |
| 15 | Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 08:27 | 1 Pièce |
| 14 | Partie de l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 06:58 | 1 Pièce |
| 13 | Traitée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 03:09 | 1 Pièce |

### lundi, Mai 10, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 12 | Arrivée au centre de tri DHL de ATLANTA - USA | ATLANTA, GA - USA | 21:54 | 1 Pièce |
| 11 | Partie de l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:04 | 1 Pièce |
| 10 | Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 20:47 | 1 Pièce |

### Dimanche, Mai 09, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 9 | Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:24 | 1 Pièce |
| 8 | Dédouanement accompli à NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:24 | 1 Pièce |
| 7 | Arrivée au centre de tri DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 15:00 | 1 Pièce |
| 6 | Statut douanier mis à jour | NEW YORK CITY GATEWAY, NY - USA | 10:06 | |
| 5 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 11:19 | 1 Pièce |

### vendredi, Mai 07, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 4 | Arrivée au centre de tri DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:25 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:50 | 1 Pièce |
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:18 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:10 | 1 Pièce |



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

# ANNEX IV



# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE*
AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL
T: +32.(0)2.290.39.00 · F: +32.(0)2.290.39.39 · info@hvdb.com · www.hvdb.com
TVA/BTW/VAT : BE 0475.333.058

IBUNAL PAUL LEFEBVRE ¹·²
*Avocat à la Cour de cassation*
*Advocaat bij het Hof van Cassatie*
BERNARD HANOTIAU ¹·³·⁹
ALBERT JAN VAN DEN BERG ¹·²·⁴
PASCAL HOLLANDER ¹·⁷
HUSCHA BASIRI ⁵·⁵
PIERRE VERMEIRE ²
MAARTEN DRAYE ⁷
JULIANA IANG ⁵·⁶

MAGALI SERVAIS
EMILY HAY ⁵·⁶

GLADYS BAGASIN ⁹
IRIS RAYNAUD ⁵·¹¹
TARUHNA VIJIA ⁴⁰
DINA OUADRASSI BETTOUI
JUAN CAMILO JIMENEZ-VALENCIA ²·¹⁰
PRATYUSH PANIWANI ⁹
BENJAMIN JEMRAN ¹¹
LIDSMILLA DE POTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE FUMIERE
FERNANDO GUTIERREZ ¹²
PAULINA BREZINSKA
BENJAMIN HOLLANDER

*Avocats*
*Advocaten*

Athlete Benefits Group, LLC
1013 Centre Road, Suite 403S,
Wilmington, Delaware 19805
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com
ldw@tantongrpcpas.com
markstevensentinc@yahoo.com

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Email: markstevensentinc@yahoo.com

Brussels, 10 May 2021

**ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)**

Dear Colleagues,

I take note of Claimant's email of 7 May 2021, informing the Sole Arbitrator that it has identified other possible addresses for service on Respondents 1 and 3.

In order to allow service on Respondents 1 and 3 at these additional addresses, I have decided that **the second CMC would be postponed to 19 May 2021, at 17:00 CET/11:00 EST (Georgia and Delaware local time)**. The second CMC will take place by videoconference. The connection details for the videoconference are set out below.

I attach an amended draft Procedural Order No. 1 reflecting these further developments. The Parties are in particular invited to carefully review the draft procedural calendar included in Annex 1 to the draft Procedural Order No. 1.

By the latest **one day before the second CMC, _i.e._, by Tuesday, 18 May 2021, at 17:00 CET/11:00 EST**, the Parties are invited:

1 Associés de la S.C.R.L. HANOTIAU & VAN DEN BERG, société civile à forme commerciale - RPM Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n°0475.333.058 · 2 SRL/ BV · 3 Egalement membre du barreau de Paris / Ook advocaat bij de balie te Parijs · 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel · 5 Membre du barreau de Cologne inscrit à Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel · 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven te Brussel · 7 Membre des barreaux des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balies van de Filipijnen an New York ingeschreven te Brussel · 8 Solliciteur admise devant la Cour Suprême de New South Wales inscrite à Bruxelles / Sollicitor beëdigd voor de Supreme Court van New South Wales ingeschreven te Brussel · 9 Membre du barreau de la Cour Suprême de New South Wales inscrit à Bruxelles - 10 Membre du barreau de Colombie inscrit à Bruxelles / Advocaat bij de balie van Colombia ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie te Parijs ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel

* Maxwell Chambers – 32 Maxwell Road, # 03-01 Singapore 069115 – Tel. + 65 6408 3343 · E-mail: singapore@hvdb.com

1. to submit any comments they have on the amended draft Procedural Order No. 1, which is attached to the present email.

2. to indicate who will be participating at the second CMC for each Party.

I thank the Parties very much in advance for their cooperation.

With best regards,

Iuliana Iancu

**Iuliana IANCU**
**Partner**
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



## VIDEO CONNECTION DETAILS

Iuliana Iancu is inviting you to a scheduled Zoom meeting.

Topic: ICC Case 25952/HBH - 2nd CMC
Time: May 19, 2021 05:00 PM Brussels

Join Zoom Meeting
https://us02web.zoom.us/j/85410669747

Meeting ID: 854 1066 9747
Passcode: Uh855bE4Cx
One tap mobile
+13462487799,,85410669747#,,,,*0583641954# US (Houston)
+16699006833,,85410669747#,,,,*0583641954# US (San Jose)

Dial by your location
        +1 346 248 7799 US (Houston)
        +1 669 900 6833 US (San Jose)
        +1 929 205 6099 US (New York)
        +1 253 215 8782 US (Tacoma)
        +1 301 715 8592 US (Washington DC)
        +1 312 626 6799 US (Chicago)
Meeting ID: 854 1066 9747
Passcode: 0583641954
Find your local number: https://us02web.zoom.us/u/kACMJR6Fs



ICC Arbitration No. 25952/HBH (EPP)

Between:

POLSKA FUNDACJA NARODOWA
(Poland)

vs/

1. ATHLETE BENEFITS GROUP, LLC
(U.S.A.)

2. Lamar D. Williams
(U.S.A.)

3. Mark Stevens
(U.S.A.)

[DRAFT] Procedural Order No. 1
[DATE]

## Table of Contents

Table of Contents ..................................................................................................................... 2
I.      Names and addresses of the Parties ........................................................................... 43
        A.      Claimant ............................................................................................................... 43
        B.      Respondents ......................................................................................................... 43
II.     The Sole Arbitrator .................................................................................................... 54
III.    Notifications and communications ............................................................................ 54
IV.     The arbitration clause and the procedure to date ...................................................... 76
V.      Place of arbitration .................................................................................................. 119
VI.     Applicable substantive law ...................................................................................... 119
VII.    Language of the arbitration ...................................................................................... 119
VIII.   Applicable procedural rules ..................................................................................... 119
IX.     Procedural timetable ............................................................................................. 1110
X.      Written submissions ............................................................................................... 1310
XI.     Documentary evidence ........................................................................................... 1311
XII.    Evidence of fact witnesses ..................................................................................... 1611
XIII.   Evidence of expert witnesses ................................................................................. 1712
XIV.    Translations and interpretation .............................................................................. 1913
XV.     VAT ....................................................................................................................... 2013
XVI.    Data protection and privacy regulations ................................................................ 2013
XVII.   Amendments .......................................................................................................... 2013
        Annex 1 to Procedural Order No. 1 ........................................................................ 2214
**Error! Hyperlink reference not valid.Table of Contents Error! Bookmark not defined.2**
**Error! Hyperlink reference not valid.I. ......................... Names and addresses of the Parties**
        **...................................................................................... Error! Bookmark not defined.3**
        **Error! Hyperlink reference not valid.A. ................................................................... Claimant**
        **...................... Error! Bookmark not defined.3**
        **Error! Hyperlink reference not valid.B. .............................................................. Respondents**
        **...................... Error! Bookmark not defined.3**
**Error! Hyperlink reference not valid.II. ................................................. The Sole Arbitrator**
        **...................................................................................... Error! Bookmark not defined.4**
**Error! Hyperlink reference not valid.III. ...................... Notifications and communications**
        **...................................................................................... Error! Bookmark not defined.4**

Error! Hyperlink reference not valid.IV. The arbitration clause and the procedure to date .................................................................. Error! Bookmark not defined.6

Error! Hyperlink reference not valid.V. ........................................................ Place of arbitration ................................................................. Error! Bookmark not defined.9

Error! Hyperlink reference not valid.VI. ......................................... Applicable substantive law .................................................................. Error! Bookmark not defined.9

Error! Hyperlink reference not valid.VII. .................................... Language of the arbitration .................................................................. Error! Bookmark not defined.9

Error! Hyperlink reference not valid.VIII. ................................ Applicable procedural rules ......................................................... Error! Bookmark not defined.10

Error! Hyperlink reference not valid.IX. .......................................... Procedural timetable ......................................................... Error! Bookmark not defined.10

Error! Hyperlink reference not valid.X. ........................................................., Written submissions ......................................................... Error! Bookmark not defined.10

Error! Hyperlink reference not valid.XI. ........................................ Documentary evidence ......................................................... Error! Bookmark not defined.11

Error! Hyperlink reference not valid.XII. ...................................... Evidence of fact witnesses ......................................................... Error! Bookmark not defined.12

Error! Hyperlink reference not valid.XIII. ................................... Evidence of expert witnesses ......................................................... Error! Bookmark not defined.13

Error! Hyperlink reference not valid.XIV. .............................. Translations and interpretation ......................................................... Error! Bookmark not defined.13

Error! Hyperlink reference not valid.XV. .................................................................., VAT ......................................................... Error! Bookmark not defined.13

Error! Hyperlink reference not valid.XVI. ........... Data protection and privacy regulations ......................................................... Error! Bookmark not defined.13

Error! Hyperlink reference not valid.XVII. Amendments ............ Error! Bookmark not defined.13

Error! Hyperlink reference not valid.Annex 1 to Procedural Order No. 1 ............... Error! Bookmark not defined.15

## I. Names and addresses of the Parties

### A. Claimant

1. POLSKA FUNDACJA NARODOWA, a foundation incorporated and existing under the laws of Poland, with its statutory seat in Warsaw (Poland), at the address Aleja Jana Pawla II 12, 00-124 Warsaw, entered into the Register of Associations, Other Social and Professional Organizations, Foundations and Public Health Care Institutions of the Polish National Court Register under the number 0000655791, with VAT registration number PL5252691880,

   hereinafter referred to as "**Claimant**" or "**PFN**";

   assisted and represented in this arbitration by Dr. Beata Gessel-Kalinowska vel Kalisz, Ms. Joanna Kisielińska-Garncarek and Ms. Barbara Tomczyk of GESSEL ATTORNEYS AT LAW, Sienna 39, 00-121 Warsaw, Poland.

### B. Respondents

2. ATHLETE BENEFITS GROUP, LLC, a company incorporated and existing under the laws of the United Stated of America, with its registered office at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America,

   hereinafter referred to as "**Respondent 1**" or "**ABG**";

3. MR. LAMAR D. WILLIAMS, a [United States] national, residing at [2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America. Mr. Williams may also be reached at OR TANTON GROUP CPAs, LLP, 780 Third Avenue – Suite 701, New York, NY 10017, United States of America].

   hereinafter referred to as "**Respondent 2**",

4. MR. MARK STEVENS, a [United States] national, residing at [2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America],

   hereinafter referred to as "**Respondent 3**", and jointly with Respondents 1 and 2 as "**Respondents**";

5. Claimant and Respondents shall jointly be referred to as the "**Parties**".

4



## II. The Sole Arbitrator

6. On 22 April 2021, the International Court of Arbitration of the International Chamber of Commerce (the "**ICC Court**") directly appointed Ms. Iuliana Iancu as Sole Arbitrator pursuant to Article 13(4)(a) of the 2017 ICC Rules of Arbitration (the "**ICC Rules**"). The Sole Arbitrator's contact details are the following:

> Ms. Iuliana Iancu
> HANOTIAU & VAN DEN BERG
> IT Tower, avenue Louise, 480/9
> 1050 Brussels
> BELGIUM
>
> Tel:     + 32 2 290 39 00
> Email:   iuliana.iancu@hvdb.com

7. By issuing this Procedural Order, the Sole Arbitrator confirms the acceptance of her appointment.

8. In accordance with Article 41 of the ICC Rules, the Sole Arbitrator will not be liable to any Party whatsoever for any act or omission in connection with these arbitration proceedings, except to the extent such limitation of liability is prohibited by applicable law.

## III. Notifications and communications

9. All written notifications and communications arising in the course of this arbitration shall be deemed to have been validly made to each Party when they have been transmitted to:

> - For Claimant:
>
> Ms. Beata Gessel-Kalinowska vel Kalisz
> Ms. Joanna Kisielińska-Garncarek
> Ms. Barbara Tomczyk
> GESSEL ATTORNEYS AT LAW
> Sienna 39
> 00-121 Warsaw
> Poland
>
> Tel: +48 22 318 6901
> +48 22 318 6931
>
> Email: b.gessel@gessel.pl
> j.kisielinska@gessel.pl
> b.tomczyk@gessel.pl

5



- For Respondents:

Respondent 1
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
   lamardwilliams@aol.com
   ldw@tantongrpcpas.com
   markstevensentinc@yahoo.com

Respondent 2 (address 1)
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
   lamardwilliams@aol.com

Respondent 2 (address 2)
Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

Respondent 3
Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

10. The case management team of the Secretariat of the ICC Court (the "**Secretariat**") in charge of this arbitration is supervised by Ms. Hjördís Birna Hjartardóttir, Counsel, whose contact details are as follows:

- Ms. Hjördís Birna Hjartardóttir
  International Chamber of Commerce

6

International Court of Arbitration
33-43 avenue du Président Wilson
75116 Paris
France

Tel: +33(0)1.49.53.30.90
Email: ica7@iccwbo.org

11. All notifications and communications concerning this arbitration shall be sent by email to the addresses referred to in this Section III and in Section II. All communications and notifications sent to the Sole Arbitrator by one Party shall be sent simultaneously and under the same format to the other Party and to the Secretariat, and vice versa.

12. Any change of name, description, address, telephone, email address shall immediately be notified by the Party or the Sole Arbitrator to all other addressees referred to in this Section III and in Section II. Failing such notification, notifications and communications sent in accordance with this Section III and Section II shall be deemed valid.

## IV.  The arbitration clause and the procedure to date

13. On 29 December 2020, Claimant submitted a Request for Arbitration (the "Request") to the Secretariat pursuant to the arbitration clause contained in the article titled "Final Provisions" contained in the Appearance Engagement, dated 30 October 2018 and entered into between PFN and ABG (the "Agreement"). This provision is transcribed in full below:

> "Final Provisions
>
> Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration will be Warsaw, Poland and the language of arbitration will be English."[1]

14. Pursuant to Article 4(2) of the ICC Rules, the arbitration is deemed to have commenced on 29 December 2020.

15. In its Request, Claimant requested that the dispute be decided by a sole arbitrator.

---

[1] Exhibit C-1.

7



16. On 14 January 2021, Claimant confirmed that it agreed to the notification of the Request by email to Respondents, further to the ICC's general communication dated 17 March 2020.

17. On 25 January 2021, the Secretariat notified Respondents of the filing of the Request and sent them copies thereof, as well as of the appended exhibits. The Secretariat invited Respondents to submit their answer to the Request and to comment on Claimant's proposition regarding a sole arbitrator within 30 days.

18. On the same date, the Secretariat informed the Parties that the ICC Rules included Expedited Procedure Provisions, which could potentially apply if the amount in dispute did not exceed USD 2 million (subject to the conditions set forth in Article 30(3) of the ICC Rules). The Secretariat informed the Parties that they could also agree to the application of the Expedited Procedure Provisions in all other cases.

19. On 11 February 2021, the Secretariat informed the Parties that, according to the electronic delivery receipt, Respondents had received the Request and the appended exhibits on 26 January 2021. The Secretariat informed the Parties that, pursuant to Article 5(1) of the ICC Rules, the 30-day time limit for the submission of Respondents' answer would expire on 25 February 2021.

20. On 25 February 2021, Claimant informed the Secretariat that it did not object to the present arbitral proceedings being conducted in accordance with the Expedited Procedure Provisions. Claimant also submitted that the present proceedings should be conducted in accordance with the ICC Rules in force as from 1 March 2017.

21. On the same date, Mr. Lamar Williams submitted "[his] response to the request for arbitration"[2] (the "**Answer**"), accompanied by two exhibits.

22. On 16 March 2021, the Secretariat circulated the Answer and Claimant's submission of 25 February 2021 to the Parties. The Secretariat informed the Parties that it understood the Answer to have been submitted on behalf of all Respondents in the arbitration. The Secretariat took note that Claimant had expressed its agreement to opt in for the application of the Expedited Procedure Provisions, and invited Respondents to comment thereon by 23 March 2021. The Secretariat extended the deadline for Respondents to comment on Claimant's proposal regarding a sole arbitrator by 23 March 2021.

23. On 2 April 2021, the Secretariat noted that Respondents had not submitted their comments as invited on 16 March 2021. The Secretariat confirmed that the proceedings would be conducted under Annex VI to the ICC Rules (the "**Expedited Procedure Provisions**"). The Secretariat further informed the Parties that, unless informed otherwise by 8 April 2021, it would proceed with the constitution of the arbitral tribunal.

---

[2] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the ICC, 25 February 2021.

24. On 23 April 2021, the Secretariat informed the Parties that the ICC Court, at its session of 22 April 2021, had appointed Ms. Iuliana Iancu as sole arbitrator pursuant to Article 13(4)(a) of the ICC Rules.

25. On the same date, the Secretariat transferred the file to the Sole Arbitrator.

26. On 26 April 2021, the Sole Arbitrator wrote to the Parties, transmitting a table of availabilities for the case management conference, as well as a draft Procedural Order No. 1 for comment. The Sole Arbitrator invited the Parties to revert with their availabilities for a case management conference (to be held at the latest until 8 May 2021) by Tuesday, 27 April 2021, 22:00 CET. The Sole Arbitrator also recommended to the Parties that, in light of the COVID 19 pandemic and Article 3(3) of the Expedited Procedure Provisions, the case management conference be held remotely, via videoconference. The Sole Arbitrator's letter to the Parties was also dispatched to Respondents via DHL.

27. On 27 April 2021, Mr. Lamar Williams wrote to the Sole Arbitrator, advising that "we duly and fully object to this arbitration" and referring to the Settlement and Release Agreement and "our Answer on February 25 [2021]".[3]

28. On the same day, the Sole Arbitrator responded to Mr. Williams' email above, copying Claimant, Respondents and the Secretariat. The Sole Arbitrator invited Mr. Williams to make sure that, whenever addressing the Sole Arbitrator, all other Parties to the proceedings, as well as the Secretariat, are copied on the correspondence. The Sole Arbitrator took due note of the objection raised on 27 April 2021, indicating that it would be fully addressed at the appropriate juncture of the proceedings. The Sole Arbitrator reiterated her invitation that Respondents fill in the table of availabilities for the case management conference and her recommendation that the case management conference be organized remotely, by video.

29. On the same day, Claimant reverted to the Sole Arbitrator with its availabilities for the case management conference.

30. Respondents did not revert to the Sole Arbitrator. According to the DHL tracking software, delivery was received at Respondent 2's second address but was refused by the addressee in the case of Respondent 1 and Respondent 3.

31. On 28 April 2021, the Sole Arbitrator informed the Parties that the case management conference would take place on 6 May 2021 at 16:00 CET/10:00 Atlanta, Georgia by videoconference (the "First Case Management Conference"). The Sole Arbitrator invited the Parties to submit their comments on the draft Procedural Order No. 1 by 5 May 2021, at 16:00 CET/10:00 Atlanta, Georgia. The Sole Arbitrator also circulated the connection details for the First Case Management Conference.

---

[3] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the Sole Arbitrator, 27 April 2021.

Formatted: English (United States)
Formatted: English (United States)

Formatted: English (United States)

Formatted: English (United States)

Formatted: English (United States)

Formatted: Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Font: Bold

Formatted: Numbered + Level: 2 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 2,9 cm + Indent at: 3,54 cm

25.32. The Sole Arbitrator's letter above to the Parties was sent to Respondent 3 by DHL. Due to an error with DHL routing, the letter could not be delivered to Respondent 3 in time for the First Case Management Conference.

33. On [...]6 May 2021, the First a Case mManagement Cconference took place by way of videoconference in the presence of counsel for Claimant[...] and the Sole Arbitrator. Respondents 1 and 2 did not appear. The Sole Arbitrator informed counsel for Claimant that, due to an error with DHL routing, the Sole Arbitrator's letter dated 28 April 2021 could not be dispatched to Respondent 3 in time for the First Case Management Conference. The Sole Arbitrator heard Claimant's comments regarding the draft Procedural Order No. 1 and put forward a proposal to Claimant regarding the procedural calendar. The Sole Arbitrator indicated to Claimant that a second case management conference would have to be organized in order to properly effect service on Respondent 3. The Sole Arbitrator informed Claimant that the second case management conference would take place on 13 May 2021, at 17:00 CET/11:00 Atlanta, Georgia.

34. On 7 May 2021, the Sole Arbitrator informed the Parties that a second case management conference would be convened for 13 May, at 17:00 CET, in order to re-attempt service on Respondent No. 3 (the "Second Case Management Conference"). The Sole Arbitrator circulated an amended draft Procedural Order No. 1 for the Parties' comments by 12 May 2021, at 17:00 CET/11:00 Atlanta, Georgia, as well as the connection details for the Second Case Management Conference. The Sole Arbitrator's letter to the Parties, including the amended draft Procedural Order No. 1 and the new video connection details, were sent to Respondent 3 by DHL on the same day.

35. On the same day, counsel for Claimant notified the Sole Arbitrator that it had identified two other possible addresses of Respondents' for purposes of document delivery, namely:

   a. For Athlete Benefits Group, LLC: 1013 Centre Road, Suite 403S, Wilmington Delaware 19805, United States;

   b. For Mr. Mark Stevens: 3286 DeShong Drive, Stone Mountain, Georgia 30087, United States.

36. On 10 May 2021, the Sole Arbitrator informed the Parties that, in order to allow service to Respondent 1 and Respondent 3 at the above indicated addresses, the Second Case Management Conference was being rescheduled for 19 May 2021, at 17:00 CET/11:00 EST. The Sole Arbitrator circulated an amended draft Procedural Order No. 1 reflecting this change, for the Parties' comments by 18 May 2021, at 17:00 CET/11:00 EST, as well as connection details for the Second Case Management Conference. The Sole Arbitrator's letter to the Parties, including the amended draft Procedural Order No. 1 and the new video connection details, were sent to Respondents 1 and 3 by DHL on the same day.

10



37.   On [...]

26.

**V.   Place of arbitration**

Formatted: Indent: Left: 1 cm, No bullets or numbering

27.38. Pursuant to the Final Provisions of the Agreement, the place of arbitration is Warsaw, Poland.

28.39. In accordance with Article 18(2) of the ICC Rules, the Sole Arbitrator may, after consultation with the Parties, conduct any hearings and meetings at any location she considers appropriate, including, if deemed appropriate, entirely remotely via videoconference, unless otherwise agreed by the Parties.

29.40. The award or awards in this arbitration (interim, partial or final) and all Procedural Orders may be signed at any location convenient to the Sole Arbitrator.

**VI.   Applicable substantive law**

30.41. Pursuant to the Final Provisions of the Agreement, the Agreement is governed by Polish law.

**VII.   Language of the arbitration**

31.42. Pursuant to the Final Provisions of the Agreement, the language of the arbitration shall be English.

**VIII.  Applicable procedural rules**

32.43. These proceedings shall be submitted to the ICC Rules applicable as from 1 March 2017. Where the Rules are silent, the Sole Arbitrator will apply, in accordance with Article 19 of the ICC Rules, the rules which the Parties will have agreed upon, or failing them, any rules which the Sole Arbitrator may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

33.44. Moreover, these proceedings are subject to the Expedited Procedure Provisions.

34.45. The Sole Arbitrator has the power to issue procedural orders on specific procedural issues if and when needed, after consultation with the Parties.

**IX.   Procedural timetable**

~~[Note Sole Arbitrator to the Parties the draft procedural calendar includes a Annex 1 to the draft Procedural Order envisages that the Sole Arbitrator shall convene a mid-stream case management conference with the Parties following the submission of the Statement of Claim and the Statement of Defense. The Sole Arbitrator envisages that at the mid-stream case management conference, she will discuss with the Parties the following:~~

~~(i)   Whether abeyment, production requests are necessary and appropriate considering the circumstances of this case;~~

~~(ii)   Whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only;~~

~~(iii)   The main factual and legal issues in dispute, the questions that the Parties should focus on in their further submissions, and whether any limitation in the length or scope of those submissions is called for;~~

~~(iv)   Any other particular issue that arose during the course of the proceedings and require further procedural directions.~~

~~As mentioned in the draft procedural calendar, if a hearing is to be organized, the latest date at which the hearing can be organized is 6 September 2021. The Parties are invited to bear this in mind when putting forth their positions concerning the procedural calendar.~~

~~Pursuant to Article 1(1) of the Expedited Procedure Provisions, the final award must be rendered within 6 months of the case management conference. According to pt. 125, page 17 of the 2019 ICC Note to the Parties and Arbitral Tribunals on the Conduct of the Arbitration, the Sole Arbitrator acting in expedited proceedings shall submit the draft award to the ICC Court for scrutiny within five months of the case management conference (i.e. at the latest by 7 October 2021. In order to allow sufficient time for award drafting, if a hearing is required, it must be organized so as to allow at least one month for the drafting of the award.~~

~~[The Parties are invited to discuss, seek to agree and revert to the Sole Arbitrator on the procedural calendar.]~~

~~35.~~46. The procedural timetable is included in Annex 1 to the present Procedural Order. The procedural timetable has been set by the Sole Arbitrator, after ~~consultation requesting comments from~~with the Parties, bearing in mind that the present proceedings are governed by the Expedited Procedure Provisions. Pursuant to Article 4 of the Expedited Procedure Provisions, the time limit within which the Sole Arbitrator must render the final award is six months from the date of the case management conference.

~~36.~~47. The Parties are required to cooperate in good faith with the Sole Arbitrator with a view to organizing the proceedings expeditiously and efficiently. The Parties are expected to strictly comply with the procedural deadlines set by the Sole Arbitrator. Extensions of time may be granted by the Sole Arbitrator in its discretion, in

12

**Commented [G1]:** At this stage of arbitration proceedings the Claimant initially indicates that the hearing might not be necessary.

**Commented [G2]:** Due to longlasting lack of communication between the Parties (and especially lack of responses on the side of Respondents) as well as Respondents' objection to conduct these arbitration proceedings, the agreement between the Parties with regard to procedural timetable is practically impossible. Notwithstanding the foregoing, the Claimant approached Respondents with this regard by e-mail correspondence dated 29 April 2021, 11 :42 CET. This e-mail remained unanswered.

Therefore, the Claimant proposed the date for submission of Statement of Claim in the Annex 1, leaving the deadline for Statement of Defence for discussion during CMC / decision of sole arbitrator.

exceptional cases only and provided that a reasoned request is submitted before the event preventing a Party from complying with the deadline.

~~37.~~48. The Parties are invited not to copy the Sole Arbitrator on their correspondence (including requests and complaints to the other Party) and to address the Sole Arbitrator only to comply with the above-mentioned calendar or when they want the Sole Arbitrator to decide a disputed issue. The Parties are also invited not to make submissions other than those indicated in the procedural timetable, unless they have requested and obtained prior leave from the Sole Arbitrator.

## X.   Written submissions

~~38.~~49. The paragraphs of all written submissions shall be numbered consecutively, and the submissions shall include a table of contents.

~~39.~~50. For each of their submissions, the Parties will clearly indicate the evidence they invoke in support thereof: documents (with indication of the page and paragraphs), expert reports, witness statements, etc.

~~40.~~51. All written submissions (memoranda, witness statements and expert reports) – excluding exhibits – shall be communicated by email (where email addresses have been supplied for this purpose) to the Sole Arbitrator, the other Parties, and the ICC Secretariat in PDF (searchable) format on the day indicated in the procedural timetable. The scanned copies of signed witness statements and expert reports need not be in PDF searchable format, as long as unsigned copies of such statements and reports are submitted in PDF searchable format.

~~41.~~52. Two working days following the communication by email, a hard copy version of the same (A5~~4~~ format, double sided, ~~spiral-bound in soft covers~~in binders) will be dispatched to the Sole Arbitrator. The memoranda, witness statements, expert reports and exhibits shall also be communicated in electronic format on a USB key to the Sole Arbitrator and the other Parties, to be sent by special courier delivery (DHL, Fedex or similar).

## XI.   Documentary evidence

~~42.~~53. Written submissions shall be accompanied by the documentary evidence and testimonial evidence relied upon by the relevant Party, including the legal authorities identified in the Parties' respective submissions. No new document may be presented outside the submissions or, ~~[~~if applicable~~]~~, at the hearing unless agreed by the Parties or authorised by the Sole Arbitrator.

Formatted: Not Highlight

~~43.~~54. Documents shall be submitted in the following form:

(i)      Exhibits shall be numbered consecutively throughout the proceedings;

(ii)    The number of each factual exhibit submitted by Claimant shall be preceded by the letter "C-"; the number of each factual exhibit submitted by Respondents shall be preceded by the letter "R-";

(iii)    The number of each legal exhibit submitted by Claimant shall be preceded by the letters "CL-"; the number of each legal exhibit submitted by Respondents shall be preceded by the letters "RL-";

(iv)    If provided in this format, hard copy versions of the exhibits shall be contained in separate binders, each exhibit having a divider with the exhibit's identification number;

(v)    The electronic and hard copy versions of the exhibits shall be accompanied by an index listing the exhibits and setting forth, for each exhibit, its number, its date, and a brief description of the exhibit.

(vi)    Such index shall be updated with each new submission of documents.

44.55.  All documentary evidence submitted to the Sole Arbitrator shall be deemed to be authentic and complete, including evidence submitted in the form of copies, unless a Party disputes its authenticity or completeness.

~~[Note: Sole Arbitrator to the Parties: As mentioned under Section IX above, the Sole Arbitrator considers that a mid-stream case management conference should be organized where, among others, she will discuss with the Parties whether document production requests are necessary and appropriate in light of the circumstances of the case. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator has already determined that some document production will be necessary, the Sole Arbitrator proposes the below text to govern such document production. The Parties are of course invited to comment on this text as well in addition to the remainder of this draft Procedural Order.]~~

45.  ~~The Parties may request documents from each other in accordance with the deadlines set out in the procedural timetable. Any such request must provide information about the requested document(s), including identification of the document(s) in question (with reasonable particularity) and reasons for the request. The Parties may address the Sole Arbitrator only after they have sought to resolve the requests between themselves. Correspondence or documents exchanged in the course of this process should not be sent to the Sole Arbitrator.~~

46.  ~~To the extent the totality of the requests referred to in paragraph 45 is not satisfied, the Parties shall file by way of simultaneous exchange their requests for document production on the date indicated in the procedural timetable. This request shall be submitted in electronic Word version and take the form of a tabular form with two sections:~~

(i)    ~~The Claimant's request(s) for the production of documents; and~~

(ii)   The Respondents' request(s) for the production of documents.

47.   This submission shall be presented in accordance with the model annexed to this Procedural Order No. 1 (**Annex 2**). The Parties may make objections to requests for the production of documents on the date indicated in the procedural timetable.

48.   For its decision, the Sole Arbitrator will be guided — but will not be bound — by Articles 3 and 9 of the IBA Rules of Evidence (17 December 2020 version) (hereinafter the "**IBA Rules**"). On this basis, the Sole Arbitrator considers that the following standards should guide its reasoning:

(i)   The request for production must identify each document or specific category of documents sought with precision;

(ii)   The request must establish the relevance of each document or of each specific category of documents sought in such a way that the other Party and the Sole Arbitrator are able to refer to factual allegations in the submissions filed by the Parties to date. In other words, the requesting Party must make it clear with reasonable particularity what facts / allegations each document (or category of documents) sought is intended to establish;

(iii)   The request must also establish with reasonable particularity how each document or specific category of documents sought is material to the outcome of the arbitration;

(iv)   The Sole Arbitrator will only order the production of documents or a category of documents if they exist and are within the possession, power, custody or control of the other Party. If contested, the requesting Party will have to make a case that it is likely that the document is indeed within the possession, power, custody or control of the other Party;

(v)   If necessary, the Sole Arbitrator shall also balance the request for production against the legitimate interests of the other Party, including any applicable privileges, the extent to which the request places an unreasonable burden on the other Party and the need to safeguard confidentiality, taking into account all the surrounding circumstances;

49.   Before its decision, the Sole Arbitrator may exercise its discretion, at the request of a Party, to hear oral submissions.

50.   If any specific document which a Party is directed by the Sole Arbitrator to produce or file contains privileged or proprietary information or trade secrets, that Party shall indicate to the Sole Arbitrator and to the other Party what the nature of the privilege or the proprietary information is, and with respect to privilege by which law it is governed and who the parties/persons are who are affected by it. In that case, the Sole Arbitrator shall determine, after consultation with the Parties, the appropriate measures to be implemented in order to respect the proprietary or privileged nature of

~~the information or the trade secret(s) while, to the extent possible, allowing the production of such evidence for the purpose of the arbitral proceedings. The Sole Arbitrator shall be guided (but not bound) in this regard by Article 9 of the IBA Rules.~~

## XII. Evidence of fact witnesses

~~51.~~56. If a Party wishes to adduce testimonial evidence in respect of its allegations, it shall so indicate in its submissions and submit written witness statements together with these submissions. The witness statements on which the Parties want to rely shall be submitted along with their submissions.

~~52.~~57. Any person may present evidence as a witness, including a Party, a Party's officer, employee or other representative.

~~53.~~58. Each witness statement shall:

    (i)      contain the name and address of the witness, his or her relationship to any of the Parties (past and present, if any) and a description of his or her qualifications;

    (ii)      contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute;

    (iii)      contain an affirmation of the truth of the statement;

    (iv)      be signed by the witness and give the date and place of signature; and

    (v)      identify with specificity any document or other material relied on and, if not already provided in the document exchange, attach a copy of the document or other material relied on.

~~54.~~59. The witness statements shall be in sufficient detail so as to stand as examination in chief of the witness.

~~[Note: Sole Arbitrator to the Parties: As mentioned under Section IX above, the Sole Arbitrator considers that a first-stage case management conference should be organized, where, among others, she will discuss with the Parties whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only. In the eventuality that, after hearing such Parties at the first case management conference, the Sole Arbitrator may already determine that the organization of a hearing will be necessary, the Sole Arbitrator proposes the below text (s 60), or the presence of witnesses at the hearings. The Parties are of course invited to comment on this text as well.]~~

> **Commented [G3]:** At this stage of arbitration proceedings, in Claimant's view, it is possible to decide the case on the basis of documents (including written witness statements) only.

55. ~~If a Party wishes to cross-examine a witness whose statement has been filed by the other Party, it should request the presence of this witness at the hearing for cross-examination.~~

56. ~~On or before the date mentioned in the procedural timetable, each Party shall notify the other Party, with a copy to the Sole Arbitrator, of the names of the witnesses and experts of the other Party whom that Party wishes to cross-examine at the witness hearing.~~

57. ~~Being duly informed of the date of the hearings, the Parties will immediately after the receipt of this Procedural Order, or at least, as quickly as possible, inform their potential witnesses of these dates to secure their attendance at the hearing and avoid any disruption of the procedural calendar.~~

58. ~~The witnesses shall, in principle, be summoned by the Party which relies on their evidence. In the event that a Party's witness does not attend the witness hearing in person but wishes to participate at the hearing by videoconference, that party must apply to the Sole Arbitrator before the commencement of the witness hearing for leave to do so, and the Sole Arbitrator shall hear the Parties on this issue and decide whether that witness should be permitted to give evidence by videoconference and on what terms. Where a witness should ultimately not be able to attend in person or by videoconference for any reason, the Sole Arbitrator shall hear the Parties on this issue and decide after taking into account all relevant circumstances, including the Parties' legitimate interests, what weight should be given to the testimony of said witness, if any.~~

59. ~~The admissibility, relevance, weight and materiality of the evidence offered by a witness shall be determined by the Sole Arbitrator.~~

60. ~~Waiver by a Party of its right to cross-examine a witness shall not imply acceptance of the content of the corresponding witness statement. When a Party has waived its right to cross-examine a witness, the Sole Arbitrator will weigh the witness's evidence in its discretion. The same applies if the cross-examination has been limited to certain portions only of the witness statement.~~

61. ~~The costs of a witness's appearance shall be borne by the Party who submitted the witness's testimony, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear these costs and to what extent.~~

## XIII. Evidence of expert witnesses

~~62.~~ 60. The provisions of Section XII of this Procedural Order are applicable, *mutatis mutandis*, to expert witnesses. The expert shall identify his or her area of expertise. The expert's report will contain the expert's opinion including a description of the method, evidence and information used in arriving at the conclusions.

63.61. The Sole Arbitrator will also be guided – but will not be bound – by Article 5 of the IBA Rules which provides that in case the Parties submit expert reports, the Sole Arbitrator may, if it deems it appropriate, order the Party-appointed experts to meet and confer on their reports after the exchange of the Parties' memoranda. At such meeting, the experts shall attempt to reach agreement on those issues as to which they had differences of opinion in their expert reports, they will try to narrow them, and they shall record in writing the issues on which they reached agreement or in relation to which they have been able to narrow their differences.

## ~~XIV. Hearing~~

~~[Note: Sole Arbitrator at the Parties' – as mentioned under Section IX above – the Sole Arbitrator considers that a mid-stream case management conference should be organized where, among others, he will discuss with the Parties whether the organization of a hearing is necessary or whether the case can be decided on the basis of documents only. In the eventuality that, after hearing both Parties at the first case management conference, the Sole Arbitrator will already determine that the organization of a hearing will be necessary, the Sole Arbitrator proposes the below text to govern the organization of the hearing:]~~

~~64. The hearing shall commence with each Party making an opening statement, the duration and format of which will be a matter for discussion between the Parties and confirmation by the Sole Arbitrator.~~

~~65. The use of demonstrative exhibits (such as charts, tabulations, etc.) is allowed at the hearing, provided that no new evidence is contained therein. A hard and electronic copy of any such exhibit shall simultaneously be provided by the Party submitting such exhibit to the other Party and to the Sole Arbitrator. The Parties shall exchange copies of proposed demonstrative exhibits no later than noon on the day before the day the demonstrative exhibit is intended to be used.~~

~~66. The procedure for examining witnesses at the witness hearing shall be the following:~~

~~(i) Claimant's witnesses will be examined first, followed by Respondents' witnesses. This order may be varied for good reason (for example, to accommodate a witness's availability or to hear the evidence of experts of the same discipline concurrently or consecutively).~~

~~(ii) Each witness shall first be invited to confirm his or her written statement.~~

~~(iii) The Party presenting the witness will have the right to make a short examination-in-chief of that witness on new facts or developments, if any, which have taken place since the date of filing of his/her last witness statement. The witness shall also have the opportunity to correct any errors or omissions in his or her witness statement. Such examination should not exceed ten minutes in length. As far as expert witnesses are concerned, it is suggested that the experts make a short presentation of their report in lieu of~~

direct examination, and such presentation should not exceed 30 minutes in length.

(iv) The opposing Party shall then proceed to cross-examine the witness, followed by a re-examination by the first Party. The scope of the cross-examination shall not be limited to the evidence covered in the witness statement but may cover facts related to the dispute within the witness's knowledge. The scope of the re-examination shall be limited to matters that have arisen in the cross-examination. There will not be any re-cross examination unless authorised by the Sole Arbitrator.

(v) The Sole Arbitrator shall have the right to examine the witnesses and to put questions during the examination by counsel. It shall ensure that each Party has the opportunity to re-examine a witness with respect to questions raised by the Sole Arbitrator.

(vi) The Sole Arbitrator shall at all times have complete control over the procedure in relation to a witness giving oral evidence, including the right to limit or exclude any question when it considers that the particular question is irrelevant or unnecessarily burdensome or duplicative.

67. Witnesses will not be heard under oath.

68. Witnesses of fact may not be present in the hearing room during the examination of other witnesses of fact, unless the Parties agree otherwise. However, this rule does not apply to designated Parties' representatives or to witnesses of fact who have already given their testimony. They have the right to remain in the hearing room at all times. If Parties' representatives are also witnesses, they should be cross-examined first. Experts may be present in the hearing room at any time unless the Sole Arbitrator decides otherwise.

69. At the end of the hearing, the Parties may make closing arguments on their conclusions based upon the evidence gathered during the hearing and on their legal arguments.

70. The hearing shall be transcribed by court reporters and daily transcripts made available to the Parties and the Sole Arbitrator, the costs of which are to be met by each Party in equal shares, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear these costs and to what extent. The hiring of the court reporters will be the responsibility of the Parties themselves.

71. The hearing will take place at a location to be decided by the Sole Arbitrator, including, if necessary, entirely or partially remotely via videoconference. The Parties are invited to make all necessary reservations in preparation for the hearing.

## XIV. Translations and interpretation

19

72.62. Documents and authorities in a language other than English will be filed with an English translation at the cost of the submitting Party, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. For documents and authorities, only the relevant parts have to be translated. Each translation shall be deemed to be correct unless a Party disputes its correctness.

73.63. Oral testimonies in a language other than English must be interpreted in English. The cost of interpretation will be borne by the Party presenting the witness, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. The interpreters used by either Party must be independent of the Parties.

## XVI. VAT

74.64. Appendix III Article 2(13) of the ICC Rules is applicable. This paragraph provides as follows: "Amounts paid to the arbitrator do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties."

75.65. The Sole Arbitrator may have to pay value-added or similar taxes or charges on her fees and expenses. To the extent that this is the case, the Sole Arbitrator is entitled to claim, directly from the Parties, in addition to any entitlements received from the ICC, any such taxes or charges to be paid by them. The Sole Arbitrator may request the Parties to pay, under the same conditions, a retainer on the subject taxes or charges.

## XVII. Data protection and privacy regulations

76.66. The processing of the personal data of the Sole Arbitrator, the Parties and their representatives is necessary for the purposes of these arbitration proceedings.

77.67. The Sole Arbitrator, the Parties and their representatives have to comply with all applicable data protection and privacy regulations and/or any other relevant data protection law, including providing appropriate notice to data subjects whose personal data will be processed in the arbitration proceedings, where necessary.

## XVIII. Amendments

78.68. This Procedural Order No. 1 may be amended or supplemented, and the procedures for the conduct of this arbitration modified, pursuant to such further directions or Procedural Orders as the Sole Arbitrator may from time to time issue.

The Sole Arbitrator,

Iuliana Iancu



Annex 1 to Procedural Order No. 1

Procedural timetable

| Procedural step | Responsibility | Date |
|---|---|---|
| First Case Management Conference | All | [at the latest by 3 May 2021 (Article 3(3) of Expedited Procedure Provision)]6 May 2021 <br><br> 16:00 CET/10:00 Ger |
| Second Case Management Conference | All | 19 May 2021 <br><br> 17:00 CET/11:00 Ger |
| Claimant's Statement of Claim | Claimant | 7 June 2021 <br><br> (30 days following First Case Management Conference) |
| Respondents' Statement of Defense | Respondents | 7 July 2021 <br><br> (30 days following the Statement of Claim) |
| Mid-Stream Case Management Conference | All | 21 July 2021 <br><br> 17:00 CET/11:00 Ger |
| Option 1:[if applicable] Request for the production of documents in accordance with Annex 2 of Procedural Order No. 1 <br><br> (if the Sole Arbitrator decides at the Mid-Stream Case Management Conference that a hearing is necessary)Claimant, Respondents | | |
| Simultaneous submissions from Parties[if applicable] Objection(s) to the requests for the production of documents. Production of documents to which no objection is formulated <br><br> (with answers to Sole Arbitrator questions) | Claimant, RespondentsClaimant, Respondents | 11 August 2021 |
| Hearing | All | 1 or 2 September 2021 |
| [if applicable] Decision on the production of documents | Sole Arbitrator | |

| Procedural step | Responsibility | Date |
|---|---|---|
| [If applicable] Production of documents ~~Claimant, Respondents~~Option 2 (if the Sole Arbitrator decides at the Mid-Stream Case Management Conference that a hearing is not necess | | |

Formatted Table
Formatted: Font: Not Bold
Formatted Table

| | | |
|---|---|---|
| Claimant's Reply | Claimant | 11 August 2021 |
| Respondents' Rejoinder | Respondents | 1 September 2021 |
| ~~[If applicable] pre-hearing case management conference~~ | ~~All~~ | |
| ~~[If applicable] Hearing~~ | ~~All~~ | ~~[at the latest by 6 September 2021]~~ |

Redfern Schedule for Document Production Requests

| No. | Documents or Category of Documents Requested | Relevance According to Requesting Party | | Objections to Document Request | Arbitral Tribunal's Decision |
|---|---|---|---|---|---|
| | | Ref. to Submissions | Comments | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Formatted: Left: 3 cm, Right: 3 cm, Top: 2,8 cm, Bottom: 2,5 cm, Width: 21,59 cm, Height: 27,94 cm

Formatted: Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Centered, Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Level 1, Indent: Left: 0 cm, Hanging: 1 cm

Formatted: Level 1

CHAMBRE DE COMMERCE INTERNATIONALE

COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION

INTERNATIONAL CHAMBER OF COMMERCE

**Iuliana Iancu**

**From:** Edith De Jonghe
**Sent:** lundi 10 mai 2021 12:22
**To:** Iuliana Iancu
**Cc:** Sephora Luabeya
**Subject:** RE: a envoyer par DHL dans IULI001

Coucou Iuliana,

Voici les liens DHL pour ta parfaite information.

Je t'en souhaite bonne réception.

Belle journée,
Bien à toi,

**From:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Sent:** Monday, 10 May 2021 10:28
**To:** Reception <reception@hvdb.com>; Edith De Jonghe <edith.dejonghe@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

**A envoyer par DHL (l'option la plus rapide possible) dans IULI001**

A imprimer et mettre dans chaque colis :
- Une copie de la 10052021 Letter to Respondents Athlete Benefits and Mark Stevens (DHL)
- Une copie de la ICC25952 Draft PO1_10052021 – en couleur, recto-verso

A envoyer à :

1. Athlete Benefits Group, LLC
   1013 Centre Road, Suite 403S,
   Wilmington, Delaware 19805
   United States of America
   Email: lamardwilliams@me.com
   lamardwilliams@aol.com
   ldw@tantongrpcpas.com
   markstevensentinc@yahoo.com

*https://mydhl.express.dhl/be/fr/tracking.html#/results?id=1465978953*

2. Mr. Mark Stevens
   ATHLETE BENEFITS GROUP, LLC
   2451 Oak Grove Heights
   Decatur, Georgia 30033
   United States of America
   Email: markstevensentinc@yahoo.com

*https://mydhl.express.dhl/be/fr/tracking.html#/results?id=1465950312*

1

3. Mr. Mark Stevens
   3286 DeShong Drive
   Stone Mountain, Georgia 30087
   United States of America
   Email: markstevensentinc@yahoo.com

*https://mydhl.express.dhl/be/fr/tracking.html#/results?id=1465968442*

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

 HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



## Résultats de suivi

### Récapitulatif

🔍 Numéro d'expédition 1465978953 ✏

Envoi en instance

Cliquez ici pour recevoir des alertes automatiques

L'expédition est en attente de départ par le prochain mouvement.

mardi, Mai 18, 2021 à 08:03
Origine:
**BRUSSELS - ELSENE - BELGIUM**

Étape suivante
L'expédition sera chargée sur le prochain mouvement.

Destination:
**WEST PHILADELPHIA, PA - WILMINGTON - USA**

La date de livraison estimée n'est pas disponible. Merci de réessayer plus tard.

^ 1 Pièce

JD014600008726904285

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| **mardi, Mai 18, 2021** | | | | |
| 20 | Envoi en instance | WEST PHILADELPHIA, PA - USA | 08:03 | 1 Pièce |
| **lundi, Mai 17, 2021** | | | | |
| 19 | Envoi en instance | WEST PHILADELPHIA, PA - USA | 08:45 | 1 Pièce |
| **vendredi, Mai 14, 2021** | | | | |
| 18 | Envoi en instance | WEST PHILADELPHIA, PA - USA | 08:08 | 1 Pièce |
| **jeudi, Mai 13, 2021** | | | | |
| 17 | Envoi refusé par destinataire ✏ | WEST PHILADELPHIA, PA - USA | 15:03 | 1 Pièce |
| 16 | En cours de livraison | WEST PHILADELPHIA, PA - USA | 13:17 | 1 Pièce |
| **mercredi, Mai 12, 2021** | | | | |
| 15 | Locaux du destinataire fermés lors de la livraison | WEST PHILADELPHIA, PA - USA | 19:13 | 1 Pièce |
| 14 | En cours de livraison | WEST PHILADELPHIA, PA - USA | 12:46 | 1 Pièce |
| 13 | Envoi en instance | WEST PHILADELPHIA, PA - USA | 10:51 | 1 Pièce |
| 12 | Arrivée à l'agence DHL de WEST PHILADELPHIA - USA | WEST PHILADELPHIA, PA - USA | 10:37 | 1 Pièce |
| 11 | Partie de l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 08:16 | 1 Pièce |
| 10 | Dédouanement accompli à CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 02:31 | 1 Pièce |
| 9 | Traitée à l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 02:21 | 1 Pièce |
| 8 | Arrivée au centre de tri DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 00:55 | 1 Pièce |
| **mardi, Mai 11, 2021** | | | | |
| 7 | Statut douanier mis à jour | CINCINNATI HUB, OH - USA | 21:38 | |
| 6 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:29 | 1 Pièce |
| 5 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 15:35 | 1 Pièce |
| **lundi, Mai 10, 2021** | | | | |
| 4 | Arrivée au centre de tri DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:49 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:00 | 1 Pièce |
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:21 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:22 | 1 Pièce |

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

**Résultats de suivi**

## Récapitulatif

| | | | |
|---|---|---|---|
| 🔍 | Numéro d'expédition 1465950312 | Dimanche, Mai 16, 2021 à 16:53 | 1 Pièce |
| | Renvoi à l'expéditeur | Origine: | |
| | Preuve de livraison | BRUSSELS - ELSENE - BELGIUM | |
| | | Destination: | |
| | | ATLANTA, GA - DECATUR - USA | |

| Dimanche, Mai 16, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 17 | Renvoi à l'expéditeur | ATLANTA, GA - USA | 16:53 | 1 Pièce |

| vendredi, Mai 14, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 16 | Envoi en instance | ATLANTA, GA - USA | 08:50 | 1 Pièce |

| jeudi, Mai 13, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 15 | Envoi refusé par destinataire | ATLANTA, GA - USA | 12:21 | 1 Pièce |
| 14 | Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 07:41 | 1 Pièce |

| mercredi, Mai 12, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 13 | L'expédition n'est pas arrivée à la bonne agence DHL. Envoi réacheminé. | ATLANTA, GA - USA | 11:44 | |
| 12 | Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 09:30 | 1 Pièce |
| 11 | Partie de l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 06:55 | 1 Pièce |
| 10 | Dédouanement accompli à CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 02:29 | 1 Pièce |
| 9 | Traitée à l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 02:22 | 1 Pièce |
| 8 | Arrivée au centre de tri DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 00:55 | 1 Pièce |

| mardi, Mai 11, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 7 | Statut douanier mis à jour | CINCINNATI HUB, OH - USA | 21:38 | |
| 6 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:29 | 1 Pièce |
| 5 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 15:35 | 1 Pièce |

| lundi, Mai 10, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 4 | Arrivée au centre de tri DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:49 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:00 | 1 Pièce |
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:21 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:22 | 1 Pièce |



## Résultats de suivi

## Récapitulatif

✓ Numéro d'expédition 1465968442
Expédition livrée
Preuve de livraison

mercredi, Mai 12, 2021 à 20:06
Origine:
BRUSSELS - ELSENE - BELGIUM
Destination:
ATLANTA, GA - STONE MOUNTAIN - USA

∧ 1 Pièce
JD014600008725902948

### mercredi, Mai 12, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 14 | Expédition livrée | STONE MOUNTAIN | 20:06 | ∧ 1 Pièce |
| | | | | JD014600008725902948 |
| 13 | En cours de livraison | ATLANTA, GA - USA | 14:22 | 1 Pièce |
| 12 | Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 10:55 | 1 Pièce |
| 11 | Partie de l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 06:55 | 1 Pièce |
| 10 | Dédouanement accompli à CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 02:35 | 1 Pièce |
| 9 | Traitée à l'agence DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 02:21 | 1 Pièce |
| 8 | Arrivée au centre de tri DHL de CINCINNATI HUB - USA | CINCINNATI HUB, OH - USA | 00:55 | 1 Pièce |

### mardi, Mai 11, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 7 | Statut douanier mis à jour | CINCINNATI HUB, OH - USA | 21:38 | |
| 6 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:29 | 1 Pièce |
| 5 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 15:35 | 1 Pièce |

### lundi, Mai 10, 2021

| | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 4 | Arrivée au centre de tri DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:49 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:00 | 1 Pièce |
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:20 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:22 | 1 Pièce |





13.05.2021

Cher client(e),

Ceci constitue votre preuve de livraison / statut final de l'envoi portant le numéro de bordereau 1465968442?

Merci d'avoir choisi DHL Express.

www.dhl.com

## Votre envoi 1465968442 a été livré le 12.05.2021 à 20:06

**Signé par**

| | |
|---|---|
| **Destination** | ATLANTA<br>UNITED STATES OF AMERICA |
| **Statut de l'envoi** | Livré |
| **Identifiant(s) colis** | JD014600008725902948 |

## Informations supplémentaires sur l'envoi

| | | | |
|---|---|---|---|
| Service | EXPRESS 10:30 doc | Origine | BRUSSELS<br>BELGIUM |
| Enlevé | 10.05.2021 à 15:22 | Référence expéditeur | IULI 001<br>1465968442BE20210510095023264 |

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

# ANNEX V

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

**Iuliana Iancu**

| | |
|---|---|
| **From:** | Iuliana Iancu |
| **Sent:** | mercredi 19 mai 2021 19:03 |
| **To:** | Joanna Kisielinska; Beata Gessel; Barbara Tomczyk; lamardwilliams@me.com; lamardwilliams@aol.com; ldw@tantongrpcpas.com; markstevensentinc@yahoo.com |
| **Cc:** | 'ica7@iccwbo.org'; HJARTARDOTTIR Hjordis Birna |
| **Subject:** | RE: ICC Case 25952/HBH (EPP) |
| **Attachments:** | ICC25952 Procedural Order No. 1.pdf |

Dear Colleagues,

Please find attached Procedural Order No. 1 in the above referenced proceedings.

The same will be dispatched by DHL tomorrow.

With best regards,

Iuliana Iancu

**Iuliana IANCU**
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058

**From:** Iuliana Iancu
**Sent:** Monday, 10 May 2021 10:09
**To:** 'Joanna Kisielinska' <J.Kisielinska@gessel.pl>; Beata Gessel <B.Gessel@gessel.pl>; Barbara Tomczyk <B.Tomczyk@gessel.pl>; lamardwilliams@me.com; lamardwilliams@aol.com; ldw@tantongrpcpas.com; markstevensentinc@yahoo.com
**Cc:** 'ica7@iccwbo.org' <ica7@iccwbo.org>; HJARTARDOTTIR Hjordis Birna <HjordisBirna.HJARTARDOTTIR@iccwbo.org>
**Subject:** RE: ICC Case 25952/HBH (EPP)

Dear Colleagues,

I take note of Claimant's email below, informing the Sole Arbitrator that it has identified other possible addresses for service on Respondents 1 and 3.

In order to allow service on Respondents 1 and 3 at these additional addresses, I have decided that the second CMC would be postponed to 19 May 2021, at 17:00 CET/11:00 EST (Georgia and Delaware local time). The second CMC will take place by videoconference. The connection details for the videoconference are set out below.

1

ICC ARBITRATION NO. 25952/HBH (EPP)

BETWEEN:

# POLSKA FUNDACJA NARODOWA
(POLAND)

vs/

# 1. ATHLETE BENEFITS GROUP, LLC
(U.S.A.)

## 2. LAMAR D. WILLIAMS
(U.S.A.)

## 3. MARK STEVENS
(U.S.A.)

## PROCEDURAL ORDER NO. 1
19 MAY 2021

1



## Table of Contents

Table of Contents ............................................................................................................ 2

I.      Names and addresses of the Parties .................................................................... 3

    A.   Claimant ......................................................................................................... 3

    B.   Respondents ................................................................................................... 3

II.     The Sole Arbitrator ............................................................................................. 4

III.    Notifications and communications ....................................................................... 4

IV.    The arbitration clause and the procedure to date ................................................ 7

V.     Place of arbitration ........................................................................................... 10

VI.    Applicable substantive law ............................................................................... 11

VII.   Language of the arbitration ............................................................................... 11

VIII.  Applicable procedural rules .............................................................................. 11

IX.    Procedural timetable ........................................................................................ 11

X.     Written submissions ......................................................................................... 12

XI.    Documentary evidence ..................................................................................... 12

XII.   Evidence of fact witnesses ............................................................................... 13

XIII.  Evidence of expert witnesses ........................................................................... 14

XIV.  Translations and interpretation ........................................................................ 14

XV.    VAT ................................................................................................................. 14

XVI.  Data protection and privacy regulations ........................................................... 15

XVII. Amendments ..................................................................................................... 15

Annex 1 to Procedural Order No. 1 .......................................................................... 16



## I.   Names and addresses of the Parties

### A.   Claimant

1.   POLSKA FUNDACJA NARODOWA, a foundation incorporated and existing under the laws of Poland, with its statutory seat in Warsaw (Poland), at the address Aleja Jana Pawla II 12, 00-124 Warsaw, entered into the Register of Associations, Other Social and Professional Organizations, Foundations and Public Health Care Institutions of the Polish National Court Register under the number 0000655791, with VAT registration number PL5252691880,

hereinafter referred to as "<b>Claimant</b>" or "<b>PFN</b>";

assisted and represented in this arbitration by Dr. Beata Gessel-Kalinowska vel Kalisz, Ms. Joanna Kisielińska-Garncarek and Ms. Barbara Tomczyk of GESSEL ATTORNEYS AT LAW, Sienna 39, 00-121 Warsaw, Poland.

### B.   Respondents

2.   ATHLETE BENEFITS GROUP, LLC, a company incorporated and existing under the laws of the United Stated of America, with its registered office at 1013 Centre Road, Suite 403S, Wilmington DE 19805, United States of America, which may be also reached at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America,

hereinafter referred to as "<b>Respondent 1</b>" or "<b>ABG</b>";

3.   MR. LAMAR D. WILLIAMS, a United States national, residing at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America. Mr. Williams may also be reached at TANTON GROUP CPAs, LLP, 780 Third Avenue – Suite 701, New York, NY 10017, United States of America,

hereinafter referred to as "<b>Respondent 2</b>",

4.   MR. MARK STEVENS, a United States national, residing at 3286 DeShong Drive, Stone Mountain, Georgia 30087, United States of America. Mr. Stevens may be also reached at 2451 Oak Grove Heights, Decatur, Georgia 30033, United States of America,

hereinafter referred to as "<b>Respondent 3</b>", and jointly with Respondents 1 and 2 as<br>"<b>Respondents</b>";

3



5. Claimant and Respondents shall jointly be referred to as the "**Parties**".

## II.   The Sole Arbitrator

6. On 22 April 2021, the International Court of Arbitration of the International Chamber of Commerce (the "**ICC Court**") directly appointed Ms. Iuliana Iancu as Sole Arbitrator pursuant to Article 13(4)(a) of the 2017 ICC Rules of Arbitration (the "**ICC Rules**"). The Sole Arbitrator's contact details are the following:

> Ms. Iuliana Iancu
> HANOTIAU & VAN DEN BERG
> IT Tower, avenue Louise, 480/9
> 1050 Brussels
> BELGIUM
>
> Tel:     + 32 2 290 39 00
> Email:   iuliana.iancu@hvdb.com

7. By issuing this Procedural Order, the Sole Arbitrator confirms the acceptance of her appointment.

8. In accordance with Article 41 of the ICC Rules, the Sole Arbitrator will not be liable to any Party whatsoever for any act or omission in connection with these arbitration proceedings, except to the extent such limitation of liability is prohibited by applicable law.

## III.   Notifications and communications

9. All written notifications and communications arising in the course of this arbitration shall be deemed to have been validly made to each Party when they have been transmitted to:

> -   For Claimant:
>
> Ms. Beata Gessel-Kalinowska vel Kalisz
> Ms. Joanna Kisielińska-Garncarek
> Ms. Barbara Tomczyk
> GESSEL ATTORNEYS AT LAW
> Sienna 39
> 00-121 Warsaw
> Poland
>
> Tel: +48 22 318 6901
> +48 22 318 6931
>
> Email: b.gessel@gessel.pl

4



j.kisielinska@gessel.pl
b.tomczyk@gessel.pl

- For Respondents:

Respondent 1 (address 1)
ATHLETE BENEFITS GROUP, LLC
1013 Centre Road
Suite 403S
Wilmington, Delaware 19805
United States of America

and

Respondent 1 (address 2)
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
       lamardwilliams@aol.com
       ldw@tantongrpcpas.com
       markstevensentinc@yahoo.com

Respondent 2 (address 1)
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
       lamardwilliams@aol.com

and

Respondent 2 (address 2)
Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com



Respondent 3 (address 1)
Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
        +1 770 912 3330
        +1 770 572 1414

and

Respondent 3 (address 2)
Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

10. The case management team of the Secretariat of the ICC Court (the "**Secretariat**") in charge of this arbitration is supervised by Ms. Hjördís Birna Hjartardóttir, Counsel, whose contact details are as follows:

- Ms. Hjördís Birna Hjartardóttir
  International Chamber of Commerce
  International Court of Arbitration
  33-43 avenue du Président Wilson
  75116 Paris
  France

  Tel:              +33(0)1.49.53.30.90
  Email:            ica7@iccwbo.org

11. All notifications and communications concerning this arbitration shall be sent by email to the addresses referred to in this Section III and in Section II. All communications and notifications sent to the Sole Arbitrator by one Party shall be sent simultaneously and under the same format to the other Party and to the Secretariat, and vice versa.

12. Any change of name, description, address, telephone, email address shall immediately be notified by the Party or the Sole Arbitrator to all other addressees referred to in this Section III and in Section II. Failing such notification, notifications and communications sent in accordance with this Section III and Section II shall be deemed valid.



## IV. The arbitration clause and the procedure to date

13. On 29 December 2020, Claimant submitted a Request for Arbitration (the "**Request**") to the Secretariat pursuant to the arbitration clause contained in the article titled "Final Provisions" contained in the Appearance Engagement, dated 30 October 2018 and entered into between PFN and ABG (the "**Agreement**"). This provision is transcribed in full below:

> "Final Provisions
>
> Any changes or amendments to this Agreement must be made in writing under the sanction of invalidity. Polish law shall govern this Agreement. All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of arbitration will be Warsaw, Poland and the language of arbitration will be English."[1]

14. Pursuant to Article 4(2) of the ICC Rules, the arbitration is deemed to have commenced on 29 December 2020.

15. In its Request, Claimant requested that the dispute be decided by a sole arbitrator.

16. On 14 January 2021, Claimant confirmed that it agreed to the notification of the Request by email to Respondents, further to the ICC's general communication dated 17 March 2020.

17. On 25 January 2021, the Secretariat notified Respondents of the filing of the Request and sent them copies thereof, as well as of the appended exhibits. The Secretariat invited Respondents to submit their answer to the Request and to comment on Claimant's proposition regarding a sole arbitrator within 30 days.

18. On the same date, the Secretariat informed the Parties that the ICC Rules included Expedited Procedure Provisions, which could potentially apply if the amount in dispute did not exceed USD 2 million (subject to the conditions set forth in Article 30(3) of the ICC Rules). The Secretariat informed the Parties that they could also agree to the application of the Expedited Procedure Provisions in all other cases.

19. On 11 February 2021, the Secretariat informed the Parties that, according to the electronic delivery receipt, Respondents had received the Request and the appended exhibits on 26 January 2021. The Secretariat informed the Parties that, pursuant to Article 5(1) of the ICC Rules, the 30-day time limit for the submission of Respondents' answer would expire on 25 February 2021.

---

[1] Exhibit C-1.

7



20. On 25 February 2021, Claimant informed the Secretariat that it did not object to the present arbitral proceedings being conducted in accordance with the Expedited Procedure Provisions. Claimant also submitted that the present proceedings should be conducted in accordance with the ICC Rules in force as from 1 March 2017.

21. On the same date, Mr. Lamar Williams submitted "[his] response to the request for arbitration"[2] (the "**Answer**"), accompanied by two exhibits.

22. On 16 March 2021, the Secretariat circulated the Answer and Claimant's submission of 25 February 2021 to the Parties. The Secretariat informed the Parties that it understood the Answer to have been submitted on behalf of all Respondents in the arbitration. The Secretariat took note that Claimant had expressed its agreement to opt in for the application of the Expedited Procedure Provisions, and invited Respondents to comment thereon by 23 March 2021. The Secretariat extended the deadline for Respondents to comment on Claimant's proposal regarding a sole arbitrator by 23 March 2021.

23. On 2 April 2021, the Secretariat noted that Respondents had not submitted their comments as invited on 16 March 2021. The Secretariat confirmed that the proceedings would be conducted under Annex VI to the ICC Rules (the "**Expedited Procedure Provisions**"). The Secretariat further informed the Parties that, unless informed otherwise by 8 April 2021, it would proceed with the constitution of the arbitral tribunal.

24. On 23 April 2021, the Secretariat informed the Parties that the ICC Court, at its session of 22 April 2021, had appointed Ms. Iuliana Iancu as sole arbitrator pursuant to Article 13(4)(a) of the ICC Rules.

25. On the same date, the Secretariat transferred the file to the Sole Arbitrator.

26. On 26 April 2021, the Sole Arbitrator wrote to the Parties, transmitting a table of availabilities for the case management conference, as well as a draft Procedural Order No. 1 for comment. The Sole Arbitrator invited the Parties to revert with their availabilities for a case management conference (to be held at the latest until 8 May 2021) by Tuesday, 27 April 2021, 22:00 CET. The Sole Arbitrator also recommended to the Parties that, in light of the COVID 19 pandemic and Article 3(3) of the Expedited Procedure Provisions, the case management conference be held remotely, via videoconference. The Sole Arbitrator's letter to the Parties was also dispatched to Respondents via DHL.

27. On 27 April 2021, Mr. Lamar Williams wrote to the Sole Arbitrator, advising that "we duly and fully object to this arbitration" and referring to the Settlement and Release Agreement and "our Answer on February 25 [2021]".[3]

---

[2] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the ICC, 25 February 2021.
[3] Email from Mr. Lamar Williams (lamardwilliams@me.com) to the Sole Arbitrator, 27 April 2021.

28. On the same day, the Sole Arbitrator responded to Mr. Williams' email above, copying Claimant, Respondents and the Secretariat. The Sole Arbitrator invited Mr. Williams to make sure that, whenever addressing the Sole Arbitrator, all other Parties to the proceedings, as well as the Secretariat, are copied on the correspondence. The Sole Arbitrator took due note of the objection raised on 27 April 2021, indicating that it would be fully addressed at the appropriate juncture of the proceedings. The Sole Arbitrator reiterated her invitation that Respondents fill in the table of availabilities for the case management conference and her recommendation that the case management conference be organized remotely, by video.

29. On the same day, Claimant reverted to the Sole Arbitrator with its availabilities for the case management conference.

30. Respondents did not revert to the Sole Arbitrator. According to the DHL tracking software, delivery was received at Respondent 2's second address but was refused by the addressee in the case of Respondent 1 and Respondent 3.

31. On 28 April 2021, the Sole Arbitrator informed the Parties that the case management conference would take place on 6 May 2021 at 16:00 CET/10:00 Atlanta, Georgia by videoconference (the **"First Case Management Conference"**). The Sole Arbitrator invited the Parties to submit their comments on the draft Procedural Order No. 1 by 5 May 2021, at 16:00 CET/10:00 Atlanta, Georgia. The Sole Arbitrator also circulated the connection details for the First Case Management Conference.

32. The Sole Arbitrator's letter above to the Parties was sent to Respondent 3 by DHL. Due to an error with DHL routing, the letter could not be delivered to Respondent 3 in time for the First Case Management Conference.

33. On 6 May 2021, the First Case Management Conference took place by way of videoconference in the presence of counsel for Claimant and the Sole Arbitrator. Respondents 1 and 2 did not appear. The Sole Arbitrator informed counsel for Claimant that, due to an error with DHL routing, the Sole Arbitrator's letter dated 28 April 2021 could not be dispatched to Respondent 3 in time for the First Case Management Conference. The Sole Arbitrator heard Claimant's comments regarding the draft Procedural Order No. 1 and put forward a proposal to Claimant regarding the procedural calendar. The Sole Arbitrator indicated to Claimant that a second case management conference would have to be organized in order to properly effect service on Respondent 3. The Sole Arbitrator informed Claimant that the second case management conference would take place on 13 May 2021, at 17:00 CET/11:00 Atlanta, Georgia.

34. On 7 May 2021, the Sole Arbitrator informed the Parties that a second case management conference would be convened for 13 May, at 17:00 CET, in order to re-attempt service on Respondent No. 3 (the **"Second Case Management Conference"**). The Sole Arbitrator circulated an amended draft Procedural Order No. 1 for the Parties' comments by 12 May 2021, at 17:00 CET/11:00 Atlanta, Georgia, as well as the connection details for the Second Case Management Conference. The



Sole Arbitrator's letter to the Parties, including the amended draft Procedural Order No. 1 and the new video connection details, were sent to Respondent 3 by DHL on the same day.

35. On the same day, counsel for Claimant notified the Sole Arbitrator that it had identified two other possible addresses of Respondents' for purposes of document delivery, namely:

> a. For Athlete Benefits Group, LLC: 1013 Centre Road, Suite 403S, Wilmington Delaware 19805, United States;
>
> b. For Mr. Mark Stevens: 3286 DeShong Drive, Stone Mountain, Georgia 30087, United States.

36. On 10 May 2021, the Sole Arbitrator informed the Parties that, in order to allow service to Respondent 1 and Respondent 3 at the above indicated addresses, the Second Case Management Conference was being rescheduled for 19 May 2021, at 17:00 CET/11:00 EST. The Sole Arbitrator circulated an amended draft Procedural Order No. 1 reflecting this change, for the Parties' comments by 18 May 2021, at 17:00 CET/11:00 EST, as well as connection details for the Second Case Management Conference. The Sole Arbitrator's letter to the Parties, including the amended draft Procedural Order No. 1 and the new video connection details, were sent to Respondents 1 and 3 by DHL on the same day.

37. On 18 May 2021, Claimant submitted additional comments on the amended draft Procedural Order No. 1.

38. On 19 May 2021, at 17:00 CET/11:00 EST, the Second Case Management Conference took place by way of videoconference in the presence of counsel for Claimant and the Sole Arbitrator. Respondents did not appear. The Sole Arbitrator informed counsel for Claimant that DHL delivery of the amended draft Procedural Order No. 1 had been made at Respondent 3's address 1, and that DHL delivery of the same had been refused at Respondent 1's address 1 and Respondent 3's address 2.

39. On the same day, counsel for Claimant submitted by email three telephone numbers at which Respondent 3 could be reached.

## V. Place of arbitration

40. Pursuant to the Final Provisions of the Agreement, the place of arbitration is Warsaw, Poland.

41. In accordance with Article 18(2) of the ICC Rules, the Sole Arbitrator may, after consultation with the Parties, conduct any hearings and meetings at any location she considers appropriate, including, if deemed appropriate, entirely remotely via videoconference, unless otherwise agreed by the Parties.



42. The award or awards in this arbitration (interim, partial or final) and all Procedural Orders may be signed at any location convenient to the Sole Arbitrator.

## VI.  Applicable substantive law

43. Pursuant to the Final Provisions of the Agreement, the Agreement is governed by Polish law.

## VII.  Language of the arbitration

44. Pursuant to the Final Provisions of the Agreement, the language of the arbitration shall be English.

## VIII. Applicable procedural rules

45. These proceedings shall be submitted to the ICC Rules applicable as from 1 March 2017. Where the Rules are silent, the Sole Arbitrator will apply, in accordance with Article 19 of the ICC Rules, the rules which the Parties will have agreed upon, or failing them, any rules which the Sole Arbitrator may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

46. Moreover, these proceedings are subject to the Expedited Procedure Provisions.

47. The Sole Arbitrator has the power to issue procedural orders on specific procedural issues if and when needed, after consultation with the Parties.

## IX.  Procedural timetable

48. The procedural timetable is included in Annex 1 to the present Procedural Order. The procedural timetable has been set by the Sole Arbitrator, after requesting comments from the Parties, bearing in mind that the present proceedings are governed by the Expedited Procedure Provisions. Pursuant to Article 4 of the Expedited Procedure Provisions, the time limit within which the Sole Arbitrator must render the final award is six months from the date of the case management conference.

49. The Parties are required to cooperate in good faith with the Sole Arbitrator with a view to organizing the proceedings expeditiously and efficiently. The Parties are expected to strictly comply with the procedural deadlines set by the Sole Arbitrator. Extensions of time may be granted by the Sole Arbitrator in its discretion, in exceptional cases only and provided that a reasoned request is submitted before the event preventing a Party from complying with the deadline.

50. The Parties are invited not to copy the Sole Arbitrator on their correspondence (including requests and complaints to the other Party) and to address the Sole Arbitrator only to comply with the above-mentioned calendar or when they want the Sole Arbitrator to decide a disputed issue. The Parties are also invited not to make

11



submissions other than those indicated in the procedural timetable, unless they have requested and obtained prior leave from the Sole Arbitrator.

## X. Written submissions

51. The paragraphs of all written submissions shall be numbered consecutively, and the submissions shall include a table of contents.

52. For each of their submissions, the Parties will clearly indicate the evidence they invoke in support thereof: documents (with indication of the page and paragraphs), expert reports, witness statements, etc.

53. All written submissions (memoranda, witness statements and expert reports) – excluding exhibits – shall be communicated by email (where email addresses have been supplied for this purpose) to the Sole Arbitrator, the other Parties, and the ICC Secretariat in PDF (searchable) format on the day indicated in the procedural timetable. The scanned copies of signed witness statements and expert reports need not be in PDF searchable format, as long as unsigned copies of such statements and reports are submitted in PDF searchable format.

54. Two working days following the communication by email, a hard copy version of the same (A4 format, double sided, in binders) will be dispatched to the Sole Arbitrator. The memoranda, witness statements, expert reports and exhibits shall also be communicated in electronic format on a USB key to the Sole Arbitrator and the other Parties, to be sent by special courier delivery (DHL, Fedex or similar).

## XI. Documentary evidence

55. Written submissions shall be accompanied by the documentary evidence and testimonial evidence relied upon by the relevant Party, including the legal authorities identified in the Parties' respective submissions. No new document may be presented outside the submissions or, if applicable, at the hearing unless agreed by the Parties or authorised by the Sole Arbitrator.

56. Documents shall be submitted in the following form:

   (i)    Exhibits shall be numbered consecutively throughout the proceedings;

   (ii)    The number of each factual exhibit submitted by Claimant shall be preceded by the letter "C-"; the number of each factual exhibit submitted by Respondents shall be preceded by the letter "R-";

   (iii)    The number of each legal exhibit submitted by Claimant shall be preceded by the letters "CL-"; the number of each legal exhibit submitted by Respondents shall be preceded by the letters "RL-";

12



(iv) If provided in this format, hard copy versions of the exhibits shall be contained in separate binders, each exhibit having a divider with the exhibit's identification number;

(v) The electronic and hard copy versions of the exhibits shall be accompanied by an index listing the exhibits and setting forth, for each exhibit, its number, its date, and a brief description of the exhibit.

(vi) Such index shall be updated with each new submission of documents.

57. All documentary evidence submitted to the Sole Arbitrator shall be deemed to be authentic and complete, including evidence submitted in the form of copies, unless a Party disputes its authenticity or completeness.

## XII. Evidence of fact witnesses

58. If a Party wishes to adduce testimonial evidence in respect of its allegations, it shall so indicate in its submissions and submit written witness statements together with these submissions. The witness statements on which the Parties want to rely shall be submitted along with their submissions.

59. Any person may present evidence as a witness, including a Party, a Party's officer, employee or other representative.

60. Each witness statement shall:

(i) contain the name and address of the witness, his or her relationship to any of the Parties (past and present, if any) and a description of his or her qualifications;

(ii) contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute;

(iii) contain an affirmation of the truth of the statement;

(iv) be signed by the witness and give the date and place of signature; and

(v) identify with specificity any document or other material relied on and, if not already provided in the document exchange, attach a copy of the document or other material relied on.

61. The witness statements shall be in sufficient detail so as to stand as examination in chief of the witness.



## XIII. Evidence of expert witnesses

62. The provisions of Section XII of this Procedural Order are applicable, *mutatis mutandis*, to expert witnesses. The expert shall identify his or her area of expertise. The expert's report will contain the expert's opinion including a description of the method, evidence and information used in arriving at the conclusions.

63. The Sole Arbitrator will also be guided – but will not be bound – by Article 5 of the IBA Rules which provides that in case the Parties submit expert reports, the Sole Arbitrator may, if it deems it appropriate, order the Party-appointed experts to meet and confer on their reports after the exchange of the Parties' memoranda. At such meeting, the experts shall attempt to reach agreement on those issues as to which they had differences of opinion in their expert reports, they will try to narrow them, and they shall record in writing the issues on which they reached agreement or in relation to which they have been able to narrow their differences.

## XIV. Translations and interpretation

64. Documents and authorities in a language other than English will be filed with an English translation at the cost of the submitting Party, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. For documents and authorities, only the relevant parts have to be translated. Each translation shall be deemed to be correct unless a Party disputes its correctness.

65. Oral testimonies in a language other than English must be interpreted in English. The cost of interpretation will be borne by the Party presenting the witness, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs. The interpreters used by either Party must be independent of the Parties.

## XV. VAT

66. Appendix III Article 2(13) of the ICC Rules is applicable. This paragraph provides as follows: "Amounts paid to the arbitrator do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties."

67. The Sole Arbitrator may have to pay value-added or similar taxes or charges on her fees and expenses. To the extent that this is the case, the Sole Arbitrator is entitled to claim, directly from the Parties, in addition to any entitlements received from the ICC, any such taxes or charges to be paid by them. The Sole Arbitrator may request the Parties to pay, under the same conditions, a retainer on the subject taxes or charges.



## XVI. Data protection and privacy regulations

68. The processing of the personal data of the Sole Arbitrator, the Parties and their representatives is necessary for the purposes of these arbitration proceedings.

69. The Sole Arbitrator, the Parties and their representatives have to comply with all applicable data protection and privacy regulations and/or any other relevant data protection law, including providing appropriate notice to data subjects whose personal data will be processed in the arbitration proceedings, where necessary.

## XVII. Amendments

70. This Procedural Order No. 1 may be amended or supplemented, and the procedures for the conduct of this arbitration modified, pursuant to such further directions or Procedural Orders as the Sole Arbitrator may from time to time issue.

The Sole Arbitrator,

Iuliana Iancu



**Annex 1 to Procedural Order No. 1**

**Procedural timetable**

| Procedural step | Responsibility | Date |
|---|---|---|
| First Case Management Conference | All | **6 May 2021**<br>16:00 CET/10:00 Georgia |
| Second Case Management Conference | All | **19 May 2021**<br>17:00 CET/11:00 Georgia |
| Claimant's Statement of Claim | **Claimant** | **7 June 2021**<br>(30 days following First Case Management Conference) |
| Respondents' Statement of Defense | **Respondents** | **7 July 2021**<br>(30 days following the Statement of Claim) |
| Mid-Stream Case Management Conference | All | **21 July 2021**<br>17:00 CET/11:00 Georgia |
| **Option 1**<br>(if the Sole Arbitrator decides at the Mid-Stream Case Management Conference that a hearing is necessary) | | |
| Simultaneous submissions from Parties<br>(with answers to Sole Arbitrator questions) | **Claimant, Respondents** | **6 August 2021** |
| Hearing | **All** | **1 September 2021** |
| **Option 2**<br>(if the Sole Arbitrator decides at the Mid-Stream Case Management Conference that a hearing is not necessary) | | |
| Claimant's Reply | **Claimant** | **6 August 2021** |
| Respondents' Rejoinder | **Respondents** | **1 September 2021** |



**Iuliana Iancu**

**From:** Edith De Jonghe
**Sent:** jeudi 20 mai 2021 13:56
**To:** Iuliana Iancu
**Subject:** RE: a envoyer par DHL dans IULI001

Edith De Jonghe
Receptionist

**HVDB** HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: www.hvdb.com
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

**From:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Sent:** Thursday, 20 May 2021 10:55
**To:** Reception <reception@hvdb.com>; Edith De Jonghe <edith.dejonghe@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

## A envoyer par DHL dans IULI001

A imprimer et mettre dans chaque colis :
- Une copie de ICC25952 Procedural Order No. 1 (en annexe)

A envoyer à :

> 1. ATHLETE BENEFITS GROUP, LLC
> 1013 Centre Road
> Suite 403S
> Wilmington, Delaware 19805
> United States of America
> Email: lamardwilliams@me.com
> lamardwilliams@aol.com
> ldw@tantongrpcpas.com
> markstevensentinc@yahoo.com

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=5227782722

> 2. ATHLETE BENEFITS GROUP, LLC
> 2451 Oak Grove Heights
> Decatur, Georgia 30033

1



United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com
ldw@tantongrpcpas.com
markstevensentinc@yahoo.com

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=3865665241

3. Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=3865695433

4. Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=5227769330

5. Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
+1 770 912 3330
+1 770 572 1414

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=3865671633

6. Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

https://mydhl.express.dhl/be/fr/tracking.html#/results?id=3865707532

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar



# Iuliana Iancu

| | |
|---|---|
| **From:** | Iuliana Iancu |
| **Sent:** | Friday, 4 June 2021 13:46 |
| **To:** | 'Joanna Kisielinska'; 'Beata Gessel'; 'Barbara Tomczyk'; 'lamardwilliams@me.com'; 'lamardwilliams@aol.com'; 'ldw@tantongrpcpas.com'; 'markstevensentinc@yahoo.com' |
| **Cc:** | 'ica7@iccwbo.org'; 'HJARTARDOTTIR Hjordis Birna' |
| **Subject:** | RE: ICC Case 25952/HBH (EPP) |
| **Attachments:** | RE: //TDV// DHL AWB 5227782722; Failure delivery of PO1 to Athlete Benefits Group Wilmington DE.pdf |

Dear Colleagues,

I write in the case under reference in connection with the address of Claimant 1, Athlete Benefits Group situated in Delaware.

According to the information provided by Claimant, the registered office of Athlete Benefits Group is at the following address:

> 1. ATHLETE BENEFITS GROUP, LLC
> 1013 Centre Road
> Suite 403S
> Wilmington, Delaware 19805
> United States of America

During these past weeks, I have been in constant contact with DHL, who have notified me that the address is no longer valid. I attach my correspondence with DHL to this effect, as well as the delivery tracker.

Could counsel for Claimant please verify if the registered office of Claimant 1 has changed and whether Claimant 1 has a new registered office?

Thank you very much.

Best regards,

Iuliana Iancu

**Iuliana IANCU**
**Partner**
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



1

**Iuliana Iancu**

Dear Miss Iancu,

I hereby confirm that according to DHL US the given delivery address is incorrect. The receiver was not found at this address.

Best regards,



**Johan Van Campenhout**

Senior Customer Retention Advisor

T: +32 (0)2 715 53 71
DHL Express | Woluwelaan 151 | 1831 Diegem
www.dhlexpress.be

**From:** Iuliana Iancu [mailto:iuliana.iancu@hvdb.com]
**Sent:** woensdag 2 juni 2021 14:31
**To:** BE Info BL 1 (DHL BE) <infobl1@dhl.com>
**Subject:** RE: //TDV// DHL AWB 5227782722

Dear Mr. Campenhout,

Thank you very much for your email.

May I just also confirm whether the delivery address below is not valid/incomplete?

    1.   ATHLETE BENEFITS GROUP, LLC
    1013 Centre Road
    Suite 403S
    Wilmington, Delaware 19805
    United States of America

Thank you very much.

Best regards,

Iuliana Iancu

**Iuliana IANCU**
**Partner**
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**





IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058

**From:** BE Info BL 1 (DHL BE) <infobl1@dhl.com>
**Sent:** Wednesday, 2 June 2021 14:27
**To:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Subject:** //TDV// DHL AWB 5227782722

Dear Miss Iancu,

Following our conversation, I hereby send you the mail with the remarks from our colleagues in the US.

According to DHL Express US, the provided phone number for the receiver was incorrect, which is the case since the number of the shipper has been filled in at the receivers end.

DHL Express US then searched on company name on the internet and found the phone number  (302) 427-6970. When they called this number, a person named LISA told them they no longer represent Athlete Benefits Group LLC.

DHL US is now waiting to get a new delivery address or a valid phone number on which they can contact the receiver.

Best regards,



**Johan Van Campenhout**

Senior Customer Retention Advisor

**T:** +32 (0)2 715 53 71
DHL Express | Woluwelaan 151 | 1831 Diegem
www.dhlexpress.be

CONFIDENTIALITY NOTICE: This message is from DHL and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this E-Mail and its attachments is strictly prohibited.
CONFIDENTIALITY NOTICE: This message is from DHL and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this E-Mail and its attachments is strictly prohibited.

2



## Tracking Results

## Summary

🔍 Waybill Number 5227782722
Shipment on hold

Friday, June 04, 2021 at 06:20
Origin Service Area:
**BRUSSELS - ELSENE - BELGIUM**
Next Step
The shipment will be processed in the next available movement

The Estimated Delivery Date is currently unavailable. Please try again later.
1 Piece

The shipment is awaiting the next scheduled movement

Destination Service Area:
**WEST PHILADELPHIA, PA - WILMINGTON - USA**

| Friday, June 04, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 19 | Shipment on hold | WEST PHILADELPHIA, PA - USA | 06:20 | 1 Piece |

| Thursday, June 03, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 18 | Shipment on hold | WEST PHILADELPHIA, PA - USA | 06:42 | 1 Piece |

| Wednesday, June 02, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 17 | Shipment on hold | WEST PHILADELPHIA, PA - USA | 06:40 | 1 Piece |

| Friday, May 28, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 16 | Shipment on hold | WEST PHILADELPHIA, PA - USA | 06:41 | 1 Piece |

| Thursday, May 27, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 15 | Shipment on hold | WEST PHILADELPHIA, PA - USA | 07:00 | 1 Piece |

| Wednesday, May 26, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 14 | Shipment on hold | WEST PHILADELPHIA, PA - USA | 07:00 | 1 Piece |

| Tuesday, May 25, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 13 | Shipment on hold | WEST PHILADELPHIA, PA - USA | 05:54 | 1 Piece |

| Monday, May 24, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 12 | Address information needed; contact DHL | WEST PHILADELPHIA, PA - USA | 12:18 | 1 Piece |
| 11 | With delivery courier | WEST PHILADELPHIA, PA - USA | 10:50 | 1 Piece |

| Sunday, May 23, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 10 | Arrived at Delivery Facility in WEST PHILADELPHIA - USA | WEST PHILADELPHIA, PA - USA | 07:43 | 1 Piece |
| 9 | Departed Facility in NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 02:10 | 1 Piece |
| 8 | Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 02:09 | 1 Piece |

| Saturday, May 22, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 7 | Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:47 | 1 Piece |
| 6 | Clearance processing complete at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:46 | 1 Piece |

| Friday, May 21, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 5 | Customs status updated | NEW YORK CITY GATEWAY, NY - USA | 08:25 | |
| 4 | Arrived at Sort Facility NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 05:49 | 1 Piece |
| 3 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 10:49 | 1 Piece |

| Thursday, May 20, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 2 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:14 | 1 Piece |
| 1 | Shipment picked up | BRUSSELS - BELGIUM | 15:04 | 1 Piece |

## Résultats de suivi

### Récapitulatif

Numéro d'expédition 3865665241
Envoi refusé par destinataire
Cliquez ici pour recevoir des alertes
automatiques

L'expédition n'a pas pu être remise au
destinataire lors de la livraison

lundi, Mai 24, 2021 à 17:59             1 Pièce
Origine:
BRUSSELS - ELSENE - BELGIUM

Étape suivante
Veuillez contacter le Service Clients DHL pour en savoir plus

Destination:
ATLANTA, GA - DECATUR - USA

| lundi, Mai 24, 2021 | Lieu | Heure | Unités |
|---|---|---|---|
| 15   Envoi refusé par destinataire | ATLANTA, GA - USA | 17:59 | 1 Pièce |
| 14   En cours de livraison | ATLANTA, GA - USA | 08:24 | 1 Pièce |

| Dimanche, Mai 23, 2021 | Lieu | Heure | Unités |
|---|---|---|---|
| 13   Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 08:02 | 1 Pièce |
| 12   Partie de l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 04:08 | 1 Pièce |
| 11   Traitée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 00:59 | 1 Pièce |

| samedi, Mai 22, 2021 | Lieu | Heure | Unités |
|---|---|---|---|
| 10   Arrivée au centre de tri DHL de ATLANTA - USA | ATLANTA, GA - USA | 22:06 | 1 Pièce |
| 9   Partie de l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:13 | 1 Pièce |
| 8   Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:11 | 1 Pièce |
| 7   Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:47 | 1 Pièce |
| 6   Dédouanement accompli à NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:46 | 1 Pièce |

| vendredi, Mai 21, 2021 | Lieu | Heure | Unités |
|---|---|---|---|
| 5   Statut douanier mis à jour | NEW YORK CITY GATEWAY, NY - USA | 08:24 | |
| 4   Arrivée au centre de tri DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 05:49 | 1 Pièce |
| 3   Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 10:49 | 1 Pièce |

| jeudi, Mai 20, 2021 | Lieu | Heure | Unités |
|---|---|---|---|
| 2   Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:14 | 1 Pièce |
| 1   Expédition enlevée | BRUSSELS - BELGIUM | 15:06 | 1 Pièce |



## Résultats de suivi

## Récapitulatif

Numéro d'expédition 3865695433
Envoi refusé par destinataire
Cliquez ici pour recevoir des alertes
automatiques

L'expédition n'a pas pu être remise au
destinataire lors de la livraison

**lundi, Mai 24, 2021 à 17:59**                    1 Pièce
Origine:
**BRUSSELS - ELSENE - BELGIUM**

Étape suivante
Veuillez contacter le Service Clients DHL pour en savoir plus

Destination:
**ATLANTA, GA - DECATUR - USA**

| lundi, Mai 24, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 15 | Envoi refusé par destinataire | ATLANTA, GA - USA | 17:59 | 1 Pièce |
| 14 | En cours de livraison | ATLANTA, GA - USA | 08:24 | 1 Pièce |

| Dimanche, Mai 23, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 13 | Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 08:02 | 1 Pièce |
| 12 | Partie de l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 04:08 | 1 Pièce |
| 11 | Traitée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 00:59 | 1 Pièce |

| samedi, Mai 22, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 10 | Arrivée au centre de tri DHL de ATLANTA - USA | ATLANTA, GA - USA | 22:06 | 1 Pièce |
| 9 | Partie de l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:13 | 1 Pièce |
| 8 | Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:11 | 1 Pièce |
| 7 | Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:47 | 1 Pièce |
| 6 | Dédouanement accompli à NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY - USA | 06:46 | 1 Pièce |

| vendredi, Mai 21, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 5 | Statut douanier mis à jour | NEW YORK CITY GATEWAY, NY - USA | 08:24 | |
| 4 | Arrivée au centre de tri DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 05:49 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 10:49 | 1 Pièce |

| jeudi, Mai 20, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:14 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:06 | 1 Pièce |



# Résultats de suivi

## Récapitulatif

✓    **Numéro d'expédition 5227769330**
Reçu signé par: MARIA
**Preuve de livraison et signature**

**vendredi, Mai 21, 2021 à 12:50**      1 Pièce
Origine:
**BRUSSELS - ELSENE - BELGIUM**
Destination:
**NEW YORK, NY - NEW YORK - USA**

| | vendredi, Mai 21, 2021 | Lieu | Heure | Unités |
|---|---|---|---|---|
| 13 | Expédition livrée - Reçu signé par: MARIA | NEW YORK | 12:50 | 1 Pièce |
| 12 | En cours de livraison | NEW YORK, NY - USA | 11:06 | 1 Pièce |
| 11 | Arrivée à l'agence DHL de NEW YORK - USA | NEW YORK, NY - USA | 09:56 | 1 Pièce |
| 10 | Partie de l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 09:25 | 1 Pièce |
| 9 | Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 07:28 | 1 Pièce |
| 8 | Dédouanement accompli à NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 07:27 | 1 Pièce |
| 7 | Arrivée au centre de tri DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 05:49 | 1 Pièce |
| 6 | Statut douanier mis à jour | NEW YORK CITY GATEWAY, NY - USA | 02:27 | |
| 5 | Partie de l'agence DHL de LEIPZIG - GERMANY | LEIPZIG - GERMANY | 04:04 | 1 Pièce |
| 4 | Transféré via LEIPZIG - GERMANY | LEIPZIG - GERMANY | 04:02 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 00:27 | 1 Pièce |

| | jeudi, Mai 20, 2021 | Lieu | Heure | Unités |
|---|---|---|---|---|
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:14 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:07 | 1 Pièce |





25.05.2021

Cher client(e),

Ceci constitue votre preuve de livraison / statut final de l'envoi portant le numéro de bordereau 5227769330.

Merci d'avoir choisi DHL Express.

www.dhl.com

## Votre envoi 5227769330 a été livré le 21.05.2021 à 12:50

| | | | |
|---|---|---|---|
| **Signé par** | MARIA | **Destination** | NEW YORK<br>UNITED STATES OF<br>AMERICA |
| **Signature** | | **Statut de l'envoi** | Livré |
| | | **Identifiant(s) colis** | JD014600008751693702 |

## Informations supplémentaires sur l'envoi

| | | | |
|---|---|---|---|
| **Service** | EXPRESS ENVELOPE | **Origine** | BRUSSELS<br>BELGIUM |
| **Enlevé** | 20.05.2021 à 15:07 | **Référence expéditeur** | 5227769330BE20210520105535025<br>IULI001 |

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

## Tracking Results

### Summary

✓ Waybill Number 3865671633
**Delivered**
Get Proof of Delivery

Tuesday, May 25, 2021 at 18:00        1 Piece
Origin Service Area:
**BRUSSELS - ELSENE - BELGIUM**
Destination Service Area:
**ATLANTA, GA - STONE MOUNTAIN - USA**

| Tuesday, May 25, 2021 | Location | Time | Pieces |
|---|---|---|---|
| 15   Delivered | STONE MOUNTAIN | 18:00 | 1 Piece |
| 14   With delivery courier | ATLANTA, GA - USA | 14:55 | 1 Piece |

| Monday, May 24, 2021 | Location | Time | Pieces |
|---|---|---|---|
| 13   Shipment on hold | ATLANTA, GA - USA | 14:34 | 1 Piece |
| 12   Arrived at Delivery Facility in ATLANTA - USA | ATLANTA, GA - USA | 06:30 | 1 Piece |

| Sunday, May 23, 2021 | Location | Time | Pieces |
|---|---|---|---|
| 11   Departed Facility in ATLANTA - USA | ATLANTA, GA - USA | 23:56 | 1 Piece |
| 10   Transferred through ATLANTA - USA | ATLANTA, GA - USA | 23:56 | 1 Piece |

| Saturday, May 22, 2021 | Location | Time | Pieces |
|---|---|---|---|
| 9   Departed Facility in NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:13 | 1 Piece |
| 8   Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:03 | 1 Piece |
| 7   Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:47 | 1 Piece |
| 6   Clearance processing complete at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:46 | 1 Piece |

| Friday, May 21, 2021 | Location | Time | Pieces |
|---|---|---|---|
| 5   Customs status updated | NEW YORK CITY GATEWAY, NY - USA | 08:24 | |
| 4   Arrived at Sort Facility NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 05:49 | 1 Piece |
| 3   Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 10:49 | 1 Piece |

| Thursday, May 20, 2021 | Location | Time | Pieces |
|---|---|---|---|
| 2   Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:14 | 1 Piece |
| 1   Shipment picked up | BRUSSELS - BELGIUM | 15:07 | 1 Piece |



## Résultats de suivi

## Récapitulatif

🔍 Numéro d'expédition 3865707532
Envoi refusé par destinataire
Cliquez ici pour recevoir des alertes
automatiques

L'expédition n'a pas pu être remise au
destinataire lors de la livraison

lundi, Mai 24, 2021 à 17:59    1 Pièce
Origine:
BRUSSELS - ELSENE - BELGIUM

Étape suivante
Veuillez contacter le Service Clients DHL pour en savoir plus

Destination:
ATLANTA, GA - DECATUR - USA

| lundi, Mai 24, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 15 | Envoi refusé par destinataire | ATLANTA, GA - USA | 17:59 | 1 Pièce |
| 14 | En cours de livraison | ATLANTA, GA - USA | 08:24 | 1 Pièce |

| Dimanche, Mai 23, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 13 | Arrivée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 08:02 | 1 Pièce |
| 12 | Partie de l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 04:08 | 1 Pièce |
| 11 | Traitée à l'agence DHL de ATLANTA - USA | ATLANTA, GA - USA | 00:59 | 1 Pièce |

| samedi, Mai 22, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 10 | Arrivée au centre de tri DHL de ATLANTA - USA | ATLANTA, GA - USA | 22:06 | 1 Pièce |
| 9 | Partie de l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:13 | 1 Pièce |
| 8 | Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:11 | 1 Pièce |
| 7 | Traitée à l'agence DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:47 | 1 Pièce |
| 6 | Dédouanement accompli à NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 06:46 | 1 Pièce |

| vendredi, Mai 21, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 5 | Statut douanier mis à jour | NEW YORK CITY GATEWAY, NY - USA | 08:24 | |
| 4 | Arrivée au centre de tri DHL de NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 05:49 | 1 Pièce |
| 3 | Partie de l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 10:49 | 1 Pièce |

| jeudi, Mai 20, 2021 | | Lieu | Heure | Unités |
|---|---|---|---|---|
| 2 | Traitée à l'agence DHL de BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:14 | 1 Pièce |
| 1 | Expédition enlevée | BRUSSELS - BELGIUM | 15:07 | 1 Pièce |



# ANNEX VI



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE



# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE *
AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL
T: +32.(0)2.290.39.00 · F: +32.(0)2.290.39.39 · info@hvdb.com · www.hvdb.com
TVA/BTW/VAT : BE 0475.333.058

JEUNALPAUL LEFEBVRE [1,2]
Avocat à la Cour de cassation
Advocaat bij het Hof van Cassatie
BERNARD HANOTIAU [1,2,3]
ALBERT JAN VAN DEN BERG [1,2,4]
PASCAL HOLLANDER [1,2]
NUSCHA BASSIRI [3,5]
PIERRE VERMEIRE [3]
MAARTEN DRAYE [3]
IULIANA IANCU [3,6]

MAGALI SERVAIS
EMILY HAY [3,6]

GLADYS BAGASIN [7]
IRIS RAYNARD [3,11]
TARUNIMA VIRA [9]
DINA OUADRASSI BETTIOUI
JUAN CAMILO JIMÉNEZ-VALENCIA [3,10]
PRATYUSH PANJWANI [9]
BENJAMIN JESURUN [11]
LUDMILLA DE POTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE FUMIERE
FERNANDO GUTIERREZ [12]
PAULINA BRZEZINSKA
BENJAMIN HOLLANDER

Avocats
Advocaten

**RESPONDENT 1**
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com
ldw@tantongrpcpas.com
markstevensentinc@yahoo.com

**RESPONDENT 2**
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com

and

Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

**RESPONDENT 3**
Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
+1 770 912 3330
+1 770 572 1414

and

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com



1 Associés de la S.C.R.L. HANOTIAU & VAN DEN BERG, société civile à forme commerciale - RPM Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n° 0475.333.058 - 2 SSL/ BV - 3 Egalement membre du barreau de Paris / Ook advocaat bij de balie te Parijs - 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel - 5 Membre du barreau de Cologne inscrit à Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel - 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven te Brussel - 7 Membre des barreaux des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balies van de Filippijnen en New York ingeschreven te Brussel - 8 Sollicitor admise devant la Cour Suprême du New South Wales inscrite à Bruxelles / Sollicitor bedrijd voor de Supreme Court van New South Wales ingeschreven te Brussel - 9 Membre du barreau d'Inde (New Delhi) inscrit à Bruxelles / Advocaat bij de balie van India (New Delhi) ingeschreven te Brussel - 10 Membre du barreau de Colombie inscrit à Bruxelles / Advocaat bij de balie van Colombia ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie te Parijs ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel

* Maxwell Chambers – 32 Maxwell Road, # 03-01 Singapore 069115 – Tel. + 65 6408 3343 – E-mail: singapore@hvdb.com

Brussels, 12 July 2021

**ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)**

Dear Counsel,

I write with reference to the **mid-stream case management conference**, which will take place on **Wednesday, 21 July 2021, at 17:00 CET/11:00 Georgia (United States)**.

Having regard to the continued development of the COVID pandemic and the imperative for these proceedings to be conducted efficiently, the mid-stream conference will take place **by video (Zoom)**.

At the mid-stream conference, I would be grateful for the Parties' views on whether a hearing is necessary in this case. I will also be putting forth some questions for the Parties to answer in their forthcoming submissions.

The connection details for the mid-stream conference are set forth below.

With very best regards,

Iuliana Iancu

******

VIDEO CONNECTION DETAILS

Iuliana Iancu is inviting you to a scheduled Zoom meeting.

Topic: ICC Case 25952/HBH - Mid-stream conference
Time: Jul 21, 2021 05:00 PM Brussels

Join Zoom Meeting
https://us02web.zoom.us/j/83128038397

Meeting ID: 831 2803 8397
Passcode: Wre95H74Jn
One tap mobile
+19292056099,,83128038397#,,,,*7907125673# US (New York)
+12532158782,,83128038397#,,,,*7907125673# US (Tacoma)

Dial by your location



+1 929 205 6099 US (New York)
+1 253 215 8782 US (Tacoma)
+1 301 715 8592 US (Washington DC)
+1 312 626 6799 US (Chicago)
+1 346 248 7799 US (Houston)
+1 669 900 6833 US (San Jose)
Meeting ID: 831 2803 8397
Passcode: 7907125673
Find your local number: https://us02web.zoom.us/u/kzwuHT9H9



**Iuliana Iancu**

**From:** Reception
**Sent:** Monday, 12 July 2021 15:09
**To:** Iuliana Iancu
**Cc:** Kimberley Conard
**Subject:** RE: a envoyer par DHL express dans IULI001

Bonjour Me Iancu,

Voici les liens DHL pour IULI001.

1: Tracking, delivery status for DHL Express shipments | MyDHL+
2 : Tracking, delivery status for DHL Express shipments | MyDHL+
3 : Tracking, delivery status for DHL Express shipments | MyDHL+

Bien à vous,

Souhaïla

**From:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Sent:** Monday, 12 July 2021 13:48
**To:** Kimberley Conard <kimberley.conard@hvdb.com>; Reception <reception@hvdb.com>
**Subject:** a envoyer par DHL express dans IULI001

**To send by DHL (express) in IULI001**

    1. Envelope to be sent to :

ATHLETE BENEFITS GROUP, LLC
Mr. Lamar D. Williams
Mr. Mark Stevens

2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
        lamardwilliams@aol.com
        ldw@tantongrpcpas.com
        markstevensentinc@yahoo.com

    2. Envelope to be sent to:

Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

    3. Envelope to be sent to :



1

Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
+1 770 912 3330
+1 770 572 1414

**Iuliana IANCU**
**Partner**
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058

**Iuliana Iancu**

**From:** Iuliana Iancu
**Sent:** mardi 20 juillet 2021 11:47
**To:** Reception
**Subject:** RE: //JVC// N DHL AWB 2147411733

Le faire retourner en Belgique, merci !

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

 HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058

**From:** Reception <reception@hvdb.com>
**Sent:** Tuesday, 20 July 2021 11:46
**To:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Subject:** FW: //JVC// N DHL AWB 2147411733

Coucou Iuliana,

Le DHL n'a pas été accepté par le destinataire, tu veux qu'ils retentent la livraison ?

Sephora

**From:** BE Info BL 1 (DHL BE) <infobl1@dhl.com>
**Sent:** Tuesday, 20 July 2021 11:36
**To:** Reception <reception@hvdb.com>
**Subject:** //JVC// N DHL AWB 2147411733

Dear Miss El Makhchoune,

The following shipment could not be delivered since it has been refused by the receiver. Can you give us instructions on what to do with the shipment? If you want the shipment returned to Belgium, please complete the attached document.

Thank you for your response before 23/7.

1

**FROM :** Account Nr DHL: 271285670

Hanotiau & van den Berg
El makhchoune Souhaila
Louizalaan 480/9

BRUSSEL 1050
BELGIUM
BE

Phone : 3222903900
Shipp. VAT:
Reference : IULI001

**TO :**

ATHLETE BENEFITS GROUP, LLC
Mr. L.D. Williams; Mr. M. Stevens
2451 Oak Grove Heights

DECATUR 30033
GA UNITED STATES OF AMERICA
US
Rec. VAT:
Phone : 3222903900

DESCRIPTION: DATE: 2021-07-12
Documents, general business
VALUE: WEIGHT: 0.300 KG

**PRODUCT:**


TDL            *Reproduction*

**DESTINATION:**

ATL 

**AIR WAYBILL:** 2147411733
(Non-Negotiable)





1 OF 1
Origin: **BRU**

**Additional Info :** Pick-up time + route :
Bill to account : 271285670
DHL Service :
Reason for export :
Insurance value :
Duty and Tax account :

14:50 2021-07-12 -
Dimensions (cm) : L: 31.7 W: 23.8 H: 1.0
Volumetric weight : KG
Customer weight : 0.300 KG
Actual weight :

Extra charges

1: IB 4.000 EUR

Best regards,

Johan Van Campenhout

Senior Customer Retention Advisor

**T:** +32 (0)2 715 53 71
DHL Express | Woluwelaan 151 | 1831 Diegem
www.dhlexpress.be

CONFIDENTIALITY NOTICE: This message is from DHL and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this E-Mail and its attachments is strictly prohibited.



## Tracking Results

### Summary

Q   Waybill Number 2147411733
Recipient refused delivery
Sign up for shipment notifications

The shipment cannot be released to the consignee at the time of delivery

Wednesday, July 14, 2021 at 10:17      1 Piece
Origin Service Area:
BRUSSELS - BELGIUM
Next Step
Please contact DHL Customer Service for more information

Destination Service Area:
ATLANTA, GA - USA

| Wednesday, July 14, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 17 | Recipient refused delivery | ATLANTA, GA - USA | 10:17 | 1 Piece |
| 16 | With delivery courier | ATLANTA, GA - USA | 09:33 | 1 Piece |
| 15 | Arrived at Delivery Facility in ATLANTA - USA | ATLANTA, GA - USA | 07:34 | 1 Piece |
| 14 | Departed Facility in ATLANTA - USA | ATLANTA, GA - USA | 05:35 | 1 Piece |
| 13 | Processed at ATLANTA - USA | ATLANTA, GA - USA | 02:55 | 1 Piece |

| Tuesday, July 13, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 12 | Arrived at Sort Facility ATLANTA - USA | ATLANTA, GA - USA | 22:23 | 1 Piece |
| 11 | Departed Facility in NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 20:53 | 1 Piece |
| 10 | Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 18:13 | 1 Piece |
| 9 | Clearance processing complete at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 18:13 | 1 Piece |
| 8 | Customs status updated | NEW YORK CITY GATEWAY, NY - USA | 09:13 | |
| 7 | Departed Facility in COLOGNE - GERMANY | COLOGNE - GERMANY | 11:55 | 1 Piece |
| 6 | Transferred through COLOGNE - GERMANY | COLOGNE - GERMANY | 11:54 | 1 Piece |
| 5 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 09:28 | 1 Piece |

| Monday, July 12, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 4 | Arrived at Sort Facility BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 22:08 | 1 Piece |
| 3 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:05 | 1 Piece |
| 2 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:14 | 1 Piece |
| 1 | Shipment picked up | BRUSSELS - BELGIUM | 18:15 | 1 Piece |



**Iuliana Iancu**

**From:** Kimberley Conard
**Sent:** mercredi 14 juillet 2021 18:43
**To:** Iuliana Iancu
**Subject:** Fwd: DHL Shipment Notification : 6118236294

Kimberley Conard
Administration and Accounting

HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: http://www.hvdb.com/
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/
Registration number (SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058)

Begin doorgestuurd bericht:

> **Van:** DHL Customer Support <support@dhl.com>
> **Datum:** 14 juli 2021 om 18:38:57 CEST
> **Aan:** Kimberley Conard <kimberley.conard@hvdb.com>
> **Onderwerp:** DHL Shipment Notification : 6118236294

Notification for shipment event group "Delivered" for 14 Jul 21.

AWB Number: 6118236294
Pickup Date: 2021-07-12 16:15:57
Service: L
Pieces: 1
Cust. Ref: IULI001
Description: Documents, general business

| Ship From: | Ship To: |
|---|---|
| HANOTIAU & VAN DEN BERG | TANTON GROUP CPAS, LLP |
| Louizalaan 480/9 | 780 Third Avenue-Suite 701 |
| BRUSSEL, 1050 | New York NY |
| BE | NEW YORK, NYNew York 10017 |
|  | US |

EVENT CATEGORY
**14 Jul 21 12:28 PM - Shipment delivered - NEW YORK,UNITED STATES OF AMERICA**

1

# Iuliana Iancu

Kimberley Conard
Administration and Accounting

HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: http://www.hvdb.com/
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/
Registration number (SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058)

Begin doorgestuurd bericht:

**Van:** DHL Customer Support <support@dhl.com>
**Datum:** 14 juli 2021 om 17:57:56 CEST
**Aan:** Kimberley Conard <kimberley.conard@hvdb.com>
**Onderwerp:** DHL Shipment Notification : 6118246573

Notification for shipment event group "Delivered" for 14 Jul 21.

---

AWB Number: 6118246573
Pickup Date: 2021-07-12 16:15:57
Service: L
Pieces: 1
Cust. Ref: IULI001
Description: Documents, general business

---

Ship From:

HANOTIAU & VAN DEN BERG
Louizalaan 480/9
BRUSSEL, 1050
BE

Ship To:

MR. MARK STEVENS
3286 DeShong Drive
Georgia GA
STONE MOUNTAIN, GAGeorgia 30087
US

EVENT CATEGORY
**14 Jul 21 11:56 AM - Shipment delivered - ATLANTA,UNITED STATES OF AMERICA**

1

**Signed By - MARIA**

---

Shipment status may also be obtained from our Internet site in USA under http://dhl-usa.com/track or Globally under http://www.dhl.com/track

Please do not reply to this email. This is an automated application used only for sending proactive notifications

You are receiving this email because a notification is configured to receive notifications from ProView. If you prefer not to receive future notification email of this type, click here to unsubscribe. Please note this URL is only valid for 1 day.



2

**Signed By** - AS AUTHORISED BY CONSIGNEE

---

Shipment status may also be obtained from our Internet site in USA under http://dhl-usa.com/track or Globally under http://www.dhl.com/track

Please do not reply to this email. This is an automated application used only for sending proactive notifications

You are receiving this email because a notification is configured to receive notifications from ProView. If you prefer not to receive future notification email of this type, click here to unsubscribe. Please note this URL is only valid for 1 day.



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

# ANNEX VII



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE



# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE *

AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL
T: +32.(0)2.290.39.00 · F: +32.(0)2.290.39.39 · info@hvdb.com · www.hvdb.com
TVA/BTW/VAT : BE 0475.333.058

JEUNALPAUL LEFEBVRE [1-2]
Avocat à la Cour de cassation
Advocaat bij het Hof van Cassatie
BERNARD HANOTIAU [1-2-3]
ALBERT JAN VAN DEN BERG [1-3-4]
PASCAL HOLLANDER [2-3]
NUSCHA BASSIRI [2-5]
PIERRE VERMEIRE [2]
MAARTEN DRAYE [2]
JULIANA IANCU [3-6]

MAGALI SERVAIS
EMILY HAY [2-8]

GLADYS HACANIN [2]
IRIS RAYNAUD [2-11]
TASNIMHA VERA [9]
DINA OUADRASSI BETTIOUI
JUAN CAMILO JIMÉNEZ-VALENCIA [2-10]
PRATYUSH PANJWANI [4]
BENJAMIN JESURAN [2]
LUDMILLA DE POTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE FUMIERE
FERNANDO GUTIERREZ [12]
PAULINA BRZEZINSKA
BENJAMIN HOLLANDER

Avocats
Advocaten

**RESPONDENT 1**
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com
ldw@tantongrpcpas.com
markstevensentinc@yahoo.com

**RESPONDENT 2**
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com

and

Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

**RESPONDENT 3**
Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
+1 770 912 3330
+1 770 572 1414

and

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com



1 Associés à la S.C.R.L. HANOTIAU & VAN DEN BERG, société civile à forme commerciale - RPM Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN
DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n° 0475.333.058 - 2 SRL/ BV - 3 Egalement membre du barreau de Paris / Ook advocaat bij de balie te
Parijs - 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel - 5 Membre du barreau de Cologne inscrit a
Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel - 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven
te Brussel - 7 Membre des barreaux des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balies van de Filipijnen en New York ingeschreven te Brussel - 8
Sollicitor admise devant la Cour Suprême de New South Wales inscrite à Bruxelles / Sollicitor beedigd voor de Supreme Court van New South Wales ingeschreven te Brussel
- 9 Membre du barreau d'Inde (New Delhi) inscrit à Bruxelles / Advocaat bij de balie van India (New Delhi) ingeschreven te Brussel - 10 Membre du barreau de Colombie
inscrit à Bruxelles / Advocaat bij de balie van Colombia ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie te Parijs
ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel

* Maxwell Chambers – 32 Maxwell Road, # 03-01 Singapore 069115 – Tel. + 65 6408 3343 - E-mail: singapore@hvdb.com

Brussels, 22 July 2021

**ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)**

Dear Counsel,

Please find attached Procedural Order No. 2 in the case under reference.

With best regards,

Iuliana Iancu

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

HANOTIAU & VANDEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



In the matter of an arbitration under the
Rules of Arbitration of the
International Chamber of Commerce in force as of 1 March 2017

ICC ARBITRATION NO. 25952/HBH (EPP)

# POLSKA FUNDACJA NARODOWA
(POLAND)

vs/

# 1. ATHLETE BENEFITS GROUP, LLC
(U.S.A.)

# 2. LAMAR D. WILLIAMS
(U.S.A.)

# 3. MARK STEVENS
(U.S.A.)

### PROCEDURAL ORDER N° 2
22 JULY 2021

Sole Arbitrator
Ms. Iuliana Iancu



TABLE OF CONTENTS

I.     Relevant Procedural History ................................................................ 3
II.    Issues to be Addressed in the Parties' Forthcoming Submissions ........................... 5
III.   Whether the Organization of a Hearing is Necessary in the Present Case ................. 6
IV.    Further Procedural Directions ............................................................ 8
V.     The Sole Arbitrator's Decision .......................................................... 10



2

## I. RELEVANT PROCEDURAL HISTORY

1. This Procedural Order is issued in an arbitration commenced on 29 December 2020 by Claimant Polska Fundacja Narodowa (Poland) ("**PFN**") against Respondents Athlete Benefits Group, LLC (U.S.A.) ("**ABG**"), Mr. Lamar D. Williams (U.S.A.) and Mr. Mark Stevens (U.S.A.), under the International Chamber of Commerce Rules of International Arbitration applicable as from 1 March 2017 (the "**ICC Rules**"). These proceedings are subject to the Expedited Procedure Provisions included in Appendix VI to the ICC Rules (the "**EPP Rules**").

2. On 19 May 2021, the Sole Arbitrator issued Procedural Order No. 1, which established, *inter alia*, a procedural calendar. According to the calendar, on 21 July 2021, after the submission of Claimant's Statement of Claim and Respondents' Statement of Defense, a mid-stream case management conference would take place, where the Sole Arbitrator would discuss with the Parties whether the organization of a hearing is necessary and would put to the Parties her questions arising from their written memorials. Procedural Order No. 1 was also dispatched by DHL to Respondents.

3. On 4 June 2021, the Sole Arbitrator wrote to the Parties, informing Claimant that ABG's address situated at 1013 Centre Road, Suite 403 S, Wilmington, Delaware, 19805 United States of America appeared to no longer be valid. The Sole Arbitrator informed the Parties that a DHL shipment to this address had failed and that DHL had been informed by the person at that address that they were no longer representing ABG. The Sole Arbitrator invited Claimant to verify if ABG's registered office had changed.

4. On 7 June 2021, Claimant submitted the electronic copies of its Statement of Claim (the "**SoC**") and of the witness statement of Mr. Robert Lubański ("**Lubánski WS**"). Claimant informed the Sole Arbitrator that it was not aware of a new registered address for ABG.

5. On 8 June 2021, the Sole Arbitrator informed Claimant that ABG's and Mr. Williams' email address ldw@tantongrpcpas.com appeared to no longer be valid, as email messages could not go through.

6. On 9 June 2021, Claimant informed the Sole Arbitrator that it had dispatched its SoC submission, comprising its SoC, the Lubánski WS, as well as factual exhibits and legal authorities, on USB keys.

3



7.  Respondents did not submit a Statement of Defense, as provided in Procedural Order No. 1.

8.  On 12 July 2021, the Sole Arbitrator wrote to the Parties concerning the mid-stream case management conference (the **"mid-stream CMC"**). The Sole Arbitrator informed the Parties that the mid-stream CMC would take place by videoconference (Zoom) and circulated connection details. The Sole Arbitrator informed the Parties that she will be hearing the Parties on whether a hearing is necessary in the present case and will be putting forth some questions for the Parties to answer in their forthcoming submissions. The Sole Arbitrator's message was also transmitted separately by DHL to Respondents.

9.  On 21 July 2021, at 17:00 CET/11:00 local time Georgia, United States, the mid-stream CMC took place by videoconference. The following persons were in attendance:

    Sole Arbitrator
    Ms. Iuliana Iancu

    For Claimant
    Ms. Joanna Kisielińska-Garncarek, Gessel Attorneys at Law, Counsel for Claimant
    Ms. Barbara Tomczyk, Gessel Attorneys at Law, Counsel for Claimant

10. During the mid-stream CMC, Claimant argued that the organization of a hearing was not necessary in this case, on account of the fact that Respondents had not submitted a Statement of Defense, had not challenged the testimony of Mr. Lubánski and, in all likelihood, would not be participating in a hearing in order to cross-examine Mr. Lubánski. The Sole Arbitrator invited Claimant to comment on whether the credibility of Mr. Lubánski's testimony needed to be tested independently of Respondents expressly contesting it in a Statement of Defense. Claimant argued that Mr. Lubánski's testimony was credible, as Mr. Lubánski had served as a member of PFN's Management Board at the time of the relevant events and had been directly involved in the developments at issue in this arbitration.

11. The Sole Arbitrator then set out a series of questions which arose out of Claimant's SoC, inviting the Parties to answer such questions and/or to comment on these issues in their forthcoming submissions. These questions are set out in **Section II** of this Procedural Order.

12. The Sole Arbitrator inquired with Claimant whether DHL deliveries should continue to be attempted at ABG's address in Delaware (*see*, paragraphs 3 and 4 above). Claimant confirmed that deliveries at that address could be discontinued.



13. Finally, at the mid-stream CMC, Claimant requested the Sole Arbitrator to set a date for the Parties' cost submissions.

14. The remainder of this Procedural Order is structured as follows. In **Section II**, the Sole Arbitrator will set out the questions that the Parties are invited to address in their forthcoming submissions. In **Section III**, the Sole Arbitrator will determine whether the organization of a hearing is necessary in the circumstances of the present case. In **Section IV**, the Sole Arbitrator will give further procedural directions to the Parties.

## II. ISSUES TO BE ADDRESSED IN THE PARTIES' FORTHCOMING SUBMISSIONS

15. The Sole Arbitrator invites **both Parties** to answer and/or to comment on the below questions in their forthcoming submissions, due on 6 August 2021:

   (i)   At paragraph 33 of the SoC, Claimant argues that the Settlement and Release Agreement appended to Respondents' Answer (the **"SRA"**) "appears simply to be forged". At paragraph 56 of the SoC, Claimant argues that the same document "cannot be deemed as a reliable evidence and, in the light of express witness' statement, it shall be disregarded". Claimant is invited to clarify what is the precise object of its request to the Sole Arbitrator with regard to this document, *i.e.*, how the Sole Arbitrator should interpret its words "shall be disregarded". Respondent is of course invited to comment on this issue as well.

   (ii)  Should the Sole Arbitrator interpret Claimant's primary position that the SRA is forged to be a matter that pertains to evidentiary issues or to contract validity issues?

   (iii) How should the Sole Arbitrator interpret Claimant's submissions regarding the piercing of the corporate veil as a means to establish liability as regards Mr. Stevens?

   (iv)  What is the law that applies to the issue whether the arbitration agreement contained in the "Final Provisions" of the Appearance Engagement[1] may be extended to non-signatories by virtue of the doctrine of piercing the corporate veil?

---
[1] Exhibit C-1.

(v) Has Polish law/have Polish courts recognized the doctrine of piercing the corporate veil as a means to extend the arbitration agreement to non-signatories?

(vi) What interest rate is Claimant requesting to be applied at paragraph 92 of its SoC and how should it be determined?

16. The Parties are invited to limit their 6 August 2021 submissions to addressing these questions only and not to repeat what has already been said in their previous submissions.

## III. WHETHER THE ORGANIZATION OF A HEARING IS NECESSARY IN THE PRESENT CASE

17. The Sole Arbitrator has taken due note of Claimant's position that the organization of a hearing is not necessary in this case. For the reasons set out below, the Sole Arbitrator has reached the conclusion that this position cannot be sustained, and a brief evidentiary hearing is required in order to properly establish the facts of this case.

18. The Sole Arbitrator recalls that, pursuant to Article 25(1) of the ICC Rules (which applies to these expedited proceedings by virtue of Article 1(1) of the EPP Rules), the Sole Arbitrator has a duty ("shall proceed") to establish the facts of the case, and may do so by any means the Sole Arbitrator considers appropriate:

> "1 The arbitral tribunal shall proceed within as short a time as possible to establish the facts of the case by all appropriate means." [emphasis added]

19. Moreover, pursuant to Article 25(2) of the ICC Rules, in deciding whether to organize a hearing, the Sole Arbitrator is not held by the Parties' positions on the opportunity of holding a hearing. Instead, the Sole Arbitrator may decide to hold a hearing of her own motion:

> "2 After studying the written submissions of the parties and all documents relied upon, the arbitral tribunal shall hear the parties together in person if any of them so requests or, failing such a request, it may of its own motion decide to hear them." [emphasis added]

20. The EPP Rules do not limit this discretion. Article 3(5) of the EPP Rules gives the Sole Arbitrator the flexibility to forego the organization of a hearing, but clearly provides that a hearing can be held nonetheless:



> "The arbitral tribunal _may_, after consulting the parties, decide the dispute solely on the basis of the documents submitted by the parties, with no hearing and no examination of witnesses or experts. <u>When a hearing is to be held</u>, the arbitral tribunal may conduct it by videoconference, telephone or similar means of communication." [emphasis added]

21. In other words, the Sole Arbitrator retains discretion in deciding whether holding a hearing is appropriate, and a decisive factor in her assessment is whether the hearing can assist the Sole Arbitrator in establishing the facts of the case.

22. The Sole Arbitrator is of the view that a brief evidentiary hearing is indispensable in order to establish the facts of this case.

23. The Sole Arbitrator recalls that Claimant has made a very serious accusation in its SoC, namely that Respondents have engaged in forgery, _i.e._, that the SRA appears to be forged. As support for this position, Claimant has referred to documentary evidence and – importantly – to the witness testimony of Mr. Lubánski, who testified as follows:

> "In April 2019, I met with Mr Lamar Williams at the Guggenheim Museum […]. We discussed reaching a settlement and accounting for the advance paid by PFN before our meeting at the film gala, during the meeting this subject came up again.
>
> […]
>
> The draft settlement was drawn up by the American side, and it was presented to me the day after the film gala, during the meeting requested by Lamar Williams. I perused this draft. I remember that its items were in line with what had previously been agreed by telephone and by e-mail and included return of the 50% deposit by ABG in amicable settlement of the dispute.
>
> […]
>
> The document [the SRA, n. S.A.] […] certainly is not the settlement which I initialled [sic] and which was submitted to me by Mr Lamar Williams in April 2019. That agreement provided for different settlement terms, i.e. return of 50% of the deposit by ABG to PFN, which was in line with the previous negotiations."[2]

24. At paragraph 56 of its SoC, Claimant expressly relies on this testimony by Mr. Lubánski as support for its request that the SRA be "disregarded": "the Settlement Agreement submitted by the Respondent [sic] cannot be deemed as a reliable

---

[2] Lubánski WS, at VI, VII, VIII.

evidence and, <u>in the light of express witness' statement</u>, it shall be disregarded in the present arbitral proceedings" [emphasis added].

25. In order for the Sole Arbitrator to determine whether it is appropriate, under the circumstances of this case, to "disregard" the SRA on account of forgery, the Sole Arbitrator must decide whether Mr. Lubánski's testimony is credible and what weight should be attached to it.

26. The Sole Arbitrator cannot assess Mr. Lugánski's credibility without actually hearing Mr. Lubánski.

27. It is immaterial that Respondents have not submitted a Statement of Defense and have not expressly contested therein the testimony of Mr. Lugánski. Considering that Respondents are expressly relying upon the SRA in their Answer, and Claimant is contesting the SRA as forged, there is a clear opposition of views between the Parties as regards the SRA. This opposition of views goes to the heart of the dispute presently before the Sole Arbitrator, which is whether Claimant is entitled to the return of the Deposit under the Appearance Engagement. According to what is stated in the SRA, Claimant has waived the right to be reimbursed the Deposit. Consequently, if the SRA is found to be valid, Claimant is not entitled to reimbursement. *Per a contrario*, if the SRA is found to be forged, the decision of the Sole Arbitrator will be different. There is thus a clear red line linking Claimant's entitlement to the relief sought and the credibility and reliability of Mr. Lugánski's testimony.

28. Furthermore, the organization of a hearing in this case is necessary due to the more limited evidence available to the Sole Arbitrator on account of Respondents' lack of participation in the proceedings. In such cases, tribunals have a heightened duty to establish the facts of the case as opposed to proceedings where both parties are participating.

29. For all these reasons, the Sole Arbitrator has decided that a hearing will be organized in this case. Pursuant to Annex I to Procedural Order No. 1, this hearing will take place on 1 September 2011.

## IV. FURTHER PROCEDURAL DIRECTIONS

30. Since the Sole Arbitrator has decided that a hearing will be held on 1 September 2011, the next step in these proceedings is for the Parties to submit simultaneous submissions on 6 August 2021. The Parties are invited not to repeat their previous



submissions, but to limit themselves to addressing the Sole Arbitrator's questions under **Section II** above.

31. The Sole Arbitrator also invites the Parties to comment by 6 August 2021 on the following issues that pertain to the organization of the hearing:

    (i) Whether the hearing should be remote or in person – the Sole Arbitrator's strong recommendation would be for the hearing to be organized remotely, via videoconference:

        a. if applicable, technical settings for the videoconferencing platform;
        b. if applicable, location of participants to video hearing;
        c. if applicable, technical requirements for each participant to the hearing;
        d. if applicable, hearing etiquette;
        e. if applicable, addressing potential technical issues;
        f. if applicable, whether a recording of the hearing is necessary;

    (ii) Total time to be allocated to the hearing, and the allocation of time between the Parties and the Sole Arbitrator;

    (iii) Whether opening or closing oral statements are necessary – the Sole Arbitrator's view at this time is that they will not be necessary, but that the Sole Arbitrator may ask the Parties questions on the basis of their submissions and the record; of course, the Parties are free to express a different view on this matter;

    (iv) The sequence of the hearing;

    (v) The manner of examining Mr. Lubánski:

        a. direct, cross-examination, re-direct;
        b. if remote hearing, Mr. Lubánski's location during his examination;
        c. if remote hearing, measures to be implemented in order to avoid witness coaching during Mr. Lubánski's examination (*e.g.*, the use of two cameras: one close to the witness, one offering a view of the entire room; the absence of materials on Mr. Lubánski's desk; keeping email accounts and phone switched off during testimony)
        d. whether the taking of an oath is required;
        e. whether there is any need for interpretation;

9



(vi) Admissibility or inadmissibility of new evidence on eve of, and during, the hearing;

(vii) Notification of hearing attendees;

(viii) Any other issues that pertain to the organization of the hearing that the Parties wish to bring to the Sole Arbitrator's attention.

32. In their submissions, the Parties are also invited to propose dates when they should be in a position to submit their cost statements.

## V. THE SOLE ARBITRATOR'S DECISION

33. For all the reasons set out above, the Sole Arbitrator decides as follows:

(i) An evidentiary hearing shall be organized on 1 September 2021;

(ii) The Parties are invited to answer the Sole Arbitrator's questions and/or to comment thereon on 6 August 2021;

(iii) The Parties are invited to address the issues identified by the Sole Arbitrator in connection with the organization of the hearing on 6 August 2021.

Date: 22 July 2021

Iuliana Iancu
Sole Arbitrator



10

# Iuliana Iancu

**From:** Kimberley Conard
**Sent:** jeudi 22 juillet 2021 12:00
**To:** Iuliana Iancu; Reception
**Subject:** RE: a envoyer par DHL dans IULI001

**From:** Iuliana Iancu
**Sent:** jeudi 22 juillet 2021 11:22
**To:** Reception <reception@hvdb.com>; Kimberley Conard <kimberley.conard@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

<u>A envoyer par DHL (express) dans IULI001</u>

A imprimer et mettre dans chaque colis, dans cette ordre :
- Une copie de 22072021 Letter to Respondents (DHL) – PO2 (en annexe)
- Une copie de ICC25952 Procedural Order No. 2 (en annexe)


1. One envelope to be sent to :

   ATHLETE BENEFITS GROUP, LLC
   Mr. Lamar D. Williams
   Mr. Mark Stevens

   2451 Oak Grove Heights
   Decatur, Georgia 30033
   United States of America
   Email: <u>lamardwilliams@me.com</u>
         <u>lamardwilliams@aol.com</u>
         <u>ldw@tantongrpcpas.com</u>
         <u>markstevensentinc@yahoo.com</u>

   DHL: <u>https://mydhl.express.dhl/be/en/tracking.html#/results?id=8719327024</u>
   → livré mardi 27/07 avant 10:30 am

2. One envelope to be sent to :

   Mr. Lamar D. Williams
   TANTON GROUP CPAs, LLP
   Accountants and Consultants
   780 Third Avenue-Suite 701
   New York, NY 10017
   United States of America
   Email: <u>ldw@tantongrpcpas.com</u>

   DHL: <u>https://mydhl.express.dhl/be/en/tracking.html#/results?id=8292689462</u>
   → livré lundi 26/07 avant 10:30 am

3. One envelope to be sent to :

Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
      +1 770 912 3330
      +1 770 572 1414

DHL : https://mydhl.express.dhl/be/en/tracking.html#/results?id=8292691772
→ livré mardi 27/7 avant 10:30 am

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



2

**Iuliana Iancu**

| | |
|---|---|
| **From:** | Kimberley Conard |
| **Sent:** | lundi 2 août 2021 09:32 |
| **To:** | Iuliana Iancu |
| **Subject:** | FW: //DS// N WB 8719327024 |
| **Attachments:** | RTO_LETTER_ACCT_NR.doc |

**From:** BE Info BL 1 (DHL BE) [mailto:infobl1@dhl.com]
**Sent:** lundi 2 août 2021 09:26
**To:** Kimberley Conard <kimberley.conard@hvdb.com>
**Cc:** BE Info BL 1 (DHL BE) <infobl1@dhl.com>
**Subject:** //DS// N WB 8719327024

Bonjour Kimberley,

Je vous contacte concernant l'envoi ci-dessous et je me réfère à mon conversation téléphonique avec votre réception.

Cet envoi ne peut pas être livré pour le moment parce que la destinataire l'a refusé en raison de ne pas ordonné.

Est-ce que vous pouvez contacter la destinataire pour vérifier si l'envoi peut être livré ?

Ou préférez-vous que l'envoi sera retourné ? Afin de pouvoir renvoyer votre envoi, nous aimerions vous demander de remplir le document en pièce jointe de cet e-mail, en indiquant votre numéro de client international, en commençant par 95/96. Vous convenez qu'il y a des coûts associés à ce service en remplissant ce document. N'hésitez pas à demander si vous souhaitez une indication des frais de transport pour le retour de votre envoi.

Vous pouvez aussi toujours nous donner des détails de contact additionnels pour que mes collègues en les Etats-Unis peuvent contacter la destinataire.

Merci d'avance pour votre réponse avant le 04/08.



1

**FROM** : Account Nr DHL: 271285670
Hanchau & van den berg
Kimberley Conard
Avenue Louisa 480/9

ELSENE 1050
BELGIUM
BE
Phone : 3222903900
Shipp. VAT: BE0475.333.058
Reference : IULI001

**TO :**
ATHLETE BENEFITS GROUP, LLC
Mr. L.D. Williams; Mr. M. Stevens
2451 Oak Grove Heights

DECATUR 30033
GA UNITED STATES OF AMERICA
US
Rec. VAT:
Phone : 3222903900

**DESCRIPTION:**     **DATE:** 2021-07-22
Documents, general business
**VALUE:**     **WEIGHT:** 0,300 KG

**PRODUCT:**
 TDL     *Reproduction*

**DESTINATION:**

**ATL** 

**AIR WAYBILL:** 8719327024
(Non-Negotiable)



     1  OF  1
Origin: **BRU**

**Additional Info :** Pick-up time + route : 11:48 2021-07-22 -     Extra charges
Bill to account     : 271285670     Dimensions (cm) : L: 31,7 W: 23.8 H: 1.0
DHL Service     :     Volumetric weight : KG
Reason for export :     Customer weight : 0.300 KG
Insurance value     :     Actual weight :
Duty and Tax account :

Bien à vous,



 **Mats Stas**
Senior Customer Retention advisor
T: +32 (0)2 715 53 71
DHL Express | Woluwelaan 151 | 1831 Diegem
www.dhlexpress.be

*DHL Go Green Climate Protection: Please consider the environment before printing this e-mail*

CONFIDENTIALITY NOTICE: This message is from DHL and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this E-Mail and its attachments is strictly prohibited.

2



**Iuliana Iancu**

Kimberley Conard
Administration and Accounting

HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: http://www.hvdb.com/
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/
Registration number (SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058)

Begin doorgestuurd bericht:

> **Van:** DHL Customer Support <support@dhl.com>
> **Datum:** 23 juli 2021 om 19:52:35 CEST
> **Aan:** Kimberley Conard <kimberley.conard@hvdb.com>
> **Onderwerp: DHL Shipment Notification : 8292689462**

Notification for shipment event group "Delivered" for 23 Jul 21.

AWB Number: 8292689462
Pickup Date: 2021-07-22 16:15:53
Service: L
Pieces: 1
Cust. Ref: IULI001
Description: Documents, general business

| Ship From: | Ship To: |
|---|---|
| HANOTIAU & VAN DEN BERG | TANTON GROUP CPAS, LLP |
| Avenue Louise 480/9 | Accountants and Consultants |
| ELSENE, 1050 | 780 Third Avenue-Suite 701 |
| BE | NEW YORK, NYNew York 10017 |
| | US |

EVENT CATEGORY
**23 Jul 21 1:51 PM - Shipment delivered - NEW YORK,UNITED STATES OF AMERICA**

1

**Signed By -** MARIA P 9FL

Shipment status may also be obtained from our Internet site in USA under http://dhl-usa.com/track or Globally under http://www.dhl.com/track

Please do not reply to this email. This is an automated application used only for sending proactive notifications

You are receiving this email because a notification is configured to receive notifications from ProView. If you prefer not to receive future notification email of this type, click here to unsubscribe. Please note this URL is only valid for 1 day.



**Iuliana Iancu**

| | |
|---|---|
| **From:** | Kimberley Conard |
| **Sent:** | lundi 26 juillet 2021 20:30 |
| **To:** | Iuliana Iancu |
| **Subject:** | Fwd: DHL Shipment Notification : 8292691772 |

Kimberley Conard
Administration and Accounting

 HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: http://www.hvdb.com/
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/
Registration number (SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058)

Begin doorgestuurd bericht:

> **Van:** DHL Customer Support <support@dhl.com>
> **Datum:** 26 juli 2021 om 18:54:21 CEST
> **Aan:** Kimberley Conard <kimberley.conard@hvdb.com>
> **Onderwerp: DHL Shipment Notification : 8292691772**

Notification for shipment event group "Delivered" for 26 Jul 21.

AWB Number: 8292691772
Pickup Date: 2021-07-22 16:15:53
Service: L
Pieces: 1
Cust. Ref: IULI001
Description: Documents, general business

Ship From:

HANOTIAU & VAN DEN BERG
Avenue Louise 480/9
ELSENE, 1050
BE

Ship To:

MR. MARK STEVENS
3286 DeShong Drive
Georgia GA
STONE MOUNTAIN, GAGeorgia 30087
US

EVENT CATEGORY
**26 Jul 21 12:11 PM - Shipment delivered - ATLANTA,UNITED STATES OF AMERICA**

1

**Signed By -** AS AUTHORISED BY CONSIGNEE

---

Shipment status may also be obtained from our Internet site in USA under http://dhl-usa.com/track or Globally under http://www.dhl.com/track

Please do not reply to this email. This is an automated application used only for sending proactive notifications

You are receiving this email because a notification is configured to receive notifications from ProView. If you prefer not to receive future notification email of this type, click here to unsubscribe. Please note this URL is only valid for 1 day.



2

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

# ANNEX VIII



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE



# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE *
AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL
T: +32.(0)2.290.39.00 - F: +32.(0)2.290.39.39 · info@hvdb.com - www.hvdb.com
TVA/BTW/VAT : BE 0475.333.058

IBUKAL PAUL LEFEBVRE [1-2]
*Avocat à la Cour de cassation*
*Advocaat bij het Hof van Cassatie*
BERNARD HANOTIAU [1-2-3]
ALBERT JAN VAN DEN BERG [1-2-4]
PASCAL HOLLANDER [1-2]
NIUSCHA BASSIRI [2-6]
PIERRE VERBRUGGHE [2]
MAARTEN DRAYE [2]
IULIANA IANCU [2-6]
MAGALI SERVAIS
EMILY HAY [2-6]
GLADYS BACASIN [7]
IRIS RAYNAUD [2-11]
TARUNIMA VIJRA [7]
DINA OUADRASSI BETTIOUI
JUAN CAMILO JIMÉNEZ-VALENCIA [7-10]
PRATYUSH PANJWANI [7]
BENJAMIN JESURAN [11]
LUDMILLA DE POTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE FUMIÈRE
FERNANDO GUTIERREZ [12]
PAULINA BRZEZINSKA
BENJAMIN HOLLANDER

*Avocats*
*Advocaten*

**RESPONDENT 1**
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com
ldw@tantongrpcpas.com
markstevensentinc@yahoo.com

**RESPONDENT 2**
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com

and

Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

**RESPONDENT 3**
Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
+1 770 912 3330
+1 770 572 1414

and

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com



*1 Associés de la S.C.R.L. HANOTIAU & VAN DEN BERG, société civile à forme commerciale - RPM Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n° 0475.333.058 - 2 SRL/ BV - 3 Egalement membre du barreau de Paris / Ook advocaat bij de balie te Parijs - 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel - 5 Membre du barreau de Cologne inscrit à Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel - 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven te Brussel - 7 Membre des barreaux des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balies van de Filipijnen en New York ingeschreven te Brussel - 8 Sollicitor admise devant la Cour Suprême de New South Wales inscrite à Bruxelles / Sollicitor beëdigd voor de Supreme Court van New South Wales ingeschreven te Brussel - 9 Membre du barreau d'Inde (New Delhi) inscrit à Bruxelles / Advocaat bij de balie van India (New Delhi) ingeschreven te Brussel 10 Membre du barreau de Colombie inscrit à Bruxelles / Advocaat bij de balie van Colombie ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie te Parijs ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel*

* *Maxwell Chambers – 32 Maxwell Road, # 03-01 Singapore 069115 – Tel. + 65 6408 3343 - E-mail: singapore@hvdb.com*

Brussels, 9 August 2021

ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)

Dear Counsel,

Please find attached Procedural Order No. 3 in the case under reference.

As provided in Procedural Order No. 3, Claimant may proceed with booking the services of the ICC Hearing Centre.

I take this opportunity to draw the Parties' attention to paragraphs 21 and 23 of Procedural Order No. 3, concerning the Hearing attendees and the provision of log-in details for the Hearing. I must stress the importance of strict compliance with these deadlines, and such should be borne in mind when making arrangements with the ICC Hearing Centre.

With best regards,

Iuliana Iancu

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



In the matter of an arbitration under the
Rules of Arbitration of the
International Chamber of Commerce in force as of 1 March 2017

ICC·ARBITRATION No. 25952/HBH (EPP)

# POLSKA FUNDACJA NARODOWA
(POLAND)

vs/

# 1. ATHLETE BENEFITS GROUP, LLC
(U.S.A.)

## 2. LAMAR D. WILLIAMS
(U.S.A.)

## 3. MARK STEVENS
(U.S.A.)

**PROCEDURAL ORDER Nº 3**
**9 AUGUST 2021**

Sole Arbitrator
Ms. Iuliana Iancu



TABLE OF CONTENTS

I.      Relevant Procedural History ................................................................................ 3

II.     Hearing Date/ Schedule ...................................................................................... 4

III.    Hearing Sequence and Allocation of Time ........................................................ 4

IV.     Videoconference Platform .................................................................................. 5

V.      Pre-Hearing Preparation .................................................................................... 8

VI.     Manner of Witness Examination ........................................................................ 9

VII.    Other Matters ................................................................................................... 10



## I.   RELEVANT PROCEDURAL HISTORY

1.   This Procedural Order is issued in an arbitration commenced on 29 December 2020 by Claimant Polska Fundacja Narodowa (Poland) (**"PFN"**) against Respondents Athlete Benefits Group, LLC (U.S.A.) (**"ABG"**), Mr. Lamar D. Williams (U.S.A.) and Mr. Mark Stevens (U.S.A.), under the International Chamber of Commerce Rules of International Arbitration applicable as from 1 March 2017 (the **"ICC Rules"**). These proceedings are subject to the Expedited Procedure Provisions included in Appendix VI to the ICC Rules (the **"EPP Rules"**).

2.   On 19 May 2021, the Sole Arbitrator issued Procedural Order No. 1, which established, *inter alia*, a procedural calendar. Procedural Order No. 1 was also dispatched by DHL to Respondents.

3.   On 7 June 2021, Claimant submitted the electronic copies of its Statement of Claim (the **"SoC"**) and of the witness statement of Mr. Robert Lubański (**"Lubánski WS"**).

4.   Respondents did not submit a Statement of Defense, as provided in Procedural Order No. 1.

5.   On 12 July 2021, the Sole Arbitrator wrote to the Parties concerning the mid-stream case management conference (the **"mid-stream CMC"**). The Sole Arbitrator's message was also transmitted separately by DHL to Respondents.

6.   On 21 July 2021, at 17:00 CET/11:00 local time Georgia, United States, the mid-stream CMC took place by videoconference. The following persons were in attendance:

   Sole Arbitrator
   Ms. Iuliana Iancu

   For Claimant
   Ms. Joanna Kisielińska-Garncarek, Gessel Attorneys at Law, Counsel for Claimant
   Ms. Barbara Tomczyk, Gessel Attorneys at Law, Counsel for Claimant

7.   On 22 July 2021, the Sole Arbitrator issued Procedural Order No. 2, deciding, *inter alia*, that an evidentiary hearing dedicated to the examination of Mr. Lubański would be held on 1 September 2021 (the **"Hearing"**). The Sole Arbitrator invited the Parties to put forward their positions regarding the organization of the Hearing by 6 August 2021. Procedural Order No. 2 was also dispatched by DHL to Respondents.



8. On 6 August 2021, Claimant put forward its position with respect to the organization of the Hearing. Despite being invited to do so, Respondents did not make any submissions on this point.

9. This Procedural Order No. 3 contains the rules and principles that shall govern the organization of the Hearing.

## II. HEARING DATE/ SCHEDULE

10. The Hearing shall take place on Wednesday, 1 September 2021.

11. The Hearing shall take place remotely.

12. Unless otherwise ordered by the Sole Arbitrator, the Hearing shall commence at 16:00 CET/10:00 local time Georgia, United States, and shall conclude at 18:00 CET/12:00 local time Georgia, United States.

## III. HEARING SEQUENCE AND ALLOCATION OF TIME

13. The total Hearing time of approximately two hours shall be allocated as follows, in the below sequence:

    (i) Brief housekeeping matters: 10 minutes

    (ii) Examination of Mr. Lubański:

        a. Direct examination: maximum 10 minutes
        b. Cross-examination: maximum 30 minutes
        c. Re-direct examination: maximum 10 minutes.

    (iii) Sole Arbitrator questions to the witness and the Parties: maximum one hour.

14. No opening or closing statements shall take place.

15. The Sole Arbitrator shall keep the time. Time devoted to procedural questions, or to address questions or matters raised by the Sole Arbitrator, shall be deducted from the Sole Arbitrator's time, and shall not be counted against either Party.



## IV. VIDEOCONFERENCE PLATFORM

16. The Hearing shall be held via videoconference, using the Zoom videoconference platform.

17. The following functionalities shall be made available:

    (i)   end-to-end encryption;

    (ii)  password protection;

    (iii) high-resolution video imaging and audio;

    (iv)  a "waiting room" functionality;

    (v)   ability to display documents on the screen, and allow a cursor to point to selected portions of documents; and

    (vi)  the option to join the hearing by telephone, as a back-up solution.

18. The ICC Hearing Centre shall be engaged as the virtual hearing support provider, and shall be responsible for arranging the technical side of the videoconference, as well as providing ongoing technical support during the Hearing.

19. A person designated by the ICC Hearing Centre shall act as the "host" of the Hearing and shall have the following responsibilities:

    (i)   To start and close the meeting. The host shall start the meeting 20 minutes before the scheduled start time.

    (ii)  To admit only authorized attendees and to exclude persons who are not on the list of authorized Hearing attendees.

    (iii) To ensure that the Sole Arbitrator, the Parties' active speakers and the witness are visible and can be heard.

    (iv)  To monitor the connections of all participants and to inform the Sole Arbitrator if an active speaker or testifying witness is disconnected, in order for the Sole Arbitrator to pause the Hearing until the technical issue is resolved or the back-up system is used.

    (v)   To make an audio recording of the Hearing and make it available to the Sole Arbitrator and the Parties after the Hearing.



20. The costs for the services provided by the ICC Hearing Centre shall be advanced and shared equally among the Parties. However, if, for any reason, any one of the Parties refuses to pay its share of these costs, the other Party/Parties shall be required to make the necessary payment to the ICC Hearing Centre in order to allow the Hearing to proceed. The final allocation of these costs shall be decided by the Sole Arbitrator in the final award.

21. The Parties shall notify the Sole Arbitrator, the ICC Hearing Centre and opposing counsel of all Hearing attendees **by 19 August 2021**.

22. Participants to the Hearing shall be limited to: (i) the Parties' representatives; (ii) the Parties' counsels; (iii) the witness; (iv) the interpreter; (v) the Sole Arbitrator; and (vi) such other logistical, technical or other support as may be required to assist in the presentation of the evidence. The Sole Arbitrator shall ensure that only authorized persons are attending the Hearing.

23. The Sole Arbitrator, the Hearing attendees on behalf of either Party and other Hearing participants shall each be provided with individual login details to the videoconferencing platform **by 20 August 2021**. Counsel for Claimant shall arrange with the ICC Hearing Centre to have Respondents' login details dispatched by DHL/express courier sufficiently in advance of the Hearing in order to ensure timely delivery.[1]

24. The Parties may not provide the login details, including the access passwords, to the videoconferencing platform to any person not on the approved list of Hearing participants. If a Party wishes to include an additional person not on the list of approved Hearing participants, such person may participate only with the agreement of all Parties or at the direction of the Sole Arbitrator.

25. The individual account of each Hearing participant shall identify that person's name and affiliation, as used in official correspondence, such that it is visible to other participants during the videoconference.

26. Participation in the videoconference:

    (i) Each Party shall be responsible for the necessary arrangements to enable the appearance of all persons attending on its behalf, including the witness and the interpreter.

---

[1] It being understood that the dispatch shall ensure that Claimant will not have access to Respondents' connection details.



(ii) Each Party shall ensure that each of its participants who is expected to speak during the Hearing – including the witness and the interpreter – has access to appropriate equipment to enable the participant to do so effectively. The appropriate equipment should include, at a minimum:

    a. An electronic device (with a webcam) that is compatible with the videoconferencing platform and has a screen size of no less than 10 inches (*i.e.*, not a smartphone);

    b. An omnidirectional microphone or headset (*i.e.*, not a microphone built into a laptop); and

    c. Sufficient internet bandwidth to support uninterrupted use of the videoconferencing platform, including its share screen functions.

(iii) Each Party shall ensure that the following conditions are satisfied for each of its participants who is expected to actively participate in the Hearing:

    a. to the extent possible, the physical environment from which the participant attends the meeting is free of excessive noise;

    b. the participant is sufficiently lit (and not "back-lit"), against a non-distracting background;

    c. no "virtual background" is used;

    d. in the case of the witness, the participant has sufficient familiarity with the videoconferencing platform to participate effectively in the Hearing; or, alternatively, the participant is supported by a person who can provide the necessary technical assistance (and who has been pre-notified as a Hearing attendee);

    e. in the case of the witness, the table at which the witness is sitting is clear of any documents· with the exception of a clean copy of his witness statement.

(iv) On the day of the Hearing, the virtual hearing room shall be opened 20 minutes prior to the scheduled start time, in order to enable the participants to test their audio/video connections.



(v)    All participants without an active role at any given moment should mute their own audio and turn off their video in order to avoid distraction and preserve bandwidth for the active participants.

27.   Technical issues

(i)    The Hearing support provider shall provide all Hearing attendees with contact details (telephone number and email address) of the person(s) who will be available to provide any necessary technical assistance during the Hearing.

(ii)   The Sole Arbitrator may temporarily or permanently suspend the Hearing if she deems the functioning of the videoconference system to be inadequate or likely to prejudice the integrity of the proceeding and/or the due process rights of a Party. The Sole Arbitrator and the Parties may explore the option that, while the technical issue is being resolved, that part of the Hearing could go ahead via telephone conference.

28.   Etiquette

(i)    In order to facilitate interpretation, the witness, counsel doing direct or cross-examination and the Sole Arbitrator, shall speak slowly and clearly. They should pause between phrases to allow for the consecutive interpreter to translate.

(ii)   Each Hearing participant should refrain from interrupting any speaker and should avoid using any equipment that could interfere with connectivity.

29.   The ICC Hearing Centre shall ensure that a sound recording of the Hearing is made. No other participants shall record any part of the Hearing, unless the Sole Arbitrator has granted prior express leave to that effect.

## V.    PRE-HEARING PREPARATION

30.   Notification of Hearing attendees:

(i)    By 19 August 2021, each Party shall provide to the Sole Arbitrator and the other Party a list of all attendees – including party representatives, witness, counsel, interpreters, and other support staff – who are expected to attend the Hearing.



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

     (ii)   The list shall indicate lead counsel and shall supply the following details for each attendee:

       a.  Name;
       b.  Title (Mr., Ms. etc.);
       c.  Role at the Hearing (counsel, client representative, etc.);
       d.  A description of the physical location from which the attendee intends to participate in the Hearing (*e.g.*, "home, Warsaw, Poland" or "[law firm name], Georgia, United States");
       e.  An indication whether any Hearing attendees will be attending the Hearing from the same location;
       f.  The email address to which the login details for the videoconferencing platform should be sent, and at which the participant can be contacted during the Hearing; and
       g.  A telephone number on which the participant can be reached during the Hearing.

## VI.   MANNER OF WITNESS EXAMINATION

31.  The appearance of the witness through audio-visual means shall be deemed an appearance at the Hearing.

32.  Before giving evidence, the witness shall be invited to confirm or deny his written statement. Then, the witness shall make the following declaration: "I solemnly declare upon my honor and conscience that I shall speak the truth, the whole truth and nothing but the truth".

33.  At the outset of his testimony, in addition to making a declaration in accordance with paragraph 32 above, the witness shall:

     (i)   be presented with a clean, physical copy of his witness statement;

     (ii)  confirm that, apart from the above-mentioned copy, during his testimony, he will not access any documentary materials other than any documents displayed by means of the videoconference to all the Hearing attendees;

34.  It is not permitted for counsel to communicate with the witness during his examination by means other than verbal communication on the record.

35.  No person shall be present in the room with the witness, with the exception of:



(i) Technical personnel (IT) if required by the witness to solve technical issues that may occur during the examination; and

(ii) The interpreter.

36. The witness shall be examined by each Party under the control of the Sole Arbitrator.

37. Consecutive interpretation shall be used for the examination of the witness.

38. The Sole Arbitrator shall at all times have control over the procedure in relation to the witness' oral evidence, including the right to limit or exclude any question, or to prevent a Party from examining the witness when she considers that any factual allegation on which the witness is being examined is sufficiently proven by exhibits, or that the manner of examination of the witness is irrelevant, immaterial, unduly burdensome or duplicative.

39. The admissibility, relevance, weight and materiality of the evidence offered by a witness or a Party shall be determined by the Sole Arbitrator.

## VII.  OTHER MATTERS

40. No new evidence and no new arguments may be filed on the eve of, or during, the Hearing, unless exceptional circumstances have occurred, and prior authorization is given by the Sole Arbitrator.

41. Cost submissions shall be filed by 15 September 2021.

Date: 9 August 2021

Iuliana Iancu
Sole Arbitrator



**Iuliana Iancu**

**From:** Reception
**Sent:** lundi 9 août 2021 13:13
**To:** Iuliana Iancu
**Subject:** RE: a envoyer par DHL dans IULI001
**Attachments:** 09082021131047-0001.pdf; 09082021125014-0001.pdf; 09082021125544-0001.pdf

Iuliana,

J'ai modifié le nom pour la première enveloppe comme demandé :

1.  One envelope to be sent to :

    ATHLETE BENEFITS GROUP, LLC
    Mr. Lamar D. Williams
    Mr. Mark Stevens

    2451 Oak Grove Heights
    Decatur, Georgia 30033
    United States of America
    Email: lamardwilliams@me.com
           lamardwilliams@aol.com
           ldw@tantongrpcpas.com
           markstevensentinc@yahoo.com

https://mydhl.express.dhl/be/en/tracking.html#/results?id=9486176103

2.  One envelope to be sent to:

    Mr. Lamar D. Williams
    TANTON GROUP CPAs, LLP
    Accountants and Consultants
    780 Third Avenue-Suite 701
    New York, NY 10017
    United States of America
    Email: ldw@tantongrpcpas.com

https://mydhl.express.dhl/be/en/tracking.html#/results?id=3300098491

3.  One envelope to be sent to :

    Mr. Mark Stevens
    3286 DeShong Drive
    Stone Mountain, Georgia 30087
    United States of America
    Tel: +1 678 794 9660
         +1 770 912 3330
         +1 770 572 1414

https://mydhl.express.dhl/be/en/tracking.html#/results?id=9486154871

Bien à toi,

1

**Iuliana Iancu**

| | |
|---|---|
| **From:** | Reception |
| **Sent:** | lundi 9 août 2021 12:59 |
| **To:** | Iuliana Iancu |
| **Subject:** | RE: a envoyer par DHL dans IULI001 |
| **Attachments:** | 09082021124657-0001.pdf; 09082021125014-0001.pdf; 09082021125544-0001.pdf |

Coucou Iuliana,

Voici les liens de suivi avec une copie de chaque étiquette :

1.  One envelope to be sent to :

    ATHLETE BENEFITS GROUP, LLC
    Mr. Lamar D. Williams
    Mr. Mark Stevens

    2451 Oak Grove Heights
    Decatur, Georgia 30033
    United States of America
    Email: lamardwilliams@me.com
           lamardwilliams@aol.com
           ldw@tantongrpcpas.com
           markstevensentinc@yahoo.com

https://mydhl.express.dhl/be/en/tracking.html#/results?id=9486143822

2.  One envelope to be sent to:

    Mr. Lamar D. Williams
    TANTON GROUP CPAs, LLP
    Accountants and Consultants
    780 Third Avenue-Suite 701
    New York, NY 10017
    United States of America
    Email: ldw@tantongrpcpas.com

https://mydhl.express.dhl/be/en/tracking.html#/results?id=3300098491

3.  One envelope to be sent to :

    Mr. Mark Stevens
    3286 DeShong Drive
    Stone Mountain, Georgia 30087
    United States of America
    Tel: +1 678 794 9660
         +1 770 912 3330
         +1 770 572 1414

https://mydhl.express.dhl/be/en/tracking.html#/results?id=9486154871

Bien à toi,



Sephora

**From:** Iuliana Iancu <iuliana.iancu@hvdb.com>
**Sent:** Monday, 9 August 2021 11:13
**To:** Reception <reception@hvdb.com>; Kimberley Conard <kimberley.conard@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

<u>**A envoyer par DHL (express) dans IULI001**</u>

A imprimer et mettre dans chaque colis, dans cette ordre :
- Une copie de 09082021 Letter to Respondents (DHL) – PO3 (en annexe)
- Une copie de ICC25952 Procedural Order No. 3 (en annexe)

Envoie-moi les étiquettes et les liens aussi.

Merci beaucoup !

1. One envelope to be sent to :

   ATHLETE BENEFITS GROUP, LLC
   Mr. Lamar D. Williams
   Mr. Mark Stevens

   2451 Oak Grove Heights
   Decatur, Georgia 30033
   United States of America
   Email: <u>lamardwilliams@me.com</u>
   <u>lamardwilliams@aol.com</u>
   <u>ldw@tantongrpcpas.com</u>
   <u>markstevensentinc@yahoo.com</u>

2. One envelope to be sent to:

   Mr. Lamar D. Williams
   TANTON GROUP CPAs, LLP
   Accountants and Consultants
   780 Third Avenue-Suite 701
   New York, NY 10017
   United States of America
   Email: <u>ldw@tantongrpcpas.com</u>

3. One envelope to be sent to :

   Mr. Mark Stevens
   3286 DeShong Drive
   Stone Mountain, Georgia 30087
   United States of America
   Tel: +1 678 794 9660
   +1 770 912 3330
   +1 770 572 1414



2

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



# Tracking Results

## Summary

✓ Waybill Number 9486176103
   Delivered
   Get Proof of Delivery

Thursday, August 12, 2021 at 17:21
Origin Service Area:
**BRUSSELS - BELGIUM**
Destination Service Area:
ATLANTA, GA - USA

1 Piece

| Thursday, August 12, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 18 | Delivered | ATLANTA, GA - USA | 17:21 | 1 Piece |
| 17 | With delivery courier | ATLANTA, GA - USA | 11:01 | 1 Piece |
| 16 | Arrived at Delivery Facility in ATLANTA - USA | ATLANTA, GA - USA | 08:30 | 1 Piece |
| 15 | Departed Facility in ATLANTA - USA | ATLANTA, GA - USA | 07:32 | 1 Piece |
| 14 | Processed at ATLANTA - USA | ATLANTA, GA - USA | 05:10 | 1 Piece |
| 13 | Arrived at Sort Facility ATLANTA - USA | ATLANTA, GA - USA | 00:12 | 1 Piece |

| Wednesday, August 11, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 12 | Departed Facility in NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:51 | 1 Piece |
| 11 | Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:37 | 1 Piece |

| Tuesday, August 10, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 10 | Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:44 | 1 Piece |
| 9 | Clearance processing complete at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:44 | 1 Piece |
| 8 | Arrived at Sort Facility NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 12:52 | 1 Piece |
| 7 | Customs status updated | NEW YORK CITY GATEWAY, NY - USA | 10:11 | |
| 6 | Departed Facility in COLOGNE - GERMANY | COLOGNE - GERMANY | 11:29 | 1 Piece |
| 5 | Transferred through COLOGNE - GERMANY | COLOGNE - GERMANY | 11:26 | 1 Piece |

| Monday, August 09, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 4 | Arrived at Sort Facility BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:33 | 1 Piece |
| 3 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:40 | 1 Piece |
| 2 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:13 | 1 Piece |
| 1 | Shipment picked up | BRUSSELS - BELGIUM | 16:21 | 1 Piece |

**Tracking Results**

**Summary**

✓ Waybill Number 3300098491
Delivered:
Get Signature Proof of Delivery

Tuesday, August 10, 2021 at 12:22
Origin Service Area:
BRUSSELS - BELGIUM
Destination Service Area:
NEW YORK, NY - USA

1 Piece

| Tuesday, August 10, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 14 | Delivered | NEW YORK, NY - USA | 12:22 | 1 Piece |
| 13 | With delivery courier | NEW YORK, NY - USA | 11:01 | 1 Piece |
| 12 | Arrived at Delivery Facility in NEW YORK - USA | NEW YORK, NY - USA | 09:50 | 1 Piece |
| 11 | Departed Facility in NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 08:43 | 1 Piece |
| 10 | Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 07:47 | 1 Piece |
| 9 | Clearance processing complete at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 07:46 | 1 Piece |
| 8 | Arrived at Sort Facility NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 05:19 | 1 Piece |
| 7 | Customs status updated | NEW YORK CITY GATEWAY, NY - USA | 02:04 | |
| 6 | Departed Facility in LEIPZIG - GERMANY | LEIPZIG - GERMANY | 03:34 | 1 Piece |
| 5 | Transferred through LEIPZIG - GERMANY | LEIPZIG - GERMANY | 03:33 | 1 Piece |

| Monday, August 09, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 4 | Arrived at Sort Facility BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:33 | 1 Piece |
| 3 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:40 | 1 Piece |
| 2 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:13 | 1 Piece |
| 1 | Shipment picked up | BRUSSELS - BELGIUM | 16:21 | 1 Piece |



## Tracking Results

### Summary

✔ Waybill Number 9486154871
Delivered:
Get Proof of Delivery

Thursday, August 12, 2021 at 15:22
Origin Service Area:
**BRUSSELS - BELGIUM**
Destination Service Area:
ATLANTA, GA - USA

1 Piece

| Thursday, August 12, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 17 | Delivered | ATLANTA, GA - USA | 15:22 | 1 Piece |
| 16 | With delivery courier | ATLANTA, GA - USA | 11:35 | 1 Piece |
| 15 | Arrived at Delivery Facility in ATLANTA - USA | ATLANTA, GA - USA | 09:10 | 1 Piece |
| 14 | Departed Facility in ATLANTA - USA | ATLANTA, GA - USA | 00:32 | 1 Piece |

| Wednesday, August 11, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 13 | Transferred through ATLANTA - USA | ATLANTA, GA - USA | 23:58 | 1 Piece |
| 12 | Departed Facility in NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:51 | 1 Piece |
| 11 | Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 21:27 | 1 Piece |

| Tuesday, August 10, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 10 | Processed at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:44 | 1 Piece |
| 9 | Clearance processing complete at NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 19:44 | 1 Piece |
| 8 | Arrived at Sort Facility NEW YORK CITY GATEWAY - USA | NEW YORK CITY GATEWAY, NY - USA | 12:52 | 1 Piece |
| 7 | Customs status updated | NEW YORK CITY GATEWAY, NY - USA | 10:11 | |
| 6 | Departed Facility in COLOGNE - GERMANY | COLOGNE - GERMANY | 11:29 | 1 Piece |
| 5 | Transferred through COLOGNE - GERMANY | COLOGNE - GERMANY | 11:28 | 1 Piece |

| Monday, August 09, 2021 | | Location | Time | Pieces |
|---|---|---|---|---|
| 4 | Arrived at Sort Facility BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 21:33 | 1 Piece |
| 3 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:40 | 1 Piece |
| 2 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 20:13 | 1 Piece |
| 1 | Shipment picked up | BRUSSELS - BELGIUM | 16:21 | 1 Piece |



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

# ANNEX IX





# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE *
AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL
T: +32.(0)2.290.39.00 · F: +32.(0)2.290.39.39 · info@hvdb.com · www.hvdb.com
TVA/BTW/VAT : BE 0475.333.058

PAUL LEFEBVRE [1-2]
*Avocat à la Cour de cassation*
*Advocaat bij het Hof van Cassatie*
BERNARD HANOTIAU [1-2-3]
ALBERT JAN VAN DEN BERG [1-2-4]
PASCAL HOLLANDER [1-5]
HUSCHA BASSIRI [1-6]
PIERRE VERMEIRE [2]
MAARTEN DRAYE [2]
IULIANA IANCU [2-6]

MAGALI SERVAIS
EMILY HAY [3-8]

GLADYS BAGASIN [7]
IRIS RAYNAUD [8-11]
TARUHNNA VIJRA [9]
DINA OUADRASSI BETTIOUI
JUAN CAMILO JIMÉNEZ-VALENCIA [8-10]
PRATYUSH PANJWANI [9]
BENJAMIN JESURAN [11]
LUDMILLA DE POTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE FUMIERE
FERNANDO GUTIERREZ [12]
PAULINA BRZEZINSKA
BENJAMIN HOLLANDER

*Avocats*
*Advocaten*

**RESPONDENT 1**
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com
ldw@tantongrpcpas.com
markstevensentinc@yahoo.com

**RESPONDENT 2**
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com

and

Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

**RESPONDENT 3**
Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
+1 770 912 3330
+1 770 572 1414

and

Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com



*1 Associés de la S.C.R.L. HANOTIAU & VAN DEN BERG, société civile à forme commerciale - RPM Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n° 0475.333.058 - 2 SRL/ BV - 3 Également membre du barreau de Paris / Ook advocaat bij de balie te Parijs - 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel - 5 Membre du barreau de Cologne inscrit à Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel - 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven te Brussel - 7 Membre des barreaux des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balies van de Filipijnen en New York ingeschreven te Brussel - 8 Sollicitor admise devant la Cour Suprême de New South Wales inscrite à Bruxelles / Sollicitor beëdigd voor de Supreme Court van New South Wales ingeschreven te Brussel - 9 Membre du barreau d'Inde (New Delhi) inscrit à Bruxelles / Advocaat bij de balie van India (New Delhi) ingeschreven te Brussel - 10 Membre du barreau de Colombie inscrit à Bruxelles / Advocaat bij de balie van Colombia ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie te Parijs ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel*

* Maxwell Chambers - 32 Maxwell Road, # 03-01 Singapore 069115 - Tel. + 65 6408 3343 - E-mail: singapore@hvdb.com

Brussels, 18 August 2021

**ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)**

Dear Counsel,

The ICC Hearing Centre has sent me (in advance of the 20 August deadline) the connection details for the hearing on 1 September 2021. These are copied below.

The ICC Hearing Centre also reminds all participants to download the most recent version of Zoom for the hearing, and to use a headset (headphones with microphone) during the hearing.

I invite Counsel to get in touch with the ICC Hearing Centre in order to coordinate the technical tests and to inform the Centre of any additional participants that will be notified on 19 August 2021.

With best regards,

Iuliana Iancu

**Iuliana IANCU**
**Partner**
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



CONNECTION DETAILS

Reception@iccwbo.org is inviting you to a scheduled Zoom meeting.

Topic: HEARING 25952
Time: Sep 1, 2021 4pm CET

Join Zoom Meeting
**https://iccwbo-org.zoom.us/j/94342300481**

**Meeting ID: 943 4230 0481**
**Passcode: 209408**
One tap mobile
+33186995831,,94342300481#,,,,*209408# France
+33170372246,,94342300481#,,,,*209408# France

Dial by your location
        +33 1 8699 5831 France
        +33 1 7037 2246 France
        +33 1 7037 9729 France
        +33 1 7095 0103 France
        +33 1 7095 0350 France
Meeting ID: 943 4230 0481
Passcode: 209408
Find your local number: https://iccwbo-org.zoom.us/u/ad7y2tfaIs

Join by SIP
94342300481@zoomcrc.com

Join by H.323
162.255.37.11 (US West)
162.255.36.11 (US East)
115.114.131.7 (India Mumbai)
115.114.115.7 (India Hyderabad)
213.19.144.110 (Amsterdam Netherlands)
213.244.140.110 (Germany)
103.122.166.55 (Australia Sydney)
103.122.167.55 (Australia Melbourne)
149.137.40.110 (Singapore)
64.211.144.160 (Brazil)
149.137.68.253 (Mexico)
69.174.57.160 (Canada Toronto)
65.39.152.160 (Canada Vancouver)
207.226.132.110 (Japan Tokyo)
149.137.24.110 (Japan Osaka)
Meeting ID: 943 4230 0481
Passcode: 209408



**Iuliana Iancu**

**From:** Kimberley Conard
**Sent:** mercredi 18 août 2021 10:13
**To:** Iuliana Iancu
**Cc:** Reception
**Subject:** RE: a envoyer par DHL dans IULI001

Bonjour Iuliana,

J'ai mis les liens de tracking ci-dessous.

Bien à toi,
Kimberley

**From:** Iuliana Iancu
**Sent:** mercredi 18 août 2021 09:54
**To:** Kimberley Conard <kimberley.conard@hvdb.com>
**Cc:** Reception <reception@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

**A envoyer par DHL (express) dans IULI001**

A imprimer et mettre dans chaque colis, dans cette ordre :
- Une copie de 18082021 Letter to Respondents (DHL) – hearing connection details (en annexe)

Envoie-moi les étiquettes et les liens aussi.

Merci beaucoup !


1. One envelope to be sent to :

    ATHLETE BENEFITS GROUP, LLC
    Mr. Lamar D. Williams
    Mr. Mark Stevens

    2451 Oak Grove Heights
    Decatur, Georgia 30033
    United States of America
    Email: lamardwilliams@me.com
           lamardwilliams@aol.com
           ldw@tantongrpcpas.com
           markstevensentinc@yahoo.com

    → DHL: https://mydhl.express.dhl/be/en/tracking.html#/results?id=1586528086
       **Livraison prévu pour lundi 23/08/2021 avant 10h30**

2. One envelope to be sent to:

    Mr. Lamar D. Williams
    TANTON GROUP CPAs, LLP
    Accountants and Consultants

1



780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

➔ **DHL: https://mydhl.express.dhl/be/en/tracking.html#/results?id=1586538925**
**Livraison prévu pour vendredi 20/8/2021 avant 10h30**

3. One envelope to be sent to :

Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
         +1 770 912 3330
         +1 770 572 1414

➔ **DHL: https://mydhl.express.dhl/be/en/tracking.html#/results?id=7808508186**
**Livraison prévu pour lundi 23/08/2021 avant 10h30**

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



**Iuliana Iancu**

| | |
|---|---|
| **From:** | Kimberley Conard |
| **Sent:** | lundi 30 août 2021 09:30 |
| **To:** | Iuliana Iancu |
| **Subject:** | FW: //JM// 1586528086 |
| **Attachments:** | LOA RTO_DS_8114803480.pdf |

Bonjour Iuliana,

Fais-je revenir le DHL ?

Bien à toi,
Kim

**From:** BE Info BL 1 (DHL BE) [mailto:infobl1@dhl.com]
**Sent:** jeudi 26 août 2021 09:25
**To:** Kimberley Conard <kimberley.conard@hvdb.com>
**Cc:** BE Info BL 1 (DHL BE) <infobl1@dhl.com>
**Subject:** //JM// 1586528086

Bonjour Kimberley,

Je vous contacte concernant votre colis vers Athlete Benefits Group aux Etats-Unis. Le colis a été refusé par le destinataire. Pour cette raison nous avons besoin de vos instructions pour le suivi de ce colis.

Veuillez retrouver ci-joint un document avec vos options.

Veuillez nous renvoyer ce document compléter.



1



**FROM :** Account Nr DHL: 271285670

Hanotiau & van den berg
Kimberley Conard
Avenue Louise 480/9

ELSENE 1050
BELGIUM
BE

Phone : 3222903900
Shipp. VAT : BE0475.333.058
Reference : JULI001

**TO :**

ATHLETE BENEFITS GROUP LLC
Mr. L Williams; Mr. M. Stevens
2451 Oak Grove Heights

DECATUR 30033
GA UNITED STATES OF AMERICA
US
Rec. VAT :
Phone : 3222903900

**DESCRIPTION:** **DATE :** 2021-08-18
Documents, general business

**VALUE:** **WEIGHT:** 0.500 KG

**PRODUCT:** **TDL** *Reproduction*

**DESTINATION:**

**ATL** 

**AIR WAYBILL:** **1586528086**
(Non-Negotiable)

1 OF 1
Origin: **BRU**

**Additional Info :** Pick-up time + route : 10:03 2021-08-18 -
Bill to account : 271285670
DHL Service :
Reason for export :
Insurance value :
Duty and Tax account :

Dimensions (cm) : L:35.0 W: 27.5 H: 2.0
Volumetric weight : KG
Customer weight : 0.500 KG
Actual weight :

Extra charges

Bien à vous,

**Thibault Deridder**
Multiskilled Customer Service Advisor
T: +32 27 15 53 71
DHL Express I Woluwelaan 151 I 1831 Diegem



# WE'RE HERE WHEN
# YOU NEED US MOST.



Learn more about our
response to COVID-19

CONFIDENTIALITY NOTICE: This message is from DHL and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this E-Mail and its attachments is strictly prohibited.



CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

**Iuliana Iancu**

| | |
|---|---|
| **From:** | Kimberley Conard |
| **Sent:** | jeudi 19 août 2021 18:50 |
| **To:** | Iuliana Iancu |
| **Subject:** | Fwd: DHL Shipment Notification : 1586538925 |

Kimberley Conard
Administration and Accounting

HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: http://www.hvdb.com/
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/
Registration number (SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058)

Begin doorgestuurd bericht:

> **Van:** DHL Customer Support <support@dhl.com>
> **Datum:** 19 augustus 2021 om 18:25:53 CEST
> **Aan:** Kimberley Conard <kimberley.conard@hvdb.com>
> **Onderwerp: DHL Shipment Notification : 1586538925**

Notification for shipment event group "Delivered" for 19 Aug 21.

AWB Number: 1586538925
Pickup Date: 2021-08-18 14:04:01
Service: L
Pieces: 1
Cust. Ref: IULI001
Description: Documents, general business

Ship From:

HANOTIAU & VAN DEN BERG
Avenue Louise 480/9
ELSENE, 1050
BE

Ship To:

TANTON GROUP CPAS, LLP
Mr. Lamar D. Williams
780 Third Avenue-Suite 701
NEW YORK, NYNew York 10017
US

EVENT CATEGORY
**19 Aug 21 12:24 PM - Shipment delivered - NEW YORK,UNITED STATES OF AMERICA**

**Signed By - MARIA**

---

Shipment status may also be obtained from our Internet site in USA under http://dhl-usa.com/track or Globally under http://www.dhl.com/track

Please do not reply to this email. This is an automated application used only for sending proactive notifications

You are receiving this email because a notification is configured to receive notifications from ProView. If you prefer not to receive future notification email of this type, click here to unsubscribe. Please note this URL is only valid for 1 day.



**Iuliana Iancu**

| | |
|---|---|
| **From:** | Kimberley Conard |
| **Sent:** | vendredi 20 août 2021 21:12 |
| **To:** | Iuliana Iancu |
| **Subject:** | Fwd: DHL Shipment Notification : 7808508186 |

Kimberley Conard
Administration and Accounting

HANOTIAU & VAN DEN BERG
IT Tower (9th floor)
Avenue Louise, 480/9
B - 1050 Brussels
T: + 32 2 290 39 00
F: + 32 2 290 39 39
www: http://www.hvdb.com/
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/
Registration number (SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058)

Begin doorgestuurd bericht:

**Van:** DHL Customer Support <support@dhl.com>
**Datum:** 20 augustus 2021 om 19:08:24 CEST
**Aan:** Kimberley Conard <kimberley.conard@hvdb.com>
**Onderwerp: DHL Shipment Notification : 7808508186**

Notification for shipment event group "Delivered" for 20 Aug 21.

AWB Number: 7808508186
Pickup Date: 2021-08-18 14:04:01
Service: L
Pieces: 1
Cust. Ref: IULI001
Description: Documents, general business

| Ship From: | Ship To: |
|---|---|
| HANOTIAU & VAN DEN BERG | MR. MARK STEVENS |
| Avenue Louise 480/9 | 3286 DeShong Drive |
| ELSENE, 1050 | Georgia GA |
| BE | STONE MOUNTAIN, GAGeorgia 30087 |
| | US |

EVENT CATEGORY
**20 Aug 21 1:07 PM - Shipment delivered - ATLANTA,UNITED STATES OF AMERICA**

1

**Signed By -** AS AUTHORISED BY CONSIGNEE

---

Shipment status may also be obtained from our Internet site in USA under http://dhl-usa.com/track or Globally under http://www.dhl.com/track

Please do not reply to this email. This is an automated application used only for sending proactive notifications

You are receiving this email because a notification is configured to receive notifications from ProView. If you prefer not to receive future notification email of this type, click <u>here</u> to unsubscribe. Please note this URL is only valid for 1 day.

2



# ANNEX X

CHAMBRE DE COMMERCE INTERNATIONALE

COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION

INTERNATIONAL CHAMBER OF COMMERCE



# HANOTIAU & VAN DEN BERG

BRUSSELS – SINGAPORE *

AVENUE LOUISE 480 B.9 LOUIZALAAN (IT TOWER) · BRUXELLES 1050 BRUSSEL

T: +32.(0)2.290.39.00 · F: +32.(0)2.290.39.39 · info@hvdb.com - www.hvdb.com

TVA/BTW/VAT : BE 0475.333.058

PAUL LEFEBVRE [1-7]
Avocat à la Cour de cassation
Advocaat bij het Hof van Cassatie
BERNARD HANOTIAU [1-0+3]
ALBERT JAN VAN DEN BERG [1+2-4]
PASCAL HOLLANDER [1-7]
NIUSCHA BASSIRI [2-5]
PIERRE VERMEIRE [2]
MAARTEN DRAYE [2]
IULIANA TANCU [2+6]

MAGALI SERVAIS
EMILY HAY [2+6]

GLADYS DAGASIN [7]
IRIS RAYNAUD [2+11]
TASUNNIA VERA [9]
DINA OUADRASSI BETTIOUI
JUAN CAMILO JIMÉNEZ-VALENCIA [2+10]
PRATYUSH PANIWANI [9]
BENJAMIN ISSURAN [11]
LUDMILLA DE POTTER D'INDOYE
ALBERT JAN VAN DEN BERG JR.
CHARLOTTE FUMIERE
FERNANDO GUTIERREZ [12]
PAULINA BRZEZINSKA
BENJAMIN HOLLANDER

Avocats
Advocaten

**RESPONDENT 1**
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com
ldw@tantongrpcpas.com
markstevensentinc@yahoo.com

**RESPONDENT 2**
Mr. Lamar D. Williams
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: lamardwilliams@me.com
lamardwilliams@aol.com

and

Mr. Lamar D. Williams
TANTON GROUP CPAs, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
New York, NY 10017
United States of America
Email: ldw@tantongrpcpas.com

**RESPONDENT 3**
Mr. Mark Stevens
3286 DeShong Drive
Stone Mountain, Georgia 30087
United States of America
Tel: +1 678 794 9660
+1 770 912 3330
+1 770 572 1414

and



Mr. Mark Stevens
ATHLETE BENEFITS GROUP, LLC
2451 Oak Grove Heights
Decatur, Georgia 30033
United States of America
Email: markstevensentinc@yahoo.com

1 Associée de la S.C.R.L. HANOTIAU-&-VAN-DEN BERG, société civile à forme commerciale - RPM Bruxelles n° 0475.333.058 / Vennoten van de C.V.B.A. HANOTIAU & VAN DEN BERG, burgerlijke vennootschap met handelsvorm - RPR Brussel n° 0475.333.058 - 2 SRL/ BV - 3 Egalement membre du barreau de Paris / Ook advocaat bij de balie te Parijs - 4 Membre du barreau d'Amsterdam inscrit à Bruxelles / Advocaat bij de balie te Amsterdam ingeschreven te Brussel - 5 Membre du barreau de Cologne inscrit à Bruxelles / Advocaat bij de balie te Keulen ingeschreven te Brussel - 6 Membre du barreau de Bucarest inscrit à Bruxelles / Advocaat bij de balie te Boekarest ingeschreven te Brussel - 7 Membre des barreaux des Philippines et de New York inscrit à Bruxelles / Advocaat bij de balies van de Filipijnen en New York ingeschreven te Brussel - 8 Sollicitor admise devant la Cour Suprême de New South Wales inscrite à Bruxelles / Sollicitor beëdigd voor de Supreme Court van New South Wales ingeschreven te Brussel - 9 Membre du barreau d'Inde (New Delhi) inscrit à Bruxelles / Advocaat bij de balie van India (New Delhi) ingeschreven te Brussel - 10 Membre du barreau de Colombie inscrit à Bruxelles / Advocaat bij de balie van Colombo ingeschreven te Brussel 11 Membre du barreau de Paris inscrit à Bruxelles / Advocaat bij de balie te Parijs ingeschreven te Brussel 12 Membre du barreau de Madrid inscrit à Bruxelles / Advocaat bij de balie te Madrid ingeschreven te Brussel

* Maxwell Chambers - 32 Maxwell Road, # 03-01 Singapore 069115 - Tel. + 65 6408 3343 - E-mail: singapore@hvdb.com

Brussels, 3 September 2021

**ICC Case No. 25952/HBH (EPP): POLSKA FUNDACJA NARODOWA (Poland) vs/ 1. ATHLETE BENEFITS GROUP, LLC (U.S.A.) 2. Lamar D. Williams (U.S.A.) 3. Mark Stevens (U.S.A.)**

Dear Colleagues,

Please find below the link for the video recording of the Hearing.

With best regards,

Iuliana Iancu

*[signature]*

**Iuliana IANCU**
**Partner**
**Admitted to the Bucharest Bar. Registered with the Brussels Bar**



HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058

HEARING RECORDING DETAILS

Topic: HEARING 1 September 25952
Start Time : Sep 1, 2021 03:09 PM

Meeting Recording:
https://iccwbo-
org.zoom.us/rec/share/9INxvigu4bWIzg6I3x2mJJSnxJ8mNzDf2uSkIY0aDIbUv4RqZVn
T9UUUcup6p03h.IKPNJa3smPkkn8Ni

Access Passcode: 2z8#%7T3



**Iuliana Iancu**

**From:** Kimberley Conard
**Sent:** vendredi 3 septembre 2021 11:51
**To:** Iuliana Iancu; Reception
**Subject:** RE: a envoyer par DHL dans IULI001

**From:** Iuliana Iancu
**Sent:** vendredi 3 septembre 2021 11:11
**To:** Kimberley Conard <kimberley.conard@hvdb.com>; Reception <reception@hvdb.com>
**Subject:** a envoyer par DHL dans IULI001

**A envoyer par DHL (express) dans IULI001**

A imprimer et mettre dans chaque colis, dans cette ordre :
-   Une copie de 03092021 Letter to Respondents (DHL) – hearing recording (en annexe)

Envoyez-moi les étiquettes et les liens aussi.

Merci beaucoup !

1.  One envelope to be sent to :

    ATHLETE BENEFITS GROUP, LLC
    Mr. Lamar D. Williams
    Mr. Mark Stevens

    2451 Oak Grove Heights
    Decatur, Georgia 30033
    United States of America
    Email: lamardwilliams@me.com
    lamardwilliams@aol.com
    ldw@tantongrpcpas.com
    markstevensentinc@yahoo.com

→ DHL: https://mydhl.express.dhl/be/en/tracking.html#/results?id=6859660334
Livraison prévu pour mardi 7/09 avant 10h30

2.  One envelope to be sent to:

    Mr. Lamar D. Williams
    TANTON GROUP CPAs, LLP
    Accountants and Consultants
    780 Third Avenue-Suite 701
    New York, NY 10017
    United States of America
    Email: ldw@tantongrpcpas.com



→ DHL: https://mydhl.express.dhl/be/en/tracking.html#/results?id=8272181702
Livraison prévu pour mardi 7/09 avant 10h30

3. One envelope to be sent to :

   Mr. Mark Stevens
   3286 DeShong Drive
   Stone Mountain, Georgia 30087
   United States of America
   Tel: +1 678 794 9660
          +1 770 912 3330
          +1 770 572 1414

➔ DHL: https://mydhl.express.dhl/be/en/tracking.html#/results?id=6859668771
   Livraison prévu pour mardi 7/09 avant 10h30

Iuliana IANCU
Partner
Admitted to the Bucharest Bar. Registered with the Brussels Bar

HANOTIAU & VAN DEN BERG
IT Tower
480 Avenue Louise, B-9
1050 Brussels - BELGIUM
Tel: +32-2-290.39.28
M: +32-479.90.17.18
Fax: +32-2-290.39.39
www: www.hvdb.com/iuliana-iancu
Disclaimer: http://www.hvdb.com/disclaimer/
Privacy: http://www.hvdb.com/privacy-statement/

SCRL Hanotiau & van den Berg CVBA – RPM/RRP Brussels 0475333058



2

**Iuliana Iancu**

| | |
|---|---|
| **From:** | Kimberley Conard |
| **Sent:** | mardi 7 septembre 2021 16:01 |
| **To:** | Iuliana Iancu |
| **Subject:** | FW: //JM// N DHL AWB 6859660334 |
| **Attachments:** | RTO_LETTER_ACCT_NR.doc |

Bonjour Iuliana

Peux-je remplir le formulaire pour demander le retour du colis ?

Bien à toi,
Kim

**From:** BE Info BL 1 (DHL BE) [mailto:infobl1@dhl.com]
**Sent:** mardi 7 septembre 2021 15:42
**To:** Kimberley Conard <kimberley.conard@hvdb.com>
**Subject:** //JM// N DHL AWB 6859660334

Bonjour Mme. Conard,

De nouveau, le destinataire a refusé d'accepter le colis. Veuillez remplir le document ci-joint afin de laisser retourner le colis chez vous.

**FROM :** Account Nr DHL: 271285670
Hanotiau & van den berg
Kimberley Conard
Avenue Louise 480/9

ELSENE 1050
BELGIUM
BE

Phone : 3222903900
Shipp. VAT: BE0475.333.058
Reference : IULI001

**TO :**
ATHLETE BENEFITS GROUP, LLC
Mr. L Williams; Mr. M. Stevens
2451 Oak Grove Heights

DECATUR 30033
GA UNITED STATES OF AMERICA
US
Rec. VAT:
Phone : 3222903900

**DESCRIPTION:** **DATE:** 2021-09-03
Documents, general business
**VALUE:** **WEIGHT:** 0.300 KG

**PRODUCT:**  *Reproduction*

**DESTINATION:**
**ATL** 

**AIR WAYBILL:** 6859660334
(Non-negotiable)



 1 OF 1
Origin: BRU

**Additional Info :** Pick-up time + route : 11:35 2021-09-03 ·
Bill to account : 271285670
DHL Service :
Reason for export :
Insurance value :
Duty and Tax account :
Dimensions (cm) : L: 31.7 W: 23.8 H: 1.0
Volumetric weight : KG
Customer weight : 0.300 KG
Actual weight :
Extra charges

Bien à vous,

1



**Johan Van Campenhout**

Senior Customer Retention Advisor

T: +32 (0)2 715 53 71

DHL Express | Woluwelaan 151 | 1831 Diegem

www.dhlexpress.be

CONFIDENTIALITY NOTICE: This message is from DHL and may contain confidential business information. It is intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient please contact the sender and delete this message and any attachment from your system. Unauthorized publication, use, dissemination, forwarding, printing or copying of this E-Mail and its attachments is strictly prohibited.



**Iuliana Iancu**

**From:** Kimberley Conard
**Sent:** jeudi 9 septembre 2021 08:47
**To:** Iuliana Iancu
**Subject:** FW: DHL Shipment Notification : 6859668771

**From:** DHL Customer Support [mailto:support@dhl.com]
**Sent:** mercredi 8 septembre 2021 22:59
**To:** Kimberley Conard <kimberley.conard@hvdb.com>
**Subject:** DHL Shipment Notification : 6859668771

Notification for shipment event group "Delivered" for 08 Sep 21.

AWB Number: <u>6859668771</u>
Pickup Date: 2021-09-03 15:10:40
Service: L
Pieces: 1
Cust. Ref: IULI001
Description: Documents, general business

Ship From:

HANOTIAU & VAN DEN BERG
Avenue Louise 480/9
ELSENE, 1050
BE

Ship To:

MR. MARK STEVENS
3286 DeShong Drive
Georgia GA
STONE MOUNTAIN, GAGeorgia 30087
US

EVENT CATEGORY
**08 Sep 21 4:57 PM - Shipment delivered - ATLANTA,UNITED STATES OF AMERICA**

Signed By - AS AUTHORISED BY CONSIGNEE

Shipment status may also be obtained from our Internet site in USA under <u>http://dhl-usa.com/track</u> or Globally under <u>http://www.dhl.com/track</u>

Please do not reply to this email. This is an automated application used only for sending proactive notifications

You are receiving this email because a notification is configured to receive notifications from ProView. If you prefer not to receive future notification email of this type, click <u>here</u> to unsubscribe. Please note this URL is only valid for 1 day.



Iuliana Iancu

From: DHL Customer Support [mailto:support@dhl.com]
Sent: mardi 7 septembre 2021 17:59
To: Kimberley Conard <kimberley.conard@hvdb.com>
Subject: DHL Shipment Notification : 8272181702

Notification for shipment event group "Delivered" for 07 Sep 21.

AWB Number: 8272181702
Pickup Date: 2021-09-03 15:10:40
Service: L
Pieces: 1
Cust. Ref: IULI001
Description: Documents, general business

Ship From:

HANOTIAU & VAN DEN BERG
Avenue Louise 480/9
ELSENE, 1050
BE

Ship To:

TANTON GROUP CPAS, LLP
Accountants and Consultants
780 Third Avenue-Suite 701
NEW YORK, NYNew York 10017
US

EVENT CATEGORY
**07 Sep 21 11:57 AM - Shipment delivered - NEW YORK,UNITED STATES OF AMERICA**

**Signed By - MARIA**

Shipment status may also be obtained from our Internet site in USA under http://dhl-usa.com/track or Globally under http://www.dhl.com/track

Please do not reply to this email. This is an automated application used only for sending proactive notifications

You are receiving this email because a notification is configured to receive notifications from ProView. If you prefer not to receive future notification email of this type, click here to unsubscribe. Please note this URL is only valid for 1 day.

